DAVID C. VOSS, JR. (State Bar No. 147330)
david@vsbllp.com
VOSS, SILVERMAN & BRAYBROOKE LLP
4640 Admiralty Way, Suite 800
Marina Del Rey, California 90292-6602
T: (310) 306-0515/ F: (310) 306-5368

Attorneys for Defendants Moishe Newman
and AMN Distribution, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ATHENA COSMETICS, INC., <br><br> Plaintiff <br><br> v. <br><br> AMN DISTRIBUTION, INC., MOISHE NEWMAN, an individual d/b/a BRUSH EXPRESS, and DOES 1-10, INCLUSIVE, <br><br> Defendants | Case No. 2:20-cv-05526-SVW-SHK <br><br> **REPLY IN SUPPORT OF MOTION OF DEFENDANT MOISHE NEWMAN TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)** <br><br> **HEARING** <br><br> Date:  March 15, 2021 <br> Time: 1:30 p.m. <br> Place:  Courtroom 10A <br> First Street Courthouse <br> 350 W. 1st Street, 10th Floor, <br> Los Angeles, California 90012 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  PLAINTIFF'S TRADEMARK CLAIMS (CLAIMS 1 THROUGH 4) AND
STATE COMMON LAW UNFAIR COMPETITION CLAIM (CLAIM 5) ARE
BARRED BY THE SETTLEMENT AGREEMENT...............................3

    A.   Plaintiff's Complaint Has Not Alleged Violations of Trademark Law or
Acts of Unfair Competition That Took Place After the Parties Settlement
Agreement.................................................................................................3

    B.   The Multiple Release Provisions of the Parties' Settlement Agreement Bar
Plaintiff's Claims ....................................................................................4

III. PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACTS FAILS TO
STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED .....................7

    A.   Plaintiff's Incorporation by Reference of its Trademark Damages
Allegation Does Not Save its Fatally Flawed Contract Claim .....................7

    B.   The Settlement Agreement Clearly Puts the Contractual Duty on AMN
Rather Than Mr. Newman to Make the Customer and Supplier Disclosures
.................................................................................................................10

    C.   The Schedules – the Judicial Notice of Which Plaintiff Does Not Oppose –
Demonstrate that Defendants Fulfilled Any Disclosure Obligations and that
Plaintiff Has Failed to Plead Sufficient Facts to State a Claim that is
Plausible on its Face ............................................................................11

IV. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS CLAIMS
FIVE AND SIX AS THEY ARE SUPPLEMENTAL STATE LAW CLAIMS ...14

V.  THE FACT THAT DEFENDANT AMN ANSWERED PLAINTIFF'S
COMPLAINT SHOULD HAVE NO BEARING ON THE COURT'S RULING
ON THIS MOTION .................................................................................14

**VI.**    DEFENDANT SATISFIED THE MEET AND CONFER REQUIREMENT ......14

**VII.**  CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

## Cases

*A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013) .........................9, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................9, 10, 12

*Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502 (7th Cir. 2007)..........................13

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ...............................12

## Statutes

28 U.S.C. 1367(c)(3) ..........................................................................2, 12

## Other Authorities

CACI, 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of
   California Civil Jury Instructions (2021 edition)..........................................6

## Rules

Federal Rule of Civil Procedure 12(b)(1)..................................................2, 12

Federal Rule of Civil Procedure 9 .........................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Athena Cosmetics, Inc. ("Plaintiff" or "Athena") predicates its opposition to defendant Moishe Newman's motion to dismiss not upon its complaint as currently written, but upon a mischaracterization of the complaint that is inconsistent with the facts alleged therein.  For example, Plaintiff argues – without any citation to the complaint itself – that it has alleged that Mr. Newman and co-defendant AMN Distribution, Inc. ("AMN" and collectively, "Defendants") engaged in the sale of counterfeit goods *after* the parties' settlement. Not only are such allegations absent from the complaint, but even the suggestion that such misconduct took place is at odds with the breach of settlement agreement claim, which merely alleges that defendants breached a disclosure provision in the "Miscellaneous" section of that agreement.  Similarly, Plaintiff disingenuously argues that its reference to damages allegation in its first claim for relief under the Lanham Act somehow compensates for its failure to plead that it suffered harm as a result of Mr. Newman's purported breach of the settlement agreement and that Mr. Newman's purported breach was a "substantial factor" in causing that harm.

