1  DAVID C. VOSS, JR. (State Bar No. 147330)
2  david@vsbllp.com
   VOSS, SILVERMAN & BRAYBROOKE LLP
3  4640 Admiralty Way, Suite 800
   Marina Del Rey, California 90292-6602
4  T: (310) 306-0515/ F: (310) 306-5368
5
6  Attorneys for Defendants Moishe Newman
   and AMN Distribution, Inc.
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11

12  ATHENA COSMETICS, INC.,                )  Case No. 2:20-cv-05526-SVW-SHK
                                           )
13                      Plaintiff          )  **REPLY IN SUPPORT OF MOTION OF**
                                           )  **DEFENDANT AMN DISTRIBUTION**
14                                         )  **INC. FOR JUDGMENT ON THE**
          v.                               )  **PLEADINGS F.R.C.P. 12(c)**
15                                         )
                                           )
16  AMN DISTRIBUTION, INC., MOISHE         )  **HEARING**
    NEWMAN, an individual d/b/a BRUSH      )
17  EXPRESS, and DOES 1-10, INCLUSIVE,     )
                                           )  Date:  March 15, 2021
18                      Defendants         )  Time: 1:30 p.m.
                                           )  Place:  Courtroom 10A
19                                         )        First Street Courthouse
                                           )        350 W. 1st Street, 10th Floor,
20                                         )        Los Angeles, California 90012
                                           )
21                                         )
                                           )
22                                         )
                                           )
23                                         )
                                           )
24
25
26
27
28

      DEFT. AMN REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   PLAINTIFF'S TRADEMARK CLAIMS (CLAIMS 1 THROUGH 4) AND
STATE COMMON LAW UNFAIR COMPETITION CLAIM (CLAIM 5) ARE
BARRED BY THE SETTLEMENT AGREEMENT .............................. 2

     **A.**   Plaintiff's Complaint Has Not Alleged Violations of Trademark Law or Acts
of Unfair Competition That Took Place After the Parties Settlement
Agreement ..................................................................................... 2

     **B.**   The Multiple Release Provisions of the Parties' Settlement Agreement Bar
Plaintiff's Claims ........................................................................... 3

III.  JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMN ON
PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACT AS THERE IS
NO ISSUE OF MATERIAL FACT IN DISPUTE AND AMN IS ENTITLED TO
JUDGMENT AS A MATTER OF LAW ............................................... 6

     **A.**   Plaintiff's Incorporation by Reference of its Trademark Damages
Allegation Does Not Save its Fatally Flawed Contract Claim ...................... 6

     **B.**   The Schedules – the Judicial Notice of Which Plaintiff Does Not Oppose –
Demonstrate that AMN Fulfilled Any Disclosure Obligations .................... 9

IV.  THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS CLAIMS
FIVE AND SIX AS THEY ARE SUPPLEMENTAL STATE LAW CLAIMS ... 11

V.    DEFENDANT SATISFIED THE MEET AND CONFER REQUIREMENT ...... 12

VI.  CONCLUSION ................................................................................ 12

# TABLE OF AUTHORITIES

## Cases

*A.G. ex rel. Maddox v. v. Elsevier, Inc*., 732 F.3d 77 (1st Cir. 2013) .........................8, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................8, 9, 10

*Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502 (7th Cir. 2007).........................10

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ..............................10

## Statutes

28 U.S.C. 1367(c)(3) .................................................................2, 11, 12

## Other Authorities

CACI, 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of

California Civil Jury Instructions (2021 edition).....................................................6

## Rules

Federal Rule of Civil Procedure 12(b)(1)..............................................2, 11, 12

Federal Rule of Civil Procedure 9 .................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Much like its opposition to defendant Moishe Newman's motion to dismiss, the opposition of Plaintiff Athena Cosmetics, Inc ("Plaintiff" or "Athena") to defendant AMN Distribution, Inc.'s motion for judgment on the pleadings[1] is not based on the complaint as currently written, but upon a mischaracterization of the complaint that is inconsistent with the facts alleged therein.  Not only does Plaintiff now argue that its complaint alleges post-settlement acts of unfair competition by AMN and Mr. Newman (collectively, "Defendants") and violations of the Lanham Act and, but that the parties' Settlement Agreement is now null and void as a result of material breach or total failure of consideration.

