DAVID C. VOSS, JR. (State Bar No. 147330)
david@vsbllp.com
VOSS, SILVERMAN & BRAYBROOKE LLP
4640 Admiralty Way, Suite 800
Marina Del Rey, California 90292-6602
T: (310) 306-0515/ F: (310) 306-5368

Attorneys for Defendants Moishe Newman
and AMN Distribution, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ATHENA COSMETICS, INC., <br><br> Plaintiff <br><br> v. <br><br> AMN DISTRIBUTION, INC., MOISHE NEWMAN, an individual d/b/a BRUSH EXPRESS, and DOES 1-10, INCLUSIVE, <br><br> Defendants | Case No. 2:20-cv-05526-SVW-SHK <br><br> **NOTICE OF MOTION AND MOTION OF DEFENDANTS AMN DISTRIBUTION, INC. AND MOISHE NEWMAN FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **HEARING** <br><br> Date: August 9, 2021 <br> Time: 1:30 p.m. <br> Place: Courtroom 10A <br> First Street Courthouse <br> 350 W. 1st Street, 10th Floor, <br> Los Angeles, California 90012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 9, 2021 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, 10th Floor, Los Angeles, California 90012, the Honorable Steven V. Wilson presiding, defendants AMN Distribution, Inc. and Moishe Newman ("Defendants") will and hereby do move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that there is no genuine dispute as to any material fact and movants are entitled to judgment as a matter of law for the following reasons:

(1)   Plaintiff lacks sufficient evidence to carry its burden at trial that Defendants breached the settlement agreement that is the purported basis for plaintiff's sixth claim for relief for breach of contract under California law, which is an essential element of a breach of contract claim under California law;

(2)   Plaintiff lacks sufficient evidence to carry its burden at trial to establish damages and causation with respect the plaintiff's sixth claim for relief for breach of contract, both of which are essential elements for a such a claim under California law; and

(3)   As recognized in this Court's April 1, 2021, minute order (Dkt. 74) bifurcating this matter for trial, because Plaintiff can only proceed with its five non-contract claims "if Plaintiff prevails on the breach of contract claim," judgment must also be granted in favor of Defendants on those claims.

This motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the concurrently filed statement of uncontroverted facts and conclusions of law and declarations of Moishe Newman and David C. Voss, Jr, the complete files and records of this action, and upon such other evidence as may be presented at the time of hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 7, 2021.

DATED:  July 2, 2021                    DAVID C. VOSS, JR.
                                        VOSS, SILVERMAN & BRAYBROOKE, LLP


By: _____
    David C. Voss, Jr.
    Attorney for Defendants
    AMN DISTRIBUTION, INC. and
    MOISHE NEWMAN

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................... 1

II. STATEMENT OF FACTS ............................................ 3

    A.  Defendants and Plaintiff Enter into a Settlement Agreement Releasing Any Claims that Plaintiff May Have Had Against Defendants for  Trademark Infringement or Unfair Competition ............................ 3

    B.  Plaintiff Files the Instant Action for Trademark Infringement and Unfair Competition, Concocting a Breach of the Settlement Agreement in Order to Avoid its Prior Release of Those Claims ............................ 6

    C.  Plaintiff Fails to Identify or Produce Any Evidence of the Alleged Breaches of the Settlement Agreement or Any Resulting Damages in its Three Iterations of Initial Disclosures .................................. 8

    D.  Plaintiff Fails to Identify Any Evidence of the Alleged Breaches of the Settlement Agreement or Any Resulting Damages in Response to Written Discovery ................................................................. 9

III. APPLICABLE STANDARD ........................................ 11

IV. JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFF ON ITS BREACH OF  CONTRACT CLAIM AS PLAINTIFF LACKS SUFFICIENT EVIDENCE TO CARRY IT BURDEN AT TRIAL WITH RESPECT TO THREE ESSENTIAL ELEMENTS OF THAT CLAIM .................................... 13

    A.  The Existence of a Breach, Damages, and Causation are Essential Elements of Breach of Contract Claim Under California Law ................... 13

    B.  Plaintiff Lacks Sufficient Evidence to Carry its Burden at Trial to Establish that Defendants Breached the Settlement Agreement .................. 13

        1.  Plaintiff has failed to identify evidence in support of its allegation that AMN breached the Settlement Agreement "by providing

inaccurate and incomplete contact information of its customers and suppliers." ..........................................................................13

    **2.** Plaintiff has failed to identify evidence in support of its allegation that Defendants breached the Settlement Agreement by "continuing to sell Athena counterfeit goods" after the Parties Executed the Settlement Agreement ........................................................16

**C.** Plaintiff has Failed to Disclose Its Damages Calculations in Violation of Rule 26(a)(1)(A)(iii) and Support it Damages Claim, Including Causation, With Evidence in Response to Written Discovery. .....................................18

**V.** THE RELEASES SET FORTH IN THE PARTIES' SETTLEMENT AGREEMENT BARS PLAINTIFF'S REMAINING CLAIMS ..........................22

**VI.** ANY ASSERTION BY PLAINTIFF THAT IS REQUIRES TIME FOR ADDITIONAL DISCOVERY IS BELIED BY THE FACT THAT NONE OF ITS BREACH OF CONTRACT ALLEGATIONS ARE BASED UPON INFORMATION AND BELIEF ..........................................................22

**VII.** CONCLUSION ..................................................................24

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................11, 12, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................12

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ..........................................12

*Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal. App. 4th 863 (2007).....................21

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000) ..............................................................................................12

*Richman v. Hartley,* 224 Cal. App. 4th 1182 (2014).........................................13

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.,* 251 F. Supp. 3d 1288 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th Cir. 2019)................................................................21

*Silong v. United States,* No. CV F 06-0474 LJO DLB, 2007 WL 2580543 (E.D. Cal. Sept. 5, 2007) ...........................................................................................21

*US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887 (2005) ....................13, 20

*Use Techno Corp. v. Kenko USA, Inc.*, No. C-06-02754 EDL, 2007 WL 4169487(N.D. Cal. Nov. 20, 2007).................................................................................21

## Other Authorities

CACI No. 303 ("Breach of Contract – Essential Factual Elements").......................13, 21

## Rules

Fed R. Civ. Proc., Rule 56(a) ...........................................................................11

Fed. R. Civ. Proc., Rule 11(b)(3) .....................................................................23

Fed. R. Civ. Proc., Rule 26(a)(1)(A)(iii) ............................................................19

Fed. R. Civ. Proc., Rule 56(c)(1)(B) .................................................................11

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Over a year into this case, plaintiff Athena Cosmetics, Inc. ("Athena" or "Plaintiff") has failed to produce any evidence in support of its breach of contract claim in three iterations of its Rule 26(a) disclosures.  Its initial disclosures also failed to include the statutorily mandated damages calculations along with the mandated supporting documents.  Plaintiff's initial written discovery responses and supplemental responses have been equally uninformative, failing to identify witnesses, documents, and facts to support essential elements of its contract claim.

