DAVID C. VOSS, JR. (State Bar No. 147330)
david@vsbllp.com
VOSS, SILVERMAN & BRAYBROOKE LLP
4640 Admiralty Way, Suite 800
Marina Del Rey, California 90292-6602
T: (310) 306-0515/ F: (310) 306-5368

Attorneys for Defendants Moishe Newman
and AMN Distribution, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ATHENA COSMETICS, INC., <br><br> Plaintiff <br><br> v. <br><br> AMN DISTRIBUTION, INC., MOISHE NEWMAN, an individual d/b/a BRUSH EXPRESS, and DOES 1-10, INCLUSIVE, <br><br> Defendants | Case No. 2:20-cv-05526-SVW-SHK <br><br> **REPLY OF DEFENDANTS AMN DISTRIBUTION INC. AND MOISHE NEWMAN IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY** <br><br> **HEARING** <br><br> Date: September 27, 2021 <br> Time: 1:30 p.m. <br> Place: Courtroom 10A <br>        First Street Courthouse <br>        350 W. 1st Street, 10th Floor, <br>        Los Angeles, California 90012 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The opposition of plaintiff Athena Cosmetics, Inc. ("Plaintiff" or "Athena") to the motion of defendants AMN Distribution, Inc. ("AMN") and Moishe Newman ("Newman," and collectively, "Defendants") to bifurcate discovery largely misses the point. This Court already decided back in April to bifurcate the jury trial into two phases, with the "first phase to address Plaintiff's breach of contract claim." (Dkt 74.) The Court further ordered that "the parties will proceed to phase two, during which Plaintiffs remaining claims will be resolved" only "[i]f Plaintiff prevails on the breach of contract claim." (Dkt. 74). The contract claim at issue alleges a breach of settlement agreement (the "Settlement Agreement") in which Plaintiff released its "remaining claims" for $25,000. The "remaining claims" are Plaintiff's first four claims for trademark infringement under the Lanham Act and a fifth claim for common law unfair competition for "palming-off" products.

By virtue of the Court's prior bifurcation order, many of the issues now raised by Athena were necessarily decided by the Court when it issued its prior order. For example, absent a determination that bifurcation furthered the goals of convenience, expediency and economy and avoided prejudice, the Court would presumably not have bifurcated the matter for trial in the first instance. Likewise, implicit in the Court's bifurcation order is a finding that the facts and issues surrounding Plaintiff's post-settlement contract claim are sufficiently distinct from the facts and issues related to the five "remaining claims" so that the "remaining claims" could be tried separately. Thus, Plaintiff faces a significant hurdle in establishing that a bifurcation of discovery commensurate with the bifurcation of the issues at trial frustrates rather than furthers the policy objectives set forth in Rule 42(b).

Plaintiff attempts to get past this hurdle by claiming prejudice and delay. Yet, as discussed below, it is Plaintiff that is responsible for the lion's share of delay in this case. Equally important, Plaintiff has failed to demonstrate *any prejudice* caused by any

delay or that such purported prejudice outweighs the convenience, economy, and avoidance of the prejudice to Defendants. If Plaintiff were truly experiencing prejudice as a result of Defendant's purported operation of a counterfeiting ring, Plaintiff would have sought preliminary injunction a long time ago. Yet, Plaintiff has sought no such relief, only specifically identified one *sale of counterfeit* goods (which allegedly occurred pre-settlement in its complaint[1], and settled all of its infringement/ counterfeiting and related pre-settlement claims for $25,000. Despite having had physical possession of Defendants entire inventory turned over to them as part of the Settlement Agreement Plaintiff has not claimed any of it is counterfeit.

To add insult to injury, Plaintiff has so far been unwilling to support it contract claim – for which discovery *would* be permitted under Defendants' proposed bifurcation order – with even a modicum of evidence. Plaintiff has failed to identify in response to written contention interrogatories: (a) a single post-settlement sale of infringing goods by Defendants; (b) an inaccuracy in Defendants' disclosures that resulted in material harm or damages to Plaintiff.

Given this state of affairs, the Defendants' proposed bifurcation of discovery constitutes a reasonable and balanced approach in furtherance of the goals of convenience and economy while avoiding the prejudice of subjecting Defendants to an expensive fishing expedition on already settled claims.

---

[1]Plaintiff could only point to *a single* alleged sale of counterfeit goods by Defendants, which allegedly occurred in November 2019 (Dkt. 73, FAC, ¶ 26), even though: (1) the schedule attached to the Settlement Agreement identified the names of approximately 3,800 individuals to whom Athena goods were sold [Dkt. 64-3]; (2) Plaintiff does not contend that AMN failed to return any remaining inventory in accordance with the terms of the Settlement Agreement. The question as to whether any of these products were counterfeit would necessarily depend on Plaintiff's internal investigation – reaching out to these consumers and testing their products and returned inventory – and third-party discovery. In regard to the latter, Plaintiff states in its opposition that it has completed third party discovery. Dkt. 107 Plaintiff's Opp., p. 7, line 13.

