1  DAVID C. VOSS, JR. (State Bar No. 147330)
   david@vsbllp.com
2  VOSS, SILVERMAN & BRAYBROOKE LLP
3  4640 Admiralty Way, Suite 800
   Marina Del Rey, California 90292-6602
4  T: (310) 306-0515/ F: (310) 306-5368
5
6  Attorneys for Defendants Moishe Newman
   and AMN Distribution, Inc.
7

8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10                    WESTERN DIVISION
11

12 ATHENA COSMETICS, INC.,            ) Case No. 2:20-cv-05526-SVW-SHK
13                                    )
                  Plaintiff           ) **REPLY OF DEFENDANTS AMN
14                                    ) DISTRIBUTION, INC. AND MOISHE
        v.                            ) NEWMAN IN SUPPORT OF MOTION
15                                    ) FOR SUMMARY JUDGMENT**
16 AMN DISTRIBUTION, INC., MOISHE     )
   NEWMAN, an individual d/b/a BRUSH  ) **HEARING**
17 EXPRESS, and DOES 1-10, INCLUSIVE, )
18                                    ) Date: October 4, 2021
                  Defendants          ) Time: 1:30 p.m.
19                                    ) Place: Courtroom 10A
20                                    )        First Street Courthouse
                                      )        350 W. 1st Street, 10th Floor,
21                                    )        Los Angeles, California 90012
22                                    )
23                                    )
24                                    )
25                                    )
26
27
28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The opposition of plaintiff Athena Cosmetics, Inc. ("Athena" or "Plaintiff") validates defendants' argument that Plaintiff lacks any evidence to support its breach of contract claim. Instead of introducing admissible evidence in opposition to the summary judgment motion of defendants AMN Distribution, Inc. ("AMN") and Moishe Newman ("Mr. Newman" and collectively, "Defendants"), Plaintiff relies upon conjecture, cursory legal conclusions, and interpretations of "evidence" devoid of proper foundation and even makes unsubstantiated allegations "the full extent of which is currently unknown." (Dkt. #114, Lang Decl. p.3 ln. 8). To make matters worse, Plaintiff's separate statement and opposition brief often lack citations to any supporting evidence! Given this lack of evidence, the trial court should enter summary judgment against Plaintiff on its entire complaint.[1]

## II. PLAINTIFF BEARS THE BURDEN OF PRESENTING ADMISSIBLE EVIDENCE TO DEFEAT SUMMARY JUDGMENT

As noted in Defendants' moving brief, "Once the moving party carries its initial burden [by pointing to the absence of evidence], the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Although Plaintiff cites Ninth Circuit precedent for the proposition that "[a] single declarant's competent and specific evidence may create a triable issue as to a material fact although opposed by other contrary declarations," it is highly doubtful that the Ninth Circuit had the self-serving speculative declaration of the opposing parties' litigation counsel in mind. To the contrary, declarations submitted in opposition to summary

---

[1] As this Court has previously ruled in its bifurcation order, Plaintiff is not entitled to proceed with its remaining five claims for relief unless it prevails on its contract claim.

- 1 -
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. Proc., Rule 56(c)(4). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1164 (C.D. Cal. 2013)

### III.  PLAINTIFF HAS FAILED TO MEET ITS EVIDENTIARY BURDEN WITH RESPECT TO DAMAGES AND CAUSATION

Plaintiff's contract claim is predicated upon two breach allegations: (1) "AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers;" [FAC (Dkt. 73), ¶ 91]; and (2) "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods." FAC (Dkt. 73), ¶ 92. Although Plaintiff has failed to carry its burden with respect to both of these elements as discussed below, the Court need not even reach these elements as Plaintiff has made no evidentiary showing whatsoever with respect to the essential elements of damages and causation. *See* CACI No. 303 ("plaintiff must prove all of the following . . . "5. That [Plaintiff] was harmed; and 6. That [Defendants'] breach of contract was a substantial factor in causing [Plaintiff's] harm."

Defendant has negated these elements by pointing to an absence of evidence. Rather than respond with evidence, Plaintiff have instead attempted to rely upon *the following single paragraph of argument by counsel*:

> Why would Athena settle for $25,000 to get the information from accurate Schedules 1 and 2 instead of seeking that $2 million statutory damages? To discover the suppliers to stop them from selling counterfeit. AMN's failure to provide accurate information for Athena to use damaged it significantly.

