1            UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA

2               WESTERN DIVISION

3

4    ATHENA COSMETICS, INC.,    )

5             Plaintiff,     )

6          vs.          )   CASE NO.  CV 20-5526-SVW(SHK)

7   AMN DISTRIBUTION, INC.,    )   RIVERSIDE, CALIFORNIA
   ET AL.,           )

8             Defendant.    )   JULY 28, 2021

9   _____ )

10

11

12

13             INFORMAL DISCOVERY DISPUTE

14   BEFORE THE HONORABLE SHASHI H. KEWALRAMANI
           UNITED STATES  MAGISTRATE JUSGE

15

16

17

18   APPEARANCES:              See Next Page

19   COURT REPORTER:        Recorded, MS Teams

20   COURTROOM DEPUTY:     D. Castellanos

21   TRANSCRIBER:            Dorothy Babykin
                            Courthouse Services

22                             1218 Valebrook Place
                            Glendora, California  91740

23                             (626) 963-0566

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

3    FOR PLAINTIFFATHENA COSMETICS, INC.::

4         SOCAL IP LAW GROUP LLP
          BY:  MICHAEL HARRIS
5              ATTORNEY AT LAW
          310 N. WESTLAKE BOULEVARD
6         SUITE 120
          WESTLAKE VILLAGE, CALIFORNIA  91362

7

8    FOR DEFENDANT AMN DISTRIBUTION, INC., ET AL.:

9

          VOSS, SILVERMAN, BRAYBROOKE LLP
10        BY:  DAVID VOSS
               ATTORNEY AT LAW
11        4640 ADMIRALTY WAY
          SUITE 800
12        MARINA DEL REY, CALIFORNIA  90292

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2    CV 20-5526-SVW(SHK)                        JULY 28, 2021

3

4    PROCEEDINGS:  INFORMAL DISCOVERY DISPUTE CONFERENCE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com

1           RIVERSIDE, CALIFORNIA; JULY 28, 2021

2           THE CLERK:  CALLING CASE NUMBER 2:20 CV 5526, ATHENA

3    COSMETCS, INC. VERSUS AMN DISTRIBUTION, INC., ET AL.

4           COUNSEL, YOUR APPEARANCES BEGINNING WITH PLANTIFFS.

5           MR. HARRIS:  GOOD MORNING, YOUR HONOR.

6           MICHAEL HARRIS REPRESENTING THE PLAINTIFF.

7           MR. VOSS:  GOOD MORNING, YOUR HONOR

8           DAVID VOSS HERE FOR THE  -- DEFENDANTS.

9           THE COURT:  VERY GOOD.

10          SO, I'VE REVIEWED THE DESCRIPTION OF THE MATTER

11   PROVIDED BY COUNSEL AS WELL AS THE DOCKET.  ALSO THE ORDER BY

12   JUDGE WILSON STRIKING THE MSJ THAT WAS FILED BY DEFENDANTS

13   WITHOUT PREJUDICE AND SUBJECT TO OUR DISCOVERY HEARING.

14          SO, LET'S FIRST TALK ABOUT THE INTERROGATORIES.  THERE

15   ARE SIX INTERROGATORIES.

16          IS THAT CORRECT, MR. HARRIS?

17          MR. HARRIS:  THAT'S CORRECT, YOUR HONOR.

18          THE COURT:  OKAY.

19          TELL ME ABOUT THE STATUS OF THOSE, SIR.

20          MR. HARRIS:  I DON'T THINK THEY'VE BEEN ANSWERED.  LET ME

21   PULL MINE.

22          (PAUSE IN PROCEEDINGS.)

