1                  UNITED STATES DISTRICT COURT
                 CENTRAL DISTRICT OF CALIFORNIA

2                      WESTERN DIVISION

3

4   ATHENA COSMETICS,          )
                               )

5          PLAINTIFF,        )
                               )

6          vs.              )   CASE NO. CV 20-005526-SVW(SHK)
                               )

7   AMN DISTRIBUTION, INC.,    )
   ET AL.,                     )       RIVERSIDE, CALIFORNIA

8                                )       DECEMBER 11, 2020
         DEFENDANTS.     )

9   _____ )

10

11

12

13                  DISCOVERY STATUS CONFERENCE

14      BEFORE THE HONORABLE SHASHI H. KEWALRAMANI
             UNITED STATES  MAGISTRATE JUDGE

15

16

17

   APPEARANCES:              SEE NEXT PAGE

18

   COURT REPORTER:          RECORDED, MS TEAMS

19

   COURTROOM DEPUTY:       D. CASTELLANOS

20

   TRANSCRIBER:              DOROTHY BABYKIN

21                                COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE

22                                GLENDORA, CALIFORNIA   91740
                               (626) 963-0566

23

24

   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

   FOR PLAINTIFF ATHENA COSMETICS:
3
              SOCAL IP LAW GROUP LLP
4             BY:  MICHAEL HARRIS
                   ATTORNEY AT LAW
5             310 N. WESTLAKE BOULEVARD
              SUITE 120
6             WESTLAKE VILLAGE, CALIFORNIA  91362

7

8    FOR DEFENDANT AMN DISTRIBUTION, ET AL.:

9             VOSS SILVERMAN & BRAYBROOKE LLP
              BY:  DAVID VOSS
10                 ATTORNEY AT LAW
              4640 ADMIRALTY WAY
11            MARINA DEL REY, CALIFORNIA  90292
                             :

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3      CV 20-005526-SVW(SHK)                          DECEMBER 11, 2020