The shortcomings in Plaintiff's opposition (and complaint), however, do not stop there.  The failure of Plaintiff to articulate, let alone plead, a viable contract damages theory goes to a greater problem with its complaint: To withstand a challenge under Rule 12(b)(6), Plaintiff must plead sufficient factual matter to state a claim to relief that is "plausible on its face."   In this case, Plaintiff apparently[1] seeks to hold Defendants responsible under a breach of contract theory for damages caused by post-settlement sales of counterfeit goods *by third parties*.  The damages and post-settlement sale are all

---

[1] "Apparently" is the appropriate word because, as discussed below, Plaintiff has not included the necessary factual allegations in its complaint.

DEFT. NEWMAN REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

hypothetical, as Plaintiff *does not even allege the actual existence of such post-settlement third party sales and damages*.

On top of that, Plaintiff has admitted in its opposition that there is only a possibility that additional disclosures by Defendants "***could*** lead Athena to major suppliers and other distributers [sic]." Once again, however, Plaintiff gets ahead of itself because its breach of contract claim does not allege the existence of post-settlement sales by major suppliers and other distributors or any damages resulting from the same. Consequently, Plaintiff's breach of contract claim as currently alleged is extremely speculative and not plausible on its face.

Then you have the disclosures themselves. While Plaintiff focuses on the importance of accepting the allegations of the complaint as true, it ignores the flip side of the Rule 12(b)(6) standard that requires the Court to disregard conclusory allegations and to examine the factual allegations in the context of facts that are the proper subject of judicial notice. The contractually mandated disclosures, which are in the form of two schedules that were actually attached to and incorporated into the parties' settlement agreement, identified over 3800 transactions in great detail. Even in its opposition, Plaintiff continues to repeat the conclusory mantra "inaccurate and incomplete" rather than recite facts that explain how those detailed disclosures were deficient and were a "substantial factor" in causing it harm.

The upshot is that notwithstanding Plaintiff's arguments to the contrary: (1) Plaintiff has failed to allege a post-settlement violation of its alleged trademark rights; (2) Plaintiff's trademark and unfair competition claims remain barred by the settlement agreement; (3) defendant Newman has not breached the settlement agreement because he had no duty "to furnish" the customer and supplier schedules at issue in the first instance; (4) it is clear that Mr. Newman's co-defendant, AMN Distribution, Inc. ("AMN"), did in fact supply the required schedules based upon matters of which this Court can take judicial notice, which notice Plaintiff *has not* opposed; and (5) Athena

has failed to allege that it was harmed by the alleged breach of the settlement agreement and that Mr. Newman's conduct was a substantial factor in causing that harm.

Accordingly, Mr. Newman requests that this Court dismiss Plaintiff's complaint, in its entirety, with prejudice.  If the court elects only to dismiss the first four federal trademark claims, Mr. Newman also requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

## II.  PLAINTIFF'S TRADEMARK CLAIMS (CLAIMS 1 THROUGH 4) AND STATE COMMON LAW UNFAIR COMPETITION CLAIM (CLAIM 5) ARE BARRED BY THE SETTLEMENT AGREEMENT

### A.  Plaintiff's Complaint Has Not Alleged Violations of Trademark Law or Acts of Unfair Competition That Took Place After the Parties Settlement Agreement

Plaintiff asserts that the multiple release and waiver provisions set forth in the parties' settlement agreement (the "Settlement Agreement") do not bar its trademark and unfair competition claims because of *post-settlement* misconduct.  Specifically, Plaintiff has argued, *without a single citation to its complaint*, that "Defendants also continue selling counterfeit and infringing Athena cosmetics, so even if the release remained effective, it only releases infringements before the effective date of the agreement" and that the "complaint also properly pled factual allegations that defendants sell counterfeit goods, which include counterfeits defendants sold after the agreement."  Plaintiff's Opp. (Dkt. 67), 5:21-25.[2]

The problem with Plaintiff's argument is that its complaint contains no such allegations.  As noted in the detailed summary of the complaint in Mr. Newman's motion, the only specific dates alleged with respect to the purported trademark violations or unfair competition are November 2019 and February 2020.  Complaint (Dkt. 1), ¶¶

---

[2] The above citation format is to "page number: line number."