With respect to the Lanham Act and unfair competition, the complaint fails to allege a single act of post-settlement misconduct, the absence of which is underscored by the fact that even Plaintiff's breach of the Settlement Agreement claim is limited to purportedly incomplete disclosures that were incorporated into the Settlement Agreement itself.  As to the validity and effectiveness of the Settlement Agreement, Plaintiff has not alleged that the Settlement Agreement is null and void in its complaint. Instead, Plaintiff has elected to stand on the contract and sue on the breach – a strategy that is not surprising given that Plaintiff does not allege that it failed to receive the benefit of its bargain in all other respects, including receipt of payment and all inventory, and a cessation of all alleged misconduct.  Consequently, the *multiple* releases and waivers set forth in the parties' Settlement Agreement continue to act as a bar to Plaintiff's claims.

Plaintiff's tactic of embellishing or creating new facts in its opposition brief to compensate for the deficiencies of its complain is ironic given its appeal to the Court to

---

[1] AMN respectfully suggests to the Court that it use Mr. Newman's 12(b)(6) motion to dismiss and his reply in support of the same as the starting point in its analysis as most of the arguments are identical.

rely upon the facts as alleged in the complaint.  The upshot is that notwithstanding Plaintiff's arguments to the contrary : (1) Plaintiff has failed to allege a post-settlement violation of its alleged trademark rights; (2) Plaintiff's trademark and unfair competition claims remain barred by the settlement agreement; (3) AMN did in fact supply the required schedules based upon matters of which this Court can take judicial notice, which notice Plaintiff *has not* opposed; and (4) Athena has failed to allege that it was harmed by the alleged breach of the settlement agreement and that AMN's conduct was a substantial factor in causing that harm.

Accordingly, AMN requests that this Court grant its motion for judgment on the pleadings and dismiss Plaintiff's complaint, in its entirety, with prejudice as there is no issue of material fact in dispute and AMN is entitled to judgment as a matter of law. If the court elects only to dismiss the first four federal trademark claims, AMN also requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

## II.   PLAINTIFF'S TRADEMARK CLAIMS (CLAIMS 1 THROUGH 4) AND STATE COMMON LAW UNFAIR COMPETITION CLAIM (CLAIM 5) ARE BARRED BY THE SETTLEMENT AGREEMENT

### A.   Plaintiff's Complaint Has Not Alleged Violations of Trademark Law or Acts of Unfair Competition That Took Place After the Parties Settlement Agreement

Plaintiff's suggestion that the multiple release and waiver provisions set forth in the parties' settlement agreement (the "Settlement Agreement") do not bar its trademark and unfair competition claims because it has alleged post-settlement misconduct is simply false and lacks a *single citation to its complaint*.  Plaintiff's Opp. (Dkt. 68), 6:6-10.[2]  Plaintiff has failed to include any such citations for the simple reason that they do

---

[2] The above citation format is to "page number: line number."

1   not exist.  As noted in the detailed summary of the complaint in AMN's motion, the only
2   specific dates alleged with respect to the purported trademark violations or unfair
3   competition are November 2019 and February 2020.  Complaint (Dkt. 1), ¶¶ 26-28.
4   There is no allegation that conduct alleged in the first five claims continued after the
5   parties entered into their settlement agreement in late April of 2020.

6          Should the Court have any doubt on this matter, it need look no further than
7   Plaintiff's sixth claim for breach of the Settlement Agreement.  As Plaintiff points out in
8   its opposition, the Defendants specifically agreed in the Settlement Agreement to be
9   enjoined from engaging in future violations of Plaintiff's trademark rights or acts of
10  unfair competition.  Plaintiff's Opp. (Dkt. 68), 3:11-20;  AMN RJN, Exh. 1 (Dkt. 66-1),
11  p. 7, ¶ 2(viii).  Yet, Athena does not allege that Defendants breached this provision by
12  selling counterfeit goods after the Settlement; it merely alleges that defendants breached
13  a single provision of the Settlement Agreement "by providing inaccurate and incomplete
14  contact information of its customers and suppliers." Complaint (Dkt. 1), ¶ 92.[3]

15         Consequently, whatever Plaintiff's claims may be, they are most certainly not for
16  trademark violation or acts of unfair competition *that occurred after the parties'*
17  *settlement*. Had Plaintiff been able to allege the occurrence of such acts after the
18  Settlement Agreement without running afoul or Rule 11, it would have included such
19  allegations in its complaint.  It did not.