Plaintiff's failure to come forward with admissible evidence has ramifications not only with respect Plaintiff's contract claim, but for its remaining claims for trademark infringement under the Lanham Act and common law unfair competition under California law.  As discussed in the motion to dismiss filed by defendant Moishe Newman ("Mr. Newman") and  motion for judgment on the pleadings filed by defendant AMN Distribution, Inc. ("AMN," and collectively with Mr. Newman, the "Defendants"),  Plaintiff's breach of contract claim is predicated upon a settlement agreement that Plaintiff failed to attach its complaint.  Defendants requested that this Court take judicial notice of the same and argued that the settlement *barred all Plaintiff's claims*.  The Court denied AMN's motion, and granted and denied Mr. Newman motion in part[1], stressing that it was bound, was bound, *at the pleading stage,* to "accept as true all factual allegations in complaint and construe facts in light most favorable to non-moving party."

The rubber has hit the road, so to speak, and it has become abundantly clear that plaintiff Athena has no evidence to support its claims.  This lack of evidence exists on three levels.

---

[1] The Court held Mr. Newman had no duty to provide certain information to Plaintiff, and therefore could not have breached the only provision of the settlement agreement upon which Plaintiff had then based its claim.

*First*, Plaintiff has failed to come forward with evidence in their initial disclosures and initial and supplemental written discovery responses to support their allegation that AMN breached the settlement agreement by "providing inaccurate and incomplete contact information of its customers and suppliers." After three Rule 26(a) disclosures and responses and amended responses to contention interrogatories, Plaintiff has failed to identify a single inaccurate or incomplete disclosure, let alone support the allegation with admissible evidence.

*Second*, Plaintiff subsequently amended its contract claim to allege that Defendants "breached the settlement agreement by continuing to sell Athena counterfeit goods." As is the case with alleged breach of the disclosure provision in the settlement agreement, Plaintiff has failed to support this allegation with admissible evidence in response to contention interrogatories targeting the allegation.

*Third*, as foretold by the paucity of damages allegations in Plaintiff's original and amended contract claim, Plaintiff has failed to come forward with evidence of damages, including that it "was harmed" by the alleged breach of the settlement agreement and that the alleged breach "was a substantial factor in causing" Plaintiff's harm. Not only has Plaintiff failed to produce evidence of damages in response to written discovery, but Plaintiff has also failed to provide a computation of damages and supporting documentation after three rounds of Rule 26(a) disclosures – including disclosures made by Plaintiff after it amended its complaint.

Because Plaintiff bears the burden of proof on its contract claim and lacks any evidence of the same, judgment must be entered against Athena on its contract claim *and all* its remaining claims. This Court recognized the exculpatory impact of the settlement agreement when it ordered Plaintiff's contract claim to be bifurcated and tried first, holding that Plaintiff could proceed with its infringement and unfair competition claims only "if Plaintiff prevails on the breach of contract claim." Given Plaintiff's inability to support its contract claim with admissible evidence, judgment must therefore be granted in favor of Defendants on Plaintiff's entire complaint.

## II.   **STATEMENT OF FACTS**

### A.   **Defendants and Plaintiff Enter into a Settlement Agreement Releasing Any Claims that Plaintiff May Have Had Against Defendants for Trademark Infringement or Unfair Competition**

Defendants AMN and Newman entered into a settlement agreement (the "Settlement Agreement") with plaintiff Athena to resolve various claims relating to sale of Athena's cosmetic products.  First Amended Complaint, ("FAC"), Dkt. 73, ¶ 87; Declaration of Moishe Newman ("Newman Decl."), ¶¶ 3, 4 and Exh. 1 thereto.  The parties executed the Settlement Agreement on April 29 and 30, 2020.  FAC, Dkt. 73, ¶ 87; Newman Decl., Exh. 1, pp. 8-9.  By its express terms, the Settlement Agreement became effective as of the "last date signed below," i.e.,  April 30, 2020 (the "Effective Date").  Newman Decl.,  Exh. 1, p. 1 (first full paragraph) and pp. 8-9 (signature blocks).

Defendants' obligations under the Settlement Agreement included:  (1) the cessation of the purchase, offering for sale, use, etc., of "any goods or products with the Athena Cosmetics Marks, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks" [Newman Decl.,  Exh. 1, p. 3, ¶ 2(a)(vii)] (the "Cessation of Sale Provision"); (2) the shipment to Athena, within 30 days of the Effective Date, of their "entire remaining inventory of any goods or products with the Athena Cosmetics Marks" [Newman Decl., Exh. 1, p. 3, ¶ 2(a)(viii)] (the "Return of Inventory Provision"); (3) their agreement not to challenge the validity or enforceability of the Athena Cosmetics Marks [Newman Decl., Exh. 1, p. 3, ¶ 3] (the "Validity of Mark Provision"); and (4) the payment of $25,000 to Athena within 3 business days of the Effective Date "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit" (the "Payment Provision").  [Newman Decl., Exh. 1, p. 4, ¶ 4].