- 3 -
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY

## II. THE CONTRACT AND NON-CONTRACT CLAIMS ARE SUFFICIENTLY DISTINCT TO JUSTIFY THE BIFURCATION OF DISCOVERY

Plaintiff's contract claim is based upon two allegations: (a) AMN, but not Newman, breached the Settlement Agreement by "providing inaccurate and incomplete contact information of its customers and suppliers" in schedules appended to the agreement [FAC (Dkt. 73), ¶ 91]; and (b) AMN and Newman ("Newman" and collectively "Defendants") breached the Settlement Agreement by "continuing to sell Athena counterfeit goods" after the effective date of the settlement. FAC (Dkt. 73), ¶ 92. As the Court noted when it issued it bifurcation order, the trademark infringement and unfair competition claim will not even be reached unless Plaintiff prevails on its contract claim.

Although Plaintiff never objected to or asked the Court to reconsider its trial bifurcation order, Plaintiff now argues that the claims are intertwined. Plaintiff's argument is hard to follow, but Plaintiff suggests that "evidence of pre-agreement counterfeiting" supports the existence of the breach of contract claim. Plaintiff's Opp., p. 4, lines 3-8. Nothing could be further of the truth. Any evidence of *pre-settlement* sales or counterfeiting does not prove the existence of the *post-settlement sales*. Likewise, Plaintiff's assertion that "[e]vidence about the persons and companies that bought counterfeits from [sic] or sold them to defendants could be evidence the same persons involved whom AMN left off the schedules—a breach of the contract" is a non-sequitur that does not mitigate against bifurcation. This is distinct from Plaintiff's Lanham Act and unfair competition claims, which are essentially counterfeiting claims.

The other issue, which Plaintiff has failed to address, is the extensive financial discovery it seeks in connection with its non-contract damages claims. As pointed out by Defendants in their initial moving papers, the issues regarding *contract* damages resulting from the allegedly inadequate disclosures and alleged post-settlement sale of goods are factually and analytically distinct from the damages available under the

Lanham Act for trademark infringement or Plaintiff's "palming off" claim. Plaintiff's request for punitive damages is also clearly distinct and severable from its contract claim as such damages are only potentially available for *one* of its *six* claims for relief: the common law unfair competition/palming off claim. Consequently, the extensive and intrusive financial discovery sought by Plaintiff can easily be separated from the rest of the case. [2] As Plaintiff admits elsewhere in its Opposition: "Limiting discovery on damages while discovery on liability proceeds is straightforward." Dkt. 107, p.5, lns 6-9.

### III. NO ELABORATE PROCEDURE IS NECESSARY TO DELINEATE DISCOVERY BETWEEN THE CONTRACT AND NON-CONTRACT CLAIMS

Plaintiff's argument that some type of elaborate procedure is necessary to distinguish discovery on breach of contract claim from the remaining claims is without merit. Discovery on the breach of contract claims will be limited to the allegations of Plaintiff's contract claims set forth in paragraphs 91 and 92 of its First Amended Complaint (i.e., "inaccurate and incomplete contact information of its customers and suppliers" as set forth in the schedules attached to the Settlement Agreement and the alleged post-settlement sale of Athena products by the Defendants), along with resulting damages, materiality, and Defendant's affirmative defenses to Plaintiff's contract claim. Any issues relating to the proper scope of discovery and relevance can be resolved in the same manner as they would in the normal course of discovery with reference to the Court's order bifurcating discovery.

---

[2] Plaintiff's assertion that Defendants previously raised the issue of bifurcating discovery only with respect to damages and not with respect to contract and non-contract claims is incorrect. Defendants specifically stated in the Joint Rule 26 report that they "contend that discovery should be competed in two phases "consistent with the Court's order dated April 1, 2021 (Dkt. 74), bifurcating the trial into two phases with Plaintiff's breach of settlement agreement claim to be tried prior to Plaintiff's trademark infringement and common law unfair competition claims." This proposed bifurcation of discovery was in addition to Defendant's position that discovery on punitive damages should also be delayed. (Voss Decl. p.3, lns. 9-24 and Dkt. 82, p. 3, lines 13-21).