Plaintiff's Opposition (Dkt. 112), p. 8, lines 1-7. While such an argument may be sufficient to defeat an attack on the pleadings, it does not meet the requisite *evidentiary* threshold to defeat summary judgment.

*First*, setting aside for the moment Plaintiff's purported motivation for entering into the Settlement Agreement, *Plaintiff has failed to present any evidence of damages whatsoever*. Rather, Plaintiff blithely asserts – without evidence – that "AMN's failure to provide accurate information for Athena to use damaged it significantly." Plaintiff's Opposition (Dkt. 112), p. 8, lines 6-7. *That conclusory statement by counsel does not constitute evidence of damages* and Plaintiff has not otherwise supported it with a declaration or other evidence of the existence of harm.

*Second,* Plaintiff has also failed to present evidence that AMN's purported omissions with respect to the Athena's suppliers were "*a substantial factor* in causing [Plaintiff's] harm." Stated differently, Plaintiff needs to come forward with admissible evidence that the asserted failure to provide "full and complete contact information" of suppliers and customers was a "***substantial factor***" in causing damages sustained by Plaintiff. Was Plaintiff unable to contact the sources identified by AMN on Schedule 1 of the Settlement Agreement because of incomplete contact information? How may post-settlement sales of *counterfeit* goods by took place *as a result of AMN's* alleged omissions or inaccuracies?  Where is the evidence that any such post-settlement sale of *counterfeit* Athena products even occurred?  Where is the evidence that AMN's alleged omissions or inaccuracies were a "substantial factor" with respect to the occurrence of these unsubstantiated post-settlement sale of counterfeit goods? Plaintiff offers no evidence in support of this essential element.

*Third,* Plaintiff has not come forward with any evidence to support its argument that its primary motivation in entering into the Settlement Agreement was in fact to stop third party suppliers from supplying counterfeit goods.[2]  *Shockingly, Plaintiff has failed to include a single supporting declaration – not even one from the person who executed the Settlement Agreement on its behalf – as to this purported intent.*  The agreement

---

[2] Plaintiff's FAC, which defines the scope of the summary judgment motion, merely alleges that Plaintiff bargained for the cessation of sales by Defendants and "to obtain complete and accurate contact information." FAC (Dkt. 73, ¶ 93).

itself contains no such recitation and disclosure obligations of AMN are buried in recital provisions and a "miscellaneous section" of the Settlement Agreement Dkt. 72-2, p. 3, ¶ 2(a)(iii), (v), p. 8, ¶ 9(g). Plaintiff has also failed to present evidence that such intent was shared with Defendants or "reasonably should have been known to them," which is a prerequisite to establishing Plaintiff's entitlement to damages resulting from any alleged omissions or inaccuracies with respect to the disclosures. *See* CACI No. 351, "Special Damages."

What Plaintiff did in fact bargain for was the payment of $25,000, the cessation of the sale of Athena products by defendants, the return of unsold inventory, and a promise not to challenge Athena's trademarks. Newman Decl., Exh. 1, Dkt. 97-2, pp. 3-4. The Settlement Agreement also never specifically required AMN to identify the source of the counterfeit product Plaintiff allegedly ordered from AMN in November 2019 [FAC, Dkt. 73, ¶ 76]. If Plaintiff's purpose in entering into the Settlement Agreement was to stop the sale of counterfeit goods, one would think that Plaintiff would have demanded that specific piece of information!

*Finally*, Plaintiff's reference to "$2 million [in] statutory damages" is a highly speculative distraction. Setting aside it is a statutory remedy for infringement and not breach of contract, Plaintiff's complaint specifically identifies *only a single* alleged sale of *counterfeit* goods by Defendants in November 2019 (Dkt. 73, FAC, ¶ 26). This is despite the fact that Schedule 2 of the Settlement Agreement identified over 3,800 sales of Athena goods. . Newman Decl., Exhs. 1 and 1B [Dkts. 97-2, 97-4]. To recover $2 million in statutory damages, Plaintiff must also have evidence that "the use of the counterfeit mark was willful" and any such reward is at the discretion of the trial judge "as the court considers just." 15 U.S.C. 1117(c)(2). Here, Plaintiff has presented no evidence that any goods sold prior to the execution of the Settlement Agreement were in fact *counterfeit*, that Defendants had the requisite intent to sell *counterfeit* goods..