23          MR. HARRIS:  EVERYTHING HAS BEEN OBJECTED TO.  AND EVERY

24   ANSWER IS SUBJECT TO THE OBJECTION.  I WOULD SAY WE HAVE NO  --

25   NO INFORMATION FROM THOSE INTERROGATORIES.

1          THE COURT:  OKAY.

2          MR. VOSS.

3          MR. VOSS:  WE DISAGREE.  FOR EXAMPLE, THERE ARE ANSWERS

4   TO EACH AND EVERY ONE OF THE SIX INTERROGATORIES.  FOR EXAMPLE,

5   WE''VE IDENTIFIED WITNESSES.  THESE ARE OUR WITNESSES.  THEY

6   ASKED US TO IDENTIFY WITNESSES.  WE IDENTIFIED WITNESSES.

7          COUNSEL SAYS WE JUST DIDN'T RESPOND.  I JUST COULDN'T

8   DISAGREE MORE

9          FOR EXAMPLE, I'M JUST LOOKING AT INTERROGATORY NUMBER

10  2.  OUR RESPONSE WITH A PARAGRAPH FOR THE OBJECTION IS THAT WE

11  RESPOND TO DEFENDANT MOISHE NEWMAN, CHIEF EXECUTIVE OFFICER

12  OF AMN, WHOSE REPRESENTATIVE MAY BE CONTACTED AT AMN'S

13  COUNSEL OF RECORD.

14         NUMBER 2.  EMPLOYEES, AGENTS AND LEGAL COUNSEL AND

15  OTHERS ACTING ON BEHALF OF ATHENA HAVE YET TO BE FULLY

16  ASCERTAINED, BELIEVED TO INCLUDE CHRISTINA FELIX -- NAMES,

17  ADDRESSES AND PHONE NUMBERS FOR ALL OF THESE  -- CHRISTINA

18  FELIX, DAVE HOOPER, MARINA LANG, AND MICHAEL HARRIS HIMSELF AS

19  WILL BECOME APPARENT DURING THIS HEARING.  THAT TESTIMONY WILL

20  BE RELEVANT TOO IN PART.  BUT THE REQUEST MUST STATE THE NAMES,

21  EMPLOYERS  -- EMAIL ADDRESSES AND TELEPHONE NUMBERS FOR ALL

22  PERSONS  KNOWING THAT AMN FULLY PERFORMED ITS CONTRACT WITH

23  ATHENA.

24         THAT'S THE UNIVERSE OF PEOPLE.  WE ANSWERED THE

25  QUESTION.

1    WITH.NUMBER 1 THE QUESTION IS INTERROGATORY, ALL

2 PERSONS --

3    THE COURT:  LET ME STOP  --LET ME STOP YOU, MR. VOSS.

4 MR. VOSS, LET ME STOP YOU..

5    WHY DON'T WE DO THIS.  CAN YOU PROVIDE ME A COPY OF THE

6 INTERROGATORY AND RESPONSES, MR. HARRIS?

7    MR. HARRIS:  YES.

8    THE COURT:  OKAY.

9    WHAT I WANT TO DO IS I WANT TO TAKE A LOOK AT THE

10 RESPONSES AND THE INTERROGATORIES.  AND WE CAN THEN  --

11    WHAT'S YOUR AVAILABILITY EITHER TOMORROW OR FRIDAY?

12    MR. VOSS::  I'M  -- NOTHING.  IF NOT FOR FULL DISCLOSURE, I AM

13 LEAVING AT 6:00 A.M. HEADED OFFSHORE.

14    THE COURT:  WHEN ARE YOU GETTING BACK?

15    MR. VOSS:  I'M GOING TO BE BACK  -- I WOULD BE BACK ON

16 SHORE WITH INTERNET ACCESS ON MONDAY, TUESDAY  -- I'M ON

17 VACATION WITH MY DAUGHTER FOR HER BIRTHDAY BEFORE SHE GOES

18 BACK TO COLLEGE.  BUT I WOULD BE ABLE TO DO A ZOOM MEETING FROM

19 SANTA BARBARA HARBOR ON MONDAY OR TUESDAY.  I WILL BE BACK

20 BACK IN THE OFFICE ON WEDNESDAY  --

21    THE COURT:  WHAT'S YOUR AVAILABILITY TODAY, MR. VOSS?

22    MR. VOSS:  ALL DAY.

23    THE COURT:  OKAY.

24    MR. HARRIS, CAN YOU  --

25    MR. VOSS:  --- UNTIL 3:30..

1          THE COURT:  NO.  WE'RE GOING TO DO IT TODAY.

2          MR. VOSS:  THAT'S FINE.

3          THE COURT:  MR. VOSS  -- I'M SORRY-- MR. HARRIS, CAN YOU

4   EMAIL THE INTERROGATORY AND THE RESPONSES TO MY COURTROOM

5   DEPUTY HERE SHORTLY.

6          MR. HARRIS:  I CAN --

7          THE COURT:  -- AND WE'LL RESCHEDULE  -- WE'RE GOING TO

8   COME BACK AT THREE O'CLOCK AFTER I'VE TAKEN A LOOK AT THEM.

9   OKAY.

10         MR. VOSS:  YOUR HONOR  --

11         THE COURT:  WHAT ABOUT THE RFPS  --

12         NO, MR. VOSS, NOT YET.

13         MR. VOSS:  JUST NEED A HALF HOUR SOONER IF POSSIBLE.

14         THE COURT:  I'LL SEE.  I GOT TO SEE HOW  -- LET ME  -- OKAY.

15   WHAT ABOUT THE REFPS?

16         MR. HARRIS, WHAT'S THE STATUS OF THOSE?

17         MR. HARRIS:  WE HAVE RECEIVED NO DOCUMENTS .

18         THE COURT:  MR. HARRIS  -- MR. VOSS, IS THAT CORRECT?

19         MR. VOSS:  WE IDENTIFIED THE DOCUMENTS AND SENT

20   CORRESPONDENCE TO COUNSEL ASKING HIM TO ARRANGE ANY TIME TO

21   MAKE COPIES.  HE'S DECLINED TO DO SO.

22         MR. HARRIS:  OH, THAT'S NOT TRUE.  WE HAVE RECEIVED NO

23   DOCUMENTS.  AND EVERY  -- EVERY RESPONSE IS MADE SUBJECT TO A

24   BUNCH OF OBJECTIONS.  AND, SO, WE DON'T KNOW IF WE'RE GETTING

25   ANYTHING OR NOT.

1            THE COURT:  MR. HARRIS, ISN'T THAT THE COMMON COURSE

2    WHERE YOU PRESERVE YOUR OBJECTION.  DID HE SAY, SUBJECT TO

3    THESE OBJECTIONS, HERE IS WHAT WE BELIEVE ARE RESPONSIVE.  AND

4    THEN YOU'RE SUPPOSED TO HAVE A MEET AND CONFER WITH MR. VOSS

5    AND TO SAY WHAT OTHER  -- WHAT ARE THESE OBJECTIONS RELATED TO.

6    AND YOU TRY AND WORK THEM OUT.

7            HAVE YOU DONE THAT PHONE CALL WITH MR. VOSS, MR.

8    HARRIS?

9            MR. HARRIS:  YES.

10           THE COURT:  OKAY.

11           ALL RIGHT.

12           MR. VOSS:  FOR EXAMPLE, YOUR HONOR, IN RESPONSE TO

13    NUMBER 25, I JUST FLIPPED TO ONE OF THEM.  IT ASKS FOR US TO

14    IDENTIFY ALL AMN OFFICES  AND FACILITIES INCLUDING THOSE SHARED

15    WITH ANY OTHER PERSON.

16           WE SAID IN RESPONSE,  "AND THEN WE'LL PRODUCE SUCH

17    DOCUMENTS SHOWING IT HAS A WAREHOUSE LOCATED AT 10 GALLAGHER

18    DRIVE  -- PENNSYLVANIA  18705.

19           I THEN HAVE FOLLOW-UP WITH MR. HARRIS SAYING, ARRANGE

20    FOR YOUR COPY SERVICE.

21           THE COURT:  OKAY.  WHAT  --

22           MR. VOSS:  WHAT'S THE PROBLEM.

23           THE COURT:  THE COPY SERVICE, WE'RE TALKING 1980S,  '90S

24    LITIGATION TACTICS HERE.  WHY DON'T YOU UPLOAD THEM TO A SERVER,

25    SCAN THEM IN AND UPLOAD THEM.  AND SEND IT CODE TO THE OTHER

1    SIDE.

2            IT SOUNDS LIKE IT'S BEING A LITTLE DIFFICULT -- THAT YOU'RE

3    BEING A LITTLE DIFFICULT, MR. VOSS.

4            MR. VOSS:  I WASN'T INTENDING IN ANY WAY TO BE DIFFICULT.

5            THE COURT:  THAT'S --

6            MR. VOSS:  COUNSEL IS  --

7            THE COURT:  THAT'S HOW IT COMES ACROSS TO ME.

8            MR. VOSS:  WELL, YOUR HONOR, THE POSITION TAKEN BY

9    COUNSEL IS THAT AMN IS BEING NONRESPONSIVE.  THE DOCUMENTS ARE

10   IDENTIFIED IN THE DOCUMENT RESPONSES.  WE'VE AGREED TO PRODUCE

11   --

12           THE COURT:  HOW IS THE DOCUMENT IDENTIFIED THERE, SIR?

13           MR. VOSS:  IT SAYS THAT WE WILL PRODUCE.  AND THEN WE

14   CONFERRED WITH MR. HARRIS.  AND ON THAT ONE IN PARTICULAR WE

15   SAID WE WILL PROVIDE TO YOU SOME SORT OF A PROOF THAT WE HAVE

16   THE WAREHOUSE THERE.  NOTWITHSTANDING THE FACT THAT THEY

17   KNOW IN FACT THAT THERE IS A WAREHOUSE  --

18           THE COURT:  MR. VOSS, WHAT DOCUMENT -- OKAY.  WHAT

19   DOCUMENT  -- CAN YOU READ THE RFP FOR ME.

20   `        MR. VOSS:  "DOCUMENTS SUFFICIENT TO IDENTIFY ALL AMN

21   FACILITIES AND OFFICES.  IDENTIFY THEM, INCLUDING THOSE SHARED

22   WITH ANY OTHER PERSON."

23           THE COURT:  OKAY.

24           MR. VOSS:  THAT FACILITY IS A WAREHOUSE IN PENNSYLVANIA.

25           THE COURT:  PRESUMABLY THERE'S A LEAST OR A CONTRACT

1    FOR RENTING IT?

2            MR. VOSS:  SOMETHING TO THAT EFFECT I'M SURE.

3            THE COURT:  OKAY.  WHERE IS THAT?

4            MR. VOSS:  I WILL OBTAIN IT FROM MY CLIENT.  I KNOW IT EXISTS.

5    I MEAN, OBVIOUSLY IT EXISTS.

6            THE COURT:  OKAY.  BUT YOU HAVEN'T TURNED IT OVER, MR.

7    VOSS.

8            MR. VOSS:  THIS WAS -- THE PROBLEM, YOUR HONOR, WAS THE

9    LEVEL OF DETAIL  --WHEN WE MET AND  CONFERRED WITH COUNSEL.  AND

10   WHEN WE MET AND CONFERRED WITH COUNSEL HE WANTS A

11   COMPLETELY DIFFERENT LEVEL OF DETAIL.  AND GENERALLY SPEAKING

12   WHAT COUNSEL SAID TO ME WAS HE WANTS TO HAVE SO MUCH

13   FINANCIAL DETAIL ABOUT OUR BUSINESS THAT HE CAN CONDUCT A

14   FORENSIC AUDIT AND DETERMINE BY DOING AN AUDIT OF THE COMPANY

15   OF ALL OF ITS BUSINESSES AND ITS PROFITABILITY OVERALL AS IF THAT

16   WOULD BE RELEVANT.

17           HE IN ESSENCE WANTS TO DO, IF YOU WILL IN THE

18   VERNACULAR, A CAVITY SEARCH OF OUR COMPANY TO TRY TO FIND ALL OF

19   THIS ADDITIONAL INFORMATION NOT YET HAVING PRODUCED A SHRED OF

20   EVIDENCE THAT WE 'VE SIN ANY BREACHED THE CONTRACT.  NOTHING.  NOT

21   EVEN IDENTIFIED A WITNESS.

22           THE COURT:  HERE'S WHAT WE'RE GOING TO DO.  HERE'S WHAT

23   WE'RE GOING TO DO.

24           MR. HARRIS, YOU'RE GOING TO SEND ME OVER ALL THE

25   INTERROGATORY RESPONSES  -- THE INTERROGATORIES, THE RFPS, AND

1    THE RESPONSES.

2              YOU'RE GOING TO GET THEM TO ME BY 9:30 MY TIME.  I'M ON THE

3    WEST COAST.  YOU''RE GOING TO EMAIL THEM TO ME.

4              WE'RE GOING TO START A HEARING AT NOON.  WE'RE GOING TO

5    GO THROUGH THESE.  WE'RE NOT STOPPING UNTIL WE GO THROUGH THESE.

6    I WILL ISSUE MY RULINGS ON EACH ONE OF THESE.

7              LET'S TALK ABOUT THE 30(B)(6) WITNESS, MR. HARRIS.

8              MR. HARRIS:  THE 30(B)(6) WITNESS WE NOTICED A DEPOSITION.

9    MR. VOSS SAYS HE DIDN'T GET IT.  AND JUST AFTER IT WOULD HAVE

10   STARTED THE DEPOSITION HE EMAILED ME AND SAID, IT'S THE WRONG TIME

11   IN AUSTRALIA BECAUSE THAT'S WHERE OUR WITNESS IS.  PLUS, IT'S THE

12   JEWISH SABBATH.

13              AND, OF COURSE, I DIDN'T KNOW ANY OF THAT.

14              THE COURT:  LET ME ASK YOU THIS, MR. HARRIS.

15              HAVE YOU FOLKS AGREED TO EXCHANGING RFPS,

16   INTERROGATORIES, NOTICES UNDER RULE 5 BY EMAIL?

17              MR. HARRIS:  YES.

18              THE COURT:  YOU'VE HAD  --

19              MR. VOSS:  -- NOT AT  THAT TIME.

20              MR. HARRIS:  WE SERVED IT BY MAIL.

21              THE COURT:  HOW DID IT  -- AND WAS IT RETURN RECEIPT

22   REQUESTED OR  -- WHAT PROOF DO YOU HAVE THAT HE RECEIVED IT, SIR?

23              MR. HARRIS:  NOW HE SAYS HE DID IT.  HE TOLD ME HE DID IT  --

24              THE COURT:  MR. HARRIS  -- MR. HARRIS, I'M ASKING YOU, SIR,

25   WHAT PROOF DO YOU HAVE THAT HE RECEIVED IT?

1          MR. HARRIS:  WE DON'T OTHER THAN THE FACT THAT IT'S

2   MAILED.  IT WAS MAILED.

3          THE COURT:  OKAY.  I -- SO, WHAT CAN I DO?

4          MR. HARRIS:  I JUST WANT TO TAKE THE 30(B)(6) DEPOSITION.

5          THE COURT:  I GET IT.  AND WE'RE GOING TO SET THE DATE

6   TODAY.

7          MR. HARRIS:  GOOD.  THAT'S ALL I WANT.

8          THE COURT:  OKAY.

9          I SUGGEST YOU TWO TALK IMMEDIATELY AFTER THIS HEARING

10  TO GET THAT DATE.  OTHERWISE, I'M GOING TO SET ONE FOR HIM.

11         MR. VOSS:  YOUR HONOR, IF I MAY.

12         THE COURT:  GO AHEAD.

13         MR. VOSS:  THE ADDITIONAL ISSUE WAS A FAILURE TO COMPLY

14  WITH RULE 30(B)(6).  COUNSEL DID NOT IN ANY WAY MEET AND CONFER AS

15  TO THE SCOPE OF THAT DEPOSITION --

16         THE COURT:  HE DOESN'T HAVE TO.  ALL HE HAS TO SAY  -- NO,

17  THAT'S NOT HOW IT WORKS.  HE HAS TO SEND OVER TOPICS.  THEN YOU

18  HAVE TO RAISE IT.

19         MR. VOSS:  WE  -- AND THAT'S WHAT WE TRIED TO DO WITH

20  COUNSEL.  WE'VE RAISED THE FACT WE NEED TO DISCUSS THE TOPICS

21  THAT, AGAIN,  ARE EXPANSIVE AND OVERBROAD.

22         THERE'S TWO SIDES TO THIS COIN, YOUR HONOR.  BECAUSE

23  PART OF THIS MEETING IS ALSO SUPPOSED TO BE AS YOU SEE IN OUR

24  NOTICE TO YOU IS OUR REQUEST FOR A PROTECTIVE ORDER.  BECAUSE WE

25  BELIEVE  --

1          THE COURT:  A PROTECTIVE ORDER IN WHAT SENSE?  LIKE, TO

2   PROTECT THE CONFIDENTIAL INFORMATION?

3          MR. VOSS:  IT'S AS TO TRADE SECRETS AND OTHER  --

4          THE COURT:  ALL RIGHT.  LET'S DO THIS.  HEAR ME OUT.

5          MR. VOSS, BEFORE YOU TAKE OFF TOMORROW ON MY WEBSITE

6   YOU WILL SEE A PROPOSED PROTECTIVE ORDER THAT PROTECTS TRADE

7   SECRET INFORMATION.  IT'S A ONE  -- IT'S A ONE-TIER ONE.  I SUGGEST YOU

8   SET UP A TWO-TIER ONE WITH AN AEO AND GENERAL.  ALL RIGHT.

9          GO AHEAD.

10         MR. HARRIS:  YOUR HONOR  -- YOUR HONOR  --

11         MR. VOSS:  IF I MAY, YOUR HONOR  --

12          THE COURT:  MR. HARRIS, HOLD ON A SECOND.  MR. HARRIS,

13   HOLD ON A SECOND.

14         MR. VOSS.

15         MR. VOSS:  YES, YOUR HONOR.  THE DIFFICULTY WE HAVE HERE

16   IS IT'S NOT A PROTECTIVE ORDER TO PROTECT THE INFORMATION FROM

17   THE REST OF THE UNIVERSE.  IT'S TO PROTECT THE INFORMATION FROM

18   BEING DISCLOSED TO ATHENA.

19         AND, YOUR HONOR, WHAT I HAVE THAT I WOULD LIKE TO BE

20   ABLE TO SHOW YOU IS THAT THIS ENTIRE LAWSUIT IS PREDICATED ON ONE

21   AND ONLY AND ONE THING.  AND THAT IS  --

22         THE COURT:  I DON'T  -- MR. VOSS, IT DOES NOT ENTER INTO  --

23   THIS IS A LITIGATION.  UNDER THE DISCOVERY RULES, SIR, WE CAN SET UP A

24   PROTECTIVE ORDER.  YOU CAN DO IT  -- YOU CAN PROVIDE IT TO MR. HARRIS

25   AS ATTORNEY.  AND IT CANNOT BE SHARED WITH ATHENA.  OKAY.

1          MR. VOSS:  AND THE DIFFICULTY WE HAVE, YOUR HONOR, IS

2    THIS.  AND I'VE SET A RULE 11 WARNING LETTER TO COUNSEL ABOUT THIS.

3    OKAY.  AND THAT IS.  THEY'RE MISUSING THE INFORMATION, NOT JUST IN

4    THIS CASE, BUT IN OTHER CASES.  AND THIS CASE ISN'T ABOUT THE GUILT

5    OR INNOCENCE OF MY CLIENT.  IT'S ABOUT TRYING TO USE THE DISCOVERY

6    FOR AN      IMPROPER PURPOSE, WHICH ISN'T ALLOWABLE.

7          MS. LANG IS ON RECORD AS TO HER PURPOSE BEHIND THIS

8    DISCOVERY.

9          THE COURT:  STOP.  STOP.

10         I HAVE MULTI-BILLION-DOLLAR CASES THAT DON'T TAKE AS

11   MUCH TIME AS THIS.  OKAY.  AND IN LARGE PART I'M REALLY

12   DISAPPOINTED IN YOU TWO FOLKS BECAUSE WHAT I'M HEARING IS LACK

13   OF COMMUNICATION OR DIFFICULTY  -- OR DESTRUCTION  -- AND I'M NOT

14   SAYING BY WHO  -- BUT YOU'RE NOT TALKING TO EACH OTHER.

15         MR. VOSS:  YOUR HONOR  --

16          THE COURT:  MR. VOSS.

17         HERE'S WHAT'S GOING TO HAPPEN.  UNDER LITIGATION

18   PROTECTIVE ORDERS ARE ALLOWED.  YOU CAN PROVIDE THEM, AND YOU

19   CAN SET UP A TWO-TIER SYSTEM WHERE ONLY ATTORNEYS CAN LOOK AT

20   THE STUFF, NOT THEIR CLIENT.  YOU KNOW THAT.  I KNOW THAT.

21         RIGHT, MR. HARRIS?

22         MR. HARRIS:  YOUR HONOR, THERE IS ONE IN EFFECT.  AND YOU

23   SIGNED IT.

24         THE COURT:  OKAY.

25         AND WHAT'S THE PROBLEM, MR. VOSS?

1          MR. VOSS:  THE PROBLEM IS THIS, YOUR HONOR.  IS THAT THERE

2    IS WITH RESPECT TO TRADE SECRET INFORMATION THERE'S A DIFFICULTY

3    HERE IN THAT  -- AND WE HAVE A MOTION THAT IS IN DRAFT AND READY

4    TO GO.  THAT MS. LANG IS ON RECORD.  SHE WROTE THIS IN WRITING

5    SAYING THAT SHE WANTS THIS EVIDENCE  -- CONTRACTS, INVOICES,

6    EMAILS, CERTIFICATES OF DELIVERY  -- JUST FOR THE USE IN THE

7    PROSECUTION OF A THIRD PARTY  -- NOT US.  WE DIDN'T DO ANYTHING

8    WRONG.

9          WE CONTRACTED IN A SETTLEMENT AGREEMENT TO BE DONE

10   WITH THIS DISPUTE.  AND THAT SETTLEMENT AGREEMENT IS SUPPOSED

11   TO BE DISPOSITIVE OF THAT.  AND THAT SETTLEMENT AGREEMENT

12   SPECIFIED THE INFORMATION TO BE PROVIDED, WHICH WAS NEGOTIATED

13   AT ARM'S LENGTH.  IT WAS A FINITE LIST.

14         MS. LANG CAME BACK AFTER THE SETTLEMENT AGREEMENT

15   SAYING, I WANT MORE THAN WHAT I BARGAINED FOR.

16         THAT'S THE INFORMATION SHE'S NOW TRYING TO GET THROUGH

17   DISCOVERY.  THE PROBLEM  --

18         THE COURT:  NOW, MR. VOSS, YOU CAN MAKE THOSE

19   OBJECTIONS IN THE RFPS AND THINGS OF THAT NATURE.  BUT TO SAY

20   THAT YOU'RE NOT GOING  -- IT'S IN THE OBJECTIONS TO THE RFPS THAT

21   THIS PLAYS OUT, CORRECT"

22         MR. VOSS:  YES.

23         THE COURT:  OKAY.  SO,WE'LL  DEAL WITH THOSE TODAY.

24         MR. VOSS:  OH, OKAY.

25         THE COURT:  OKAY.

1          MR. VOSS:  THANK YOU.

2          THE COURT:  I HIGHLY SUGGEST ALSO, MR. VOSS, YOU GET

3     SOME DATES FROM YOUR CLIENT ASAP.  OTHERWISE I'M GOING TO SET IT

4     FOR THEM.  AND HE'S OBSERVANT -- HE'S AN OBSERVANT JEWISH

5     PERSON"

6          MR. VOSS:  AND IN AUSTRALIA.  SO, IT'S --

7          THE COURT:  I GET IT.  OKAY.

8          SO, WHEN'S HIS SABBATH?  FRIDAY AT SUNDOWN TO SATURDAY

9     SUNDOWN?

10         MR. VOSS:  YES.  AND THAT IS OUR FRIDAY DAY, IF YOU WILL.

11    SO, HE'S MONDAY TO THURSDAY.

12         THE COURT:  WE CAN  -- WE CAN FIGURE IT OUT THEN.

13         MR. VOSS:  AND I --

14         THE COURT:  ALL RIGHT.

15         MR. VOSS:  THAT'S ALL I WAS JUST SAYING.

16         THE COURT:  I SUGGEST THE DATE IS GOING TO BE SOMETIME IN

17    AUGUST TO ALLOW YOU FOLKS TO WORK OUT ANY 30(B)(6) TOPICS.

18    PERHAPS THE MIDDLE TO LATTER PART OF AUGUST.

19         I SUGGEST YOU GET DATES OVER TO MR. HARRIS BEFORE

20    NOON.  OTHERWISE I2 WILL SET ONE, SIR.  OKAY.

21         MR. VOSS:  NO PROBLEM.  THANK YOU, YOUR HONOR.

22         THE COURT:  SO, MR. HARRIS, I NEED YOU TO EMAIL ME THE

23    INTERROGATORY WITH THE RESPONSES, THE RFPS WITH THE

24    RESPONSES WITHIN THE NEXT 15 MINUTES.

25         AND WE WILL RECONVENE AT NOON.

1              MR. HARRIS:  OKAY.  YOUR HONOR, THERE ARE ALSO

2 SUPPLEMENTAL RESPONSES.  I'LL SEND THAT AS WELL.

3              THE COURT:  SURE.  THANK YOU.

4              MR. HARRIS:  THANK YOU.

5              (THE COURT BRIEFLY CONFERRING WITH CLERK.)