4

5      PROCEEDINGS:   DISCOVERY STATUS CONFERENCE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com

1

2

3                RIVERSIDE, CALIFORNIA; DECEMBER 11, 2020

4                THE CLERK:    THE CALL IS BEING RECORDED.

5                CALLING CASE NUMBER 2:20-CV-5526, ATHENA COSMETICS, INC.,

6    VERSUS AMN DISTRIBUTION, INC., ET AL.

7                COUNSEL, YOUR APPEARANCES, PLEASE, FOR THE RECORD.

8                MR. HARRIS:  GOOD MORNING, YOUR HONOR

9                MICHAEL HARRIS FOR THE PLAINTIFF.

10               MR. VOSS:  GOOD MORNING, YOUR HONOR.

11               DAVID VOSS ON BEHALF OF DEFENDANTS MOISCHE NEWMAN

12   AND AMN.

13               THE COURT:  THANK YOU FOR JOINING US, MR. VOSS.

14               ANY REASON YOU HAD TO GET ON LATE?

15               MR. VOSS:  I HAVE JUST HAD MICROSOFT TEAM'S PAWS ON ME.

16   THAT'S ALL.  (LAUGHTER.)  JUST OUT OF   --

17               THE COURT:  OKAY.

18               MR. VOSS:  IT'S ALL THE – I HAD TO –

19               THE COURT:  SURE.

20               ALL RIGHT.  OKAY.  SO, I RECEIVED THE EMAILS GOING BACK

21   AND FORTH BETWEEN COUNSEL FOR BOTH PARTIES.

22               I UNDERSTAND THAT THERE IS CURRENTLY A DEFAULT

23   ENTERED AS TO MR. NEWMAN BUT NOT AS TO AMN.

24               IS THAT CORRECT, MR. HARRIS?

25               MR. HARRIS:  YES, THAT'S CORRECT.  ALTHOUGH, MR. VOSS

1    YESTERDAY FILED A MOTION TO SET ASIDE DEFAULT.

2              THE COURT:   ALL RIGHT.

3              SO, THIS CASE THEN IS CURRENTLY I BELIEVE ASSIGNED TO

4    JUDGE WILSON.

5              IS THAT CORRECT OR DID IT GET MOVED?

6              MR. HARRIS:  THAT'S – THAT'S CORRECT, YOUR HONOR.

7              MR. VOSS:  YES, YOUR HONOR.

8              THE COURT:  OKAY.

9              AND WE HAVE A TRIAL DATE SCHEDULED FOR JANUARY.

10             DO THE PARTIES ANTICIPATE FILING A STIPULATION TO MOVE

11   THE TRIAL DATE?

12             OR WHAT ARE YOUR THOUGHTS ON THAT, MR. HARRIS?

13             MR. HARRIS:  I THINK MR. VOSS AND I DISCUSSED DOING THAT.

14             WHETHER JUDGE WILSON WILL AGREE TO THAT, I DON'T KNOW.

15             MR. VOSS:  AND, YOUR HONOR, I  -- THIS IS  -- THIS IS WHAT I

16   TOUCHED ON BRIEFLY AS PART OF THE EMAIL THAT I SENT TO YOU  -- THE

17   CURRENT ORDER OF THE COURT  -- THE LATEST PANDEMIC ORDER FROM

18   DECEMBER 7TH SEEMS TO CONTINUE THE FACT THAT THERE AREN'T ANY

19   JURY TRIALS AT THE PRESENT TIME.

20             THIS MATTER IS SET FOR JURY TRIAL.  WE ANTICIPATE THAT

21   MOISHE NEWMAN WHEN HE COMES IN WILL  ALSO BE REQUESTING JURY

22   TRIAL.

23             SO, THERE ARE ALL THESE OVERLAPPING ISSUES.  WE HAVEN'T

24   DONE A 40-DAY.  THERE'S NO DISCOVERY THAT'S HAPPENED.  THERE'S

25   GOING TO BE DISCOVERY THAT'S  OBVIOUSLY GOING TO TAKE PLACE AT

1    SOME POINT HERE.  AND THERE'S NO URGENCY TO IT.

2            SO, WE WEREN'T SURE IF WE – WE ACTUALLY HAVE PREPARED

3    TO FILE A MOTION TO REQUEST A CONTINUANCE OF THE TRIAL DATE.

4            PART OF THAT DOVETAILS WITH THE FACT THAT IT WOULD BE

5    APPROPRIATE FOR THE COURT TO DETERMINE WHETHER MOISCHE

6    NEWMAN IS A DEFENDANT.  AND IF HE IS A CO-DEFENDANT ACCUSED OF

7    THE SAME THINGS, THEN, THE TRIAL OUGHT TO PROCEED WITH BOTH OF

8    THEM AND NOT PIECEMEAL.

9            BUT FRANKLY WE WEREN'T SURE IF IT WAS REALLY

10   UNNECESSARY.  WE WERE -- BECAUSE OF THE COURT'S CURRENT

11   ORDERS.  AND YET THERE IT IS STILL SITTING ON CALENDAR ON JANUARY

12   19.