26-28.  There is no allegation that conduct alleged in the first five claims continued after the parties entered into their settlement agreement in late April of 2020.

Should the Court have any doubt on this matter, it need look no further than Plaintiff's sixth claim for breach of the Settlement Agreement.  As Plaintiff points out in its opposition, the Defendants specifically agreed in the Settlement Agreement to be enjoined from engaging in future violations of Plaintiff's trademark rights or acts of unfair competition.  Plaintiff's Opp. (Dkt. 67), p. 3, lines 7-13;  Newman RJN, Exh. 1 (Dkt. 64-1), p. 7, ¶ 2(viii).  Yet, Athena does not allege that defendants breached this provision by selling counterfeit goods after the settlement; it merely alleges that defendants breached a single provision of the Settlement Agreement "by providing inaccurate and incomplete contact information of its customers and suppliers." Complaint (Dkt. 1), ¶ 92.[3]

Consequently, whatever Plaintiff's claims may be, they are most certainly not for trademark violation or acts of unfair competition *that occurred after the parties' settlement*. Had Plaintiff been able to allege the occurrence of such acts after the Settlement Agreement without running afoul or Rule 11, it would have included such allegations in its complaint.  It did not.

## B.     The Multiple Release Provisions of the Parties' Settlement Agreement Bar Plaintiff's Claims

Plaintiff incorrectly asserts that Mr. Newman has improperly raised issues of fact that go beyond the scope of the pleadings in arguing that the *multiple* release and waiver provisions set forth in the parties' Settlement Agreement bar Athena's trademark and unfair competition claims.  Such is not the case.

*First,* the Court can and should take judicial notice of the parties' Settlement Agreement and the supplier and customer schedules attached thereto on the basis of the

---

[3] Significantly, Plaintiff has also omitted any allegation from its breach of Settlement Agreement claim that defendants failed to make the settlement payment or failed to return inventory as required by the agreement.  Complaint (Dkt. 1), ¶¶ 85-94.

authority cited in Mr. Newman's motion and his concurrently filed request for judicial notice and examine the allegations of the complaint in light of these materials.  *See* Newman Motion (Dkt. 63), 7:15-8:4; Newman RJN (Dkt. 64), 2:16-3:6.  Although it inexplicably failed to include the Settlement Agreement and accompanying schedules with its complaint, Plaintiff has not objected to Mr. Newman's request for judicial notice.[4]

*Second*, the supplier and customer schedule attached to the Settlement Agreement make it abundantly clear that defendant AMN "furnish[ed] schedules 1 and 2" as required by the "release" provision of the Settlement Agreement, thus triggering the release of the claims asserted in the complaint.  Newman RJN 1, Exh. 1 (Dkt. 64-1), p. 8, ¶ 5.  As discussed below, these detailed schedules included over 3,800 transactions.

*Third*, while the specifically denominated "release" provision set forth in paragraph 5 of Settlement Agreement is explicitly predicated upon AMN furnishing the attached schedules, the Settlement Agreement contains additional broader release and waiver provisions – discussed extensively in Mr. Newman's motion – that Athena has failed to address. These broader provisions include the separate payment provision, in which defendants agreed to pay the sum of $25,000 "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit." RJN, Exh. 1 (Dkt. 64-1), p. 8, ¶ 4.  Unlike the release provision set forth in paragraph 5 of the Settlement Agreement, *the sole predicate* for this release is defendants' $25,000 payment obligation, the occurrence of which is not disputed by Plaintiff in its complaint or opposition.

---

[4] Athena disingenuously argues that it was prohibited from attaching the Settlement Agreement to the complaint by virtue of a confidentiality provision.  To the contrary, the confidentiality provision includes an express carve-out for "any judicial proceeding to enforce or construe this Agreement." Newman RJN, Exh. 1 (Dkt. 64-1), p. 10, ¶ 7.