20      **B.    The Multiple Release Provisions of the Parties' Settlement Agreement**
21             **Bar Plaintiff's Claims**

22         Plaintiff's argument with respect to the impact of the Settlement Agreement fails
23  to acknowledge the *multiple* releases and waivers set forth therein and the different
24  language used in each of them.  With respect to the specifically denominated "release"
25  provision in paragraph 5 of the Settlement Agreement, AMN does not dispute that it is

26

27  [3] Significantly, Plaintiff has also omitted any allegation from its breach of Settlement Agreement claim
    that defendants failed to make the settlement payment or failed to return inventory as required by the
28  agreement.  Complaint (Dkt. 1), ¶¶ 85-94.

predicated upon, among other things, the delivery of two schedules identified in the Agreement.  AMN RJN, Exh. 1 (Dkt. 66-1), pp. 8-9, ¶5.  However, based upon the authority cited by AMN in its motion and concurrently filed request for judicial notice,[4] this Court can and should take judicial notice of fact that AMN did in fact satisfy this requirement as evidenced by schedules attached to and incorporated into the Settlement Agreement itself.

Setting aside the specifically denominated "release" provision of paragraph 5, the Settlement Agreement contains additional broader release and waiver provisions that are *not* specifically conditioned upon the delivery of the foregoing schedules.  These broader provisions include the separate payment provision, in which Defendants agreed to pay the sum of $25,000 "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit." AMN RJN, Exh. 1 (Dkt. 66-1), p. 8, ¶ 4.  Unlike the release provision set forth in paragraph 5 of the Settlement Agreement, the sole predicate for this release is Defendants' $25,000 payment obligation, the occurrence of which is not disputed by Athena in its complaint or opposition.

Likewise, the Settlement Agreement contains an unconditional "Waiver of Claims" provision whereby the "Releasors" and "Releasees" agree that the settlement "shall act as a *release of any and all claims that may arise from conduct prior to the execution of this Agreement* whether such claims are known, unknown, foreseen, or unforeseen, liquidated or unliquidated, choate or inchoate, notwithstanding Section 1542 . . . ." AMN RJN, Exh. 1 (Dkt. 66-1), p. 9, ¶ 6 (emphasis added).  Plaintiff argues that this provision does not apply "because AMN provided them after the parties signed," but this is not alleged in the complaint and is expressly at odds with the mandate in the Settlement Agreement that the schedules shall be prepared and delivered into escrow

---

[4] *See* AMN Motion (Dkt. 65), 8:5-27; AMN RJN (Dkt. 66), 2:18-3:8.

"Prior to the execution of this Agreement."  AMN RJN, Exh. 1 (Dkt. 66-1), p. 12, ¶ 9(g).
In addition to the foregoing, the Settlement Agreement also includes a broad covenant
not to sue. AMN RJN, Exh. 1(Dkt 66-1), p. 6, ¶ 1(a)

As Plaintiff now apparently concedes, the only way it could get around these
broad provisions would be *to rescind* the Settlement Agreement based upon, for
example, a material breach or total failure of consideration.  Perhaps this is why Plaintiff
now argues in its opposition, but does not allege in its complaint, that the Settlement
Agreement is now "unenforceable and void of consideration" because of the alleged
breach.  Plaintiff's Opp. (Dkt. 68), 5:23-24.  This, however, is not the theory that
Plaintiff has alleged or opted to proceed with by its complaint.  *Plaintiff has instead
elected to affirm the existence of the contract and sue on the breach.*  Having made this
election, Plaintiff's belated argument that the Settlement Agreement is "unenforceable
and void" is beside the point: The Settlement Agreement and broad waiver and release
provision remain in full force and effect.