Defendant AMN, but not Newman, was also obligated under the Settlement Agreement to provide: (a) "the full and complete contact information and the amount of

product purchased from each seller" as Schedule 1 to the Settlement Agreement ("Schedule 1"); and (b) "the full and complete contact information for each customer and the aggregate amount of product sold" as Schedule 2 to the Settlement Agreement ("Schedule 2") . Newman Decl., Exh. 1, p. 3, ¶ 2(a)(iii), (v). The disclosures in the foregoing schedules were limited to sales and purchases from January 1 to December 31, 2019. Newman Decl., Exh. 1, p. 3, ¶ 2(a)(iii), (v).

Schedules 1 and 2 were appended to and became "part of" the Settlement Agreement. Newman Decl., Exh. 1, p. 8, ¶ 9(g) and Exhs. 1A and 1B. Schedule 1 is one page long and contains for each seller a product description, amount purchased, and seller contact information. Newman Decl., Exh. 1A. Schedule 2 is forty-six pages long and contains the contact information for each customer and amount sold to them as required by the Settlement Agreement. Newman Decl., Exh. 1B, pp. 1-46. The latter schedule includes: (a) "Order ID" numbers; (b) customer first and last names; (c) total purchase amount for each customer; (d) "status" and "payment status;" (e) order date and time; (f) customer shipping address; (g) customer shipment phone number; (h) UPC code number; (i) quantity purchased; (j) product name; and (k) tracking number. Newman Decl., Exh. 1B, pp. 1-46.[2] As such, the information provided in schedule 2 goes well beyond the contact information and "aggregate amount of product sold" called for in the Settlement Agreement. The combined schedules total 47 pages and identified over 3,800 transactions. Newman Decl., Exhs., 1A and 1B.

The Settlement Agreement also includes several release provisions in favor of Defendants. These provisions include:

---

[2] Defense counsel have redacted both schedules to remove the home addresses (except for city and state) of the customers and what appears to be the home address for one of the vendors to comply with Local Rule 5.2-1. The last names and phone number of the customers have also been redacted out of an abundance of caution to protect their privacy. Defendants will make this information available for in camera review or seek leave to file the unredacted versions under seal if it becomes an issue or is deemed necessary by the Court.

- A covenant not to sue, in which Plaintiff agrees that "[i]n consideration for the mutual promises, terms and conditions set forth in this Agreement, Athena Cosmetics agrees not to file or pursue *any action*"— including a nearly identical previously threatened lawsuit referenced in the Settlement Agreement – "against Defendants related to their purchase and sale of products bearing Athena Cosmetics Marks *occurring on or before* the Effective Date of this Agreement."  Newman Decl.,  Exh. 1, p. 2, ¶ 1(a), (emphasis added).

- A specific "Release" provision, which provides that "[c]onditional on" Defendants making the required settlement payment, furnishing Schedules 1 and 2, and delivering their entire remaining inventory of goods and products bearing Plaintiff's marks, plaintiff Athena "does hereby irrevocably release and discharge each of the Defendants . . . from *any and all* claims, damages, charges, causes of action or liabilities that the Releasors have or may have against any of the Releasees [defined to include the Defendants], whether known or unknown, *of any nature whatsoever, from the beginning of time to the execution date of this Agreement which arose in any way from, the sale of any Athena products (counterfeit or otherwise),* including, but not limited to, any and all claims, losses, demands, causes of action, suits, whether known or unknown, whether at law or in equity, that may have accrued from the beginning of time or may exist as of the Effective Date of this Agreement that are or that could have been asserted in the Lawsuit or any other civil or criminal action, or that arise out of or in connection with Defendants' purchases and sales of Athena product (whether counterfeit or not)." Newman Decl., Exh. 1, pp. 4-5, ¶ 5(emphasis added).

- A "Waiver of Claims" provision, larger in scope than the Release provision, that includes a California Civil Code section 1542 recital and provides that,

"The Releasors and Releasees agree that this Agreement shall act as a *release of any and all claims that may arise from conduct prior to the execution of this Agreement* whether such claims are known, unknown, foreseen, or unforeseen, liquidated or unliquidated, choate or inchoate, notwithstanding Section 1542 . . . ." Newman Decl., Exh. 1, p. 5, ¶ 6 (emphasis added).

As noted above, the separate Payment Provision of the Settlement Agreement also contains release language of its own providing that Defendants' payment of $25,000 will be "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit." Newman Decl., Exh. 1, p. 4, ¶ 4.

**B.**   **Plaintiff Files the Instant Action for Trademark Infringement and Unfair Competition, Concocting a Breach of the Settlement Agreement in Order to Avoid its Prior Release of Those Claims**

Notwithstanding the clear release provisions of the Settlement Agreement, Plaintiff commenced the instant action by filing a complaint against defendants AMN and Newman on June 22, 2020. (Dkt. 1), which it subsequently amended with a first amended complaint ("FAC") filed on March 22, 2021 (Dkt. 73).   Both the original complaint and FAC are comprised of six claims, the first four of which allege trademark infringement and false designation under the Lanham Act.  Complaint (Dkt. 1), ¶¶ 1 – 74; FAC (Dkt. 73), ¶¶ 1 – 74.  The fifth claim is a pendent state law claim for unfair competition.  Complaint (Dkt. 1), ¶¶ 75-84; FAC (Dkt. 73), ¶¶ 75-84.  All the foregoing claims are predicated upon the Defendants' purported use of Plaintiff's trademark in connection with the alleged sale of Athena cosmetic goods online.  The only specific dates alleged with respect to the purported misconduct are November 2019 and January 20, 2020.  Complaint (Dkt. 1), p. 6, ¶ 26; FAC (Dkt. 73), p. 6, ¶ 26.

Both the original complaint and FAC include a sixth claim of relief for breach of contract under California law. Complaint (Dkt. 1), ¶¶ 85-94; FAC (Dkt. 73), ¶¶ 85-94. Plaintiff has admitted in both pleadings that it entered into the Settlement Agreement Defendants, alleging that the parties executed the Settlement Agreement on "on April 29 and 30, 2020," after Athena had demanded in writing in February and March 2020 that Defendants "cease selling counterfeit Athena products." Complaint (Dkt. 1), ¶ 88; FAC (Dkt. 73), ¶ 87. Apparently attempting to avoid the impact of the releases, Plaintiff neglected to attach a copy of the Settlement Agreement to the original and first amended complaint. Complaint (Dkt. 1); FAC (Dkt. 73).