## IV. THE COURT MUST BALANCE THE MINIMAL, IF ANY, PREJUDICE TO PLAINTIFF AGAINST THE ECONOMY AND CONVENIENCE THAT WOULD BE SERVED BY BIFURCATION OF DISCOVERY AND THE PREJUDICE TO DEFENDANTS IN THE ABSENCE OF BIFURCATION

As explained in Defendants' moving brief, Plaintiff has consumed and continues to consume a great deal of the time and judicial resources on disputes concerning its overly broad discovery requests – including those seeking detailed confidential financial information from the Defendants. *See* Dkt. 99, pp. 5-9. Yet, all outstanding discovery has been responded to by Defendants.

The subpoenas discussed in Defendants' motion, and in the Declaration of Michael Harris [Dkt. 107-1 p.2, lns.16-17] were withdrawn by Plaintiff the day ***before*** Mr. Harris declaration was filed. (Supplemental Declaration of David C. Voss, Jr. in Reply to Plaintiff's Opposition to Defendants' Motion to Bifurcate Discovery).

The parties had a telephonic discovery conference with Magistrate Judge Kewalramani on September 10, 2021 to discuss, among other things, Plaintiff's claimed discovery issues and ex parte request for ESI. At the conclusion of that conference, Plaintiff's counsel Michael Harris confirmed to Magistrate Judge Kewalramani that there were no further issues requiring his attention regarding any outstanding discovery served on Defendants. See MINUTES OF ORDER [Dkt #110]

All of this has been in the context of infringement and unfair competition claims: (a) that ***Plaintiff previously settled for $25,000*** [Dkt. 64-1, page 8, ¶ 4]; and (b) for which Plaintiff has only identified one specific sale of allegedly counterfeit goods [Dkt. 73, FAC, p. 6, ¶ 26]. Given this context, this is case that screams out for the bifurcation of discovery under Rule 42(b).

The only countervailing factors Plaintiff has pointed to are alleged prejudice to itself as a result of delay and a related accusation that Defendants' are attempting to obstruct discovery. Plaintiff's accusations of delay and prejudice are disingenuous as much of the delay in this action has been caused by Plaintiff itself. For example,

defendant Newman repeatedly beseeched Plaintiff to vacate its default judgment against him, which was based upon the falsehood that he was served in Long Beach, California when he was in fact residing several thousand miles away in Australia. *See generally,* [Dkts. 47, 47-1, 53, 53-1]. Because of Plaintiff's recalcitrance, this issue was not resolved until the Court set aside the judgment on January 19, 2021. Dkt. 62. Newman, of course, could not attack the pleadings until the default judgment was set aside, leading to the fact that the case was not at issue until April 5, 2021, when Newman filed his answer to Plaintiff's first amended complaint. [Dkt. 75]. Plaintiff also opted to expand the scope of the case in March by including the new allegation in its first amended complaint that Defendants breached the Settlement Agreement by engaging in the post-settlement sale of Athena goods. FAC [Dkt. 73], ¶ 92. Plaintiff also had to serve its written discovery anew in April of 2021 because it failed to properly serve it in the fall of 2020 when AMN was represented by prior counsel. [Dkt. 79]. Plaintiff also failed to appear for a telephonic discovery conference scheduled for July 7, which Plaintiff itself had requested resulting in a three week delay. [Dkt. 90].

      Setting aside the fact that Plaintiff bears much responsibility for any prior delays, Plaintiff has failed to demonstrate how any *potential additional delay caused by the bifurcation of discovery* would in fact result in prejudice to Plaintiff. In this respect, Plaintiff's own lack of action is telling. If Plaintiff were truly concerned about ongoing harm caused by Defendants' purported counterfeiting, it would have sought a preliminary injunction some time ago. Moreover, Plaintiff also previously stipulated to a continuance of the trial date in April, 2021 and did not oppose an additional application for a continuance in June of 2021. Dkts. 80, 83. Plaintiff also asserts in its moving papers that it "has succeeded with third party discovery," so there is no prejudice on that front. Dkt. 107, Plaintiff's Opp., p. 7, line 13.[3]

---

[3] Plaintiff's accusation that is has uncovered evidence of conspiracy as yet unalleged in the First Amended Complaint of people (all employees of AMN) sharing the same surname as Newman and that Defendants are seeking to delay discovery of the same is simply not true. Discovery related to post-

Instead, it appears that this case continues to be motivated by what Defendants have contended all along: Plaintiff filed the instant action to obtain through the discovery process documentation regarding pre-settlement purchases and sales to which it was not entitled under the Settlement Agreement itself.

Finally, if Plaintiff were truly concerned with the efficiency of the discovery process moving forward, it would identify in response to previously served written interrogatories the alleged post-settlement sales and material inaccuracies and omissions in the schedules of attached to Settlement Agreement of which it complains.