In short, rather than meeting its evidentiary burden with respect to the essential elements of damages and causation, Plaintiff has instead chosen to respond with one

paragraph of speculation and argument by its counsel and an unsubstantiated assertion of harm. For all we know, Plaintiff settled its claims for $25,000 because of all the above noted shortcomings. Rather than engage in such speculation, Defendants instead urge the Court to enter summary judgment against Plaintiff.

## IV. PLAINTIFF HAS FAILED TO PRESENT ADMISSIBLE EVIDENCE OF THE POST-SETTLEMENT SALE OF ATHENA COUNTERFEIT GOODS

Plaintiff's argument relies solely on the declaration of its litigation counsel in this matter, Marina Lang. Plaintiff's opposition and Ms. Lang's declaration point to three purported facts: (1) alleged Groupon sales by Defendants that took place after the execution of the Settlement Agreement; (2) alleges sales by Defendants on "Walmart.com every week starting April 30, 2020 until July 8, 2021;" and (3) the post-settlement "dumping" of Athena products by a seller known as "Louise-LeBlanc" on eBay. Plaintiff's Opp., p. 5, lines 4-6; Lang Decl., (Dkt. 114), ¶¶ 5, 6, 10, 15.

With respect to the purported Groupon sales, Ms. Lang contends she conducted a Google search on September 11, 2021,[3] that the search yielded the webpage print-out set forth in Exhibit 22 (Dkt. 114-2), and that Exhbit 22 purports to show a listing for an Athena Revitalash product offered for sale "through the Brush Express operated by AMN Distribution." Yet, Plaintiff has failed to present any evidence that it *was Defendants* who in fact created that webpage, posted an Athena Revitalash product on the Groupon website, or *sold* an Athena product on the Groupon website on that date. The exhibit it totally without foundation, including the process of how such sales are posted, how long they remain on the Groupon site, and what control the poster has over removing discontinued sales. The exhibit also *negates the existence of a post-settlement sale* because it states in bold red print that the product is "SOLD OUT." Consequently,

---

[3] The fact that the attorney who signed the amended complaint is searching for evidence on September 11, 2021 – shortly before the opposition to Defendants' motion is due – reinforces Defendants suspicion that Plaintiff filed it First Amended Complaint in violation of Rule 11.

the webpage in and of itself does not constitute evidence of the actual of occurrence of a post-settlement sale by AMN and is pure conjecture.[4] The exhibit also makes no reference to defendant Newman.

Ms. Lang then states that she conducted a second Google search that yielded a product review by "Melody" of an Athena Revitalash Product on the Groupon website, attached as Exhbit 23 (Dkt. 114-3) to her declaration. The review by Melody does not state *when* she bought the product or that she indeed bought it from AMN or Newman. Even if Melody's review included such statement, it would be inadmissible hearsay as is the entirety of Melody's review! Ms. Lang attempts to compensate for this deficiency by referring to a Groupon policy that states that reviews are from verified customer's only, a screen shot of which policy is purportedly attached as Exhibit 24 (Dkt. 114-3). That one sentenced recitation of policy also constitutes hearsay, lacks foundation, includes no discussion of the verification process, and does not constitute admissible evidence that "Melody" in fact purchased the Athena product *from Defendants* or made the purchase after the execution of the Settlement Agreement. Exhibit 23, like Exhibit 22, also contains no reference to Defendant Newman.

Plaintiff's argument with respect to post-settlement sales on Walmart.com similarly comes up short. Plaintiff relies solely upon the declaration testimony of Ms. Lang and an exhibit she purportedly received from Walmart in July 2021. Ms. Lang cites to Exhibit 38 (Dkt. 114-17) for her assertion that: "Walmart's production also shows that defendants listed Athena RevitaLash and RevitaBrow products for sale on Walmart.com every week starting 4/30/20 until 7/8/21." Lang Decl., (Dkt. 114), ¶ 5.

Ms. Lang's testimony, however, is completely lacking in foundation and the exhibit in question, Exhibit 38, does not support her conclusion. Not a single page of the seventy-eight page exhibit references the sale of any Athena product by AMN or

---

[4] If one were to conjecture, it could be possible that Groupon kept the "sold out" product on its site to encourage users to click the "See Similar Deals" link and purchase products from other suppliers.