6              THE COURT:  WE'RE ADJOURNED.

7              (PROCEEDINGS IN RECESS TILL 12:00 NOON)

8              THE CLERK:  CALLING CASE NUMBER  -- CALLING CASE NUMBER

9 2:20 CV 5526, ATHENA COSMETICS, INC. VERSUS AMN DISTRIBUTION, INC.,

10 ET AL.

11              COUNSEL, YOUR APPEARANCES BEGINNING WITH THE

12 PLAINTIFFS.

13              MR. HARRIS:  GOOD AFTERNOON, YOUR HONOR.

14              MICHAEL HARRIS REPRESENTING THE PLAINTIFF ATHENA

15 COSMETICS, INC.

16              MR. VOSS:  GOOD AFTERNOON, YOUR HONOR.

17              DAVID VOSS REPRESENTING THE DEFENDANTS.

18              THE COURT:  VERY GOOD.  LET'S GO AHEAD AND START WITH

19 THE INTERROGATORIES FIRST.

20              WHAT I'M LOOKING AT IS THE AMENDED RESPONSES.  I BELIEVE

21 THOSE ARE THE MOST CURRENT ONE.

22              IS THAT FAIR TO SAY, MR. VOSS?

23              MR. VOSS:  THAT IS CORRECT.  THERE HAS BEEN NO MEET AND

24 CONFER SINCE THOSE WERE SERVED.

25              THE COURT:  GOT IT.

1          SO, LET'S GO STATE THE NAME, EMPLOYER,  STREET AND NAME

2   -- WELL, YOU'VE READ INTERROGATORY NUMBER 1.

3          MR. HARRIS, (PAUSE) WHAT'S YOUR ISSUE WITH THIS ANSWER?

4          MR. HARRIS:  MY  -- MY ANSWER  -- MY ISSUE IS TWO-FOLD,

5   YOUR HONOR.

6          BUT THE MAIN ONE IS THAT THERE'S AN OBJECTION IN THAT THE

7   ANSWER IS SAID TO BE DEPENDENT ON THE OBJECTION.

8          AND SO  --

9          THE COURT:  LET ME STOP YOU RIGHT THERE, MR. HARRIS.,

10  BECAUSE I THINK THIS IS GOING TO BE A RECURRENT THING.

11         IN YOUR RESPONSES DO YOU ALWAYS GIVE A   -- DO YOU

12  ALWAYS GIVE AN ANSWER WITHOUT SUBJECT TO YOUR OBJECTIONS?

13         MR. HARRIS:  YES.

14         THE COURT:  YOU DO.

15         MR. HARRIS:  NOW   --

16         THE COURT:  OKAY.

17         MR. HARRIS:   -- I DO.  THERE ARE OTHER PEOPLE IN THE FIRM

18  WHO DON'T DO THAT.

19         THE COURT:  OKAY.

20         MR. HARRIS:  BUT I DO.  IF THERE'S   --

21         THE COURT:  OKAY.

22         MR. HARRIS:    -- AN OBJECTION   --

23         THE COURT:   WHAT ABOUT  PEOPLE IN THIS CASE?   WHAT

24  ABOUT PEOPLE IN THIS CASE?  OTHER PEOPLE IN THIS CASE, HAVE THEY

25  GIVEN RESPONSES SUBJECT TO OBJECTIONS?

1          MR. HARRIS:  I BELIEVE SO, YOUR HONOR.

2          THE COURT:  OKAY.

3          MR. HARRIS:  THE  --

4          MR. VOSS:     -- YOUR HONOR, I DO  --

5          THE COURT:  I'M SORRY.  HOLD ON.

6          MR. VOSS, HOLD ON.  HE'S  -- I THINK MR.   -- YOU'RE ABOUT TO

7   SNATCH DEFEAT FROM THE JAWS OF VICTORY HERE.

8          BUT GO AHEAD, MR. VOSS, I WANT TO HEAR IT.

9          MR. VOSS:  MERELY THAT WE HAVE GOTTEN THE SAME FROM

10  COUNSEL.

11         WE HAVE NO ANSWERS TO DISCOVERY FROM THEM.

12         THE COURT:  I GET  -- THAT'S WHAT HE'S SAYING, THAT OTHER

13  PEOPLE ON THIS CASE HAVE BEEN PROVIDING OBJECTIONS.  AND WHEN

14  THEY DO PROVIDE OBJECTIONS OR ANSWERS THEY DO IT SUBJECT TO IT.

15         SO, LET'S HEAR IT OUT, MR. VOSS.

16         SO, MR. HARRIS, OTHER PEOPLE IN THIS CASE FROM YOUR

17  CLIENT  -- YOU ARE REPRESENTING YOUR CLIENT  -- HAVE PROVIDED

18  RESPONSES SUBJECT TO OBJECTIONS.

19         CORRECT?

20         MR. HARRIS:  CORRECT.  BUT  -- AND LET ME ADD THIS.

21         WE HAVE IN RESPONSE TO THE MEET AND CONFER WE

22  PRODUCED OVER 2,000 PAGES OF DOCUMENTS.

23         WE ANSWERED  THE INTERROGATORIES.

24         THE COURT:  MR.   -- MR. HARRIS  --MR. HARRIS, LET'S STAY

25  FOCUSED, SIR.

1    YOUR PROBLEM WITH THIS RESPONSE IS THAT HE IS GIVING IT

2    SUBJECT TO THE OBJECTIONS, RIGHT?

3         MR. HARRIS:  CORRECT.

4         THE COURT:   OKAY.  THAT'S NOT  GOING TO BE SOMETHING   --

5         ONE, IT IS AS I SEE IT  -- ONE, I THINK IT'S VAGUE.  I DON'T KNOW

6    WHAT CONTRACT YOU'RE TALKING ABOUT NOR WAS THAT TERM DEFINED

7    IN YOUR ROGS.  I LOOKED BACK AT THOSE UNLESS YOU CAN  -- UNLESS I

8    MISSED THEM.

9         DID I?

10        MR. HARRIS:  I DON'T KNOW  --

11        THE COURT:  YOU'VE GOT TO KNOW THIS STUFF BETTER THAN

12   ME, MR. HARRIS.

13        MR. HARRIS:  LET'S SAY I DID NOT  -- JUST  -- WITHOUT -- IN THE

14   MEET AND CONFER THERE WAS NEVER A DISCUSSION WHETHER

15   CONTRACT WAS THE TERM THAT WAS VAGUE.

16        EVERYONE KNEW WHAT THE CONTRACT WAS.

17        THE COURT:  OKAY.  WELL, I DON'T.

18        SO, HERE'S WHAT I'M SAYING.  I'M NOT   -- MY JOB ISN'T TO   --

19   THIS IS THE FUNCTION OF MEET AND CONFER WHICH YOU HAVE CHOSEN

20   NOT TO DO AND BROUGHT IT TO THE COURT INSTEAD.  SO, IT'S   -- NOW

21   WE'RE GOING TO GET RESOLUTIONS.

22        AND LET ME TELL YOU MY APPROACH.  MY APPROACH IS NOT TO

23   EDIT.  I LOOK AT THE INTERROGATORY AND RFP AS WRITTEN.  AND I'LL

24   MAKE A CALL.  OKAY.

25        MR. HARRIS:  FAIR ENOUGH.

1              THE COURT:  OKAY.  VERY GOOD.

2              SO, WOULD YOU AGREE THAT THIS INFORMATION  -- HAVE YOU

3    -- LET ME   -- JUST SOME BACKGROUND.

4              HAVE YOU FOLKS AGREED TO ANY SORT OF AN ESI PROTOCOL

5    IN THIS CASE, MR. HARRIS?

6              MR. HARRIS:  NO, YOUR HONOR.  AND SO FAR WE'VE AGREED

7    THAT COUNSEL WOULD EXCHANGE PDFS OF THE FILES UNLESS

8    SOMEBODY NEEDED A  -- AN ESI DOCUMENT.

9              THE COURT:  WHAT ABOUT   -- NO.  THE ESI IS GOING TO BE

10   RELATED TO SEARCH TERMS.

11             HAVE ANY SEARCH TERMS BEEN AGREED TO?

12             MR. HARRIS:  NO.

13             THE COURT:  WHY NOT?

14             MR. HARRIS:  I DIDN'T THINK IT WAS   -- I DIDN'T THINK THERE

15   WAS GOING TO BE THAT MANY DOCUMENTS THAT IT WOULD REQUIRE AN

16   -- AND MR. VOSS DIDN'T ASK FOR IT EITHER.

17             THE COURT:  OKAY.  WELL  -- OKAY.

18             OKAY.  WELL, YOU'VE GOT THE NAMES OF FOLKS.

19             I DO THINK IT'S ALSO HIGHLY IRREGULAR TO NOT  --

20             MR. VOSS, YOU HAVEN'T IDENTIFIED ALL MR. NEWMAN'S  AND

21   AMN'S COUNSEL EITHER.  PRESUMABLY, THEY HAVE THE SAME

22   INFORMATION THAT FOLKS WHO REPRESENT PLAINTIFF.

23             CORRECT?

24             MR. VOSS:  ACTUALLY, NO, YOUR HONOR.

25             THE REASON THAT WE HAVE LISTED THEM AS RELATED TO

1    COMMUNICATIONS THAT WERE MADE FROM THOSE FOLKIS AFTER THE

2    SETTLEMENT AGREEMENT AND PRIOR TO THE INSTITUTION OF LITIGATION

3    AND WHICH CORRESPONDENCE IS CLEAR ON ITS FACE IS NOT IN

4    ANTICIPATION OF LITIGATION, IT, IN FACT, OVERTLY STATES THAT WE ARE

5    NOT GOING TO BE PROSECUTED WITH THE INFORMATION SOUGHT.

6           SO, THOSE COMMUNICATIONS ARE THE RELEVANT

7    COMMUNICATIONS FOR WHICH THESE  --

8           THE COURT:  OKAY.

9           MR. VOSS:    -- PARTICULAR PEOPLE HAVE INFORMATION.

10          THE COURT: I JUST FIND IT VERY BAD FORM.  BUT YOU'LL DO

11   WHAT YOU DO.   IT'S JUST I THINK IT'S EVEN GONE BEYOND THE PALE FOR

12   THE UNCIVILITY WE HAVE IN CIVIL LITIGATION.

13          NEVERTHELESS  --

14          MR. VOSS:  I TRIED TO BE OVERLY DISCLOSING.

15          THE COURT:  MR. VOSS  --

16          MR. VOSS:  IT MAY NEVER SEE THE LIGHT OF DAY, BUT IT'S  --

17   THEY CERTAINLY ARE WITNESSES.  THAT'S WHAT THE QUESTION ASKED.

18          THE COURT:  GOT IT.  OKAY.

19          SO, I ALSO  -- MR. HARRIS, SO, YOU'VE GOTTEN THESE

20   ANSWERS.  I THINK SUBJECT TO   -- LET ME ASK MR. VOSS.

21          ARE YOU HOLDING BACK ANY OTHER INFORMATION IN

22   RESPONSE TO THIS INTERROGATORY?

23          MR. VOSS:  NO, YOUR HONOR.

24          THE COURT:  OKAY.

25          SO, MR. HARRIS, YOU'VE GOT YOUR FULL PLATE HERE.  OKAY.

1          MR. HARRIS:  OKAY.

2          THE COURT:  LET'S GO TO NUMBER 2.

3          STATE THE NAME, EMPLOYERS   -- I WON'T READ IT   -- SORRY.

4          (PAUSE IN PROCEEDINGS.)

5          THE COURT:  SO, ONE OF THE FIRST PROBLEMS I SEE WITH

6    THESE FIRST TWO INTERROGATORIES IS YOU'RE ASKING FOR LEGAL

7    CONCLUSIONS FULLY PERFORMED, ENFORCIBLE.

8          IT'S NOT SEEKING FACTS   -- LIKE WHO COLLECTED STUFF

9    RELATED TO SCHEDULE 1.   WHO COLLECTED STUFF RELATED TO

10   SCHEDULE 2, THINGS OF THAT NATURE.

11         TO ME THIS IS   -- WHO   -- KNOWING THAT FULLY PERFORMED

12   ITS CONTRACT WITH ATHENA.

13         I GET THAT YOU WANT TO MAKE SURE IT'S ALL INCLUSIVE, BUT

14   YOU'RE GOING OVERBROAD.

15         SO, HE'S ALSO PROVIDED NAMES IN THIS REGARD.  LET ME TRY

16   AND CUT THIS OFF AT THE PASS.

17         MR. VOSS, ARE THERE ANY OTHER FOLKS WHO ASSISTED IN

18   COMPILING THE INFORMATION FOR SCHEDULE 1 AND SCHEDULE 2?

19         MR. VOSS:  NO.

20         THE COURT:  OKAY.

21         MR. HARRIS, IS THAT   --

22         MR. HARRIS:  THEN I'LL   -- I GUESS I'LL HAVE TO LIVE WITH IT.

23   YES, YOUR HONOR.

24         THE COURT:  YES.  THANK YOU.

25         ALL RIGHT.  SO   --

1          MR. VOSS:  AND I   -- I RAISE THE   --

2          THE COURT:    -- INTERROGATORY   --

3          MR. VOSS::  -- INFLECTION A   -- (AUDIO OUT.)

4          THE COURT:  PARDON ME?

5          MR. VOSS:  I HAD RAISED THOSE ISSUES ON MEETING AND

6    CONFERRING.

7          THE COURT:  GOT IT.  OKAY.

8          INTERROGATORY NUMBER 30, HOW  -- STATE THE NAME,

9    EMPLOYER, STREET  --

10         HOW IS THIS DIFFERENT THAN SCHEDULE 2 OR, I'M SORY,

11   SCHEDULE 1, MR. HARRIS?

12         MR. HARRIS:  THIS IS   -- ONE IS FOR SCHEDULE 1.  AND ONE IS

13   FOR SCHEDULE 2.

14         THE COURT:  OKAY.

15         SO, THE NAMES, ADDRESSES OF ALL PERSONS SOLD   -- OKAY.

16   SO, HOW IS THIS DIFFERENT THAN ONE OF THE SCHEDULES?   --

17   INFORMATION THAT WAS PROVIDED THERE.

18         (PAUSE IN PROCEEDINGS.)

19         MR. HARRIS:  WE   -- WHAT WE'RE SEEKING HERE IS PEOPLE

20   WHO WERE NOT EITHER THE SCHEDULES BUT WHO WERE   --

21         THE COURT:  GOT   -- GOT IT.

22         BUT HE   -- THIS IS A VERIFIED RESPONSE.  IT'S GOING TO BE A

23   VERIFIED RESPONSE.  AND HE'S GOING TO SAY   -- AS I THINK HE DID   --

24   AS I THINK AMN DID, THAT THIS INFORMATION HAS BEEN PROVIDED IN

25   SCHEDULE 2.  AND THEY'RE GOING TO VERIFY THAT THAT'S A COMPLETE

1    LIST.

2                MR. HARRIS:  OKAY, YOUR HONOR  --

3                THE COURT:  OKAY.

4                MR. VOSS:  WITH --

5                DIRECTING YOUR ATTENTION TO PAGE 8, LINE 10.

6                THE COURT:  MR. HARRIS  -- MR. VOSS, HOW IS THIS MOVING

7    THE BALL FORWARD?  DIDN'T I JUST SAY WHAT YOU WANTED?

8                MR. VOSS:  THE  --

9                THE COURT:  WE'VE GOT A LOT TO GET THROUGH.  AND I WISH

10   YOU FOLKS HAD DONE A MEET AND CONFER.  AND I'M FORCED TO GET

11   INTO THE MIDDLE OF THIS AT A VERY GRANULAR LEVEL THAT I'M NOT

12   USED TO SINCE I WAS A PRACTITIONER.  SO, LET'S GET INTO IT.

13                MR. VOSS:   I TRIED.

14                THE COURT:  SO, MR. HARRIS, YOU GOT   -- THEY  -- THEY

15   VERIFIED THE RESPONSE OR THAT'S ALL THERE IS.  YOU MAY NOT LIKE IT,

16   BUT THAT'S WHAT    -- THAT WHAT IT IS.

17                RIGHT?

18                MR. HARRIS:  CORRECT.

19                THE COURT:  OKAY.  LET'S GO TO INTERROGATORY NUMBER 4,

20   PLEASE.

21                MR. HARRIS:  I THINK THIS WILL BE THE SAME ISSUE, YOUR

22   HONOR.

23                THE COURT:  VERY GOOD.  SO, THAT'S RESOLVED AS WELL? --

24   INTERROGATORY NUMBER 5?

25                (PAUSE IN PROCEEDINGS.)