13            I AM ALSO ENGAGED IN A TRIAL IN MARIN COUNTY BY ZOOM.

14            THE JUDGE IN THAT MATTER HAS HAD TO DEAL WITH A NUMBER

15   OF MEDICAL ISSUES FROM VARIOUS COUNSEL.  AND HE HAD ACTUALLY

16   STARTED ON SEPTEMBER THE 1ST.  AND HE MADE QUITE CLEAR HE WAS

17   FINISHING IN THAT TIMEFRAME.

18            SO, UNLESS THIS COURT WANTS TO CALL THAT COURT AND

19   GIVE ME AN EXCUSE, I AM ENGAGED IN TRIAL IN MARIN COUNTY BY ZOOM

20   AT THAT TIME AS WELL.

21            THE COURT:  OKAY.  WELL, I DON'T WANT TO SPECULATE AS TO

22   WHAT JUDGE WILSON MAY DECIDE WITH RESPECT TO MOVING THE TRIAL

23   DATE OR THINGS OF THAT NATURE.

24            I DO – THERE DOESN'T APPEAR TO HAVE BEEN A RULE 26(F)

25   CONFERENCE, OR WAS THERE IN THIS MATTER, MR. HARRIS?

1          MR. HARRIS:  NO.  I THINK WHAT HAPPENED WAS THERE – WHEN

2     WE GOT – RIGHT AFTER WE GOT THE DEFAULT JUDGMENT AGAINST MR.

3     NEWMAN THE JUDGE ISSUED A SCHEDULING   -- THE ORDER WE'RE

4     HAVING THE TRIAL IN JANUARY.

5          THE COURT:  OKAY.

6          MR. VOSS:  IF I MAY, THIS GOES TO THE CRUX OF THE PROBLEM

7     WE'VE INHERITED.  AND THIS NOT BEING A TRIAL COURT PLEADING, I FEEL

8     COMFORTABLE SPEAKING ABOUT IT.

9          I HAVE SPOKEN WITH COUNSEL ABOUT THIS BEING THE

10    SECOND TIME IN MY CAREER I HAVE RUN INTO THIS –

11         THE COURT:  MR. VOSS, I DO WANT TO CAUTION YOU.  EVEN

12    THOUGH IT'S NOT A FILED COURT PROCEEDING, THIS MATTER IS BEING

13    RECORDED.

14         MR. VOSS:  AH –

15         THE COURT:  SO, IF SOMEBODY WANTS TO  --

16         MR. VOSS:  THANK YOU.

17         THE COURT:  -- OBTAIN A COPY OF THIS RECORDING –

18         MR. VOSS:  THANK YOU FOR THE WARNING.

19         THE COURT:  THIS IS A PUBLIC HEARING.

20         MR. VOSS:  THANK YOU VERY MUCH.

21         WE ARE – I WILL TELL YOU WHAT COUNSEL THEMSELVES SAID

22    TO ME ABOUT THE RULE 26 PURPORTED ANY CONFERENCE, QUOTE,

23    UNQUOTE, ROMAN  WAS BARELY RESPONSIVE.

24         WHAT ORDINARILY OUGHT TO BE HAPPENING IS THAT THE

25    SUFFICIENCY OF THE PLEADINGS SHOULD BE TESTED WITH 12(B)(6).

1    THERE IS A SETTLEMENT AGREEMENT THAT PURPORTS ON ITS FACE TO

2    SAY THAT THIS COMPLAINT SHALL NOT BE FILED.  THAT SHOULD HAVE

3    BEEN TESTED.

4         THE SCOPE OF THE ISSUES SHOULD HAVE BEEN DISCUSSED AT

5    A RULE 26 CONFERENCE.  NO PLAN WAS FILED.  BASICALLY IN A NUTSHELL

6    MY PREDECESSOR COUNSEL DID WELL ALMOST NOTHING ON THIS – THIS

7    MATTER.

8         AND IT RELATES TO PERSONAL ISSUES THAT ONE OF THE

9    THINGS I WANTED TO DISCUSS TODAY IS HOW WE COULD PROCEED FOR

10   THE COURT TO RECEIVE THAT INFORMATION UNDER STEELE.

11        I HAD OCCASION TO DO THAT ONCE BEFORE.  THE SHOE WAS

12   ON THE OTHER FOOT.  IT WAS THE OTHER SIDE THAT HAD A SITUATION

13   INVOLVING COUNSEL THAT HAD PERSONAL AND MEDICAL ISSUES

14   RELATED TO IT.

15        WE PRESENTED THAT.  COUNSEL HAS GRACIOUSLY SAID THAT

16   IF WHAT I'M REPRESENTING TO HIM IS TRUE, THAT HE IS, QUOTE,

17   UNQUOTE, SYMPATHETIC.

18        BUT WE'VE GOT – WE'VE GOT, YOU KNOW, ONE OF THE TWO

19   PARTIES THAT'S BRINGING A MOTION TO SET ASIDE.  I ASKED COUNSEL TO

20   CONSIDER STIPULATING TO THAT SO WE COULD MOVE THINGS ALONG

21   BECAUSE WE THINK THAT WE'VE GOT EXTREMELY GOOD GROUNDS TO

22   SET ASIDE THAT.

23        I PROVIDED A COPY OF THE DRAFT PLEADINGS TO COUNSEL

24   LAST FRIDAY FOR HIS CONSIDERATION IN THE HOPES THAT WE COULD

25   GET THAT STIPULATED AND GET HIM IN.

1            PART AND PARCEL TO THAT WAS WE WERE GOING TO OFFER

2   TO AGREE TO  -- I DON'T KNOW IF ACCEPT SERVICE IS THE PROPER WAY

3   TO REFER TO IT – BUT TO FIND A WAY TO MAKE IT SO THAT HE WOULD NOT

4   HAVE TO SERVE MR. NEWMAN IN AUSTRALIA.  WE WOULD COOPERATE IN

5   THAT REGARD SO THAT WE COULD GET THE BALL MOVING.

6            AND THEN REPRESENTING TWO CLIENTS NOT JUST THE ONE, IT

7   REALLY WOULD BE APPROPRIATE TO HAVE A PROPER RULE 26 AT WHICH

8   COMPETENT COUNSEL IS REPRESENTING BOTH PARTIES AND START IT

9   OVER AGAIN.

10          THERE IS NO URGENCY.  AND THERE WASN'T A PLAN.  THERE

11  WAS NO INITIAL DISCLOSURE BY OUR SIDE.  I MEAN, NOTHING.  JUST  --

12  AND THOSE ARE ALL A MATTER OF PUBLIC RECORD AND BASICALLY HAVE

13  CAUSED EXTREME PREJUDICE TO OUR CLIENT.

14          WE ARE ALSO MINDFUL THAT WITH RESPECT TO DISCOVERY

15  PROMULGATED, WHETHER OR NOT IT WOULD HAVE BEEN PROPER OR NOT

16  IN LIGHT OF THERE BEING NO RULE 26 OR DISCUSSION WHAT THE NATURE