Likewise, the Settlement Agreement contains an unconditional "Waiver of Claims" provision whereby the "Releasors" and "Releasees" agree that the settlement "shall act as a *release of any and all claims that may arise from conduct prior to the execution of this Agreement* whether such claims are known, unknown, foreseen, or unforeseen, liquidated or unliquidated, choate or inchoate, notwithstanding Section 1542 . . . ." RJN, Exh. 1 (Dkt. 64-1), p. 9, ¶ 6 (emphasis added).[5]  The Settlement Agreement also includes a broad covenant not to sue. RJN, Exh. 1( Dkt 64-1), p. 6, ¶ 1(a)

As Plaintiff now apparently concedes, the only way Plaintiff could get around these broad provisions would be *to rescind* the Settlement Agreement based upon, for example, a material breach or total failure of consideration.  Perhaps this is why that Athena now argues in its opposition, but does not allege in its complaint, that the Settlement Agreement is now "unenforceable and void of consideration" because of the alleged breach.  Plaintiff's Opp. (Dkt. 67), 5:11-12.  This, however, is not the theory that Plaintiff has alleged or opted to proceed with by its complaint.  *Plaintiff has instead elected to affirm the existence of the contract and sue on the breach.*  Having made this election, Plaintiff's belated argument that the Settlement Agreement is "unenforceable and void" is beside the point: The Settlement Agreement and broad waiver and release provisions remain in full force and effect.

As an aside, Plaintiff's allegation that Defendants' purported breach of the settlement agreement is material is belied by the very existence and contents of  the supplier and customer schedules attached to the agreement, which contained detailed disclosures regarding *thousands* of transactions.  *See discussion infra* at pp. 11-12.  The alleged materiality of this purported breach also stands in strong contrast to Defendants performance of the primary obligations under the Settlement Agreement, which were (1)

---

[5] Plaintiff does not allege that AMN prepared and delivered the schedules after the execution of the agreement, rather than *prior to the execution of the Settlement Agreement* in accordance with its express terms.  AMN RJN, Exh. 1 (Dkt. 64-1), p. 12, ¶ 9(g).  The only alleged breach is that the information was "inaccurate and incomplete."  Complaint (Dkt. 1), ¶ 92.

DEFT. NEWMAN REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

the cessation of the purchase, offering for sale, use, etc., of "any goods or products with the Athena Cosmetics Marks, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks" [RJN, Exh. 1, p. 7, ¶ 2(a)(vii)]; (2) the shipment to Plaintiff, within 30 days of the Effective Date, of their "entire remaining inventory of any goods or products with the Athena Cosmetics Marks" [RJN, Exh. 1, p. 7, ¶ 2(a)(viii)]; (3) their agreement not to challenge the validity or enforceability of the Athena Cosmetics Marks [RJN, Exh. 1, p. 8, ¶ 3]; and (4) the payment of $25,000 to Athena within 3 business days of the Effective Date [RJN, Exh. 1, p. 8, ¶ 4]. Plaintiff does not allege that Defendants breached any of these obligations under the Settlement Agreement, leaving it nothing to allege but the breach of a minor provision relating to customer and supplier schedules set forth in the "Miscellaneous" section of the agreement. RJN, Exh. 1 (Dkt. 64-1) p. 12, ¶ 9(g).

## III.   PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACTS FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.   Plaintiff's Incorporation by Reference of its Trademark Damages Allegation Does Not Save its Fatally Flawed Contract Claim

Plaintiff does not dispute that its contract claim is deficient absent an allegation that (1) that it "was harmed" by the breach; and (2) that Mr. Newman's "breach of contract was a substantial factor in causing [Plaintiff's] harm." CACI, 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of California Civil Jury Instructions (2021 edition). Plaintiff also does not dispute that it failed to include these allegations in its contract claim. Rather, it argues that its omission of these two essential elements is somehow miraculously cured by the incorporation of a prior cursory damages allegation from its first claim for relief under the Lanham Act, which merely provides that: "Defendants' acts cause Athena to suffer irreparable harm and damages in an amount not determined." Complaint (Dkt. 1), ¶ 44; Plaintiff's Opp. (Dkt 67), 6:1-4.

Such incorporation by reference is insufficient. Plaintiff's prior allegation that it suffered damages as a result of *defendants purported violation of Plaintiffs rights under*

*the Lanham Act* is not even close to the same as alleging that Mr. Newman's purported inadequate and incomplete disclosures under the Settlement Agreement caused Plaintiff harm and that the alleged breach of the Settlement Agreement by Mr. Newman was "a substantial factor in causing" that harm.  Indeed, the very same damages allegation that Plaintiff is now attempting to bootstrap onto its breach of contract claims goes on to allege that:

> Defendants' wrongful advertisement, promotion, distribution, sale and offers of sale of its goods bearing infringements or counterfeits of the Athena Trademarks directly and proximately caused the injuries and damages Athena sustained.