As an aside, even if Plaintiff were allowed to change its mind and amend its
complaint to proceed with a claim for rescission, it would face an uphill battle. A mere
conclusory allegation of materiality will not suffice; Plaintiff will need to plead facts to
establish materiality in the context of extensive supplier and customer schedules
attached to the agreement, which contained detailed disclosures regarding *thousands* of
transactions.  *See discussion infra* at pp. 9-10.  Any allegation of such a "material"
breach would also be belied by the Defendant's performance of the primary obligations
under the Settlement Agreement, which were (1) the  cessation of the purchase, offering
for sale, use, etc., of "any goods or products with the Athena Cosmetics Marks,
including any simulation, reproduction, counterfeit, copy or colorable imitation of the
Athena Cosmetics Marks" [RJN, Exh. 1, p. 7, ¶ 2(a)(vii)]; (2) the shipment to Plaintiff,
within 30 days of the Effective Date, of their "entire remaining inventory of any goods
or products with the Athena Cosmetics Marks" [RJN, Exh. 1, p. 7, ¶ 2(a)(viii)]; (3) their
agreement not to challenge the validity or enforceability of the Athena Cosmetics Marks

[RJN, Exh. 1, p. 8, ¶ 3]; and (4) the payment of $25,000 to Athena within 3 business days of the Effective Date [RJN, Exh. 1, p. 8, ¶ 4]. Plaintiff has not alleged Defendants breached any of these obligations, leaving it nothing to allege but the breach of a minor provision relating to customer and supplier schedules set forth in the "Miscellaneous" section of the Settlement Agreement. AMN RJN, Exh. 1 (Dkt. 66-1) p. 12, ¶ 9(g).

## III.  JUDGMENT SHOULD BE GRANTED IN FAVOR OF AMN ON PLAINTIFF'S SIXTH CLAIM FOR BREACH OF CONTRACT AS THERE IS NO ISSUE OF MATERIAL FACT IN DISPUTE AND AMN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A.  Plaintiff's Incorporation by Reference of its Trademark Damages Allegation Does Not Save its Fatally Flawed Contract Claim

Plaintiff does not dispute that its contract claim is deficient absent an allegation that (1) that it "was harmed" by the breach; and (2) that AMN's "breach of contract was a substantial factor in causing [Plaintiff's] harm." CACI, 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of California Civil Jury Instructions (2021 edition). Plaintiff also does not dispute that it failed to include these allegations in its contract claim. Rather, it argues that its omission of these two essential elements is somehow miraculously cured by the incorporation of a prior cursory damages allegation from its first claim for relief under the Lanham, which merely provides that: "Defendants' acts cause Athena to suffer irreparable harm and damages in an amount not determined." Complaint (Dkt. 1), ¶ 44; Plaintiff's Opp. (Dkt 68), 6:17-19.

Such incorporation by reference is insufficient. Plaintiff's prior allegation that it suffered damages as a result of *Defendants purported violation of Plaintiffs rights under the Lanham Act* is not even close to the same as alleging that AMN's purported inadequate and incomplete disclosures under the Settlement Agreement caused Plaintiff harm and that the alleged breach of the Settlement Agreement by AMN was "a substantial factor in causing" that harm. Indeed, the damages allegation that Plaintiff is now attempting to bootstrap onto its breach of contract claims goes on to state that:

Defendants' wrongful advertisement, promotion, distribution, sale and offers of sale of its goods bearing infringements or counterfeits of the Athena Trademarks directly and proximately caused the injuries and damages Athena sustained.

Complaint (Dkt. 1), ¶ 44.

Again, the foregoing is a far cry from alleging that the acts that constituted the purported breach of contract, *i.e.*, inadequate disclosures of buyers and suppliers in the settlement, caused Plaintiff harm and that the breach was a substantial factor in causing that harm. Given the absence of such allegations, Plaintiff has no breach of contract claim.

*This is no small matter for it is highly unlikely that Plaintiff could ever plead or prove damages as a matter of law.* Plaintiff's theory, although not alleged in its complaint, appears to be that Defendants are somehow responsible for damages *caused by third parties* who are purportedly violating Athena's trademarks by selling counterfeit goods. This is suggested by the argument in Plaintiff's opposition that "it is imperative Athena track down the sources of counterfeit goods bearing Athena's marks," the sale of which Athena apparently now seeks to shift the blame to Defendants. Athena's Opp. (Dkt. 68), 5:20-21.