Plaintiff's original complaint alleged only *a single breach* of the Settlement Agreement by Defendants. Specifically, Plaintiff alleged that: "Defendants breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers." Complaint (Dkt. 1), ¶ 92. In the wake of this Court's ruling on defendant Newman's motion to dismiss that Newman did not have a duty to disclose such information under the Settlement Agreement (Dkt. 72, p. 3), Plaintiff then amended its complaint to allege for the first time that "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods." FAC (Dkt. 73), ¶ 92. Plaintiff also retained its allegation regarding the adequacy of disclosures, but this time limiting it solely to defendant AMN: "AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers." FAC (Dkt. 73), ¶ 91.

Aside from the alleged breaches noted above, Plaintiff has never alleged a breach of any other provision of the Settlement Agreement. Complaint (Dkt. 1), ¶¶ 85-94; FAC (Dkt. 73), ¶¶ 85-94. Thus, the FAC, which is the operative complaint in this case, *does not allege* that Defendants otherwise breached the Settlement Agreement by failing to make the settlement payment or failing to return inventory. FAC (Dkt. 73), ¶¶ 85-94. Plaintiff also does not allege that AMN failed to provided Schedule 1 and 2 or that the schedules were not appended to the Settlement Agreement. FAC (Dkt. 73), ¶¶ 85-94.

Rather, Plaintiff's FAC challenges the accuracy and completeness of Schedules on unspecified grounds.  FAC (Dkt. 73), ¶ 91.

Significantly, *none* of Plaintiff's breach of contract allegations are based upon information and belief.  FAC, (Dkt. 73), ¶¶ 86-94.  This was also the case with respect to Plaintiff's original complaint.  Complaint, (Dkt. 1), ¶¶ 86-94.

## C.   Plaintiff Fails to Identify or Produce Any Evidence of the Alleged Breaches of the Settlement Agreement or Any Resulting Damages in its Three Iterations of Initial Disclosures

Plaintiff has provided no less than three versions of its disclosures under Rule 26(a).  The first version is dated October 1, 2020.  Declaration of David C. Voss, Jr. ("Voss Decl."), ¶ 4, Exh. 1.  The second is also dated October 1, 2020, and is identical in all respects, except that it was served on April 15 – after Plaintiff had filed its First Amended Complaint and Defendants had filed their answer thereto.  Voss Decl., ¶ 5, Exh. 2.  Plaintiff's third Rule 26(a) disclosure is dated May 11, 2021 and entitled "Supplemented Initial Disclosures from Plaintiff Athena Cosmetics, Inc." dated May 11, 2021. Voss Decl., ¶ 6, Exh. 3.

None of the foregoing disclosures specifically identified any facts or documents evidencing any the breaches of the Settlement Agreement alleged by Plaintiff.  Voss Decl., Exhs 1-3.  Likewise, all three versions of Plaintiff's Rule 26(a) disclosures failed to provide any evidence of or information regarding damages resulting from the alleged breach of contract.  Instead, and despite the clear dictates of Rule 26(a)(1)(A)(iii), all three versions simply stated:

"The amount is unknown at this time since discovery is ongoing, but Athena is entitled to actual and statutory damages, costs, and its reasonable attorney fees. 17 U.S.C. § 505."

Voss Decl., Exh 1, p. 4, Exh. 2, p. 4, Exh 3, p. 6.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff also failed to provide documents or other evidentiary material on which its breach of contract damages calculation is based as part of its Initial Disclosures on damages.  Voss Decl., ¶ 8.

**D.    Plaintiff Fails to Identify Any Evidence of the Alleged Breaches of the Settlement Agreement or Any Resulting Damages in Response to Written Discovery**

AMN served a set of interrogatories and requests for admission focused on Plaintiff's contract claim on May 7, 2021.  Voss Declaration, ¶ 9, Exhs. 4-5.   Plaintiff served their responses to the same on June 7, 2021.  Voss Declaration, ¶¶ 10-11, Exhs. 6-7.  Plaintiff's interrogatory and request for admission responses were not verified.  Voss Declaration, ¶¶ 9-10, Exhs. 6-7.  Unfortunately for Plaintiff, its written discovery responses, like its Rule 26 disclosures, ***failed to disclose anything of substance or specifically identify a single document or fact to support the alleged breach of contract or any resulting damages caused by Defendants' purported breach***.

The interrogatories consisted of 24 interrogatories, focused on: (a) the identification of facts, documents, and witnesses upon which Athena based its allegations that AMN breached the Settlement Agreement "by providing inaccurate and incomplete contact information of its customers and suppliers," including the identity of any persons or entities that were inaccurate, incomplete or omitted from Schedules 1 and 2,  (Voss Decl., Exh. 4,  pp. 3-4, Interrogatory Nos. 1-7); (b) the identification of facts, witness and documents upon which Athena based its allegation that Defendants breached the Settlement Agreement by continuing to sell Athena counterfeit goods, including an interrogatory requesting that Athena identify each such sale of counterfeits goods (Voss Decl., Exh. 4, pp. 4-5, Interrogatories 8-12); (c) information relating to damages sought by Athena's breach of settlement claim, including an explanation of damages, documents supporting the claim for damages, and an explanation of steps taken to mitigate damages (Voss Decl., Exh. 4, p. 5, Interrogatories 13-15); and (d) the factual basis Athena's denials of the RFA's served concurrently with the Interrogatories

(Voss Decl., Exh. 4, pp. 5-6, Interrogatories 16-24).  The corresponding ten RFA's were focused on Plaintiff's breach of contract claim, including the breach and/or performance of Defendants' obligations thereunder.  Voss Decl., Exh 5, pp. 2-3, RFA's 1-10.

Plaintiff's response to each and every interrogatory included almost an entire page of objections.  Voss Decl., Exh. 6, pp. 5-35, Responses 1-25.  Plaintiff followed its objections to all but one of the interrogatories with a "non-responsive" response[3], where Athena superficially offered to provide a response while providing no substantive response whatsoever.  Athena answered each of the interrogatories, save interrogatory no. 16, as follows:

"Pursuant to Fed. R. Civ. P. 33(d), and subject to the Protective Order, Athena will produce non-privileged materials, that it is able to locate after a reasonable search proportional to the needs of the case, sufficient to respond to this interrogatory."