## V. THE AUTHORITY CITED BY DEFENDANTS SUPPORTS BIFURCATION

Plaintiff argues that the authority cited by Defendants is not applicable to the case at hand. Such is not the case. *First,* although the *OSHO, Bassil,* and *Moreno* cases cited in Defendant's moving papers relied on Rule 42(b) to bifurcate discovery between liability and damages on infringement claims, those cases and the other authority cited by Defendants stand for the much broader proposition that the Court has the power to limit discovery to the issues segregated or bifurcated at trial in furtherance of the goals of Rule 42(b), i.e., "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. Proc. 42(b). As made clear by the Ninth Circuit, it is implicit in Rule 42(b) that a court has the "power to limit discovery to the segregated issues" and that "[o]ne of the purposes of Rule 42(b) is to *permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues.*" *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir.), *cert. denied*, 400 U.S. 957 (1970) (emphasis added; restricting discovery to "segregated issues"). Indeed, Plaintiff itself concedes that *Ellingson* permits the

---

settlement sales *would be proper* under Defendants' proposed bifurcation of discovery and Defendants are confident that there is no evidence of a conspiracy, let alone the post-settlement sale of goods by the Defendants. Defendants merely argue that the scope of any such depositions, document demands, and subpoenas should be limited to Plaintiff's contract claim and Defendant's related affirmative defenses.

limiting of discovery where, as here, the issues can be segregated – a finding which this Court presumably made when if bifurcated Plaintiff's claims for trial.

*Second*, the above-cited cases bifurcating discovery between liability and damages *are controlling and directly analogous* to the instant case because *unless Plaintiff prevails on its breach of the Settlement Agreement claim, there is no liability or damages on its five remaining claims.* Using the language of the Ninth Circuit, the contract claim is a "potentially dispositive preliminary issue" that would justify the "deferral of costly and possibly unnecessary discovery proceedings pending [its] resolution." *Ellingson,* 424 F.2d 497, 499.

The two additional cases cited by Plaintiff are readily distinguishable. In *Petro-Diamond,* the court declined to bifurcate the matter and stay discovery on alter ego claims, finding that the "issues underlying the breach of contract and alter ego claims are related, and discovery related to each will certainly overlap." *Petro-Diamond Inc. v. Int'l Exch. Servs.,* LLC, No. 12-CV-00890-CJC, 2012 WL 12895701, at *1 (C.D. Cal. Nov. 1, 2012). Here, in contrast, this Court has already decided to bifurcate the matter for trial, the issues are not related, and discovery will not "certainly overlap."

The court in *Petro-Diamond* also noted that defendants in that case had "not shown, or even argued, that the breach of contract claim is relatively simple or that they are likely to succeed on the merits of the claim" and the court concluded, for that reason, it was likely that judicial resources would be wasted by bifurcation. *Id.* at *1. Here, in contrast, Defendants seek to move forward with a summary judgment motion on Plaintiff's contract claim based upon Plaintiff's unwillingness and/or inability to support it claims with evidence in response to rudimentary contention interrogatories. For that reason, this case is more closely analogous to the *Bassil* opinion cited in Defendants original moving papers, where the court found that a summary judgment on the liability phase would "promote judicial economy" and "potentially save significant costs":

> Bifurcation would enable Defendants to move for summary judgment before the parties engage in onerous damages discovery that potentially generates disputes requiring judicial resolution. If the motion is granted, bifurcation would have benefited everyone—the parties are spared needless cost and the Court avoids potential disputes about damages. Thus, this factor favors bifurcation.

*Bassil v. Webster,* 2:20-cv-05099- SB, 2021 WL1235258, at *3 (C.D. Cal. Jan. 15, 2021)

For similar reasons, Plaintiff's reliance on *Mformation Techs* is also misplaced. Once again, unlike the court in *Mformation Techs*, here the Court has already made the decision to bifurcate this action for trial and, in the process, implicitly finding in favor of Defendants with respect to the Rule 42(b) factors. Plus, contrary to Plaintiff's assertion, Defendant have made more than a "mere contention" of judicial economy. As noted by the court in *Bassil* – the potential for a summary judgment motion that would dispose of the action is sufficient to establish judicial economy and costs savings particularly where Plaintiff is seeking "particularly onerous damages discovery" on its non-contract claims.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court exercise its discretion under F.R.C.P. 42(b) to like bifurcate discovery by limiting it to the Plaintiff's contract claim (i.e., the sixth claim for relief) and staying discovery as to all other claims pending the resolution of the contract claim via summary judgment or trial.

DATED: September 13, 2021    DAVID C. VOSS, JR.
VOSS, SILVERMAN & BRAYBROOKE, LLP

By: _____
David C. Voss, Jr.
Attorneys for Defendants AMN DISTRIBUTION, INC. and MOISHE NEWMAN