1 | Newman after 4/30/20; Ms. Lang, in fact, does not cite to any specific pages of the exhibit or offer an explanation for her assertion. The last several pages of the exhibit, starting at the bottom of page 41, do show some type of URL link or other unexplained code and text referring to Athena products under the heading "Product Description", lists Adina Beauty products under the heading "Seller Name", and *states 0 (zero) under the columns "dollars" and "units."* The zero units and zero dollar establishses that Adina Beauty – assuming a relationship to defendant AMN – did not in fact sell any Athena products commencing 4/30/20. Plus, Ms. Lang's testimony concerning the content of the exhibit is without foundation. She did not create or author the document and Plaintiff has offered no testimony from anyone at Amazon as to what the URL, code, or other text means or whether it is preserved after any sales are discontinued.

Ms. Lang also *suggests* that Defendants engaged in post-settlement sales on eBay, declaring that: (a) there exists a "user ID" named "Louis-Leblanc" that is "associated with the defendants or one of Defendant Newman's relatives;" (b) one of eBay's business records, identified as Exhibit 31 (Dkt. 114-11), demonstrates that "defendants –through this User—started dumping their (presumably bad counterfeit) RevitaLash inventory on eBay" commencing on April 23, 2020 (which is pre-settlement); (c) this dumping was unsuccessful, leading to the product being "sold off little by little every month until as recently as 1/23/21, with the sales earning $10,000 earned $in [sic] revenue." Lang Decl., ¶ 10.

Ms. Lang's declaration testimony is woefully deficient. First and foremost, Ms. Lang offers no evidentiary support for her testimony that user ID "Louis-Leblanc" is in fact associated with either AMN or Newman. Not only is her conclusory testimony totally without foundation, she even admits that she is awaiting confirmation of this purported fact! Lang Decl., ¶ 10. Ms. Lang also offers no evidence that the goods sold were in fact counterfeit, conceding as much with her parenthetical reference to "presumably bad counterfeit" Revitalash inventory. The exhibit she references also makes no reference to eBay whatsoever and she has failed to include any declaration

from eBay authenticating the exhibit.[5] Accordingly, her declaration and the exhibit are inadmissible.

Finally, even if any of the above above-discussed documents and declaration testimony of Ms. Lang were deemed admissible and could be construed as evidence that Defendants engaged in the sale of Athena goods after the execution of the Settlement Agreement, Plaintiff has failed to present any evidence that such sales were of *counterfeit* goods. Although Plaintiff now argues that *any* post-settlement sale of Athena good*s or the "marketing,* offering *for sale, advertising, promoting, displaying"* would constitute a breach of the Settlement Agreement, *that is not what Plaintiff has alleged in its complaint*. To the contrary, it has specifically alleged that "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods." FAC (Dkt. 73), ¶ 92. Plaintiff cannot rely on arguments concerning allegations that is has not even pled in its complaint, which has already been amended once.

## V. PLAINTIFF HAS NOT MET ITS EVIDENTIARY BURDEN REGARDING "INACCURATE AND INCOMPLETE CONTACT INFORMATION"

### A. Plaintiff's "Arithmetic" Argument Is Mere Conjecture

Plaintiff's first argument with respect to AMN's supplier and customer schedules attached as Exhibits 1 and 2 of the Settlement Agreement is that the data provided in those schedules do not "add up" because AMN "purchased 2,835 Units during 2019" while selling "4,474 units that year." Assuming, for the moment, the veracity of Plaintiff's calculation, Plaintiff's argument completely ignores the possibility that some of the product sold in 2019, particularly in the first half of that year, was actually acquired *prior* to January 1, 2019. The Settlement Agreement did not call for the disclosure of such information, so it is not surprising (and nor is it a breach of contract) that Plaintiff never received it. Defendants respectfully suggest that it is not Defendants'

---

[5] "Authentication is a 'condition precedent to admissibility. . . .'" *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1165 (C.D. Cal. 2013)

- 8 -
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

math that does not add up, but Plaintiff's argument – which is devoid of logic or admissible evidence.