1        MR. HARRIS:  THE REASON WE DIDN'T THINK THAT THIS WAS A

2    COMPLETE ANSWER WAS THAT HE    -- HE DIDN'T SAY THAT HIS JOB AT

3    AMN WAS HIS ONLY JOB.  AND IT ASKED FOR WHO ELSE HE WORKED FOR.

4    BECAUSE WE   --

5        THE COURT:  HOW IS THIS RELEVANT?

6        MR. HARRIS:  BECAUSE WE BELIEVE THAT THERE ARE A NUMBER

7    OF COMPANIES OF WHICH HE IS INVOLVED WHO ARE SELLING

8    COUNTERFEITS.

9        THE COURT:  OKAY.

10       MR. HARRIS:  SO, A SIMPLE ANSWER  IS HE ONLY WORKED FOR

11   THIS -- FOR AMN WOULD HAVE BEEN SUFFICIENT.  BUT HE DIDN'T SAY

12   THAT.

13       THE COURT:  MR. VOSS.

14       MR. VOSS:  TWO THINGS, YOUR HONOR.

15       NUMBER ONE, IT'S NOT RELEVANT GIVEN THE FACT THAT THERE

16   HAS BEEN NOT A SINGLE REPRESENTATION IN A PLEADING OR ANYTHING

17   AT ALL OF SOME NEFARIOUS CONDUCT OF SOME OTHER SORT.  THIS IS A

18   TOTAL FISHING EXPEDITION IN THAT RESPECT.

19       NUMBER TWO, I DO COME BACK TO IQBAL.

20       AND THE PLAINTIFF HERE IN THEIR DISCOVERY RESPONSES

21   HASN'T IDENTIFIED A WITNESS, A DOCUMENT AND ANYTHING  -- NOT ONE

22   SINGLE SHRED.

23       AND SO WE   --

24       THE COURT:  MR. VOSS   --

25       MR. VOSS:   -- CAN'T COMPELLED TO BE   --

1          THE COURT:  MR. VOSS, YOU   -- YOU RODE THAT HORSE IN

2     FRONT OF JUDGE WILSON.  HE DENIED IT.

3          RIGHT?

4          MR. VOSS:  I DON'T BELIEVE THAT'S   -- I ACCEPT THE COURT'S

5     RULING WITH RESPECT TO MOTION FOR SUMMARY JUDGMENT, YOUR

6     HONOR.  BUT IT'S NOT THE SAME THING WHEN IT COMES  TO THE   --

7          THE COURT:  DISMISSAL.

8          MR. VOSS:  SORRY   --

9          THE COURT:  YOU TRIED TO GET THIS CASE.  AND YOU COULD   --

10    YOU TRIED TO GET THIS CASE DISMISSED, RIGHT?

11         MR. VOSS:  AND WHAT THE COURT SAID IS THAT IT'S GOING TO

12    -- IT DIDN'T SAY THERE WAS   -- THAT IT WASN'T RECEIVING OUR MOTION

13    FOR SUMMARY JUDGMENT.

14         BUT COUNSEL THREW UP AND SAID THERE ARE DISCOVERY

15    DISPUTES HE'S ENTITLED TO HAVE RESOLVED   -- LIKE THESE

16    INTERROGATORIES WHERE HE GOT THE ANSWERS ALREADY.

17         THE COURT:  I GET   -- I GET IT.

18         MR. VOSS, THOUGH, RIGHT NOW THERE IS A LIVE CLAIM

19    RELATED TO TRADEMARK INFRINGEMENT AGAINST MR. NEWMAN.

20         CORRECT?

21         MR. VOSS:  THERE IS A CLAIM THAT IS IN A SECOND PHASE OF A

22    BIFURCATED MATTER IN WHICH THE TWO MATTERS DON'T HAVE ANY

23    CROSS-OVER FACTS AT ALL.

24         THE COURT:  OKAY.  MR. VOSS, IS    -- DID JUDGE WILSON

25    ORDER DISCOVERY BIFURCATED?

1          MR. VOSS:  HE DID NOT.  IF NECESSARY, WE ARE GOING TO   --

2    AND I WAS   -- I WANTED TO SEE HOW THIS RULE 4 WAS GOING TO GO

3    BECAUSE IT'S AN INFORMAL THING.

4          BUT WE WANTED TO DISCUSS WITH YOU THE FACT THAT IT IS

5    BIFURCATED, THAT IT   -- THAT IT IS   -- AND IF NECESSARY WE'LL SEEK A

6    FORMAL BIFURCATION OF DISCOVERY.

7          THIS WAS INCLUDED IN OUR RULE 26 REPORT THAT WE

8    PROVIDED TO THE COURT.  AND WE DID DISCUSS THE FACT THAT IN THIS

9    CASE WHERE IF THEY HAVE NO CASE WHATSOEVER   -- IF THEIR CASE IS

10   DISPOSED OF BECAUSE THE SETTLEMENT AGREEMENT WAS

11   CONTROLLING, THEN, IT'S END OF CASE.  SO WE DON'T GET TO ANY OF

12   THESE OTHER ISSUES.

13          AND, SO, I AM MINDFUL OF THE FACT HERE THAT THE COURT

14   HAS THE RIGHT AND THE OPPORTUNITY TO EITHER STAY OR LIMIT

15   DISCOVERY ON A CASE-BY-CASE BASIS.

16          I THINK THAT'S GOING TO BECOME EVEN MORE RELEVANT AS

17   YOU LOOK AT THE DOCKET REQUESTS.  BUT THROUGH ITS   -- COUNSEL IS

18   TRYING TO MISUSE THIS TO DO A COMPLETE CAVITY SEARCH OF MY

19   CLIENT WHEN THEY HAVEN'T   --

20          THE COURT:  MR. VOSS   -- MR. VOSS   --

21          MR. VOSS:   -- PRODUCED   --

22          THE COURT: MR. VOSS, LET ME   --

23          MR. VOSS:    -- OVER DEFENDING   --

24          THE COURT:  OKAY.  I CAN'T BIFURCATE DISCOVERY.  ONLY

25   JUDGE WILSON CAN.  HE HASN'T..

1          MR. VOSS:  AND WE CAN  -- WE CAN BRING THAT MOTION.

2          THE COURT:  DO WHAT YOU'VE GOT TO DO.

3          MR. VOSS:  OKAY.

4          THE COURT:  SECOND, HOW BURDENSOME WOULD IT BE TO

5    PROVIDE THIS INFORMATION?

6          MR. VOSS:  WELL, HANG ON.  I'M WRITING.

7          THE COURT:  NOW.  MR. VOSS  --

8          MR. VOSS:  I'M JUST WRITING  -- I'M WRITING YOUR WORDS

9    DOWN, YOUR HONOR.

10          THIS PARTICULAR INFORMATION THAT NEWMAN, WHERE ELSE

11   HE WORKED.  HE DIDN'T WORK.  AND THIS IS HIS EMPLOYER.

12          THE COURT:  MR. VOSS, I'M  -- A SIMPLE QUESTION.

13          HOW  -- SO, ARE YOU SAYING AMN WAS HIS ONLY EMPLOYER?

14          MR. VOSS:  TO MY UNDERSTANDING, YES, THAT'S CORRECT.

15          THE COURT:  IS IT VERIFIED BY YOUR  --

16          MR. VOSS:  THE  --

17          THE COURT:   IS IT VERIFIED BY YOUR CLIENT?

18          MR. VOSS:  I BELIEVE WE PROVIDED THE VERIFICATIONS AS

19   WELL.

20          THE COURT:  MR. HARRIS, WAS IT VERIFIED THAT THIS IS HIS ---

21          MR. VOSS:  YES.

22          THE COURT:   -- EMPLOYMENT?

23          MR. HARRIS:  NO.  NO.  IT  -- IT WAS VERIFIED, BUT IT'S NOT  -- IT

24   DOESN'T SAY IT'S HIS ONLY EMPLOYER.

25          IT JUST SAYS HE IS  CEO.

1      THE COURT:  OKAY.  MR. VOSS, HOW  --

2      MR. VOSS:  WHERE IS THE RELEVANCE?

3      THE COURT:  MR. VOSS, HOW   -- HOW BURDENSOME WOULD IT

4   BE TO PROVIDE THIS INFORMATION, SIR?

5      MR. VOSS:  I DON'T KNOW THAT IT WOULD BE BURDENSOME AT

6   ALL, YOUR HONOR.  BUT THEY   --

7      THE COURT:  OKAY.

8      MR. VOSS:  -- HAVE   --

9      THE COURT:  IT'S   -- YOU'LL ANSWER IT THEN.

10     MR. VOSS:  ALL RIGHT.  WELL, I BELIEVE THAT THE ONLY CHANGE

11   WOULD BE  "ONLY" AS VERSUS  "THIS IS."

12     THE COURT:  HOWEVER YOU DEEM APPROPRIATE, MR. VOSS.

13     MR. VOSS:  NUMBER 5.

14     THE COURT:  STATE EVERY STREET AND EMAIL ADDRESS FOR

15   NEWMAN FROM JUNE 2019 TO THE PRESENT.

16     MR. HARRIS.

17     MR. HARRIS:  YES, YOUR HONOR.

18     THE COURT:  WHY IS THAT A   -- YOU'RE GETTING INTO SOME

19   PRIVACY AREAS HERE.

20     MR. HARRIS:  WE ARE, YOUR HONOR.

21     BUT WITH COUNTERFEITERS A LOT OF TIMES THEY WILL STORE

22   DOCUMENTS AT THEIR HOME.  I FOUND THAT WITH OTHER

23   COUNTERFEITERS WHO ARE UNRELATED TO THIS CASE.

24     AND, SO, WE WANT TO KNOW WHERE  -- WHERE THEY POSSIBLY

25   ARE SO THAT WE CAN ASK THE QUESTIONS DURING DEPOSITIONS.

1          THE COURT:  I GOT IT.  BUT OKAY.  SO, IF HE STORES THEM

2     THERE, RIGHT  -- I GET COUNTERFEITERS STORE STUFF ACCORDING TO

3     YOUR ALLEGATION  -- AND HE'S AN ALLEGED  -- YOU'VE ALLEGED IT.

4          MR. HARRIS:  RIGHT.

5          THE COURT:   NOTHING HAS BEEN PROVEN YET.

6          LET ME  -- LET ME ALSO ASK YOU THEN.  OKAY.  SO, YOU GET

7     WHERE HE LIVES.

8          HOW DOES THAT HELP YOU AND COUNTER-WEIGH AGAINST

9     WHEN YOU ASK HIM IN DEPOSITION LIKE DID YOU KEEP STUFF AT YOUR

10    HOME.  THAT'S YOUR  -- AND ANY OTHER PLACE.

11         YOU CAN ASK THAT, RIGHT?

12         MR. HARRIS:  YOU'RE RIGHT, YOUR HONOR.

13         THE COURT:  SO, LET'S WITH-  -- WOULD YOU WITHDRAW

14    INTERROGATORY NUMBER 6?

15         MR. HARRIS:  YOUR HONOR, THERE'S ONE OTHER ISSUE WITH

16    INTERROGATORY 6  -- WHY I DON'T' WANT TO WITHDRAW IT.  AND THAT IS

17    THAT SOMEBODY MIGHT LIVE THERE WHO LIVED THERE WHEN DOCUMENT

18    -- WHEN COUNTERFEITS WERE STORED.

19         AND IF I KNOW WHO IT IS, I CAN DEPOSE THEM.

20         THE COURT:  BUT THIS INTERROGATORY DOESN'T GIVE YOU

21    THAT INFORMATION.

22         HOW DOES THIS INTERROGATORY TELL YOU OF ANY OTHER

23    PERSON WHO HE LIVED WITH WHO MAY HAVE BEEN ENGAGED IN THE

24    SAME ACTIVITY?

25         MR. HARRIS:  THERE'S OTHER WAYS TO FIND OUT WHO  -- WHO

1    LIVED AT THE HOUSE  --

2              THE COURT:  BASED ON   --

3              OKAY.  YOU'RE SAYING BASED ON AN EMAIL ADDRESS, STREET

4    ADDRESS, TELEPHONE NUMBERS, YOU CAN GET A   -- DO A BACKWARDS

5    CHECK ESSENTIALLY?

6              MR. HARRIS:  RIGHT.

7              THE COURT:  GOT IT.  OKAY.

8              MR. VOSS:   MAY I BE HEARD?

9              THE COURT:  YEAH.

10             MR. VOSS:  NUMBER ONE, COUNSEL REPRESENTED IN THIS

11   MEET AND CONFER SUMMARY THAT WAS SENT TO YOU FOR RULE 4 THAT

12   WE DID NOT ANSWER ANY OF THE   -- THE INTERROGATORIES.

13             WE ANSWERED AS I SAID EVERY INTERROGATORY.

14             IF YOU LOOK AT THE ANSWER TO NUMBER 6, WE PROVIDED HIS

15   RESIDENCE ON RUMIA ROAD IN AUSTRALIA.   AND HIS PRIOR RESIDENCE

16   WHERE HE RESIDED FROM MARCH 2013 TO 2019.

17             WHY AM I HERE?

18             THE COURT:  I AGREE.

19             MR. HARRIS.

20             MR. HARRIS:  OKAY, YOUR HONOR.  WE'LL WITHDRAW IT.

21             THE COURT:  WELL, NO.  I MEAN, YOU HAVE THE ANSWER, SIR.

22             MR. HARRIS:  NO.  I AGREED.  I AGREED.  I'M GOING TO  --

23             THE COURT:  OKAY.

24             MR. HARRIS:   I'M WITHDRAWING MY COMPLAINT ABOUT IT.

25             THE COURT:  GOT IT.  LET'S GO TO  -- SO, ALL THE IN-  -- ANY

1    OTHER THINGS REGARDING THE INTERROGATORIES, MR. HARRIS?

2              MR. HARRIS:  NO, YOUR HONOR.

3              THE COURT:  VERY GOOD.

4              LET'S GO TO THE AMENDED RFPS THEN.

5              OKAY.  REQUEST ALL DOCUMENTS MENTIONING ATHENA FROM

6    JANUARY 1, 2019 TO THE PRESENT.

7              IT SEEMS OVERBROAD.  AND THIS IS WHY I WANTED TO GET AN

8    ESI.

9              WHY HAVEN'T YOU FOLKS AGREED ON A KEY WORD SEARCH

10   THAT COULD BE DONE FOR ELECTRONICALLY MAINTAINED MATERIAL?

11             MR. VOSS:  WE SIMPLY DON'T NEED IT.

12             THE COURT:  I'M SORRY, MR. VOSS?

13             MR. VOSS:  WE SIMPLY DON'T NEED IT.

14             THE COURT:  OKAY.  BUT YOU DON'T'    -- BUT WOULDN'T LIKE TO

15   HAVE IT TO BENEFIT YOU AS WELL?

16             MR. VOSS:  WE HAVE PRECIOUS LITTLE DISCOVERY TO ASK IN

17   THIS CASE.

18             THE COURT:  NO, NO, NO.  TO PROVIDE.

19             MR. VOSS:  I APPRECIATE THAT, YOUR HONOR.  WE AGREED TO

20   PRODUCE IT.  WE DID MEET AND CONFER ON THIS IN PREPARING OUR

21   RULE 26 REPORT.

22             COUNSEL CORRECTLY REPRESENTED THAT WE AGREED THAT

23   WE WOULD DO PDF UNLESS IT BECAME A BURDENSOME ISSUE AT WHICH

24   TIME WE WOULD CONSIDER ALTERNATIVE MEANS.

25             I DON'T THINK IT IS A BURDENSOME ISSUE.

1          THE COURT:  SO, HAVE YOU  -- HAVE YOU PREPARED  -- HAVE

2    YOU PROVIDED ALL DOCUMENTS MENTIONING ATHENA FROM JANUARY 1,

3    2019 TO THE PRESENT, SIR?