17  OF DISCOVERY WOULD BE IN A DISCOVERY PLAN.

18          THE FACT OF THE MATTER IS OF COURSE THERE'S AMPLE

19  PRECEDENT FOR A REQUEST THAT THE COURT RELIEVE THE CLIENT OF

20  WAIVER OF OBJECTIONS, ET CETERA.

21          UNDER THE CIRCUMSTANCES WE WOULD PRESENT UNDER

22  STEELE WE THINK IT GOES WELL PAST THAT.

23          SO, WE – WE TO SOME DEGREE ON MY END IN MY OFFICE – AND

24  I DISCUSSED THIS ALSO WITH – WITH COUNSEL, IT'S EXTREMELY

25  UNUSUAL.  IT'S THE SECOND TIME IN A CAREER SITUATION.  AND WE ARE

1    GRAPPLING WITH IT.  WE COME IN.  WE DID MEDIATION WITHIN THE FIRST

2    FEW DAYS OF COMING INTO THE CASE.  WE'VE BEEN TRYING TO BE

3    COMPLIANT AND RESPONSIVE.  BUT WE HAVE A SIGNIFICANT PROBLEM

4    THAT – THAT REALLY NECESSITATES RESETTING THINGS.

5         AND IN LIGHT OF THE FACT THAT NO JURY TRIALS ARE

6    PROCEEDING ANYWAY, I DON'T SEE ANY REAL REASON NOT TO DO THAT.

7         NOW, I CAN DO THAT BY WAY OF A SERIES OF MOTIONS  --

8    MOTION TO CONTINUE THE TRIAL, MOTION TO BE RELIEVED OF THE

9    WAIVERS, YOU KNOW, MOTION TO RESET THE  26 – ALL KINDS OF

10   MOTIONS, OR COUNSEL COULD AGREE IF I PRESENT HIM WITH SOME

11   INFORMATION REGARDING WHAT HAPPENED WITH MY PREDECESSOR TO

12   STIPULATE TO THOSE THINGS.

13        OF COURSE, ALL SUBJECT AS WE ALL KNOW TO WHETHER OR

14   NOT JUDGE WILSON WANTS TO ACCEPT ANY OF THAT.

15        BUT I HAVE LEARNED MORE SINCE THE TIME THAT I SPOKE

16   WITH MR. HARRIS.

17        I WILL TELL YOU, MR. HARRIS, IT IS WORSE THAN WHAT I TOLD

18   YOU AT THE TIME AS WE HAVE LEARNED MORE.

19        THE COURT:  LET ME ASK JUST A QUESTION TO MR. HARRIS.

20        WHAT'S THE DAMAGES AMOUNT THAT PLAINTIFF IS SEEKING  IN

21   THIS CASE?

22        MR. HARRIS:  THE STATUTE THAT WE'RE SUING ON,--  WHICH IS

23   THE COUNTERFEITING PART OF THE LANHAM TRADEMARK ACT -- CALLS

24   FOR STATUTORY DAMAGES UP TO $300,000.

25        AND WE ARE – OUR DEFAULT JUDGMENT AGAINST MR. NEWMAN

1   WAS FOR 150,000.

2            THE COURT:  OKAY.

3            MR. HARRIS:  I DON'T KNOW – SINCE WE DON'T KNOW HOW

4   MUCH THEY SOLD AND HOW MUCH THAT DAMAGED US, WE CAN ONLY GO

5   ON  -- ON STATUTORY DAMAGES.

6            MR. VOSS:  AND I – I CAN –

7            THE COURT:  HOLD ON, MR. VOSS.

8            MR. VOSS:  THE --

9            THE COURT:  I'M GOING  -- I'VE HANDLED THESE TYPES OF

10   CASES WHEN I WAS  -- BEFORE I WAS A JUDGE.  AND WHAT I FOUND

11   USEFUL  -- AND YOU PROBABLY HAVE ALREADY DISCUSSED THIS -- IS TO

12   ENTER INTO AGREEMENT OR A PROTECTIVE ORDER WHICH WOULD

13   ALLOW FOR THE EXCHANGE OF RELEVANT INFORMATION TO ALLOW

14   PLAINTIFFS TO EVALUATE THE PROPER DAMAGES AMOUNT HERE.

15            WHAT COULD ALSO BE DONE IS THE PARTIES COULD FILE A

16   STIPULATED PROTECTIVE ORDER WITH ME.  I'LL TAKE A LOOK AT IT.  AND I

17   HAVE ONE ON MY WEBSITE THAT YOU FOLKS CAN TAKE A LOOK AT WHICH

18   WOULD ALLOW FOR EXCHANGE OF INFORMATION FOR SETTLEMENT

19   PURPOSES AS WELL.

20            AND THAT WOULD THEN ALLOW FOR A MORE MEANINGFUL

21   MEDIATION.

22            DO YOU THINK THAT WOULD BE HELPFUL, MR. HARRIS?

23            MR. HARRIS:  I THINK – I THINK, YOUR HONOR, THAT WE DID

24   SUBMIT – AND I THINK YOU SIGNED YOUR STIPULATED PROTECTIVE

25   ORDER.

1          THE COURT:  THAT WAS WITH PRIOR COUNSEL.  SO, I DON'T

2    KNOW IF THERE'S GOING TO –

3          IS THAT CORRECT?  I THINK THAT WAS WHERE PRIOR COUNSEL

4    HAD NOT PARTICIPATED.

5          MR. HARRIS: CORRECT.

6          THE COURT:  OKAY.  SO, I'M TALKING ABOUT A SETTLEMENT –

7    I'M TALKING ABOUT AN AGREEMENT WHERE THE PARTIES CAN NOT ONLY

8    PERHAPS FILE AND EXCHANGE DISCOVERY BUT ALSO CAN EXCHANGE

9    INFORMATION TO ALLOW FOR A MEANINGFUL SETTLEMENT NEGOTIATION.

10          HAS THAT BEEN DISCUSSED, MR. HARRIS?

11          MR. HARRIS:  NO, YOUR HONOR.  IN A SENSE IT WAS – NOT –

12    NOT WITH REGARD TO SETTLEMENT --

13          THE COURT:  MR. HARRIS –

14          MR. HARRIS:  NOT WITH REGARD TO SETTLEMENT.

15          THE COURT:  OKAY.

16          MR. HARRIS:  YOUR HONOR, WHAT WE WANT IS FROM

17    DEFENDANTS WAS TO KNOW WHO THEY – WHO THE SUPPLIERS WERE

18    BECAUSE THE SUPPLIERS ARE BIGGER DEFENDANTS.  AND THEY REFUSE

19    TO GIVE US THAT INFORMATION.

20          THE COURT:  OKAY.  WELL, HERE'S THE THING.

21          I GUESS THERE'S – WELL, LET'S TAKE IT ONE STEP AT A TIME.

22          IF PART OF THE RESOLUTION I SEE THAT YOU  -- THAT YOU GOT

23    150-DOLLAR DEFAULT JUDGMENT.