Complaint (Dkt. 1), ¶ 44.

Again, the foregoing is a far cry from alleging that the acts that constituted the purported breach of contract, *i.e.*, inadequate disclosures of buyers and sellers in the settlement, caused Plaintiff harm and that the breach was a substantial factor in causing that harm. Absent such allegations, Plaintiff has no breach of contract claim.

*This is no small matter for it is highly unlikely that Plaintiff will be able to plead or prove damages as a matter of law.*  Plaintiff's theory, although not alleged in its complaint, appears to be that Mr. Newman and AMN are somehow responsible for damages *caused by third parties* who are purportedly violating Athena's trademarks by selling counterfeit goods. This is suggested by the argument in Plaintiff's opposition that "it is imperative Athena track down the sources of counterfeit goods bearing Athena's marks," the sale of which Athena apparently now seeks to shift the blame to Mr. Newman and AMN. Athena's Opp. (Dkt. 67), 5:7-8.

If this is Plaintiff's damages claim – and again *Plaintiff has yet to plead the essential elements and actual facts* – it is a novel and speculative theory.  Plaintiff would have to plead and prove that Defendants' purported failure to provide "full and complete" disclosures of customers and sellers was a "***substantial factor***" in causing damages purportedly sustained by Plaintiff as a result of the post-settlement sales of

counterfeit goods *by third parties*.  Even Plaintiff itself tacitly admits the speculative nature of its claim and issues relating to causation when it argues in its opposition that:

> Athena had been willing to enter into the settlement agreement because the information that defendants should have provided in the schedules *could* lead Athena to major suppliers and other distributers.

Plaintiff's Opp. (Dkt 67), 5:9-11(emphasis added).

Plaintiff has not included the foregoing statement as an allegation in its complaint, but even if included in the complaint, it most certainly would not satisfy the "substantial factor" requirement.  Missing links in Plaintiff's theory and complaint include: (a) whether any alleged omissions by Mr. Newman did in fact bar or prevent Athena from discovering the names of other major suppliers and distributors or *would* have led to their discovery; (b) whether Mr. Newman was aware of these other major suppliers and distributors and even had a contractual duty to disclose them; and (c) the existence of real damages sustained as a result of actual (as opposed to hypothetical) post-settlement sales by third parties whose names and contact information Mr. Newman had a contractual duty to disclose. Even if Plaintiff were to include the foregoing allegations in its complaint, it would still hit the proverbial brick wall in pleading that Mr. Newman – as a matter of law – could even be held responsible for any damages sustained by Plaintiff as a result of counterfeit sales by third parties vis-à-vis a contract claim for breach of a purported disclosure provision in a settlement agreement.

This in turn, ties into the Twombly/Iqbal pleading standard, which provides that: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  "[O]nly a complaint that states a *plausible claim* for relief survives a motion to dismiss." *Id.* at  679.  Importantly, this plausibility requirement applies to the entire claim, including the element of *causation. See A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 82 (1st Cir. 2013) ("The superficiality of the causation allegation, coupled with the speculative nature of the

claim as a whole, makes manifest that the plaintiffs have failed to plead a plausible cause of action.")  Unless and until Plaintiff can plead a cognizable damages theory, Plaintiff has failed to state a claim.  *As things now stand, Plaintiff has failed to plead any of the required elements of damages with respect to its contract claim.*

The irony, of course, is that *if* Plaintiff is indeed aware of post-settlement sales of counterfeit goods by third parties that resulted in harm to Plaintiff and the names of which Mr. Newman had a contractual duty and yet failed to disclose (which would be a prerequisite for potential damages against Mr. Newman under Plaintiff's own convoluted theory), *Plaintiff must have already ascertained the identities of these sellers prior to the filing of its complaint.*  Otherwise, Plaintiff would have filed its complaint without knowing of the existence of any such sales in violation of Rule 11 and would be embarking upon a mere fishing expedition to garner information through the discovery process.  As *Iqbal* cautions, although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Iqbal*, 556 U.S. at 678–79.  Yet, this is precisely the path upon which Plaintiff is proceeding, as it admits in its opposition that "it needs discovery to determine the full extent and severity of defendants' failure to perform its obligations under the agreement." Plaintiff's Opp. (Dkt 67), 5:14-15.