If this is Plaintiff's damages claim – and again *Plaintiff has yet to plead the essential elements and actual facts* – it is a novel and speculative theory. Plaintiff would have to plead and prove that Defendants' purported failure to provide "full and complete" disclosures of customers and sellers was a "***substantial factor***" in causing damages purportedly sustained by Plaintiff as a result of the post-settlement sales of counterfeit goods ***by third parties***. Even Plaintiff itself tacitly admits the speculative nature of its claim and issues relating to causation when it argues in its opposition that:

Athena had been willing to enter into the settlement agreement because the information that defendants should have provided in the schedules ***could*** lead Athena to major suppliers and other distributers.

Plaintiff's Opp. (Dkt 68), 5:21-23 (emphasis added).

Plaintiff has not included the foregoing statement as an allegation in its complaint, but even if included in the complaint, it most certainly would not satisfy the "substantial factor" requirement.  The missing links in Plaintiff's theory and complaint include: (a) whether any alleged omissions by AMN did in fact bar or prevent Athena from discovering the names of other major suppliers and distributors or *would* have led to their discovery; (b) whether AMN was aware of these other major suppliers and distributors and even had a contractual duty to disclose them; and (c) the existence of real damages sustained as a result of actual (as opposed to hypothetical) post-settlement sales by third parties whose names and contact information AMN had a contractual duty to disclose. Even if Plaintiff were to include the foregoing allegations in its complaint, it would still hit the proverbial brick wall in pleading and proving that AMN – as a matter of law – could even be held responsible for any damages sustained by Plaintiff as a result of counterfeit sales by third parties vis-à-vis a contract claim for breach of a purported disclosure provision in a settlement agreement.

   This in turn, ties into the Twombly/Iqbal pleading standard, which provides that: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).  "[O]nly a complaint that states a *plausible claim* for relief survives a motion to dismiss." *Id.* at 679.  Importantly, this plausibility requirement applies to the entire claim, including the element of *causation. See A.G. ex rel. Maddox v. v. Elsevier, Inc*., 732 F.3d 77, 82 (1st Cir. 2013) ("The superficiality of the causation allegation, coupled with the speculative nature of the claim as a whole, makes manifest that the plaintiffs have failed to plead a plausible cause of action.")  Unless and until Plaintiff can plead a cognizable damages theory, Plaintiff has failed to state a claim.  *As things now stand, Plaintiff has failed to plead any of the required elements of damages with respect to its contract claim.*

   The irony, of course, is that *if* Plaintiff is indeed aware of post-settlement sales of counterfeit goods by third parties that resulted in harm to Plaintiff and the names of

which AMN had a contractual duty and yet failed to disclose (which would be a prerequisite for potential damages against AMN under Plaintiff's own convoluted theory), *Plaintiff must have already ascertained the identities of these sellers prior to the filing of its complaint*.  Otherwise, Plaintiff would have filed its complaint without knowing of the existence of any such sales in violation of Rule 11 and would be embarking upon a mere fishing expedition to garner information through the discovery process.  As *Iqbal* cautions, although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [] it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Iqbal*, 556 U.S. at 678–79.  Yet, this is precisely the path upon which Plaintiff is proceeding, as it admits in its opposition that "it needs discovery to determine the full extent and severity of defendants' failure to perform its obligations under the agreement." Plaintiff's Opp. (Dkt 68), 5:26-27.

**B.  The Schedules – the Judicial Notice of Which Plaintiff Does Not Oppose – Demonstrate that AMN Fulfilled Any Disclosure Obligations**

The Settlement Agreement required AMN to prepare two schedules: (1) Schedule 1, which is to list "the full and complete contact information and the amount of product purchased from each seller" from whom AMN purchased goods bearing Athena Cosmetic Marks; and (2) Schedule 2, which is to list "the full and complete contact information for each customer and the aggregate amount of product sold will be set forth on Schedule 2 to this Agreement."  AMN RJN, Exh. 1 (Dkt. 66-1), p. 7, ¶ 2(a)(iii), (v).