Voss Decl., Exh. 6, pp. 5-23, 24-35 (Responses 1-15, 17-24).

Plaintiff subsequently provided amended responses to interrogatories 1 through 15, in which it still failed to provide basic facts and identify evidence in support of its breach of contract allegations, once again taking the position that it was Defendants' burden to somehow ascertain this from documents produced in the action or otherwise refusing to provide the requested information.[4]  Voss Decl., Exh. 8, pp. 5-10 (Amended Responses 1-15).  Setting aside the inapplicability of Rule 33(d) to contention interrogatories, which AMN will challenge with a motion to compel if necessary, the

---

[3] Plaintiff asserted in response to interrogatory 16 that it could not authenticate the settlement agreement that is the basis for its complaint because it claimed a copy of the document was not attached to the Requests for Admission.  Voss Decl., Exh. 6, p. 24, Resp. 16.  Plaintiff failed to provide an amended response after being provided another copy of the document.  Voss Decl., Exh. 8, p. 10. Ironically, Plaintiff did not dispute the authenticity of the settlement agreement or otherwise object when Defendants requested that the Court take judicial notice of the exact same document in support of Defendants' respective motions to dismiss and for judgment on the pleadings.  (Dkts. 64, 66)

[4] Although Plaintiff produced some documents in response to document demands propounded by AMN, Defendants are at a loss as to how any of them constitute admissible evidence that establish a breach of Settlement Agreement or resulting damages, as *Plaintiff* itself was unable to do so in its corresponding interrogatory responses.

fact of the matter is that Plaintiff's initial and supplemental interrogatory responses *failed to specifically identify a single witness, document or fact* to support the elements of breach, damages, and causation.

Likewise, although Plaintiff's requests for admission responses consisted of blanket denials, Plaintiff once again failed to support these denials by identifying a *single witness, specific document or fact* in its corresponding interrogatory responses. Voss Decl., Exh. 6, pp. 24-33, Interrogatory Responses 17-24;  Exh. 7, pp. 4-6, RFA Responses 2-10.  Tellingly, Plaintiff could not support, *with a single fact*, its denials that: (1) it lacked any evidence to support the alleged breaches of the Settlement Agreement; (2) it did not suffer any damages as a result of the alleged breaches; (3) Defendants performed all of their obligations under the Settlement Agreement; (4) Defendants satisfied any condition precedents to the release set forth in the Settlement Agreement; (5) that Plaintiff filed the FAC in violation of Rule 11.  Voss Decl., Exh. 6, pp. 24-33, Interrogatory Responses 17-24; Exh. 7, pp. 4-6, RFA Responses 2-10.  Again, Plaintiff repeated its refrain that the answers could somehow be ascertained through documents produced by Plaintiff, even though Plaintiff was unable to point to specific documents or facts itself.  Voss Decl., Exh. 6, pp. 24-33, Interrogatory Responses 17-24.

## III.   **APPLICABLE STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. Proc., Rule 56(a).  A party asserting that a fact cannot be or is genuinely disputed can support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Proc., Rule 56(c)(1)(B). Materiality is determined by the pleadings and the substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Id. "*The substantive law will identify which facts are material" and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Although a "[a] moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment," the moving party may satisfy this initial burden by showing that "the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). This initial burden, however, does not require the moving party "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof*." Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id. See also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'")  There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex, 477 U.S.* at 323.

"Once the moving party carries its initial burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." *Devereaux v. Abbey*, 263 F.3d at 1076.  "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Id.*

## IV.  **JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFF ON ITS BREACH OF  CONTRACT CLAIM AS PLAINTIFF LACKS SUFFICIENT EVIDENCE TO CARRY IT BURDEN AT TRIAL WITH RESPECT TO THREE ESSENTIAL ELEMENTS OF THAT CLAIM**

### A.  **The Existence of a Breach, Damages, and Causation are Essential Elements of Breach of Contract Claim Under California Law**

The essential elements for a breach of contract claim under California law are well established and include: (1) a breach of the contract by the defendant, i.e., the defendant "failed to do something that the contract required" it "to do"; (2) that plaintiff "was harmed" by the breach; and (3) that defendant's "breach of contract was a substantial factor in causing [plaintiff's] harm."  CACI No. 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of California Civil Jury Instructions (2021 edition). Because all three of foregoing elements are essential to a breach of contract, the absence of evidence of a single one of these elements mandates the entry of summary judgment against Plaintiff.  *See* CACI No. 303 (plaintiff "must prove all of the following").  CACI No. 303.  *See also Richman v. Hartley,* 224 Cal. App. 4th 1182, 1186 (2014); *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 909 (2005).

### B.  **Plaintiff Lacks Sufficient Evidence to Carry its Burden at Trial to Establish that Defendants Breached the Settlement Agreement**

#### 1.  **Plaintiff has failed to identify evidence in support of its allegation that AMN breached the Settlement Agreement "by providing**

**inaccurate and incomplete contact information of its customers and suppliers.”**

As noted above, the Settlement Agreement obligated AMN, but not Newman, to provide: (a) “the full and complete contact information and the amount of product purchased from each seller” as Schedule 1 to the Settlement Agreement (“Schedule 1”); and (b)  “the full and complete contact information for each customer and the aggregate amount of product sold” as Schedule 2 to the Settlement Agreement (“Schedule 2”) . The time period for the disclosures in the foregoing schedules was specifically limited to sales and purchases from January 1 to December 31, 2019.  *Plaintiff does not allege that AMN failed to produce the required Schedules*, which were themselves incorporated into and became part of the Settlement Agreement.   Rather, Plaintiff has limited its claim to the assertion that AMN “breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers.”