### B. Plaintiff Has Not Supported its Assertion Regarding SavingSimpleLLC With Admissible Evidence

Plaintiff argues that AMN provided "inaccurate and incomplete contact information" with respect to the suppliers in Schedule 1 because of AMN's inclusion of "savingsimplellc" as the supplier of *1 out of 2,835* units. In support of this argument, Plaintiff relies upon the May 14, 2021 declaration of Eric Romero (Dkt. 114-13), who testifies that he used the account "SavingSavings," with registered e-mail simplesavingsllc@gmail.com "to sell various types of items through eBay auctions, including Revitalash ® cosmetics." Romero Decl., ¶¶ 3-5. *Significantly, neither "SavingsSavings" nor "simplesavingsllc," on which Mr. Romero offers testimony, is "savingsimplellc"* and Mr. Romero offers no testimony with respect to the latter, except his conclusory testimony that: "Any accusation that 'savingsimplellc' sold or supplied any product, including RevitaLash ® product, to the named defendants in this case is false." That statement is inadmissible and without foundation, as Mr. Romero does not discuss savingsimplellc anywhere else is his declaration. Even assuming that there is an equivalency between "SavingsSavings/simplesavingsllc@gmail.com and "savingsimplellc (and Plaintiff has presented no evidence to establish such is the case), Mr. Romero does not testify that he owned, operated, or created the former, and he admits he only used to "SavingsSavings/simplesavingsllc@gmail.com" for a brief unspecified four month period (no month or year given), without explaining who used it in the preceding or subsequent time period. Accordingly, his testimony with respect to "SavingsSavings/ simplesavingsllc@gmail.com," is without foundation. He also fails to establish an adequate foundation for the record search he claims he performed. *Finally, even assuming that savingsimplellc is the same entity as those discussed by Mr. Romero, it* was listed as the supplier *of a single unit out of thousands;* Plaintiff has failed to

present any evidence of damages or that any error with respect to the source of a single unit was a "a substantial factor" in causing any damages.

### C. Plaintiff Has Also Failed to Satisfy it Evidentiary Burden With Respect to ValenceD, Fullbright Sales, and Sterlingwoman

Plaintiff argues that "Defendants" failed to disclose the existence of two suppliers in Schedule 1: (a) ValenceD, which Plaintiff contends sold 5 units to Defendants on 11/22/19; and (b) Full-bright Sales, which Plaintiff contends sold 14 units to Defendants on 11/22/19 and 11/25/19. The opposition brief *fails to cite any evidence* with respect to the ValenceD sales and only contains a reference – without a citation to the evidentiary record – to a "Purchase History for Bluelinela" with respect to Full-Bright Sales. Plaintiff's Separate Statement of Facts contains a reference to "Purchase History for BluelineLA" with respect to both ValenceD and Full-Bright Sales, but once again fails to include a citation to the evidentiary record.

The only other reference to ValenceD and Full-Bright Sales appears in Ms. Lang's declarations, in which she testifies that Defendants[6] "failed to disclose eBay sellers 'valenced' and 'fullbright-sales,' both of which sold defendants RevitaLash goods in 2019." Ms. Lang fails to establish any foundation for her testimony and the only exhibit she cites to is Exhibit 33 (Dkt. 114-18) for which she also fails to lay the necessary foundation, including who prepared it, when it was prepared, and from whom it was obtained. Even assuming, for the sake of argument, the exhibit was prepared and obtained from eBay, Plaintiff has failed to include a custodian of record declaration from eBay authenticating the document or otherwise establishing the foundation for the contents set forth therein.

Plaintiff also argues that an unidentified "they" purchased 35 units from Sterlingwoman instead of the 5 listed on Schedule 1. The only evidence in support of

---

[6] This Court has previously ruled that only one of the defendants, AMN, had a disclosure obligation under the Settlement Agreement. Dkt. 72, page 3.

this argument is the once again unspecified "Purchase History for Bluelinela" to which there is no citation to the evidentiary record. If Plaintiff intended to refer to Exhibit 33, it suffers from all the above-note evidentiary shortcomings.

Finally, Plaintiff has failed to provide evidence that it suffered damages and that the omissions were a "substantial factor" in causing such damages. Even assuming that Plaintiff has a proper evidentiary basis for its assertions, how was Plaintiff harmed when Sterlingwoman was already disclosed as a source on Schedule 1? The units involved with respect to ValenceD and Full-bright Sales were only at total of 19 units of the Finally, where is the evidence that ValenceD, Full-bright Sales, and Sterlinwoman were engaged in the sale, let alone post-settlement sales *allegedly* attributed to AMN's non-disclosure, of *counterfeit* Athena good? Plaintiff cannot blame Defendants for any lack on discovery with respect to the foregoing, as it is a function of third-party discovery as Plaintiff readily admits.