4           MR. VOSS:  NO, WE HAVE NOT.

5          THE COURT:  OKAY.  WHY NOT?

6          MR. VOSS:  I BELIEVE WE ADMITTED THAT EARLIER.

7          THE COURT:  BUT WHY NOT?

8          MR. VOSS:  IT'S  --

9          THE COURT:  IT'S NOT A BURDEN.  YOU JUST SAID IT'S NOT A

10   BURDEN TO PRODUCE IT.

11          MR. VOSS:  WELL, YOUR HONOR, THE  -- THE BURDEN WITH

12   RESPECT TO I JUST SAID OUR DISCOVERY REQUESTS NOT THE OTHER

13   WAY AROUND.

14          THE COURT:  AND I SAID EF- -- AND, MR. VOSS, THIS IS   --

15   PLEASE, SIR.  I'M ASKING FOR ESI FOR YOUR BENEFIT.  YOU DON'T WANT

16   IT, HEY, THAT'S FINE.

17          I'M ASKING  --

18          MR. VOSS:  I WILL  -- I WILL MEET AND CONFER WITH COUNSEL

19   ABOUT ESI.

20          THE COURT:  MR.   --  MR. HARRIS, DO YOU THINK THAT WOULD

21   BE HELPFUL IN HELPING NARROW DOWN THE SEARCH TO ANYTHING THAT

22   MENTIONS ATHENA IS GOING TO BE   -- I DON'T KNOW HOW BURDENSOME

23   IT IS.  I DON'T KNOW WHAT THE ISSUES ARE.  I DON'T KNOW WHAT A

24   FORMAT THAT   -- PRESUMABLY MR. VOSS HAS ALSO SENT A LETTER TO

25   HIS CLIENT TO MAINTAIN ALL THE INFORMATION, BOTH ON HIS PHONE,

1    WHATSAPP, ET CETERA, RIGHT?

2           MR. HARRIS:  YOUR HONOR, I   -- I JUST DID AN ESI IN ANOTHER

3    CASE.   AND I THINK IT WOULD BE USEFUL HERE.

4           THE COURT:  OKAY.  SO, YOU GUYS WANT TO TALK ABOUT

5    REQUEST NUMBER 1 AND APPROPRIATE ESI THAT WOULD HOPEFULLY

6    NARROW IT DOWN TO THE RELEVANT ISSUES.

7           MR. HARRIS:  YOUR HONOR, MAYBE IT WOULD HELLP FOR ALL OF

8    THE REQUESTS.

9           THE COURT:  I AGREE.  BUT LET'S  -- LET'S DO THAT.

10          BUT SOME OF   -- BEFORE I GET TO  -- BEFORE I LET YOU FOLKS

11   GO, YOU KNOW, SO ALL DOCUMENTS   -- SO, RFP NUMBER 2 WOULD ALSO

12   BE BENEFITED BY THAT?

13          (PAUSE IN PROCEEDINGS.)

14          THE COURT:  YEAH.  RF-  -- ALL OF THEM  -- I'M  -- I WAS  -- I

15   WAS AT THE POINT WHERE I WAS LOOKING AT A LOT OF THESE.  SO, LET'S

16   PUT THAT WITH RESPECT TO   -- HAVE A MEET AND CONFER WITH

17   RESPECT TO THE ESI PROTOCOLS THAT MR. VOSS CAN THEN EFFICIENTLY

18   IMPLEMENT SO THAT THEY'RE NOT HAVING TO LOOK THROUGH

19   EVERYTHING.

20          AND EVEN THOUGH THEY'RE SUPPOSED TO BE PRODUCED IN

21   THE PDF FORMAT THEY CAN BE LOCATED AND SEARCHED FOR IN A MORE

22   EFFICIENT MANNER.

23          MR. HARRIS, THOUGHTS?

24          MR. HARRIS:  NO.  I   -- AGREED.

25          THE COURT:  MR. VOSS?

1          MR. VOSS:  AGREED, YOUR HONOR.

2          I DO THINK THAT SOME OF OUR OBJECTIONS ARE RELEVANT TO

3     SOME OF THESE QUESTIONS.

4          I'M FLIPPING THROUGH THEM AS WE'RE DISCUSSING THAT.

5          FOR EXAMPLE, YOUR SOURCES FOR  -- FOR WHOM YOU

6     SHIPPED GOODS USING ATHENA TRADEMARK.

7          THE COURT:  WHAT RFP IS THAT, SIR?

8          MR. VOSS:  NUMBER 3.

9          THE COURT:  OKAY.

10         MR. VOSS:  IT'S JUST UNWIELDY TO  -- I'M NOT SURE WHAT HE'S

11    REALLY TRYING TO ACHIEVE THERE GIVEN THAT  --

12         AGAIN, THE SCHEDULE  --

13         THE COURT:  I CAN TELL YOU  --

14         MR. VOSS:   -- IS  --

15         THE COURT:  MR. VOSS, WHAT HE'S TRYING TO SEE  -- WHAT

16    HE'S TRYING TO SEE IS OFTENTIMES COUNTERFEITERS WILL GET TO

17    SUPPLIERS, LET'S SAY, IN OTHER COUNTRIES.  AND THEY'LL HAVE THEM

18    MANUFACTURED.  AND THEN THERE WILL BE A DROP SHIP OR A MIDDLE

19    PERSON FOR THAT COUNTERFEITER ON THE OTHER SIDE.

20         MR. VOSS:  WELL, HE SHOULD HAVE ASKED THAT QUESTION

21    DIRECTLY.

22         THE COURT:  THAT'S WHAT HE  -- THAT'S HOW I SEE IT.  AND

23    THAT'S  --

24         HE'S MENTIONING ANY SOURCE FROM WHOM YOU SHIPPED

25    USING ANY ATHENA TRADEMARKS.

1    IF YOU GOT STUFF WITH ATHENA TRADEMARKS FROM ANYBODY

2    OTHER THAN ATHENA, HE WANTS TO KNOW.

3    MR. VOSS:  WELL, YOUR HONOR, WHEN WE MET AND

4    CONFERRED WITH MR. HARRIS HE MADE NO SUCH REPRESENTATION

5    THAT THAT WAS WHAT HE WAS SEEKING BY WAY OF THIS QUESTION.

6    AND WE DON'T DROP SHIP.

7    THE COURT:  PARDON ME?

8    MR. VOSS:   WE DON'T DROP SHIP.

9    IN FACT, YOUR HONOR, IN THE SETTLEMENT

10    --

11    THE COURT:  NO.  IT'S NOT JUST DROP SHIPPING.  IT'S

12    BASICALLY IF YOU'RE ORDERING IT FROM SOMEBODY  -- LET'S SAY THE

13    ALLEGATION IS THAT YOU WERE ORDERING A MANUFACTURER TO MAKE

14    COUNTERFEIT GOODS FOR YOU.

15    HE'S ASKING FOR   -- FOR WHOM YOU SHIPPED GOODS USING

16    ANY ATHENA.   WHO THOSE MANUFACTURERS ARE AS WELL.

17    MR. VOSS:  AND, AGAIN, WE HAVE DISCLOSED ALL OF THAT IN

18    THE SCHEDULES AS REQUIRED BY THE SETTLEMENT AGREEMENT.

19    AND  --

20    THE COURT:  RIGHT.  I GOT THAT.

21    MR. VOSS:  THE SETTLEMENT AGREEMENT –

22    THE COURT:  I GOT IT.

23    MR. VOSS:  -- AMONGST OTHER THINGS REQUIRED US TO SHIP

24    BACK TO THE MALL THE INVENTORY IN OUR POSSESSION.  WE HAD

25    NOTHING LEFT TO SELL.

1        THE COURT;  SURE.  SO, IT SHOULD BE AN EASY ONE.  YOU'VE

2    GOT SCHEDULE 1, SCHEDULE 2.  AND HERE YOU GO.

3         MR. VOSS:  VERY WELL.

4        THE COURT:  OKAY.

5        BUT HE WANTS ACTUALLY STUFF BEYOND THAT.  I THINK HE  --

6    THIS IS – THIS IS WHERE THE ESI PROTOCOL WOULD BE HELPFUL.

7        I DON'T KNOW IF THERE IS OTHER COMMUNICATIONS AND

8    THINGS LIKE THAT.

9        MR. VOSS:  NOT TO MY KNOWLEDGE, YOUR HONOR.

10        THE COURT:  OKAY.  WELL, YOU'LL HAVE TO DO AN ESI SEARCH

11    -- YOU GUYS CAN TALK ABOUT THAT BECAUSE IT MAY IMPLICATE RFP

12    NUMBER 3.

13        ALL INVOICES, SHIPPING DOCUMENTS AND BILLS OF LADING FOR

14    YOUR SHIPPING OF ATHENA GOODS.

15        AGAIN, THE ESI PROTOCOL HOPEFULLY WILL NARROW THIS

16    DOWN.  I DON'T KNOW WHAT FORMAT MISINFORMATION IS KEPT IN BY

17    DEFENDANTS.

18        AND IF IT TURNS OUT THAT IT'S NOT KEPT IN A – IN AN

19    ELECTRONIC FORMAT, THEN, WE CAN FIGURE IT OUT.

20        OKAY.

21        MR. VOSS:  AND, AGAIN, YOUR HONOR  --

22        THE COURT:  SAME  --

23        MR. VOSS:   -- I WOULD – I WOULD ADDITIONALLY NOTE BECAUSE

24    THESE THINGS GET SOLD ON PAYPAL  -- OKAY.  AND THERE'S BEEN A

25    THIRD-PARTY SUBPOENA TO PAYPAL REQUESTING ALL THIS

1    INFORMATION.

2              I UNDERSTAND FROM MS. LANG THAT DOCUMENTS WERE

3    PRODUCED BY PAYPAL.  I HAVEN'T SEEN THEM YET.  BUT THAT'S HOW IT'S

4    SHIPPED.  SO  --

5              THE COURT:  YOU DON'T KEEP YOUR OWN ACCOUNTING

6    SYSTEM, MR. VOSS?  -- YOUR COMPANY.

7              MR. VOSS:  TO MY UNDERSTANDING THEY USE THE ONLINE

8    STUFF WITH THE PAYPAL, THE WALMART, THE – THE – AND THEY JUST

9    RUN IT ALL THROUGH THEM.

10             THE COURT:  I GOT IT, BUT YOU DON'T HAVE YOUR OWN

11   QUIKBOOKS OR ANYTHING TO DO YOUR TAXATION OR ANYTHING LIKE

12   THAT TO  -- IF YOU KNOW?

13             MR. VOSS:  I HONESTLY CANNOT ANSWER THAT QUESTION.

14   THEREFORE, I'M NOT GOING TO VENTURE A GUESS.

15             THE COURT:  FAIR ENOUGH.

16             SO, WHY DON'T WE LET – BEFORE – LET'S GET TO THIS ESI.  I

17   THINK THE ESI PROTOCOLS WILL HELP IN IDENTIFYING AND NARROWING

18   DOWN THIS –

19             MR. VOSS:  I THINK THEY USE – IN MY DISCUSSIONS WITH MY

20   CLIENT I BELIEVE  -- BUT, AGAIN, I'M GOING TO ASK THAT MORE DIRECT

21   QUESTION YOU ASKED –

22             THE COURT:  VERY GOOD.

23             MR. VOSS:  BUT I BELIEVE THEY USED THE ONLINE SERVICES AS

24   PROVIDED –

25             THE COURT:  OKAY.

1    MR. VOSS:  -- THAT TRACKED EVERYTHING.

2    THE COURT:   OKAY.  SO, 6, 7 AND 8, LET'S SEE WHAT THE ESI

3  PROTOCOLS LIMIT IT TO AND HOW WE CAN NARROW IT DOWN TO MAKE IT

4  MORE COST EFFECTIVE TO PRODUCE THIS INFORMATION.

5    MR. VOSS:  AND I THINK THESE ALSO COME BACK TO THE ISSUE

6  OF OUR MOTION TO BIFURCATE WHICH I WILL BRING.

7    IN THAT  --

8    THE COURT:  -- SO, NOT MY PAY GRADE, MR. VOSS.

9    MR. VOSS:  I UNDERSTAND.  THANK YOU.

10    THE COURT:  OKAY.  SO, RFP NUMBER 13  --

11    MR. VOSS:  13.

12    THE COURT:  -- I MEAN, PART OF THESE SEEM -- SO NEWMAN'S

13  COMPENSATION, A LOT OF THIS IS GETTING REALLY FAR AFIELD AND JUST

14  INTO AREAS THAT DON'T NECESSARILY COME HERE.

15    FUNDAMENTALLY, MR. HARRIS, IF YOUR CLIENT IS SEEKING

16  REVENUES ASSOCIATED WITH THE SALE OF ATHENA PRODUCTS  -- RIGHT

17  -- I MEAN, THAT'S WHAT YOU WANT TOP LINE.