24          NOW, WE ALL KNOW WHAT THE CASE LAW IS.  AND IF THE – THE

25    FACTS ARE AS BAD AS MR. VOSS IS INDICATING, SETTING ASIDE A

1    DEFAULT IS THE PREFERRED STEP IN  -- IN – IN THE NINTH CIRCUIT.

2            ULTIMATELY, I'M JUST TRYING TO FIGURE OUT IS THERE A WAY

3    TO GET YOUR CLIENT SATISIFIED IF YOU'RE VIEWING NOT ONLY THIS AS A

4    MECHANISM TO GAIN DAMAGES THAT HAVE INCURRED AS A RESULT OF

5    PLAINTIFF'S – OF -- SORRY, DEFENDANTS' ACTIONS.

6            BUT DURING THE COURSE OF DISCOVERY YOU MAY OR MAY

7    NOT GET WHO THE SUPPLIER IS.  IF THAT'S GOING TO BE PART OF THE

8    RESOLUTION, AND THAT – THAT'S VERY-- EMINENTLY REASONABLE.  THAT

9    COULD BE PART OF THE SETTLEMENT AGREEMENT THAT THE PARTIES

10    CAN AGREE TO THEN GOING FORWARD.

11            BUT I WANT TO SEE LIKE YOU DON'T EVEN KNOW THOUGH –

12    PLAINTIFFS  --

13            AND, MR. VOSS, THEN, I'LL TURN THIS OVER TO YOU –

14            HAVEN'T SPOKEN TO YOUR CLIENT – WELL, LET ME ASK THIS,

15    MR. HARRIS.

16            ARE YOU AMENABLE TO – OR IS YOUR CLIENT AMENABLE TO

17    HAVING MR. VOSS'S CLIENT PROVIDE YOU THE NECESSARY FINANCIAL

18    AND SALES INFORMATION THAT WOULD ALLOW FOR A MEANINGFUL

19    SETTLEMENT CONFERENCE?

20            MR. HARRIS:  YES.

21            THE COURT:  OKAY.

22            MR. VOSS, IS YOUR CLIENT AMENABLE TO PROVIDING THAT?

23            MR. VOSS:  THEY DID.  AND I AM HOLDING HERE A SETTLEMENT

24    AGREEMENT ENTERED INTO –

25            THE COURT:  NO.

1        MR. VOSS:  NO, NO, NO.  BECAUSE YOU HAVE TO UNDERSTAND

2    WHAT'S IN THIS SETTLEMENT AGREEMENT.

3        THE SOCAL I.P. FIRM CAME REPRESENTING THEIR CLIENTS

4    WITH A DRAFT LAWSUIT AND THREATS THAT THEY WOULD FILE SAID

5    LAWSUIT AGAINST AMN AND MR. NEWMAN.

6        THE CONTENTS OF THAT LAWSUIT HAVE NOW BEEN FILED WITH

7    THE COURT IN THE INSTANT LITIGATION.  EVERY SINGLE BIT OF IT EXCEPT

8    FOR THE BREACH OF CONTRACT CLAIM.

9        ALL OF THE ALLEGATIONS REGARDING THE TRADEMARK

10   INFRINGEMENT, ET CETERA AND ALL THE PARALLEL STATUTES WERE

11   COVERED IN THAT DRAFT LITIGATION THAT WAS DISCUSSED AND WHICH

12   WAS SETTLED PURSUANT TO A SETTLEMENT AGREEMENT ON MAY 22.

13       THEY THEN FILED THE SUIT THAT THIS SETTLEMENT

14   AGREEMENT SAYS, "ATHENA COSMETICS AGREES NOT TO FILE OR

15   PURSUE ANY ACTION INCLUDING THE LAWSUIT."  AND THEY EVEN COPIED

16   IT AND ATTACHED THE LAWSUIT SO THAT WE WOULD KNOW WHAT WE

17   WERE TALKING ABOUT THAT THEY WERE AGREEING THAT THEY WOULD

18   NOT FILE.

19       IN ADDITION THAT SAME SETTLEMENT AGREEMENT REQUIRED

20   THE PAYMENT OF $50,000 IN DAMAGES – WHICH WAS ALL NEGOTIATED AT

21   ARM'S LENGTH REPRESENTED BY –

22       THE COURT:  MR. VOSS, WAS THE 50,000 PAID?

23       MR. VOSS:  YES.

24       THE COURT:  OKAY.

25       MR. VOSS:  EVEN MORE IMPORTANT TO YOUR POINT THERE

1    WERE NEGOTIATED AT ARM'S LENGTH A REQUIREMENT TO PROVIDE – AND

2    IT WAS A VERY SPECIFIC.  THEY WENT BACK AND FORTH ABOUT HOW IT

3    WOULD BE DEFINED AS TO WHAT WOULD BE PROVIDED, TWO AREAS OF

4    INFORMATION.

5         ONE OF THOSE AREAS OF INFORMATION GETS TO WHAT

6    YOU'RE TALKING ABOUT IS THEY PROVIDED A LIST OF EVERY SINGLE