**B.**   **The Settlement Agreement Clearly Puts the Contractual Duty on AMN Rather Than Mr. Newman to Make the Customer and Supplier Disclosures**

As previously noted by Mr. Newman, the "Miscellaneous" section of the Settlement Agreement clearly puts the contractual duty on defendant AMN *alone* to "deliver" ***and*** "prepare" the customer and supplier information set forth in Schedules 1 and 2 of the Settlement Agreement.

"Prior to execution of this [Settlement] Agreement, ***AMN shall prepare*** Schedules 1 and 2 of this Agreement and shall deliver same to Ronan Cohen, Esq., who shall

- 10 -

1    act as escrow agent under this Agreement for the limited purpose of holding said

2    schedules in escrow and delivering same to SoCal IP Law Group LLP . . . ."

3  RJN, Exh. 1, p. 12, ¶ 9(g).

4        Plaintiff cannot somehow transmute and shift this contractual duty to Mr.

5  Newman by operation of a recital that was primarily intended to act as an admission that

6  "*AMN*" purchased and sold or otherwise delivered the products set forth on the attached

7  schedules.  RJN, Exh. 1 (Dkt. 64-1), pp. 6-7, ¶¶ 2(a)(iii), (v).  To do so would require the

8  Court to amend the Settlement Agreement to insert Mr. Newman's name to paragraph

9  9(g) and pretend that it was an unintended oversight by the parties not to include him in

10  that provision.  The clear and unambiguous language of the Settlement Agreement

11  should be enforced.  Absent a contractual duty to deliver and prepare the schedules on

12  the part of Mr. Newman, Plaintiff cannot state a claim against Mr. Newman for a breach

13  of the same.

14  **C.    The Schedules – the Judicial Notice of Which Plaintiff Does Not
15         Oppose – Demonstrate that Defendants Fulfilled Any Disclosure
16         Obligations and that Plaintiff Has Failed to Plead Sufficient Facts to
17         State a Claim that is Plausible on its Face**

18        Even if the Settlement Agreement could somehow be construed to impose a

19  disclosure obligation on Mr. Newman in addition to AMN, the schedules attached to the

20  Settlement Agreement clearly demonstrate that the Defendants satisfied this obligation

21  notwithstanding Plaintiff's *conclusory* allegations to the contrary.

22        The Settlement Agreement required AMN to prepare two schedules: (1) Schedule

23  1, which is to list "the full and complete contact information and the amount of product

24  purchased from each seller" from whom AMN purchased goods bearing Athena

25  Cosmetic Marks; and (2) Schedule 2, which is to list "the full and complete contact

26  information for each customer and the aggregate amount of product sold will be set forth

27  on Schedule 2 to this Agreement."  Newman RJN, Exh. 1 (Dkt. 64-1), p. 7, ¶ 2(a)(iii),

28  (v).

As demonstrated by the schedules attached to the executed Settlement Agreement, which are expressly deemed to be a part of that agreement, Defendants complied with the foregoing obligations notwithstanding Plaintiff's allegation to the contrary.  Those schedules, which total over 47 pages, *identified more than 3800 transactions*.  Newman RJN, Exh. 1, Schedule 1 (Dkt. 64-2), Schedule 2 (Dkt. 64-3).  Schedule 1, which is one page long,  contains for each seller a description of the product, amount of product purchased, and seller contact information required by the Settlement Agreement.  Newman RJN, Exh. 1, Schedule 1 (Dkt. 64-2).  As previously explained by Mr. Newman in his original moving papers, Schedule 2 is forty-six pages long and *goes beyond* the information required by the Settlement Agreement by including for each customer: (a) "Order ID" numbers; (b) customer first and last name; (c) total purchase amount for each customer; (d) "status" and "payment status;" (e) order date and time; (f) customer shipping address; (g) customer shipment phone number; (h) UPC code number; (i) quantity purchased; (j) product name; and (k) tracking number.  Newman RJN, Exh. 1, Schedule 2 (Dkt. 64-3).

Based upon the foregoing documents, of which the Court can and should take judicial notice, it is clear that AMN (and Newman, to the extent he even had such an obligation) fulfilled their contractual duties.  Against this, you only have the *conclusory* allegation of Plaintiff that Defendants purportedly breached the contract by providing "inaccurate and incomplete contact information" of AMN's customers and suppliers.  Complaint (Dkt. 1), ¶ 92.  This Court must disregard such conclusory allegations in the Twombly/Iqbal era. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth."  *Corinthian Colleges*, 655 F.3d at 984.  As noted above in the context of damages, this concept applies to the entire claim, including the important element of causation.  *Elsevier, Inc.*, 732 F.3d 77 at 82.