As demonstrated by the schedules attached to the executed Settlement Agreement, which are expressly deemed to be a part of that agreement, AMN complied with the foregoing obligations notwithstanding Plaintiff's allegation to the contrary.  Those schedules, which total over 47 pages, *identified more than 3800 transactions*.  AMN RJN, Exh. 1, Schedule 1 (Dkt. 66-2), Schedule 2 (Dkt. 66-3).  Schedule 1, which is one page long,  contains for each seller a description of the product, amount of product purchased, and seller contact information required by the Settlement Agreement.  AMN

RJN, Exh. 1, Schedule 1 (Dkt. 66-2).  As previously explained AMN in its original moving papers, Schedule 2 is forty-six pages long and *goes beyond* the information required by the Settlement Agreement by including for each customer: (a) "Order ID" numbers; (b) customer first and last name; (c) total purchase amount for each customer; (d) "status" and "payment status;" (e) order date and time; (f) customer shipping address; (g) customer shipment phone number; (h) UPC code number; (i) quantity purchased; (j) product name; and (k) tracking number. AMN RJN, Exh. 1, Schedule 2 (Dkt. 66-3).

Based upon the foregoing documents, of which the Court can and should take judicial notice, it is clear that AMN (and Mr. Newman, to the extent he even had such an obligation) fulfilled their contractual duties.  Against this, you only have the *conclusory* allegation of Plaintiff that Defendants purportedly breached the contract by providing "inaccurate and incomplete contact information" of AMN's customers and suppliers. Complaint (Dkt. 1), ¶ 92.  This Court must disregard such conclusory allegations in the Twombly/Iqbal era. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." *Corinthian Colleges*, 655 F.3d at 984.  As noted above in the context of damages, this concept applies to the entire claim, including the important element of causation.  *Elsevier, Inc.*, 732 F.3d 77 at 82.

Here, Plaintiff has pled in the most conclusory terms that Defendants breached a contractual duty to supply "full and complete contact information" by instead "supplying inaccurate and incomplete contact information." Complaint (Dkt. 1), ¶ 92.  Not only is the foregoing allegation threadbare and conclusory, but it is also tautological!  In addition, by pleading that the information is inaccurate, Plaintiff is averring fraud, which triggers the even more rigorous particularity pleading requirements of Rule 9.  *See Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (applying

Rule 9 to claims for interference with economic advantage, interference with fiduciary relationship and civil conspiracy because Rule 9(b) applies to 'averments of fraud,' not claims of fraud"). Then, to top it all off, Plaintiff has failed to plead facts to show how these purported omissions *were a substantial factor in causing it harm*, when according to Plaintiff's opposition (but not the allegations in its complaint), its primary cause of harm is the post-settlement sale of counterfeit good bearing Athena Cosmetic Marks by third parties.

If the foregoing were to be reduced to a physics formula or mathematical equation, it would be: Unspecified inaccurate or incomplete disclosures by Defendants A and B with respect to suppliers and customers identified in schedules to a settlement agreement with party C = damages in an unspecified and unascertainable amount suffered by C as a result of unspecified hypothetical post-settlement sales of counterfeit goods by third party seller D to customer E (with none of the second half of the equation even being alleged in the complaint). This is reminiscent of the old South Park underpants gnomes satirical episode regarding capitalism, which produced the infamous meme: Collect Underpants + ? = Profit. Again, however, at this point we are dealing with hypothetical theories because Plaintiff has not pled the necessary facts. Consequently, there is no issue of material fact in dispute, and AMN is entitled to judgment on the contract claim as a matter of law.

## IV.   THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS CLAIMS FIVE AND SIX AS THEY ARE SUPPLEMENTAL STATE LAW CLAIMS

If the court elects only to dismiss the four federal trademark claims on the merits, Mr. Newman again requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

**V.     DEFENDANT SATISFIED THE MEET AND CONFER REQUIREMENT**

As explained in the accompanying declaration of AMN counsel, David C. Voss, Jr., AMN complied with its meet and confer obligations under Local Rule 7-3.  In fact, Mr. Voss had several communications with Plaintiff's counsel regarding the motion.  Voss Decl., ¶¶ 3-11.

**VI.    CONCLUSION**

For the foregoing reasons, defendant AMN requests that this Court grant its motion for judgment on the pleadings and dismiss Plaintiff's complaint, in its entirety, with prejudice.  Should the Court only dismiss the four federal trademark claims on the merits, AMN also requests that the Court exercise its discretion to dismiss Plaintiff's supplemental state law claims (claims five and six) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. 1367(c)(3).

DATED:  March 1, 2021          DAVID C. VOSS, JR.
                               VOSS, SILVERMAN & BRAYBROOKE, LLP


                               By: _____
                                   David C. Voss, Jr.
                                   Attorneys for Defendant AMN
                                   Distribution, Inc.