Neither version of Plaintiff’s complaint has alleged which specific information on the schedules was incomplete or inaccurate or how it was incomplete or inaccurate.  It turns out that this conspicuous omission is no accident because, as noted above, *Plaintiff has failed to identify a single inaccurate on incomplete disclosure in its written discovery responses in response to specific interrogatories on this issue.*  Voss Decl., Exh. 6, pp. 5-13, Interrogatory Resp., Nos. 1-7; Exh. 8, pp. 5-7, Amended Resp. Nos. 1-7.  Instead, Plaintiff merely offered “non-responsive” responses, contending that it has produced non-privileged materials “sufficient to respond” to each interrogatory.”  Voss Decl., Exh. 6, pp. 5-13, Interrogatory Resp., Nos. 1-7; Exh. 8, pp. 5-7, Amended Resp. Nos. 1-7.

In this regard, Plaintiff’s *amended* response to a contention interrogatory requesting that Plaintiff state the facts upon which in based its allegation of paragraph 91 of the FAC that “Defendants breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers” is particularly telling. Plaintiff amended its response to state that it had produced documents “evidencing that

AMN failed to truthfully disclose (1) 'the full and complete contact information and the amount of product purchased from each seller' (2) 'the full and complete contact information for each customer and the aggregate amount of product sold' and that AMN failed to cease trading in goods bearing the Athena Cosmetics Marks." Voss Decl., Exh. 8, p. 5, Amended Resp. No. 1.  Shockingly, Plaintiff amended its response to merely parrot the allegations of its First Amended Complaint and declined to identify a single inaccuracy or omission.  Highlighting its lack of evidence, Plaintiff also failed to identify the alleged inaccurate and incomplete information in *amended* responses to interrogatories specifically requesting that Plaintiff identify the omissions and inaccuracies.  Voss Decl., Exh. 8, pp. 6-7. Thus, not only has Plaintiff failed to support its allegations that certain information is missing or inaccurate with admissible evidence, but Plaintiff also cannot even tell the Defendants or the Court *what information is inaccurate or missing*!

The only evidence before the Court is contrary to Plaintiff's allegation. Schedules 1 and 2, which were attached to and became "part of" the Settlement Agreement total over 47 pages and *identified more than 3800 transactions*.  Newman Decl., Exhs. 1 and Schedules 1 and 2 thereto (Exhs. 1A and 1B).  Schedule 1 is one page long and contains for each seller a description of the product, amount of product purchased, and seller contact information required by the Settlement Agreement.   Newman Decl., Exh. 1A, Schedule 2 is forty-six pages long and *goes beyond* the information required by the Settlement Agreement by including for each customer: (a) "Order ID" numbers; (b) customer first and last name; (c) total purchase amount for each customer; (d) "status" and "payment status;" (e) order date and time; (f) customer shipping address; (g) customer shipment phone number; (h) UPC code number; (i) quantity purchased; (j) product name; and (k) tracking number.  Newman Decl., Exh. 1B, pp. 1-46.

In light of the foregoing and, particularly the absence of any evidence by Plaintiff to the contrary, there is no genuine dispute as to any material fact with respect to the disclosures by AMN.

**2.**   **Plaintiff has failed to identify evidence in support of its allegation that Defendants breached the Settlement Agreement by "continuing to sell Athena counterfeit goods" after the Parties Executed the Settlement Agreement**

The various releases set forth in the Settlement Agreement, including the specifically denominated release provision set forth in paragraph 5, released defendants "from any and all claims . . . . whether known or unknown, of any nature whatsoever, from the beginning of time to the execution date of this [Settlement] Agreement which arose in any way from, the sale of any Athena products (counterfeit or otherwise). . . ." Newman Decl., Exh. 1, pp. 4-5, ¶ 5.   Faced with the prospect of having to dismiss defendant Newman in the wake of this Court's ruling on Mr. Newman's motion to dismiss, Plaintiff then apparently discovered that the Defendants had been in breach of the Settlement Agreement all along by "continuing to sell counterfeit goods" and amended its breach of contract claim to allege the same.

Any cynicism or suspicion arising from Plaintiff's curious omission of such an important allegation from its original complaint is justified, as Plaintiff has failed to produce any evidence in support of this allegation.   As is the case with the alleged breach of AMN's disclosure obligations, AMN propounded discreet interrogatories targeted at the alleged post-settlement sales.   Voss Decl., Exh. 4, pp. 4-5, Interrogatory Nos. 8-12.   Yet, Plaintiff was unable to identify a single sale of counterfeit goods by Defendants that took place after the "Effective Date" of the Settlement Agreement in both its initial and supplemental interrogatory responses or identify witnesses or specific documents evidencing the same.   Voss, Decl., Exh. 6, pp. 13-20, Interrogatory Resp. No. 8-12, Exh. 8,  pp. 7-9, Amended Interrogatory Resp. No. 8-12.   Again, Plaintiff merely repeated its "non-responsive" mantra that such information could somehow be gleaned from its document production even though Plaintiff itself could not identify such a sale from those same documents!  Voss, Decl., Exh. 6, pp. 13-20, Interrogatory Resp. No. 8-12, Exh. 8,  pp. 7-9, Amended Interrogatory Resp. No. 8-12

Should there be any doubt as to Plaintiff's lack of evidence and lack of good faith in amending its complaint to include this new allegation of purported post-settlement sales of counterfeit goods, one need look no further than Plaintiff's *amended* response to an interrogatory asking Plaintiff to "[i]dentify by name of seller, buyer, date, product, quantity and dollar amount each sale of counterfeit goods by DEFENDANTS alleged in paragraph 92 of the FAC":

> Plaintiff objects to this interrogatory because this interrogatory is so broad, uncertain, and unintelligible that plaintiff cannot determine the nature of the information sought. ***Therefore, the plaintiff cannot provide an answer***. Plaintiff further objects to this interrogatory to the extent it seeks information not within its possession, custody, control, or personal knowledge. Plaintiff further objects to this interrogatory to the extent it requests information that will not be known until the propounding party complies with Plaintiff's discovery requests and additional discovery is completed.

Voss, Decl.,  Exh. 8, p. 8, Amended Interrogatory Resp. No. 10 (emphasis added).

Paragraph 92 of the FAC specifically alleged that "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods."  FAC (Dkt. 73), ¶ 92.  Plaintiff specifically amended the complaint to add this allegation and yet, in an *amended* response to a straightforward interrogatory, the best Plaintiff can do is state that it "cannot provide an answer?"