## VI. PLAINTIFF HAS FAILED TO SATISFY THE REQUIREMENTS OF RULE 56(d)

In order to invoke Rule 56(d), the nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. Proc., Rule 56(d). The Rule 56(d) declaration must identify, *inter alia*, "specific reasons why such evidence was not discovered or obtained earlier in the proceedings (i.e., 'good cause')." Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial Ch. 14-C, Procedural Requirements—Opposing Party, Ch. 14-C at §14.114.

Plaintiff's declarations from its counsel fail to satisfy this requirement because they fail to show, among other things, why Plaintiff did not commence the third-party discovery it now complains is necessary and time consuming back in the summer of 2020 when Plaintiff commenced this action. Plaintiff also fails to offer any justification for its own failure to conduct an investigation with respect to Defendants' alleged post-settlement sale of counterfeit goods *prior* to amending its complaint to including that allegation. Plaintiff also fails to explain the delay caused by its own failure to properly

serve discovery on AMN's prior counsel in the fall of 2020 as determined by Magistrate Judge Kewalramani. (Dkt. 79). *Plaintiff has also mischaracterized the discovery process* as explained in the accompanying supplemental declaration of David C. Voss, Jr. The other problem for Plaintiff is that much of the information that it needs to oppose summary judgment is within its own possession and not impacted by the discovery obtainable from Defendants. For example, the existence of damages is within the knowledge of Plaintiff, and should have been known to it at the time it filed its complaint, even if the extent of the damages can only be discovered with third party discovery that Plaintiff inexplicably delayed.

## VII. DEFENDANTS SATISFIED THEIR OBLIGATIONS UNDER LOCAL RULE 7-3

As set forth in the accompanying declaration of David C. Voss, Jr., Defendants satisfied their meet and confer obligations prior to the filing of this motion.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Court enter summary judgment against Plaintiff on all of Plaintiff's claims. Alternatively, Defendants also request that this Court exercise its power under Rule 56(g) to "enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."

DATED: September 20, 2021   DAVID C. VOSS, JR.
VOSS, SILVERMAN & BRAYBROOKE, LLP

By: _____
David C. Voss, Jr.
Attorneys for Defendants
AMN DISTRIBUTION, INC. and
MOISHE NEWMAN

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. PLAINTIFF BEARS THE BURDEN OF PRESENTING ADMISSIBLE EVIDENCE TO DEFEAT SUMMARY JUDGMENT ........................................... 1

III. PLAINTIFF HAS FAILED TO MEET ITS EVIDENTIARY BURDEN WITH RESPECT TO DAMAGES AND CAUSATION ................................................... 2

IV. PLAINTIFF HAS FAILED TO PRESENT ADMISSIBLE EVIDENCE OF THE POST-SETTLEMENT SALE OF ATHENA COUNTERFEIT GOODS ............... 5

V. PLAINTIFF HAS NOT MET ITS EVIDENTIARY BURDEN REGARDING "INACCURATE AND INCOMPLETE CONTACT INFORMATION" ................ 8

    A. Plaintiff's "Arithmetic" Argument Is Mere Conjecture ............................... 8

    B. Plaintiff Has Not Supported its Assertion Regarding SavingSimpleLLC With Admissible Evidence ............................................................................ 9

    C. Plaintiff Has Also Failed to Satisfy it Evidentiary Burden With Respect to ValenceD, Fullbright Sales, and Sterlingwoman ......................................... 10

VI. PLAINTIFF HAS FAILED TO SATISFY THE REQUIREMENTS OF RULE 56(d) ................................................................................................................... 11

VII. DEFENDANTS SATISFIED THEIR OBLIGATIONS UNDER LOCAL RULE 7-3 ........................................................................................................................ 12

VIII. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001 .................................................. 1

*Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1164 (C.D. Cal. 2013) ........................ 2

**Other Authorities**

CACI No. 303 .......................................................................................................... 2

**Rules**

Fed. R. Civ. Proc., Rule 56(c)(4) ............................................................................. 2

Fed. R. Civ. Proc., Rule 56(d) ................................................................................ 11

**Treatises**

Rutter Group Prac. Guide, Fed. Civ. Pro. Before Trial Ch. 14-C, Procedural
　　Requirements—Opposing Party, Ch. 14-C at §14.114 ................................... 11