18    AND THEN WHAT WOULD HAPPEN NORMALLY IS DEFENDANTS

19  WILL SAY WELL, THAT'S NOT HOW MUCH WE MADE ON IT IN A

20  DISGORGEMENT ARGUMENT, RIGHT?

21    MR. HARRIS:  CORRECT.

22    THE COURT:  SO, IF  -- IF  -- IF THE DEFENDANTS DON'T WANT TO

23  TURN OVER HOW THEY'RE CALCULATING THEIR P&L'S ASSOCIATED FROM

24  THIS PRODUCT, THAT'S ON THEM.

25    MR. HARRIS:  GREAT.  I AGREE.

1          THE COURT:  RIGHT?

2          IS THAT OKAY?

3          MR. HARRIS:  YEAH.

4          THE COURT:  AND YOU'VE ASKED IT.  THEY'VE SAID  -- I MEAN, I

5    THINK TO ASK FOR THE P&L ASSOCIATED WITH THE ATHENA SALE OF THE

6    PRODUCTS IS IMMINENTLY FAIR AND REASONABLE.

7          AND IF THEY DON'T WANT TO PRODUCE IT, I – I MEAN, IF YOU'RE

8    – IF YOU'RE MOVING FOR THAT – AND WE'LL GET TO THAT DOWN THE WAY

9    – BUT TO ASK FOR HIS COMPENSATION – I GET THEN ON THE P&L YOU MAY

10   THEN BE ABLE TO DRILL DOWN TO SEE HOW DO YOU ARRIVE AT THIS P&L,

11   RIGHT?

12         ARE THEY – ARE THEY PUTTING IN COMPENSATION IF LET'S SAY

13   MR. NEWMAN HAS FIVE OR SIX COMPANIES, HE'S PUTTING HIS  -- HE'S

14   PUTTING HIS, LET'S SAY, SALARY –

15         MR. HARRIS, WE'RE IN THE MIDDLE OF A HEARING, SIR.

16         OKAY.

17         IF HE'S PUTTING IN A SALARY, LET'S SAY, IN A PROFITABLE

18   COMPANY ONE YEAR AND THEN KIND OF SWITCHING IT AROUND, THAT'S A

19   FAIR AREA OF INQUIRY.  IF THEY'RE TRYING TO MANIPULATE P&L'S TO

20   SHOW LOWER PROFITS ON A PROFITABLE COMPANY ONE YEAR VERSUS

21   ON A NEXT YEAR.

22         YOU WITH ME ON THAT?

23         MR. HARRIS:  YES, YOUR HONOR.

24         THE COURT:  OKAY.  AND I THINK THAT'S YOUR CONCERN,

25   RIGHT?  -- THAT THIS GUY HAS A LOT OF SMALL COMPANIES.

1          BUT, MR. VOSS, HE'S ALLOWED TO EXPLORE IT, SIR.

2          MR. VOSS:  BUT HE'S NEVER EVIDENCED IN MEETING AND

3     CONFERRING THAT THAT WAS ANY OF THE IMPORT OF THIS QUESTION

4     WHATSOEVER.

5          WHILE YOU, YOUR HONOR, ARE RAISING THESE ISSUES, THAT

6     THESE ARE THE THINGS YOU WOULD LOOK TO, THESE WERE NOT THE

7     THINGS COUNSEL SAID HE WAS LOOKING TO WHEN WE MET AND

8     CONFERRED.

9          THE COURT:  OKAY.

10         MR. VOSS:  HE DIDN'T RAISE ANY OF THESE ISSUES.

11         THE COURT:  WELL  -- YEAH, THE OTHER THING IS SO THE

12    COMPENSATION AND THEN THE BANK ACCOUNTS   -- THE BANK ACCOUNTS

13    TO ME ARE VERY  -- IT'S A TOUCHY SUBJECT BECAUSE THEN YOU'RE

14    GETTING INTO VERY PERSONAL INFORMATION.  AND THERE'S GOT TO BE A

15    LIMIT THAT YOU FOLKS AGREE TO AS IT RELATES TO INCOME ASSOCIATED

16    FROM HIS BUSINESSES.

17         AND YOU'RE GOING TO HAVE TO FASHION THAT SO THAT HE

18    DOESN'T HAVE TO DISCLOSE, FOR EXAMPLE, IF HE WAS GETTING A

19    DISTRIBUTION FROM A TRUST FROM HIS FATHER WHO PASSED AWAY 10

20    YEARS AGO.  THOSE ARE NOT THE THINGS YOU GET.

21         MR. HARRIS:  AND, PERHAPS, WE CAN DO THAT WITH THE ESI.

22         THE COURT:  VERY GOOD.

23         MR. HARRIS:  YOUR HONOR  --

24         MR. VOSS:  AND THAT  --

25         MR. HARRIS:  YOUR HONOR, JUST A SECOND.  MAY I GET UP TO

1     CLOSE THE DOOR?

2          THE COURT:  SURE.

3          MR. HARRIS:  SOMEBODY CLOSED IT FOR ME.

4          THE COURT:  THANK YOU.

5          MR. VOSS.

6          MR. VOSS:  YES, YOUR HONOR.  ONE OF OUR OBJECTIONS IS

7     THAT SOME OF THESE THINGS ARE BURDENSOME.

8          AND WHAT COUNSEL SAID TO ME IN MEETING AND CONFERRING

9     ON THIS WAS THAT WHAT HE BELIEVED HE WAS ENTITLED TO WAS TO DO

10    AN ENTIRE PROFIT AND LOSS FOR THE ENTIRE COMPANY.  AND I MEAN

11    LIKE EVERY SINGLE PENNY YOU SPENT, EVERYWHERE YOU SPENT IT,

12    HOW MUCH YOU SPENT ON THE LEASE, HOW MUCH YOU SPENT ON YOUR

13    UTILITIES, HOW MUCH YOU BROUGHT IN  -- WHETHER IT WAS RELATED TO

14    REVITALASH OR ATHENA OR NOT.  EVERYTHING FROM THE WHOLE

15    COMPANY.  AND WE OBJECTED.

16         THE COURT:  BUT, SIR  -- BUT, SIR, DOES AMN SELL THINGS

17    OTHER THAN  -- OTHER THAN THE REVITALASH THING THAT IT'S ACCUSED

18    OF SELLING IN THE PAST?

19         MR. VOSS:  IT SELLS OTHER THINGS BUT  --

20         THE COURT:  OKAY.

21         MR. VOSS:  -- NOT ANY --

22         THE COURT:  BUT IT'S –

23         MR. VOSS:  -- SUBJECT OF THIS LAWSUIT.

24         THE COURT:  FAIR ENOUGH.  AND THEN – SO, WHAT WOULD

25    HAPPEN THEN IS IN A DAMAGES PORTION IF YOU EVEN GET TO THAT

1    PHASE  -- I GET IT  -- IF YOU EVEN GET TO THAT PHASE, HE'S ALLOWED TO

2    TEST THE ACCURACY OF YOUR P&L STATEMENT.

3            RIGHT?

4            MR. VOSS:  THAT'S –

5            THE COURT:  I MEAN, PRESUMABLY YOU'RE GOING TO SAY WE

6    DIDN'T  -- WE DIDN'T MAKE THAT MUCH MONEY ON THE ATHENA STUFF.

7            MR. VOSS:  AND I THINK WE'RE BACK TO THAT SAME ISSUE THAT

8    YOU REFERRED TO  -- I WILL TAKE UP WITH THE COURT.

9            THE COURT:  VERY GOOD.  OKAY.

10           SO, WHY DON'T YOU FOLKS MEET AND CONFER ON THIS AND

11   SEE IF THE ESI PROTOCOLS.  IF NOT, YOU CAN COME BACK TO ME.  AND

12   WE'LL DEAL WITH IT.

13           MR. VOSS:  YOUR HONOR –

14           THE COURT:  THE SAME THING WILL HAPPEN –

15           YES, MR. VOSS.

16           MR. VOSS:  YES, YOUR HONOR.  I APOLOGIZE.  I'M JUST GETTING

17   A LITTLE TIME DELAY THERE.

18           THE ISSUE OF OUR REQUEST TO BIFURCATE THE DISCOVERY,

19   DO I -- IT'S A DISCOVERY ISSUE.  AND YOUR LOCAL RULE 4, YOUR

20   PERSONAL RULE IS 4 WHERE WE COME AND MEET WITH YOU, DO I NEED

21   TO ARRANGE YET ANOTHER MEETING FOR THAT?

22           THE COURT:  NO.  THAT'S  -- THAT'S – ANYTHING RELATED TO

23   DISCOVERY SCHEDULING AND THAT NATURE IS WITH THE DISTRICT

24   JUDGE.

25           MR. VOSS:  OKAY.  THANK YOU.  I JUST WANTED TO MAKE SURE I

1    DIDN'T RUN AFOUL OF THAT.

2              THANK YOU.

3              THE COURT:  YEP.  OKAY.

4              OKAY.  SO, CATEGORY – RFP 14, YOU'RE GOING TO HAVE THE

5    SAME ESI.  AND, HOPEFULLY, THAT WILL –

6              I THINK YOU'VE GOTTEN A RESPONSE TO REQUEST NUMBER 15,

7    MR. HARRIS.

8              (PAUSE IN PROCEEDINGS.)

9              MR. HARRIS:  YES, YOUR HONOR.  BUT – BUT – AND THIS IS –

10   THIS IS ONE OF OUR ISSUES.  AND THAT IS WHEN YOU SAY THAT ANY

11   RESPONSE IS SUBJECT TO THE OBJECTIONS AND THEN SAY THERE ARE

12   NO DOCUMENTS, ARE YOU WITHHOLDING DOCUMENTS THAT –

13             THE COURT:  -- LET ME – LET ME –

14             MR. – I GET WHAT YOU'RE SAYING, MR. HARRIS.  I'M SORRY TO

15   CUT YOU OFF BUT HERE --- HAVE YOU FOLKS AGREED TO A NOT REQUIRE

16   THE OTHER PARTY TO LIST ON PRIVILEGE LOGS INFORMATION THAT IS

17   GENERATED IN THE COURSE OF THIS LITIGATION?

18             MR. HARRIS:  I PROPOSED THAT SAYING THAT ANYTHING THAT

19   WAS FROM COUNSEL TO THE CLIENT AND BACK AND FORTH AFTER THE –

20   AFTER THE DAY OF FILING OF THE COMPLAINT – AS A MATTER OF FACT I

21   THINK I EVEN PROPOSED A COUPLE OF MONTHS EARLIER --  WOULD NOT

22   HAVE TO BE LISTED ON A PRIVILEGE LOG.

23             THE COURT:  AND WHAT WAS THE RESPONSE, MR. VOSS?

24             MR. VOSS:  I HONESTLY DON'T RECOLLECT THE DISCUSSION AT

25   ALL.  I'M NOT GOING TO MISREPRESENT TO YOU THAT I DID.

1          THE COURT:  OKAY.

2          AND WHAT ARE YOUR THOUGHTS ABOUT DOING SOMETHING

3     LIKE THAT?

4          MR. VOSS:  I DON'T THINK IT'S A PROBLEM.

5          THE COURT:  OKAY.

6          MR. VOSS:  IT'S NOT – IT'S NOT NON-STANDARD IN ANY WAY,

7     SHAPE OR FORM IN MY EXPERIENCE.

8          THE COURT:  I AGREE.

9          SO, I THINK YOU CAN MEMORIALIZE THAT.  AND THEN THAT

10    WOULD EXCLUDE ANYTHING THAT WOULD PRESUMABLY COME WITHIN

11    THE AMBIT OF ATTORNEY-CLIENT PRIVILEGE OR ATTORNEY-WORK

12    PRODUCT IN THE COURSE OF THIS CASE.

13         IS THERE – IS THERE ANYTHING THAT IS BEING WITHHELD

14    SUBJECT TO THESE OBJECTIONS ON THIS RFP, MR. VOSS?

15         MR. VOSS:  NO.

16         THE COURT:  OKAY.  SO, WE HAVE THAT ON THE RECORD, MR.

17    HARRIS.

18         OKAY?

19         MR. HARRIS:  OKAY.

20         THE COURT:  RFP NUMBER 16, SIR.

21         (PAUSE IN PROCEEDINGS.)

22         THE COURT:  I THINK THIS CAN BE HOPEFULLY WITHIN THE ESI

23    PROTOCOLS . YOU FOLKS CAN FIGURE OUT SOME TERMS THAT COULD

24    CAPTURE THIS.

25         MR. VOSS:  I'LL AGREE –

1       THE COURT:  MR. HARRIS?

2       MR. HARRIS:  SOME – NO.  I THINK  -- I THINK THIS AND THE

3   REMAINING – WE COULD FIGURE OUT WITH THE ESI PROTOCOL.

4       THE COURT:  VERY GOOD.

5       MR. VOSS:  I'M HAPPY TO DISCUSS THAT WITH HIM, YOUR

6   HONOR.

7       I WOULD NOTE THAT PART OF WHAT A PROBLEM WAS IN

8   ANSWERING SOME OF THE ONES THAT ARE COMING IN PARTICULAR IS

9   THEY REALLY WEREN'T DOCUMENT REQUESTS.  THEY WERE

10  INTERROGATORIES PHRASED AS A DOCUMENT REQUEST.

11      AND, SO, IT'S IMPOSSIBLE TO ANSWER THEM.

12      MAYBE  --

13      THE COURT:  OKAY.  GIVE ME AN EXAMPLE.

14      MR. VOSS:  AS I WENT THROUGH THOSE WITH COUNSEL AT THE

15  TIME  -- HANG ON.

16      (PAUSE IN PROCEEDINGS.)