7    BUYER THAT PURCHASED AND  -- JUST TO PUT A NAME ON IT.  IT'S

8    REVITALASH COSMETICS – OKAY.  JUST SO WE KNOW WHAT WE'RE

9    TALKING ABOUT – EYELINER-TYPE STUFF.

10        AND THEY PROVIDED A DETAILED LIST OF EVERYBODY THAT

11   HAD PURCHASED THEIR PRODUCT ON THE INTERNET.

12        THEY ALSO SUPPLIED IN THE SCHEDULE 1 AS REQUIRED AS

13   DEFINED IN THE SETTLEMENT AGREEMENT THE SOURCE OF WHERE THEY

14   HAD PURCHASED ALL OF THE PRODUCT THAT WAS SOLD.

15        NOW, THE INFORMATION CONTAINED THEREIN I WAS TOLD WAS

16   IN THEIR VIEW INADEQUATE IN THAT THE EBAY SELLERS WHERE THEY -–

17   THEY BOUGHT STUFF FROM PEOPLE ON EBAY.  THEY TURN AROUND AND

18   RESOLD THE PRODUCT.  AND IT'S, YOU KNOW, IN THE PARLANCE GRAY

19   MARKETS SINCE YOU WERE IN THE BIZ.

20        THE EBAY INFORMATION WE WERE TOLD WAS UNVERIFIABLE.

21        I PERSONALLY, YOUR HONOR, WENT ONLINE.  AND IN MOMENTS

22   WAS ABLE TO TAKE THE EBAY SELLER INFORMATION THAT WAS

23   DISCLOSED TO – TO THEM PURSUANT TO THIS SETTLEMENT AGREEMENT

24   AND VERIFY EVERY ONE OF THESE SELLERS.  IN FACT, NOT ONLY WAS I

25   ABLE TO VERIFY I WAS ABLE TO VERIFY THEY'RE STILL SELLING

1    REVITALASH PRODUCT ON THEIR EBAY WEBSITES.  NOT TO US.  THEY

2    WERE OUR SOURCE THAT WE WERE BUYING THINGS FROM THROUGH

3    EBAY.

4           AND OUR OTHER BIG SOURCE WAS THIS CZECHOSLOVAKIAN

5    COMPANY 'LINK AMERICA."

6           WE PROVIDED AS REQUIRED BY THE SETTLEMENT AGREEMENT

7    THE INFORMATION THAT WAS SOUGHT IN SETTLING THE CASE THAT THEY

8    THEN FILED.

9           SO – AND I APOLOGIZE.  I THINK  -- I BELIEVE I SAID $50,000.  IT

10   WAS $25,000 IF MEMORY SERVES CORRECTLY.

11          NEITHER HERE NOR THERE.  THE AMOUNT WAS PAID.

12          THE REQUIREMENT THAT YOU'RE DISCUSSING WAS CONTAINED

13   IN THE LAST PAGE OF THE SETTLEMENT AGREEMENT IS THAT AMN SHALL

14   PREPARE SCHEDULES 1 AND 2 OF THIS AGREEMENT.  IT SHALL DELIVER

15   THEM TO THEIR ATTORNEY , ACT AS ESCROW AGENT AND HOLD THE

16   SCHEDULES AND DELIVER THEM TO SOCAL I.P. GROUP.

17          AND I DON'T BELIEVE THAT ANYBODY CONTENDS THAT WE

18   DIDN'T PROVIDE THE INFORMATION REGARDING ALL OF THE PURCHASERS

19   AND THE INFORMATION AS DEFINED IN THE AGREEMENT TO THE SOCAL

20   I.P. LAW GROUP AS REQUIRED BY THE PURCHASE AGREEMENT – EXCUSE

21   ME, BY THE SETTLEMENT AGREEMENT.

22          WHAT HAPPENS IS IS THAT AT SOME LATER DATE AFTER THE

23   SETTLEMENT AGREEMENT HAS BEEN SIGNED, WE BECOME AWARE THAT

24   THEIR COUNSEL – AND THERE'S A CZECHOSLOVAKIA –

25          THE COURT:  WELL, HERE  -- AND WE'VE GOTTEN – WE'VE

1    GOTTEN PRETTY FAR AFIELD –

2            MR. VOSS:  IN OTHER WORDS, WE PROVIDED THE –

3            THE COURT:  MR. VOSS, HOLD ON.

4            MR. VOSS:  -- INFORMATION FOR THEM TO EVALUATE DAMAGES

5    --

6            THE COURT:  MR. VOSS – MR. VOSS  -- MR. VOSS, HOLD ON.

7            WE'VE GOTTEN A LITTLE FAR AFIELD OF THE DISCOVERY ISSUE.

8    AND IT SOUNDS LIKE WE'RE GETTING INTO A SETTLEMENT NEGOTIATION.

9            DO YOU THINK, MR. HARRIS, THE PARTIES WOULD FIND IT

10   USEFUL IF WE SET UP A SETTLEMENT CONFERENCE WITH ME?

11           MR. HARRIS:  YES.

12           MR. VOSS:  I'M NEVER OPPOSED TO THAT.

13           THE COURT:  OKAY.