Here, Plaintiff has pled in the most conclusory terms that Defendants breached a contractual duty to supply "full and complete contact information" by instead "supplying inaccurate and incomplete contact information." Complaint (Dkt. 1), ¶ 92.  Not only is the foregoing allegation threadbare and conclusory, but it is also tautological.  In addition, by pleading that the information is inaccurate, Plaintiff is averring fraud, which triggers the even more rigorous particularity pleading requirements of Rule 9.  *See Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (applying Rule 9 to claims for interference with economic advantage, interference with fiduciary relationship and civil conspiracy because Rule 9(b) applies to 'averments of fraud,' not claims of fraud").  Then, to top it all off, Plaintiff has failed to plead facts to show how these purported omissions *were a substantial factor in causing it harm*, when according to Plaintiff's opposition (but not the allegations in its complaint), its primary cause of harm is the post-settlement sale of counterfeit good bearing Athena Cosmetic Marks by third parties.

If the foregoing were to be reduced to a physics formula or mathematical equation, it would be:  Unspecified inaccurate or incomplete disclosures by defendants A and B with respect to suppliers and customers identified in schedules to a settlement agreement with party C = damages in an unspecified and unascertainable amount suffered by C as a result of unspecified hypothetical post-settlement sales of counterfeit goods by third party seller D to customer E (with none of the second half of the equation even being alleged in the complaint).  This is reminiscent of the old South Park underpants gnomes satirical episode regarding capitalism, which produced the infamous meme: Collect Underpants + ? = Profit.  Again, however, at this point we are dealing with hypothetical theories because Plaintiff has yet to plead the necessary facts.

In sum, Plaintiff has failed to plead sufficient facts to state a claim that is plausible on its face.

**IV.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS CLAIMS FIVE AND SIX AS THEY ARE SUPPLEMENTAL STATE LAW CLAIMS**

If the court elects only to dismiss the four federal trademark claims on the merits, Mr. Newman again requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

**V.   THE FACT THAT DEFENDANT AMN ANSWERED PLAINTIFF'S COMPLAINT SHOULD HAVE NO BEARING ON THE COURT'S RULING ON THIS MOTION**

Plaintiff argues in the introduction to its opposition that the Court should deny the instant motion simply because another defendant, AMN, has previously answered the complaint:

> Defendant AMN answered the complaint (ECF 17), and defendant Newman is AMN's CEO. (Newman's Ex. 1, signature pages). The lawsuit, therefore, will continue even if Newman's motion is granted while Athena files its amended complaint. Granting the motion will not save the Court or counsel's time.

Plaintiff's Opp. (Dkt 67), 1:19-22.

Plaintiff's assertion is a non-sequitur. The issue on a motion to dismiss is whether Plaintiff has stated a claim for relief that is plausible on its face.  Whether AMN answered the complaint or whether granting the motion will save the Court or counsel time is not part of the criteria for ruling on a 12(b)(6) motion and Plaintiff has cited no authority in support of this preposterous proposition. Plus, AMN has in fact filed a motion for judgment on the pleadings based on nearly identical grounds.

**VI.   DEFENDANT SATISFIED THE MEET AND CONFER REQUIREMENT**

As explained in the accompanying declaration of Mr. Newman's counsel, David C. Voss, Jr., Mr. Newman complied with his meet and confer obligations under Local

Rule 7-3.  In fact, Mr. Voss had several communications with Plaintiff's counsel regarding the motion.  Voss Decl., ¶¶ 3-11.

## VII.   **CONCLUSION**

For the foregoing reasons, defendant Moishe Newman requests that this Court dismiss Plaintiff's complaint, in its entirety, with prejudice.  Should the Court only dismiss the four federal trademark claims on the merits, Mr. Newman also requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

DATED:  March 1, 2021          DAVID C. VOSS, JR.
                               VOSS, SILVERMAN & BRAYBROOKE, LLP


                               By: _____
                                   David C. Voss, Jr.
                                   Attorneys for Defendant MOISHE
                                   NEWMAN