Setting aside the impropriety of all of Plaintiff's responses to contention interrogatories – and Defendants will bring motion to compel with respect to the same if necessary – Defendants urge the Court to simply cut to the chase.  Plaintiff has admitted that it cannot identify a single post-settlement sale of counterfeit goods in violation of the Settlement Agreement.  Plaintiff has also been unable to identify any witness or specifically identify any admissible evidence in support of its allegation. Consequently, judgment should be entered forthwith in Defendants' favor with respect to this alleged breach.

**C.** **Plaintiff has Failed to Disclose Its Damages Calculations in Violation of Rule 26(a)(1)(A)(iii) and Support it Damages Claim, Including Causation, With Evidence in Response to Written Discovery.**

Plaintiff has been on shaky ground with respect to the related elements of damages and causation from the outset of this case.  Plaintiff survived Defendants' respective motions to dismissed and for judgment on the pleadings by relying on its incorporation by reference of a cursory damages allegation from its first claim for relief under the Lanham Act, which merely provides that: "Defendants' acts cause Athena to suffer irreparable harm and damages in an amount not determined."  Complaint (Dkt. 1), ¶ 44; FAC, ¶ 44 (Dkt. 73); Plaintiff's Opp. to Motion for Judgment on the Pleading. (Dkt 68), 6:17-19.   Plaintiff opted to continue to rely upon these same sparse damages allegations in its First Amended Complaint, as the contract claim continues to be devoid of any specific damages allegation.  FAC, ¶ 44, ¶¶ 85-94.

In their respective motions attacking the pleadings, Defendants respectfully suggested to the Court that Plaintiff's lack of specific damages allegations in its contract claim was "*no small matter for it is highly unlikely that Plaintiff could ever plead or prove damages as a matter of law*."  While the Defendants can appreciate the reluctance of the Court to address this issue at the pleading stage, it is proper for the Court to address this issue in the context of a motion for a summary judgment.  It is in this context, especially given the initial disclosure requirements of Rule 26, that the *absence of any evidence* that Plaintiff "was harmed" by the breach and that defendant's "breach of contract was a substantial factor in causing [Plaintiff's] harm" is particularly damning.

The Rule 26 disclosure requirement with respect to damages are quite clear.  The parties must disclose to the other parties:

> "(iii) a computation of each category of damages claimed by the disclosing party who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from

disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"

Fed. R. Civ. Proc., Rule 26(a)(1)(A)(iii).

Despite the clear mandate to provide a computation of each category of damages and documents on which each computation is based, Plaintiff three Rule 26 disclosures provided no such information. Instead, Plaintiff admitted it had no evidence whatsoever with respect to damages:

"The amount is unknown at this time since discovery is ongoing, but Athena is entitled to actual and statutory damages, costs, and its reasonable attorney fees. 17 U.S.C. § 505."

Voss Decl., Exh 1, p. 4, Exh. 2, p. 4, Exh 3, p. 6.

The reference to statutory damages and 17 U.S.C. § 505 makes it clear that Plaintiff did not even attempt to address its claimed damages for breach of contract.

Plaintiff also failed, in response to narrowly focused interrogatories, to: (a) "describe all damages" that it contends it "suffered as a result of any breach of the SETTLEMENT AGREEMENT by the DEFENDANTS"; (b) specifically identify all documents in support of such damages; and (c) describe the actions taken by it to mitigate its damages.  Voss Decl., Exh. 6, pp. 20-23, Interrogatory Resp. Nos. 13-15; Exh. 8, pp. 9-10, Amended Interrogatory Resp. Nos. 13-15.

This claimed lack of knowledge and absence of evidence does not pass muster with respect to the claimed contract damages.  As to Plaintiff's inadequate/incomplete disclosure breach, Plaintiff's theory appears to be that AMN is somehow responsible for damages caused by unspecified third-party sellers (who AMN allegedly omitted from Schedule 1) who are purportedly violating Athena's trademarks by selling counterfeit goods. This is suggested by Plaintiff's opposition to AMN's motion for judgment on the pleadings, in which Plaintiff stated that "it is imperative Athena track down the sources of counterfeit goods bearing Athena's mark"  and that it had "been willing to enter into the settlement agreement because the information that defendants should have provided

in the schedules could lead Athena to major suppliers and other distributers [sic]." Athena's Opp. (Dkt. 68), 5:20-23. Yet, Plaintiff has still failed to articulate this position (or any damages calculation or theory) in its written discovery responses and, more importantly, has failed to point to evidence of such damages – including evidence of counterfeit sales by unspecified third parties, AMN's knowledge of their identity and past purchase of goods from them, AMN's failure to disclose their identity, Athena's inability to independently track down the names of such counterfeiters, and resulting damages – all of which are essential to establishing that Plaintiff was harmed by AMN's breach, and that the "breach of contract was a substantial factor in causing [plaintiff's] harm." The existence of damages and the requisite causal link is also missing with respect to the new allegation that Plaintiff inserted in its First Amended Complaint that "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods" [FAC (Dkt. 73), ¶ 92] as Plaintiff has failed to identify any such sales or specify any damage caused by such sales.

Evidence of the preceding facts – especially given the highly speculative nature of any harm caused by AMN's allegedly deficient disclosures – is critical given that the applicable California jury instruction, as noted above, not only requires Plaintiff to prove that it was harmed, but that Defendants' breach of contract "was a substantial factor in causing [plaintiff's] harm." CACI No. 303. "'Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.' A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage." *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th at 909. Although the term "substantial factor" appears to have no precise definition in the context of a breach of contract claim, California cases have held that it "seems to be something that is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th at 909;

*Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal. App. 4th 863, 871–72, (2007). *See also* CACI No. 303 (Directions for Use).

The irony, of course, is that Plaintiff was *required to have* evidence of the foregoing prior to the filing of its complaint and first amended complaint in accordance with Rule 11. The fact that it cannot now point to any evidence – more than a year after it commenced this action and after it has had ample opportunity to conduct its own investigation – suggest that Plaintiff amended its complaint in bad faith with the hopes of engaging in a fishing expedition to garner information to support its claim after the fact. Simply stated, Plaintiff's inability to come forward and support its case by pointing to specific facts and admissible evidence in its interrogatory responses leads to the inescapable conclusion that Plaintiff has no such evidence and cannot meet its burden.