17      MR. VOSS:  WELL, I RESOLVED – I'LL WAIT TILL WE GET TO THEM,

18  YOUR HONOR, BECAUSE I WAS ABLE TO RESOLVE A BUNCH OF THEM BY

19  VIRTUE OF THE FACT THAT THEY WERE REQUESTS FOR AFFIRMATIVE

20  DEFENSES THAT WERE ---

21      THE COURT:  WELL, GIVE ME – GIVE ME AN EXAMPLE.

22      MR. VOSS:   ORIGINAL ANSWER –

23      THE COURT:  GIVE ME AN EXAMPLE.

24      MR. VOSS:  OKAY.  HANG ON.

25      MR. HARRIS:  YOU MAY NOT SEE THEM ON THE AMENDED

1    RESPONSES BECAUSE WE SETTTLED ON THEM.

2            THE COURT:  OKAY.

3            MR. VOSS:  WELL, THAT MAY BE IT.  HE MAY BE CORRECT, YOUR

4    HONOR.  WE MAY HAVE RESOLVED SOME OF THOSE IN MEET AND

5    CONFERS.

6            THE COURT:  OKAY.  SO, ONE OF THE THINGS ON RFP 18, SIR,

7    MR. HARRIS, YOU'RE SEEKING BANK RECORDS SHOWING PROFIT AND

8    LOSSES MADE IN THE UNITED STATES.

9            BUT WHY DO YOU GET WORLDWIDE OF ANY ATHENA GOODS?

10   THIS IS A TRADEMARK CASE INVOLVING PROTECTION IN THE UNITED

11   STATES?

12           MR. HARRIS:  YOU'RE RIGHT, YOUR HONOR.  THE SALES WERE

13   HERE.  BUT IF THE  -- YOU'RE CORRECT.

14           THE COURT:  OKAY.

15           MR. VOSS:  AND ONE OF THE QUESTIONS I HAD, YOUR HONOR, IN

16   DISCUSSING THIS WITH COUNSEL WAS THAT OTHER THAN AS I INDICATED

17   THE STUFF ON THE EBAY, WALMART, WHATHAVEYOU, THAT I DON'T

18   BELIEVE THAT THERE IS ANY CATEGORIZATION OVER OR MAINTENANCE

19   OF RECORDS THAT ARE IDENTIFIED IN THE MANNER THAT THEY'RE

20   DESCRIBED HERE – WHICH IS TO SAY BANK RECORDS SHOWING PROFIT

21   AND LOSS FROM SHIPMENT OF ATHENA GOODS.

22           THE COURT:  WELL, I THINK --

23           MR. VOSS:  NOT A –

24           THE COURT:  MR. – MR. VOSS, I THINK YOU'RE READING THE

25   MODIFICATION IS NARROWING BANK RECORDS.  I DON'T READ IT THAT

1   NARROWLY.

2           ALL FINANCIAL RECORDS INCLUDING IN BANK RECORDS.

3           MR. VOSS:  WELL, THE –

4           THE COURT:  IT SHOULD BE THAT MAY BE ABLE – RELATED TO

5   SHOWING PROFITS AND LOSSES.

6           BUT I THINK YOU'RE PUTTING A LITTLE TOO FINE A POINT ON IT

7   FROM MY – BECAUSE IT DOES ASK FOR ALL FINANCIAL RECORDS.

8           MR. VOSS:  THEN WE'RE BACK TO WHAT YOU AND I DISCUSSED

9   EARLIER WHICH IS ASKING ABOUT QUIKBOOKS.  AND IF NOT, WE'RE WITH

10  THE EBAY, WALMART, WHATHAVEYOU.  THAT IS THE RECORDS.

11          THE COURT:  OKAY.

12          NINETEEN --

13          MR. HARRIS:  BUT  -- YOUR HONOR, MAY I –

14          THE EBAY RECORDS ARE WITHIN DEFENDANT'S CUSTODY AND

15  CONTROL.

16          THE COURT:  I AGREE.

17          MR. HARRIS:  YEAH.

18          THE COURT:  IT'S THEIR CUSTODY AND CONTROL.  ABSOLUTELY.

19          MR. VOSS:  THEY DIDN'T BELIEVE US.  AND THEY WENT AND

20  SUBPOENAED THEM ANYWAY.  SO, THEY'VE GOT THEM DIRECTLY.

21          THE COURT:  WELL, THEY CAN DO IT, BUT YOU STILL – IT

22  DOESN'T ABSOLVE YOURSEF, SIR.

23          MR. VOSS:  I'M HAPPY TO DO IT.

24          THE COURT:  OKAY.

25          A COPY OF ALL CREDIT ONLINE VIEWS CONTAINING ANY ATHENA

1    TRADEMARK.

2         SO, RFP 19, SIR, IS THERE STILL A DISPUTE REGARDING THIS IN

3    LIGHT OF THE RESPONSE?

4         MR. HARRIS:  NO, YOUR HONOR.

5         THE COURT:  TWENTY?  SAME THING ALMOST.

6         MR. HARRIS:  WELL, NO.  WE'LL LIVE WITH IT.

7         THE COURT:  OKAY.

8    TWENTY-ONE?

9         MR. HARRIS:  THE SAME THING, YOUR HONOR.

10        THE COURT:  VERY GOOD.  22?

11        MR. HARRIS:  NOW, I DO HAVE A  -- I DO HAVE A QUESTION.

12    I MEAN, HE –

13        THE COURT:  SURE.

14        MR. HARRIS:  DEFENDANTS HAVE LIMITED IT TO SAY THEY  --

15    NOTHING AFTER THE SETTLEMENT AGREEMENT.

16         BUT WHAT IF WE SHOW THAT THERE WERE SALES AFTER THE

17    SETTLEMENT AGREEMENT?  DO WE HAVE TO REVISIT THESE – THESE

18    INTERROGATORIES AND REQUESTS FOR DOCUMENT PRODUCTION?

19         THE COURT:  WHAT DO YOU MEAN?

20         MR. HARRIS:  WELL, BECAUSE WE THINK WE HAVE EVIDENCE

21    THAT SHOWS THAT THEY MADE SALES AFTER THE SETTLEMENT

22    AGREEMENT.

23         AND HIS ANSWER LIMITS DOCUMENT PRODUCTIONS TO – TO

24    AFTER THE SETTLEMENT AGREEMENT.

25         HE – WE DID NOT SELL ANY ATHENA GOODS AFTERWARD.  IF –

1          THE COURT:  MR. HARRIS, YOU JUST SAID YOU HAVE EVIDENCE

2    THAT YOU – AND I KNOW MR. – I READ THE MSJ PAPERS.  SO, I KNOW MR.

3    VOSS IS CHOMPING AT THE BIT BECAUSE APPARENTLY THERE'S SOME

4    DISCOVERY DISPUTE – A DISCOVERY REQUEST THAT WENT OUT ASKING

5    FOR IN CONTENTION INTERROGATORIES RELATING TO THOSE THINGS.

6    AND THEY'RE SEEKING EVIDENCE IN SUPPORT OF THAT.

7          AND, THUS FAR, MR. VOSS, CORRECT ME IF I'M WRONG, YOU

8    HAVEN'T RECEIVED ANYTHING.

9          MR. VOSS:  AFTER ALLOWING THEM A CHANCE TO AMEND IT, WE

10   STILL HAVEN'T RECEIVED ANYTHING.

11         THE COURT:  GOT IT.

12         MR. HARRIS:  I THINK --

13         THE COURT:  MR. HARRIS  -- MR. HARRIS, SO, HERE'S  --

14         MR. HARRIS:  HERE'S THE THING.

15         THE COURT:  I DON'T – I DON'T – I DON'T UNDERSTAND WHAT

16   YOU'RE SAYING HOW THIS WOULD CHANGE.

17         IF YOU HAVE  -- IF YOU  -- IF THERE'S INFORMATION THAT IS

18   DISCOVERED OF POST-SETTLEMENT AGREEMENT EXECUTION I BELIEVE

19   APRIL 2020 IS THE MONTH –

20         MR. HARRIS:  YES.

21         THE COURT:   -- A POST-SETTLEMENT AGREEMENT EXECUTION,

22   THERE IS SALE OF COUNTERFEIT GOODS, WHAT DOES THAT – WOULD HE –

23   HOW WOULD THAT IMPACT ANYTHING, SIR?

24         MR. HARRIS:  WELL, IT – THAT MEANS THERE'S A BREACH OF THE

25   SETTLEMENT AGREEMENT.  AND –

1          THE COURT:  WELL, SURE.

2          MR. HARRIS:   AND I'D LIKE IF THERE ARE WEB PAGES AND

3     OTHER – WEB PAGES OR ANY KIND OF ADVERTISING IT'S SOMETHING

4     THAT – THAT CONFIRMS THAT THERE WERE SALES.

5          THE COURT:  BUT AFTER – AFTER THE – AFTER THE SETTLEMENT

6     AGREEMENT DATE, RIGHT, SIR?

7          MR. HARRIS:  RIGHT.

8          THE COURT:  OKAY.  THAT'S ALREADY INCLUDED.  THEY SAID

9     THEY HAVE NOTHING.

10         MR. HARRIS:  NO.  THEY SAID  -- DID NOT SELL ANY ATHENA  --

11    THERE ARE NO SUCH DOCUMENTS AS IT DID NOT SELL ATHENA GOODS

12    AFTER THE SETTLEMENT AGREEMENT.

13         THE COURT:  LET ME  -- LET ME CLARIFY THIS.

14         THEN, MR. VOSS, ARE THERE ANY SUCH DOCUMENTS WITH

15    RESPECT TO RFPS 19, 20, 21 --

16         MR. VOSS:  NO.  THAT'S –

17         THE COURT:  OKAY.

18         MR. VOSS:  THAT'S THE WHOLE POINT OF THE MOTION FOR

19    SUMMARY JUDGMENT.

20         WE SETTLED THIS THING.  WE STOPPED SELLING IT.

21         THE FACT THAT –

22         THE COURT:  OKAY.

23         MR. VOSS:  -- COUNSEL IS HERE SAYING THAT HE MIGHT COME

24    UP WITH SOMETHING TO ME RUNS AFOUL OF RULE 11 WHERE YOU'RE

25    SUPPOSED TO HAVE HAD SOMETHING IN HAND BEFORE YOU FILED THAT

1    PLEADING THAT SAID YOU DID.  AND THAT WAS ON THE AMENDED

2    COMPLAINT.

3            THE COURT:  MR. VOSS, ENOUGH.

4            MR. VOSS:  ALL RIGHT.

5            THE COURT:  I GET IT.

6            MR. VOSS:  WE SUBMITTED IT.

7            THE COURT:  I KNOW WHAT YOU ARGUED.

8            MR. VOSS, YOU'RE GETTING REALLY CLOSE.

9            I GET YOUR ARGUMENT.  I APPRECIATE YOUR ARGUMENT.  I

10   UNDERSTAND THE FRUSTRATION ESPECIALLY IN A BIFURCATED CASE

11   WHY THE DISCOVERY.  I GET WHERE YOU'RE COMING FROM AND HOW

12   EXPENSIVE THIS MAY BE UNNECESSARILY.

13           I WISH YOU FOLKS HAD – I KNOW YOU WENT TO ADR ONCE.

14   YOU DIDN'T SETTLE IT.   I WOULD HIGHLY RECOMMEND YOU GO BACK

15   AGAIN BECAUSE THE ONLY PEOPLE GETTING RICH IN THIS PROSPECT ARE

16   THE COUNSEL.

17           SO, LET'S – LET'S PLEASE LET'S JUST GET THROUGH THIS, SIR.

18           MR. VOSS:  CAN YOU ORDER US TO GO BACK TO ADR?

19           THE COURT:  I CANNOT.  ONLY JUDGE WILSON.

20           MR. VOSS:  ALL RIGHT.

21           THE COURT:  YOU CAN REQUEST TO BE SENT  -- YOU CAN

22   REQUEST TO BE SENT BACK.

23           MR. HARRIS, DO YOU HAVE AN OBJECTION TO GOING BACK TO

24   ADR?

25           MR. HARRIS:  I'D HAVE TO CHECK WITH THE CLIENT, YOUR

1    HONOR, BECAUSE THE LAST ONE WAS SO UNSUCCESSFUL.

2         THE COURT:  OKAY.  OKAY.

3         MR. VOSS:  IF I MAY IN THAT RESPECT, YOUR HONOR.

4         I DID THAT ADR.  I SUBBED INTO THIS CASE.  THAT ADR WAS TWO

5    DAYS AFTER I SUBBED INTO THE CASE.  I DID NOT WANT TO BE THAT GUY

6    WHO PUTS EVERYTHING OFF JUST BECAUSE YOU'RE THE NEW GUY.  AND,

7    SO, I SAID I'LL BE THERE.  I'M GOING TO DO IT.  I'M GOING TO DO IT IN

8    GOOD FAITH.  AND I DID PARTICIPATE.

9         THERE WERE SUBSEQUENT SETTLEMENT DISCUSSIONS MANY

10   MONTHS LATER THAT MR. HARRIS AND I HAD THAT WERE AFTER THAT

11   UNSUCCESSFUL ADR.  BUT THAT WAS VERY PRELIMINARY TO MY

12   INVOLVEMENT.

13        THE COURT:  UNDERSTOOD.

14        OKAY.  SO, DOES DOCUMENT SHARING OF NAMES, ALL

15   BUSINESSES AND HOME ADDRESSES, AN EMAIL OF YOUR OWNERS OF AT

16   LEAST 10 PERCENT.

17        THIS IS WAY OVERBROAD, MR. HARRIS.

18        MR. HARRIS:  OKAY, YOUR HONOR.

19        THE COURT:  I THINK -- I THINK YOU CAN -- YOU CAN LIMIT IT TO

20   THE NECESSARY FOLKS.  BUT AS WRITTEN, THE DOCUMENT – THE

21   OWNERSHIP DOCUMENTS, ONE, THIS DOES NOT  -- IT'S NOT AN ACTUAL

22   INTERROGATORY.  IT'S ASKING FOR DOCUMENTS THAT SHOW THIS.  SO, I

23   DISAGREE WITH MR. VOSS'S CHARACTERIZATION AS WELL.

24        AND THESE ARE USUALLY THE OWNERSHIP-RELATED

25   DOCUMENTS THAT SHOULD BE KEPT AROUND  -- SHOULDN'T BE

1   BURDENSOME TO PRODUCE ITSELF.

2            I'M MORE PRO-  -- I'M MORE BOTHERED BY THE BUSINESS, HOME

3   ADDRESSES, HOME TELEPHONE NUMBERS, EMAIL ADDRESSES.  THAT'S

4   THE SORT OF THING THAT I'M A LITTLE MORE BOTHERED BY AT THIS

5   STAGE.

6            OKAY.  MR. HARRIS.

7            MR. HARRIS:  OKAY, YOUR HONOR.

8            THE COURT:  I'M NOT – I'M NOT AS BOTHERED BY THE

9   OWNERSHIP DOCUMENTS WHICH SHOULD BE FAIRLY EASY TO GATHER.

10           NOW, 23 BASICALLY IT'S THE NEXT STEP WHERE YOU'RE SAYING

11  DOCUMENTS OF ALL BUSINESSES AND WHICH AT LEAST TEN IS UN-  --

12  THAT'S – THAT'S JUST  -- I DON'T UNDERSTAND THAT, SIR.

13           I UNDERSTAND WHAT YOU'RE SAYING IS LIKE DO THEY OWN – IS

14  THERE CROSS-OWNERSHIP INTEREST.  AND I GET WHAT YOU'RE TRYING

15  TO GET.  BUT THAT'S  -- IT'S JUST  -- AND YOU'RE TRYING TO IDENTIFY

16  OTHER COMPANIES.

17           BUT IT JUST SEEMS A LITTLE TOO EXPANSIVE, SIR.

18           MR. HARRIS:  OKAY, YOUR HONOR.

19           THE COURT:  MR. VOSS.

20           MR. VOSS:  YOUR HONOR, THIS -- THIS IS ONE OF THE ONES

21  WHERE I WAS TRYING TO FIND IT.  AND I JUST COULDN'T AND NEEDED THE

22  MOMENT.