14           MR. VOSS:  ENDING POLICY. (LAUGHTER.)

15           THE COURT:  IF THAT IS SOMETHING THAT THE PARTIES ARE

16   AMENABLE TO, DO YOU – HOW SOON DO YOU FOLKS THINK WE CAN GET

17   TOGETHER FOR A SETTLEMENT CONFERENCE?

18           WHAT – I'M NOT GOING TO  -- I'M JUST  -- NOW THAT AT LEAST

19   WE HAVE AN AGREEMENT THAT THERE IS A SETTLEMENT CONFERENCE

20   THAT BOTH THE PARTIES ARE AGREEABLE TO.

21           WHY DON'T I DO THIS.  YOU HAVE TO FILE A PARTICULAR ADR

22   FORM BEFORE THE DISTRICT JUDGE WHICH WOULD INDICATE THAT YOU

23   WANT TO PROCEED BEFORE THE MAGISTRATE JUDGE.

24           YOU CAN DO THAT.  FILE THAT.

25           JUDGE WILSON   -- I MEAN, WILL PROBABLY SIGN OFF ON THAT.

1          AND WHAT WE CAN THEN DO IS IN THE INTERIM AFTER THAT

2     HAS BEEN FILED BECAUSE WE CAN START SELECTING DATES FOR THIS

3     YEAR, THIS CALENDAR YEAR, TO GET THIS DONE AND MAKE EFFORTS

4     TOWARDS RESOLVING THIS MATTER.

5          THOUGHTS, MR. HARRIS.

6          MR. HARRIS:  AGREED, YOUR HONOR.

7          AND LET ME ADD THIS.  WE NOW HAVE A NEW COUNSEL MR.

8     VOSS.  AND WE MAY BE ABLE TO SETTLE IT WITHOUT YOUR HONOR'S

9     HELP.  I DON'T KNOW.

10          WE HAVEN'T -- HE  -- SINCE HE'S ONLY BEEN IN THE CASE --

11     WHAT? -- A WEEK OR TWO, WE REALLY HAVEN'T PURSUED SETTLEMENT.

12          THE COURT:  WHY DON'T WE DO THIS.

13          LET'S HAVE IT WITH -- LET'S SET A DATE WITH ME.  AND THE

14     PARTIES CAN TALK BEFORE -- IF IT'S RESOLVED BEFORE THEN, THAT'S

15     FANTASTIC.  IF NOT, I CAN GET INVOLVED.  AND HOPEFULLY -- HOPEFULLY,

16     YOU KNOW, IF IT DOESN'T GET RESOLVED, I CAN PERHAPS OFFER SOME

17     INSIGHT THAT MAYBE WOULD ALLOW FOR THE RESOLUTION.

18          MR. HARRIS:  OKAY.

19          MR. VOSS:  MAY I ASK A COUPLE OF PROCEDURAL ISSUES THAT

20     ARE CONCERNING TO ME JUMPING INTO A CASE THAT HAS A TRIAL DATE

21     ON JANUARY 19TH.

22          IS THE -- AM I CORRECT IN MY UNDERSTANDING THAT THE

23     CURRENT  -- SINCE A JURY TRIAL IS SET FOR JANUARY 19, AND IT SEEMS

24     THAT THE COURT'S STANDING ORDER SAY  THAT THERE ARE NO JURY

25     TRIALS PROCEEDING APPARENTLY.

1          IS THERE A JURY TRIAL ON JANUARY 19?  OR DO I NEED TO FILE

2     A MOTION TO CONTINUE THE TRIAL?

3          THE COURT:  YOU NEED TO FILE A MOTION TO CONTINUE THE

4     TRIAL.

5          MR. VOSS:  OKAY.  THAT'S WHAT I NEED TO KNOW.

6          MR. HARRIS:  WELL, YOU NEED TO FILE A STIPULATION

7     BECAUSE WE'LL AGREE TO THAT.

8          MR. VOSS:  WELL, THAT WOULD BE FANTASTIC.

9          THE COURT:  I THINK  -- I MEAN, WHAT WOULD BE USEFUL IS

10    PERHAPS EVEN A MORE OMNIBUS STIPULATION OF NOT ONLY MOVING

11    THE TRIAL BUT SETTING A RULE 26(F) CONFERENCE WHICH COULD START

12    THEN TRIGGERING DATES.

13         MR. VOSS:  AND THEN -- LET'S GO THE NEXT STEP ON THAT.

14         WE'RE TALKING ABOUT HAVING A SETTLEMENT CONFERENCE.

15         AND I HAD ASKED COUNSEL TO CONSIDER STIPULATING TO

16    SETTING ASIDE THE DEFAULT AND DEFAULT JUDGMENT.  I PROVIDED THE

17    MOTION INCLUDING ALL OF THE SUPPORTING DECLARATIONS.

18         IT WOULD BE NICE IF WE WERE REPRESENTING A PARTY AT

19    ISSUE IN HAVING THOSE DISCUSSIONS.  IT' MAKES IT A LITTLE MORE