Finally, it should be noted that multiple courts in the Ninth Circuit have granted summary judgment or partial summary judgment where a party has failed to comply in full with Rule 26's damages disclosure requirement and/or discloses damages in response to written discovery. *See, e.g., Sazerac Co., Inc. v. Fetzer Vineyards, Inc.,* 251 F. Supp. 3d 1288, 1293–94, 1308-1309 (N.D. Cal. 2017), aff'd, 786 F. App'x 662 (9th Cir. 2019) (granting partial summary judgment in favor of defendant on issues of damages in infringement case, holding that "*because [Plaintiff] failed to disclose properly how it would prove any monetary damages it is not entitled to recover them.*")*; Use Techno Corp. v. Kenko USA, Inc*., No. C-06-02754 EDL, 2007 WL 4169487, at *3-4 (N.D. Cal. Nov. 20, 2007) (partial summary judgment granted as to plaintiff's false advertising claim where plaintiff failed to disclose damages in Rule 26 disclosures and interrogatory responses); *Silong v. United States,* No. CV F 06-0474 LJO DLB, 2007 WL 2580543, at *4, 5 (E.D. Cal. Sept. 5, 2007) (observing that "[s]ummary judgement may be imposed based on absence of evidence excluded for failure to comply with F.R.Civ.P. 26(a)" and granting summary judgment as to multiple damages claims "[b]ased on the absence of plaintiffs' sufficient F.R.Civ.P. 26(a) (1)(C) damages computations."). Here Plaintiff has not only failed to provide the requisite

computations in its Rule 26 disclosures after three attempts, but has also failed to explain and support a viable damages claim in response to written discovery.

## V. THE RELEASES SET FORTH IN THE PARTIES' SETTLEMENT AGREEMENT BARS PLAINTIFF'S REMAINING CLAIMS

Because Plaintiff bears the burden of proof on its breach of contract claim and lacks any evidence of the same, not only must judgment be entered against Athena on it contract claim but also on all its remaining claims because they fall well within the scope of releases contained in the Settlement Agreement.  This Court recognized that the release provisions of the Settlement Agreement barred the remaining claims when it ordered that Plaintiff's contract claim be bifurcated and tried first, holding that Plaintiff could proceed with its trademark infringement claims under the Lanham Act and state law claim for competition only "if Plaintiff prevails on the breach of contract claim." Given the absence of evidence in support of Plaintiff's breach of contract claim[5], judgment must therefore be granted in favor of Defendants on Plaintiff's entire complaint.

## VI. ANY ASSERTION BY PLAINTIFF THAT IS REQUIRES TIME FOR ADDITIONAL DISCOVERY IS BELIED BY THE FACT THAT NONE OF ITS BREACH OF CONTRACT ALLEGATIONS ARE BASED UPON INFORMATION AND BELIEF

Given the striking lack of evidence in support of Plaintiff's contract claims, Defendants anticipate that Plaintiff will request additional time pursuant to Federal Rule of Civil Procedure 15 (d) to conduct discovery to oppose Defendants' motion.   Such relief should be denied as Plaintiff has had over one year to conduct its own investigation and to conduct third party discovery.

---

[5] Notably, Plaintiff does not allege that Defendants failed to make the settlement payment, failed to return inventory, or otherwise breached the Settlement Agreement save for the two breaches discussed in section IV supra.  FAC, (Dkt. 73), ¶¶ 85-94.

More to the point, however, is the fact that Plaintiff has based *none* of the allegations in its breach of contract claim on information and belief. This is true with respect to Plaintiff's original complaint as well as the first amended complaint it filed almost 10 months later. Complaint, ¶¶ 86-94; FAC, ¶¶ 86-94. Thus, any suggestion by Plaintiff that they need additional information or discovery from Defendants to oppose this motion is a tacit admission that it filed both versions of the complaint in violation of Rule 11. That Rule specifically states that the attorney signing the pleading certifies "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support" unless they are "***specifically so identified***" that they "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Proc., Rule 11(b)(3). Yet, Plaintiff has not specifically so identified such allegations in its complaint.

Stated differently, the elements attacked by Defendants by this motion are within *the knowledge of Plaintiff*, not Defendants. Plaintiff filed has based its breach of contract claim on two purported breaches: (1) omissions or inaccuracies in the Schedules 1 and 2; and (2) Defendants' alleged sale of counterfeit goods after the execution of the Settlement Agreement. Defendants attacked the lack of specificity of those allegations at the pleading stage and Plaintiff opted not to amend its complaint to identify a single omission or inaccuracy. Now Plaintiff has failed to do so in response to targeted written discovery. Even if Plaintiff could concoct some minor inaccuracy or omission at the last minute in a desperate effort to survive this motion, the contract claim would still fail because Plaintiff has failed to come forward with evidence that it suffered any harm and that the breach was "a substantial factor" in causing that harm.

To shift the blame and burden to Defendants on these issues at this point in the litigation is absurd. Plaintiff either has, and had, evidence of these two specific breaches and resulting damages when it filed its original and amended complaints or it did not. Plaintiff's three iterations of initial disclosures and evasive discovery responses, in

which Plaintiff could not even identify a single inaccuracy, omission, or post-settlement sale of a counterfeit good, leads one to conclude that Plaintiff currently lacks, and lacked, any such evidence when it filed it two versions of the complaint.  To reward Plaintiff for this behavior and to allow it to embark upon a fishing expedition in the hopes of defeating a motion for summary judgment would defeat the purpose of Rule 11. Plaintiff should not be allowed to continue to kick the can down the road for another day.

## VII.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Court enter summary judgment against Plaintiff on all of Plaintiff's claims.

DATED:  July 2, 2021          DAVID C. VOSS, JR.
                             VOSS, SILVERMAN & BRAYBROOKE, LLP


                             By: _____
                                 David C. Voss, Jr.
                                 Attorneys for Defendants
                                 AMN DISTRIBUTION, INC. and
                                 MOISHE NEWMAN