23           MY LAST SENTENCE THERE ABOUT IT'S ACTUALLY AN

24  INTERROGATORY IN THE GUISE OF A DOCUMENT REQUEST.

25           THE COURT:  IT'S NOT.  IT IS A DOCUMENT REQUEST.

1        MR. VOSS:  ALL RIGHT.

2        THE COURT:  THERE EITHER ARE DOCUMENTS THAT SHOW THAT

3    OR THEY'RE NOT.  PRESUMABLY – YOU EVEN SAID THAT OWN 22.

4        AND YOU'RE TELLLING ME THAT DOCUMENTS THAT SHOW THE

5    OWNERSHIP IN THE COMPANY IS AN INTERROGATORY.

6        MR. VOSS.

7        MR. VOSS:   WELL, I THINK THAT THEY WERE ASKING WHO WERE

8    THE OWNERS FIRST.

9        THE COURT:  DOCUMENTS SHOWING THE NAMES, BUSINESS AND

10   HOME ADDRESSES OF ALL YOUR OWNERS.

11       MR. VOSS:  WE UNDERSTAND THE COURT'S RULING.

12       THANK YOU.

13       THE COURT:  OKAY. VERY GOOD.

14       TWENTY-FOUR.

15       NOW, THIS  -- I GET  -- YOU'RE TRYING TO SEE IF THERE'S ANY

16   SIDE AGREEMENTS IN THE BACK, MR. HARRIS  --

17        MR. HARRIS:  CORRECT.

18       THE COURT:   -- AND BEYOND WHAT'S PUBLICLY AVAILABLE.

19       MR. HARRIS:  RIGHT.

20       THE COURT:  OKAY.

21       MR. VOSS:  THAT'S – THAT'S JUST NOT AT ALL WHAT THE MEET

22   AND CONFER WAS.

23       YOU KEEP SUGGESTING THINGS.  THEN HE GOES YES, I ADOPT

24   THAT AS THE  -- AS THE REASON.

25       WE MET AND CONFERRED ON THIS.  THAT WASN'T IN ANY WAY,

1    SHAPE OR FORM THE DISCUSSION.

2            THE COURT:  OKAY.

3            MR. VOSS:  AND, SO, HERE ON REQUEST 24 THE  --

4            THE COURT:  CAN I --

5            MR. VOSS:  -- GROUP THAT HE HAD  -- BUT WE MET AND

6    CONFERRED ON THIS.

7            MY RESPONSE HERE IN THE AMENDED RESPONSE WAS

8    COMPLIANT WITH WHAT WE MET AND CONFERRED ON.  WE DISCUSSED THIS.

9    AND WE SAID AS A RESULT OF MY CONVERSATION WITH MR. HARRIS – AND I

10   HAVE MY NOTES THAT ARE THE BASIS FOR DOING THIS  -- THAT HE WOULD

11   TAKE THE ARTICLES OF INCORPORATION AND THAT THAT WAS AN

12   APPROPRIATE RESPONSE TO THE INTERROGATORY – TO THE DOCUMENT

13   REQUEST.

14           SO, WE MET AND CONFERRED.  I DID IT.  I DID WHAT HE ASKED

15   ME TO DO.  BUT WE CAN MAKE SUGGESTIONS TO HIM, BUT THAT'S UNFAIR TO

16   ME.

17           THE COURT:  VERY GOOD.

18           MR. HARRIS, THEN, ARE YOU SATISFIED WITH THE  -- BASED ON

19   YOUR MEET AND CONFER YOU GOT WHAT YOU ASKED FOR, RIGHT?

20           MR. HARRIS:  NO, YOUR HONOR.  I WANTED THE DOCUMENTS

21   SHOWING HOW THE COMPANY WAS FORMED.

22           MR. VOSS SAID YOU'RE ONLY ENTITLED TO THE  -- TO THE

23   ARTICLES OF INCORPORATION.  I DID NOT ACCEPT THAT AS A LIMITATION.

24           MR. VOSS:  NO.  WHAT I  -- THE DISCUSSION, YOUR HONOR, IF

25   YOU READ IT IS WHETHER ARTICLES OF INCORPORATION LLC. OPERATING

1    AGREEMENT, PARTNERSHIP AGREEMENT OR OTHER DOCUMENTS.

2                  AND I SAID NO.  THIS IS A CORPORATION.  RESPONSIVE

3    DOCUMENTS SHOWING THE FORMATION OF THIS BUSINESS IS THE ARTICLES

4    OF INCORPORATION WHICH WE WILL PRODUCE.

5                  NONE OF THOSE OTHER  --

6                  THE COURT:  THAT'S --

7                  MR. VOSS:  -- THINGS APPLY.

8                  THE COURT:  BUT THAT"S OFTENTIMES NOT THE EXCLUSIVE

9    WAY TO SHOW THE FORMATION OF AN ENTITY.

10                  IT'S VERY COMMON IN, FOR EXAMPLE, LAW FIRMS WHEN THEY

11   HAVE A P.C. THERE'S A GENERAL PARTNER OR LIKE LLCS OR LLPS THERE'S A

12   GENERAL PARTNER AND – AND LIMITED PARTNERS.  AND THERE MAY BE

13   SIDE AGREEMENTS ON REVENUE.

14                  MR. VOSS:  FIRST OF ALL, SIDE AGREEMENTS ON REVENUE ISN'T

15   THE IMPORT OF THIS QUESTION OF THIS  -- THIS DOCUMENT REQUEST.

16                  IT SPECIFICALLY ASKS SHOWING THE FORMATION.

17                  THE COURT:  OKAY.

18                  MR. VOSS:  AND THEN --

19                  THE COURT:  AGAIN –

20                  MR. VOSS:  -- COUNSEL AGREED THAT – THAT ARTICLES OF

21   INCORPORATION WILL BE APPROPRIATE FOR THE CORPORATION SINCE IT'S

22   NOT IN ANY OTHER FORM.

23                  THE COURT:  OKAY.  WELL, YOU – IF YOU GUYS WANT TO GO

24   BACK AND  -- IF YOU FOLKS WANT TO GO BACK AND TALK ABOUT IT, THAT'S

25   FINE.  THERE SEEMS TO BE A DISAGREEMENT AS TO WHAT WAS AGREED TO.

1          WE'LL COME BACK ON THAT ONE.  OKAY.

2          TWENTY-FIVE, PLEASE.

3          DOCUMENTS SUFFICIENT – IDENTIFY ALL AMN FACILITIES AND

4    OFFICES INCLUDING THOSE SHARED WITH ANY OTHER PERSON.

5          MR. VOSS:  AND WE MET AND CONFERRED ON THIS.

6          AND, AGAIN, THIS CAME DOWN TO THIS WAREHOUSE BUILDING

7    IN PLAINS, PENNSYLVANIA.

8          AND WE WOULD OBTAIN DOCUMENTS RESPONSIVE TO THAT

9    REQUEST.

10         THE COURT:  AND, MR. HARRIS, IS THAT --

11         MR. VOSS:  THE  --

12         THE COURT:  -- TO ACCEPT?

13         MR. HARRIS:  YES.  IF THAT IS THE ONLY FACILITY –

14         THE COURT:  WELL, THEN –

15         MR. HARRIS: -- I HAVE TO -

16         THE COURT:  NO.  NO, MR. HARRIS.

17         MR. VOSS IS REPRESENTING THAT AFTER YOUR MEET AND

18    CONFER IT WAS AGREED THAT YOU WOULD  -- THAT THE DOCUMENTS

19    WOULD BE LIMITED TO THE WAREHOUSE IN PLAINS, PENNSYLVANIA.

20         IS THAT WHAT YOU AGREED TO?

21          AND IF YOU HAVEN'T -- IF THERE IS A  -- IS THERE IS A

22    DISAGREEMENT AS TO WHAT YOU FOLKS AGREED TO, WHY DON'T YOU GO

23    BACK AND TALK ABOUT IT.  AND THEN COME BACK TO ME.  AND WE CAN

24    COME BACK WITH A CLAIRIFIED VERSION.

25         MR. HARRIS:  OKAY.

1        MR. VOSS:  WHICH IS WHY I POINTED OUT IN MY SUMMARY TO

2  THE COURT THAT THIS WAS PREMATURE BECAUSE THERE HAVE BEEN NO

3  MEET AND CONFER SINCE THE TIME WE FILED THE AMENDED DOCUMENTS.

4  .THAT, IN FACT, THE REQUEST FOR THIS RULE 4 WAS BEFORE OUR MEET AND

5  CONFER – OUR AMENDED RESPONSES WERE EVEN DUE.

6        THE COURT:  VERY GOOD.  SO, HOPEFULLY -- HOPEFULLY, THIS

7  WILL SHARPEN THE POINT ON SOME OF THESE.  AND YOU KIND OF KNOW

8  WHERE I'M COMING FROM.  AND YOU CAN RESOLVE THEM  -- IT CAN

9  HOPEFULLY RESULT IN A MORE PRODUCTIVE MEET AND CONFER THEN.

10        BUT I APPRECIATE WHERE YOU'RE COMING FROM, MR. VOSS --

11  AND IT IS COMING ACROSS AS SLIGHTLY PREMATURE TO ME.  BUT

12  HOPEFULLY I CAN PROVIDE SOME GUIDANCE ON WHERE I'M COMING FROM

13  AND HELP YOU FOLKS SORT OF GET TO THIS – GET TO THE POINT QUICKER

14  AND MORE EFFICIENTLY FOR YOUR CLIENTS.

15        MR. VOSS:  SOMETIMES THE DICTA IS HELPFUL.

16        (LAUGHTER.)

17        THE COURT:  SOMETIMES, YEAH.

18        DOCUMENTS SUFFICIENT.

19        (PAUSE IN PROCEEDINGS.)

20        THE COURT:  OKAY.  WHY DON'T YOU FOLKS – THE REMAINING,

21  FOLKS, WHY DON'T' YOU TALK ABOUT THEM.

22        PROFIT AND LOSS, YOU SEE WHERE I'M STANDING NOW.

23        PHOTOGRAPHS, THINGS OF THAT NATURE, LET'S – YOU FOLKS

24  CAN TALK ABOUT THEM.

25        ONE OF THE THINGS THAT, MR. HARRIS, I DO HAVE AN ISSUE TTH

1   WITH IS SOME OF THE  -- WHAT – I WAS LOOKING FOR ALL DOCUMENTS THAT

2   SUPPORT AMN'S AFFIRMATIVE DEFENSE  -- THAT AMN'S FAILURE TO

3   PERFORM ANY –

4             CAN YOU IDENTIFY WHAT AFFIRMATIVE DEFENSE THAT'S

5   REFERRING TO, SIR?

6             I LOOKED THROUGH THE ANSWER.

7             MR. HARRIS:  YOUR HONOR, I CAN'T.  NOT NOW.  I JUST  --

8             THE COURT:  OKAY.

9             WHY DON'T YOU FOLKS HAVE A MEET AND CONFER ABOUT

10  THOSE BECAUSE I TRIED LOOKING FOR THOSE AFFIRMATIVE DEFENSES.

11  AND I DIDN'T SEE THEM.  BUT I MAY HAVE MISSED THEM.

12            MR. VOSS:  I CAN EXPLAIN IT IN  -- IN – IN BENEFICENCE TO

13  COUNSEL.

14            MANY OF THESE WERE AFFIRMATIVE DEFENSES IN THE ANSWER

15  TO THE ORIGINAL COMPLAINT.

16            WHEN THE FIRST AMENDED COMPLAINT WAS GRANTED BY THE

17  COURT ON THE 12(B)(6) MOTION, AND WE WERE COMPELLED TO FILE NEW

18  ANSWERS, WE DELETED A WHOLE BUNCH OF THE STUFF -- YOU KNOW,

19  AGAIN, I HAD JUST COME INTO THE CASE.  AND WE FILED THE, YOU KNOW, 48

20  AFFIRMATIVE DEFENSES.  WE CARVED ALL THOSE DOWN TO THE HANDFUL

21  THAT ACTUALLY MADE SENSE.

22            SO, MANY OF THESE RESPONSES HERE WERE A QUESTION OF

23  FORM OVER FUNCTION THAT COUNSEL WANTED ME TO STATE THAT

24  DIFFERENTLY  -- WHICH I HAVE DONE.

25            THOSE  --

1              THE COURT:  OKAY.

2              MR. VOSS:   -- AFFIRMATIVE DEFENSES DON'T EXIST ANYMORE.

3              THE COURT:  OKAY.  SO, YOU FOLKS DON'T NEED ME NOW.

4              I THINK YOU HAVE GOTTEN  -- I THINK WE'VE GOTTEN TO A POINT

5    WHERE IT'S GOING TO BE MOST BENEFICIAL FOR YOU FOLKS TO TALK TO

6    EACH OTHER.

7              YOU'VE HEARD MY RULINGS ON THE INTERROGATORIES.  I'M

8    WITH- -- I'M WITHHOLDING RULINGS ON THE RFPS UNTIL YOU FOLKS HAVE

9    HAD AN OPPORTUNITY TO MEET AND CONFER, SPECIFICALLY TO ESI AND

10   OTHER THINGS THAT WE BROUGHT UP IN THIS HEARING.

11             SO, IS THERE ANYTHING ELSE FURTHER TODAY, MR. HARRIS?

12             MR. HARRIS:  WELL, YOUR HONOR, YOU WANTED TO TALK  --

13             THE COURT:  OH.

14             MR. HARRIS:  -- WITH THIS  -- THE 30(B)(6)  --

15             THE COURT:  THE 30(B)(6).  WHAT – DO YOU WANT TO –

16             MR. HARRIS, ONE OF THE THINGS – I MEAN, I COULD DO THAT.

17   BUT RIGHT NOW YOU'RE GOING TO HAVE A MEET AND CONFER ON THE

18   DOCUMENTS.  AND PRESUMABLY YOU WANT THOSE DOCUMENTS BEFORE

19   YOU CONDUCT A 30(B)(6).

20             MR. HARRIS:  YES, YOUR HONOR.

21             THE COURT:  SO, DO YOU THINK --

22             MR. VOSS:  AND -

23             THE COURT:  AND LET'S GO AHEAD AND TRAIL THAT.

24             AND IF THERE'S STILL AN ISSUE ON SCHEDULING, YOU CAN

25   COME BACK TO ME.

1              MR. HARRIS:  OKAY, YOUR HONOR.

2              MR. VOSS:  AND WHICH I HAD REPRESENTED TO COUNSEL IS

3     THAT MY UNDERSTANDING WAS WE WERE DOING DOCUMENTS FIRST.

4              THE COURT:  VERY GOOD.

5              ALL RIGHT.  MR. HARRIS, ANYTHING FURTHER TODAY, SIR?

6              MR. HARRIS:  NO, YOUR HONOR.

7              THANK YOU.

8              THE COURT:  MR. VOSS, SIR?

9              MR. VOSS:  NO, YOUR HONOR.  NOT TODAY.

10             THE COURT:   VERY GOOD.  HAVE A SAFE --

11             MR. VOSS:  THANK YOU.

12             THE COURT:  VERY GOOD.  HAVE A SAFE VACATION ON THE

13    WATER.  BE SAFE.

14             MR. VOSS:  THANK YOU, YOUR HONOR.

15             MR. HARRIS:  THANK YOU, YOUR HONOR.

16             (PROCEEDINGS ADJOURNED.)

17

18

19

20

21

22

23

24

25

TRANSCRIBER'S CERTIFICATE

DISCLAIMER

THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

    I, Dorothy Babykin, attest that the foregoing proceedings provided to me

electronically were transcribed by me to the best of my ability.

        /s/  *Dorothy Babykin*

        Dorothy Babykin

Date:   10/17/21