20    COMPLICATED TO HAVE A RULE 26(F) WITHOUT THEM.  IT MAKES IT MORE

21    COMPLICATED TO HAVE A SETTLEMENT DISCUSSION WITHOUT HIM.

22         THE COURT:  LET'S DO THIS.

23         MR. HARRIS:  I'M  --

24         THE COURT:  GO AHEAD.

25         MR. HARRIS:  NO. I  WAS JUST SAYING WE'RE  -- WE'RE REALLY

1    WAITING FOR THE CLIENT TO ACT ON IT.

2            THE COURT:  OKAY.

3            OKAY.  SO, HERE'S WHAT WE'RE GOING TO DO  -- WHAT I  --

4    WHAT I'M GOING TO SEE THEN IS THE PARTIES WILL FILE AN ADR FORM

5    WITH THE  -- WITH JUDGE WILSON INDICATING THAT THE PARTIES ARE

6    AMENABLE TO HAVING A SETTLEMENT CONFERENCE WITH ME.

7            WE  -- AND – AND ONCE THAT'S FILED THE PARTIES CAN START

8    TALKIING ABOUT SEEING IF THEY'RE AVAILABLE WITHIN THE NEXT COUPLE

9    OF WEEKS TO SCHEDULE OR  -- OR EVEN INTO JANUARY ABOUT

10   SCHEDULING A SETTLEMENT CONFERENCE.

11           RIGHT NOW THE ONLY WEEK THAT IS NOT AVAILABLE FOR ME IS

12   JANUARY 2ND THROUGH THE 9TH.  BUT THAT MAY BECOME AVAILABLE.

13   RIGHT NOW IT'S NOT.  OTHER THAN THAT, IF WE WANT TO DO IT THIS YEAR

14   I'M – I'M AROUND.

15           MR. VOSS:  ALL RIGHT.  WE WILL DISCUSS  -- COUNSEL AND I

16   GET ALONG WELL.  SO, WE'LL TRY AND FIGURE IT OUT FOR YOU, YOUR

17   HONOR.

18           THE COURT:  VERY GOOD.  OKAY.

19           MR. VOSS:  AND THEN WE'LL FILE THE MOTION TO CONTINUE

20   THE TRIAL IF WE DON'T HAVE A STIPULATION.  IT SOUNDS LIKE I MAY HAVE

21   A STIPULATION TO BE ABLE TO DEAL WITH THAT AND TO SET THE RULE

22   26(F).

23           THE COURT:  VERY GOOD.

24           OKAY.  IN LIGHT OF THAT, IS THERE ANYTHING FURTHER TODAY,

25   MR. HARRIS?

1          MR. HARRIS:  NO, YOUR HONOR.

2          I JUST WANTED TO TELL COUNSEL THAT I'M AVAILABLE NOW TO

3   TALK ABOUT THE CASE JUST ON THE PHONE.

4          THE COURT:   VERY GOOD.

5          MR. VOSS, IS THERE ANYTHING THEN FURTHER FOR ME?

6          (PAUSE IN PROCEEDINGS.)

7          THE COURT:  I'LL TAKE THAT AS A NO.

8          (LAUGHTER.)

9          MR. VOSS:  THANK YOU, YOUR HONOR.

10          THE COURT:  SILENCE  -- SILENCE  -- SILENCE IS NO.

11          MR. VOSS:  I WASN'T QUICK ENOUGH.

12          (LAUGHTER.)

13          THE COURT:  IT'S LIKE WHEN YOU'RE PICKING A JURY, RIGHT?

14   IT'S LIKE I'LL TAKE THAT AS A NO.  ALL RIGHT.  LET'S MOVE ALONG.

15          (LAUGHTER.)

16          THE COURT:  VERY GOOD.

17          ALL RIGHT.  EVERYONE HAVE A GREAT DAY.  AND STAY SAFE.

18          IMR. VOSS:  THANK YOU FOR YOUR TIME.

19          MR. HARRIS:  THANK YOU, YOUR HONOR.

20          THE COURT:  ALL RIGHT.  BYE-BYE.

21          THE CLERK:  COURT IS ADJOURNED.

22          (PROCEEDINGS ADJOURNED.)

23

24

25

1

2                         TRANSCRIBER'S CERTIFICATE

3

4                              DISCLAIMER

5     THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6         DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

7

8

9           I, Dorothy Babykin, attest that the foregoing proceedings provided to me

10    electronically were transcribed by me to the best of my ability.

11

12                         ___/s/_ *Dorothy Babykin*

13                              Dorothy Babykin

14    Date: 10/19/21

15

16

17

18

19

20

21

22

23

24

25