UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ATHENA COSMETICS, INC. ) | |
| ) | |
| PLAINTIFF,, ) | |
| ) | |
| vs. ) | CASE NO. CV 20-05526-SVW(SHK) |
| ) | |
| AMN DISTRIBUTION, INC., ) | |
| ET AL,. ) | LOS ANGELES, CA |
| ) | SEPTEMBER 10, 2021 |
| DEFENDANTS ) | |
| _____) | |

STATUS CONFERENCE
BEFORE THE HONORABLE SHASHI H. KEWALRAMANI
UNITED STATES  MAGISTRATE JUDGE

APPEARANCES:                    SEE NEXT PAGE

COURT REPORTER:              RECORDED, BOX/AT&T

COURTROOM DEPUTY:         DANA CASTELLANOS

TRANSCRIBER:                     DOROTHY BABYKIN
                                            COURTHOUSE SERVICES
                                            1218 VALEBROOK PLACE
                                            GLENDORA, CALIFORNIA  91740
                                            (626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

     FOR PLAINTIFF ATHENA COSMETICS:
3
     SOCAL IP LAW GROUP[ LLP
4    BY:  MICHAEL HARRIS
             ATTORNEY AT LAW
5    310 NORTH WESTLAKE BOULEVARD
     SUITE 120
6    WESTLAKE VILLAGE, CALIFORNIA  91362

7

8    FOR DEFENDANT AMN DISTRIBUTION, INC., ET AL.:

9    VOSS SILVERMAN & BRAYBROOKE, LLP
     BY:  DAVID VOSS
10          ATTORNEY AT LAW
      4640 ADMIRALTY WAY
11     SUITE 800
      MARINA DEL REY, CALIFORNIA  90292
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       SEPTEMBER 10, 2021                          CV 20-05526-SVW(SHK)

2       PROCEEDINGS:  DISCOVERY STATUS CONFERENCE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        LOS ANGELES, CALIFORNIA; SEPTEMBER 10, 2021

2        THE CLERK:   CALLING CASE NUMBER 2:20-CV-05526, ATHENA

3   COSMETICS, INC. VERSUS AMN DISTRIBUTION, INC., ET AL.

4        COUNSEL, YOUR APPEARANCES STARTING WITH THE

5   PLAINTIFFS.

6        MR. HARRIS:  YES, YOUR HONOR.  MICHAEL HARRIS OF SOCAL IP

7   LAW GROUP REPRESENTING PLAINTIFF ATHENA COSMETICS, INC.

8        MR. VOSS:  GOOD MORNING, YOUR HONOR.

9        DAVID VOSS APPEARING ON BEHALF OF DEFENDANTS.

10        THE COURT:  ALL RIGHT.  SO, I REVIEWED THE SUBMISSION THAT

11   WAS PROVIDED BY MR. VOSS.

12        I ALSO WANTED TO JUST ADDRESS SOMETHING IN CONTEXT OF

13   OF THAT.

14        I UNDERSTAND ESI PROTOCOLS  AND THESE REQUIREMENTS

15   ARE IN CONJUNCTION WITH ANY DISCOVERY THAT'S PREVIOUSLY

16   PROPOUNDED.  IT'S NOT A SEPARATE MECHANISM TO CONDUCT

17   DISCOVERY BUT, RATHER, IS A MECHANISM THAT WORKS TO LIMIT THE

18   EXTENT THAT THE PARTY WHO RECEIVES THE DISCOVERY REQUEST HAS

19   TO GO THROUGH.

20        BECAUSE WHOEVER RECEIVES A DISCOVERY REQUEST HAS AN

21   OBLIGATION TO LOOK THROUGH, SUBJECT TO THE OBJECTIONS,

22   DOCUMENTS BOTH IN HARD COPY AND ELECTRONIC FORM THAT ARE

23   MAINTAINED AND ARE WITHIN THE CARE, CUSTODY AND CONTROL OR

24   POSSESSION OF THE RECIPIENT OF THE DISCOVERY REQUEST.

25        SO, IN THIS  -- AND PERHAPS MR. VOSS ADDRESSES PART OF

1    YOUR PAPER, WHICH IS IT'S NOT MEANT TO BE A SEPARATE  -- YOU KNOW,

2    YOU CAN'T CREATE A WHOLE NEW LIST THAT IS NOT PREVIOUSLY SOUGHT

3    AND ADDRESSED IN PRIOR DISCOVERY REQUESTS.  IT IS MEANT AS A

4    MECHANISM RECOGNIZING THAT  -- YOU KNOW, IF YOU SEND A

5    DISCOVERY REQUEST IN MICROSOFT AS THE DEFENDANT, THAT THEY

6    HAVE TO GO THROUGH THEIR WHOLE COMPANY AND SEARCH ON

7    EVERYBODY'S COMPUTERS FOR MATERIAL RELATED TO A THING, IT'S A

8    WAY TO LIMIT IT TO PARTICULAR CUSTODIANS AND PARTICULAR SEARCH

9    TERMS THAT ARE TO RESULT IN A MORE PROPORTIONAL EFFORT BEING

10   UNDERTAKEN TO PROVIDE DISCOVERY.

11          MR. HARRIS, I ASSUME YOU AGREE WITH THAT.

12          MR. HARRIS:  YES, YOUR HONOR.  I HAVE TO AGREE.

13          THE COURT:  WELL, YOU DON'T HAVE TO,. I MEAN, IF I'VE SAID

14   SOMETHING WRONG.  BUT THAT'S MY UNDERSTANDING OF ESI

15   PROTOCOLS AND HOW THEY WORK IN CONJUNCTION WITH RFPS THAT

16   ARE PROPOUNDED OR INTERROGATORIES THAT ARE PROPOUNDED.

17   THEY'RE NOT A SEPARATE MECHANISM BY WHICH TO SAY, HEY, HERE'S AN

18   ESI PROTOCOL.  WE WANT  -- HERE'S SOME FIVE SEARCH TERMS

19   INDEPENDENT FROM ANY PREVIOUSLY PROPOUNDED RFPS.

20          MY IMPRESSION  -- AND THIS IS WHERE I NEED TO GET YOUR

21   INPUT  -- IS THAT DEFENDANTS HAVE NOT SEARCHED THEIR ELECTRONIC

22   DATABASES OR WHEREVER OR EMAIL ADDRESSES OR THINGS OF THAT

23   NATURE.

24          MR. VOSS:  I HAVE.

25          THE COURT:  YOU HAVE.  OKAY.

1          WELL, MR.  –

2          MR. VOSS:   AND I SURELY DON'T WANT TO INTERRUPT.  BUT I DO

3   HAVE SOMETHING TO EXPLAIN TO YOU IN THAT REGARD FOLLOWING ON

4   WHAT I PROMISED TO YOU THE LAST TIME WE MET.

5          THE COURT:  OKAY.

6          MR. VOSS:  SO, WHEN LAST WE MET YOU MADE THE

7   COMMENT ABOUT ESI OF, HEY, MR. VOSS, I THINK THIS MAKES IT EASIER

8   ON YOU.  REALLY OUGHT TO CONSIDER THIS.

9          AND ONE OF THE QUESTIONS WE HAD WAS WHAT DATABASES

10  OR WHATEVER DO THEY HAVE.  AND WE TALKED ABOUT THE FACT THAT I

11  THOUGHT EVERYTHING RAN THROUGH WALMART AND EBAY AND THAT

12  THEY RELIED ON  -- YOU KNOW, THE CUSTOMER WHEN THEY PLACE AN

13  ORDER, DO THEY PLACE THE ORDER FROM WALMART.  WE FULFILL IT IF

14  YOU WILL.  OKAY.

15         AND THE QUESTION WAS, YOU SAID, WELL, MAYBE HE HAS LIKE

16  QUIKBOOKS.

17         I DON'T REMEMBER TELLING ME THAT.

18         AND I SAID TO YOU, I AM GOING TO GO BACK TO THE CLIENT AND

19  ENDEAVOR TO FIND OUT EXACTLY WHAT THEY HAVE ON THE BACK END IN

20  ADDITION TO THE ORDERS COMING FROM WALMART SO THAT I KNOW

21  EXACTLY WHAT DATABASES THERE ARE TO SEARCH.

22         WHAT I CAME TO FIND OUT WAS THERE IS AN ORDER

23  FULFILLMENT SOFTWARE THAT THEY HAVE.  INDEED, WHEN A CUSTOMER

24  PLACES AN ORDER IT GOES TO WALMART OR EBAY, YOU KNOW,

25  WHEREVER THE ORDER IS PLACED.

1        AND ATHENA HAS GONE OUT AND DONE THIRD-PARTY

2   SUBPOENAS TO THEM SHOW THE PRIMARY SOURCE MATERIAL OF WHAT

3   ORDERS WERE PLACED.  YOU DON'T HAVE TO RELY ON THE DEFENDANT.

4   YOU GOT IT FROM THE GUYS THAT TOOK THE ORDER.  YOU GOT IT FROM

5   WALMART.

6        NONETHELESS I HAD MY CLIENT LITERALLY SKYPE CALL WITH

7   ME AND TAKE HIS PHONE AND AIM IT AT HIS SCREEN ON HIS COMPUTER

8   AND TAKE ME THROUGH THE ORDER FULFILLMENT DATABASE AND HOW IT

9   WORKS.

10       AND WHAT I HAD HIM DO WAS TO DO A SEARCH TERM, FOR

11  EXAMPLE, ON IT, WHICH WASN'T HARD FOR HIM TO DO, WHERE HE WENT

12  THROUGH AND HE LOOKED FOR ALL ORDERS PLACED FROM  -- I FORGET

13  WHENEVER IT IS – IN 2019 THAT WAS THE RELEVANT START AS LISTED ON

14  THE DISCOVERY REQUESTS  -- ALL THE WAY TO THE PRESENT DAY AND

15  SHOW ME WHAT THAT LOOKS LIKE.

16       WHAT WE PRODUCED AS PART OF THE 4,700 PAGES OF

17  DOCUMENTS THAT WE SENT ORDER  -- OVER WAS LITERALLY EVERY

18  SINGLE ORDER, THE FULFILLMENT SHEET SHOWING THE CUSTOMER,

19  EVEN THE UPS SHIPPING NUMBER.

20       NOW, PREVIOUSLY WHEN THESE WERE PRODUCED AS

21  SCHEDULE 2 TO THE SETTLEMENT AGREEMENT, THEY WERE  -- THE

22  ADDRESSES AND ALL WERE REDACTED OUT BECAUSE AMONGST OTHER

23  THINGS AS I HAVE SHARED WITH COUNSEL, WALMART AND THE LIKE HAVE

24  RULES THAT YOU CANNOT SHARE CUSTOMER INFORMATION WITH ANY

25  THIRD PARTIES.  IN FACT, REALLY INTERESTINGLY I FOUND OUT THAT

1    AMAZON IS NOW REQUIRING THAT YOU DELETE IT WITHIN SIX MONTHS.

2    YOU'RE NOT ALLOWED TO EVEN KEEP IT IN YOUR DATABASE ANYMORE.

3         NOT RELEVANT TO OUR CASE BUT INTERESTING TO ALL OF US IN

4    THIS AREA.

5         SO, IN ANY EVENT I PRODUCED EACH AND EVERY ONE OF THOSE

6    ORDERS THAT ARE THE BACK-UP IN ESSENCE TO SCHEDULE 2.

7         BUT IN TERMS OF ESTABLISHING, WELL, NUMBER ONE, DID WE

8    GO THROUGH AND DO THE SEARCH TERMS.  YES.  CONSISTENT WITH THE

9    DISCOVERY THAT WAS PROMULGATED ON US, THAT YOU WENT THROUGH,

10   AND WE WENT THROUGH THE REQUEST FOR PRODUCTION OF

11   DOCUMENTS, THERE AREN'T THAT MANY SEARCH TERMS.

12        AND THEN WHAT WE GOT WAS THIS NEW PROPOSAL THAT

13   CONTAINS PAGES AND PAGES AND PAGES AND PAGES OF SEARCH

14   TERMS.  BUT THOSE AREN'T IN THE DISCOVERY REQUESTS THAT WE

15   TALKED ABOUT WHEN WE MET.  THESE ARE NEW AND SEPARATE.

16        SO, WHEN IT COMES TO HOW HARD WAS IT FOR US TO JUST GO

17   THROUGH WITHOUT AN ESI PROTOCOL AND PULL THIS STUFF UP,

18   HE GOES IN AND PUTS IN RIVITALASH AND HITS SEARCH AND PUTS THE

19   DATES IN IT AND, BINGO, IT POPS RIGHT OUT.

20        SO, WE PRODUCED ALL THAT TO COUNSEL.  COUNSEL

21   COMPLAINED THAT SOME OF THE THINGS WE PRODUCED THROUGH ON

22   THE LEFT EDGE  -- LIKE ON AN EMAIL I WOULD SAY, LIKE FROM AND TO

23   LIKE THE "F" AND THE "T" WERE CUT OFF LIKE A SIXTEENTH OF AN INCH.

24   WE RESCANNED THOSE THINGS.  I HAD PROMISED TO GET THEM TO

25   COUNSEL AS QUICKLY AS POSSIBLE.

1       I WAS --  I APOLOGIZE  -- ON MY ANNIVERSARY.  I HAD THEM SENT BY

2   MY OFFICE TO HIM BEFORE I EVEN GOT BACK, LIKE A WEEK BEFORE I

3   RETURNED.  I DIDN'T EVEN LOOK AT THEM.  I JUST SAID SEND THEM.  THEY

4   ARE THE DISCOVERY.  IT IS WHAT IT IS.  THERE'S NOTHING FOR ME TO

5   CHANGE.  JUST SEND IT TO HIM.

6           AND IT TURNS OUT THAT WHEN THEY DID THAT  -- AND COUNSEL

7   AND I HAVE TALKED ABOUT THESE BE ATTORNEY'S-EYES-ONLY  BECAUSE

8   OF THAT CUSTOMER INFORMATION THAT WE'RE NOT ALLOWED TO

9   DISCLOSE.

10          I'VE EVEN SENT COUNSEL THE WALMART CONTRACT

11  CONFIDENTIALITY AGREEMENT SO HE CAN SEE THAT THAT'S THE CASE.

12  AND I DID THEN HAVE THE WALMART (AUDIO OUT)  THEY WERE CLEANED

13  UP AND SENT OVER.  THAT WAS JUST A FUNCTIONAL FIX.

14          BUT ALL THIS INFORMATION HAS BEEN OVER TO THEM NOW FOR

15  A COUPLE OF WEEKS.

16          SO, YES  -- AND I WILL BE CANDID, YOUR HONOR, I FELT YOUR

17  CLEAR IRE THAT I HAD NOT SENT THE ELECTRONIC VERSION OVER TO HIM

18  YET.  WHAT I SENT TO HIM WAS SUPPLEMENTED BY THOUSANDS OF

19  PAGES OF ADDITIONAL INFORMATION AFTER PROMISING YOU I WOULD

20  LOOK INTO WHAT IT WAS THEY HAD ON THE BACK END.  AS YOU SAID, DO

21  THEY HAVE QUIKBOOKS OR SOMETHING ELSE.   SO, I DID THAT.

22          WE HAVE RESPONDED TO THE DISCOVERY REQUESTS THAT

23  HAVE ALREADY BEEN PROMULATED TO US.  THE QUESTIONS NOW HAVE

24  TO DO WITH MOVING FORWARD IN MY VIEW  -- DO WE HAVE AN ESI

25  PROTOCOL FOR OTHER THINGS.

1          AND I HAVE SEVERAL THOUGHTS IN THAT REGARD, NOT THE

2     LEAST OF WHICH IS THE TESTS OF PROPORTIONALITY AND, YOU KNOW,

3     COST AND EVERYTHING ELSE.  I HAVE REACHED OUT TO THREE

4     DIFFERENT ESI PROVIDERS BECAUSE THIS IS A 25,000-DOLLAR CASE AT

5     THE END OF THE DAY.  LET'S NOT FORGET THAT THE ONLY REASON ANY

6     OF THIS LITIGATION IS HAPPENING IN MY MIND RUNS AFOUL OF THE FACT

7     WE HAVE A SETTLEMENT AGREEMENT.

8          I'LL STOP.  THANK YOU.  I DO HAVE MORE TO ADD (AUDIO OUT)

9          THANK YOU.

10         THE COURT:  HAVE YOU SEARCHED HIS EMAIL ACCOUNTS?

11         MR. VOSS:  I ASKED THEM TO SEARCH THEIR EMAIL ACCOUNTS

12    AS WELL.  COUNSEL -- OR EVERYBODY SHOULD BE REMINDED THAT THE

13    INTERROGATORIES ASKED QUESTIONS ABOUT WHETHER THERE WERE

14    EMAILS, FOR EXAMPLE --

15         THE COURT:  MR. VOSS --

16         MR. VOSS:  BACK AND FORTH.

17         THE COURT:  MR. VOSS.

18         MR. VOSS:  AND THE ANSWER IS NO.  NO, THERE ARE NO  --

19         THE COURT:  YOU HAVE TO -- NO.  OKAY.  SO, HERE'S THE

20    THING.  YOU SEARCHED ALL ELECTRONIC DATABASES THAT ARE

21    MAINTAINED BY YOUR CLIENT FOR MATERIAL THAT IS BEING SOUGHT BY

22    THE RFPS?

23         MR. VOSS:  YES.  AND THERE ARE ONLY TWO OF THOSE.

24    THERE'S EMAILS --

25         THE COURT:  AND WITHIN -- WITHIN DATABASES IT INCLUDES

1    CELL PHONES, TEXT MESSAGES, EMAILS.

2            AND EVERYTHING OF THAT SORT HAS ALL BEEN SEARCHED?

3            MR. VOSS: I DID NOT ASK ABOUT TEXT MESSAGES. I'M BEING

4    HONEST. AND I WILL REDOUBLE THE REQUEST.

5            THE COURT: (INAUDIBLE.)

6            MR. VOSS: I DID NOT, YOUR HONOR. I DON'T THINK HE WAS

7    TEXT MESSAGING TO EASTERN EUROPE.

8            THE COURT: WELL, YOU'VE GOT TO CHECK.

9            MR. VOSS: AND I --

10           THE COURT: THAT'S YOUR OBLIGATION.

11           MR. VOSS: I'M -- I'M NOT LYING TO YOU -- YOUR ANGER I'M --

12           THE COURT: THESE ARE SORTS OF THINGS THAT I'M -- LIKE I

13   SAID, I'M TRYING TO MAKE THIS MORE EFFICIENT AND MORE COST

14   EFFECTIVE.

15           MR. VOSS: THAT WOULD BE THE ONLY THING.

16           THE COURT: OKAY.

17           WELL, THEN IF YOU'RE --

18            MR. HARRIS, IT SOUNDS LIKE THEY -- THEY DON'T WANT AN ESI

19   PROTOCOL. THEY WANT -- ONE OF THE OTHER THINGS UNDER THE

20   RULES ARE YOU HAVE TO PROVIDE THE MATERIAL IN ELECTRONIC

21   FORMAT SUCH THAT THE PLAINTIFF OR THE PROPONENT OF THE

22   DISCOVERY CAN TEST THE ACCURACY AND THE LEGITIMACY OF THE

23   INFORMATION THAT'S BEING PROVIDED IF IT IS AVAILABLE.

24           SOUNDS LIKE HERE ELECTRONIC FORMATS OF THIS DISCOVERY

25   IS AVAILABLE, BUT YOU CHOSE TO PRINT IT OFF AND PROVIDE IT.

1          HAS ELECTRONIC  -- HAS AN ELECTRONIC VERSION BEEN

2    PROVIDED?

3          MR. HARRIS:  NO, YOUR HONOR.  THE ELECTRONIC WAS

4    PROVIDED.

5          THE COURT:  -- MR. HARRIS  --- MR. HARRIS  -- YOU WANT TO  -- I

6    MEAN, PLEASE, LET ME JUST GET THAT ANSWER AND THEN WE CAN

7    FIGURE IT OUT.

8          MR. VOSS.

9          MR. VOSS:  NO, YOUR HONOR.  PURSUANTTO THE STIPULATION

10   IN OUR RULE 26(F) REPORT, IT WAS PROVIDED IN A PDF AS COUNSEL

11   AGREED.  AND IN THAT REPORT COUNSEL STIPULATED THAT THERE

12   WOULD BE  -- I HAVE THE EXACT LANGUAGE HERE.  BUT IN ESSENCE  -- OH,

13   I HAVE IT HERE.

14         "NO EXCHANGE OF ESI IS OTHERWISE ANTICIPATED BY THE

15          PARTIES."

16         WE DID EXACTLY WHAT, FIRST OF ALL, THEY DID IN PRODUCING

17   TO US.  AND NOT ONLY THAT  -- AND THAT INCLUDES ALL THE WALMART

18   INFORMATION, ALL THE EBAY INFORMATION.  WE'VE GOTTEN 13,000 PAGES

19   OF DOCUMENTS ALL THAT IS A PDF.  WE GAVE IT BACK TO THEM IN THE

20   SAME FORMAT.  IN  THE FORMAT COUNSEL AND I STIPULATED WE WOULD

21   DO IN THIS CASE.   – RIGHT IN THE JOINT REPORT.

22         THE COURT:  OKAY.

23         AND YOU GUYS HAVE AGREED TO IT.

24         MR. HARRIS:  DO YOU GOT ANY BEEF WITH THAT?  YOU'RE GOOD

25   WITH THAT?

1          MR. HARRIS:  YES, YOUR HONOR.  YOUR HONOR, I DON'T HAVE A

2     BEEF WITH IT.  I WAS  -- MY COMPLAINT WAS NOT ABOUT PDF.

3          THE COURT:  OKAY.

4          MR. HARRIS:  -- I NEED --

5          THE COURT:  WELL  -- WELL, IT SOUNDS LIKE  -- MR. HARRIS, IT

6     SOUNDS LIKE MR. VOSS IS REPRESENTING EXCEPT FOR TEXT MESSAGES

7     THEY'VE SEARCHED ALL THEIR ELECTRONIC DATABASES FOR MATERIALS

8     THAT ARE BEING SOUGHT PURSUANT TO THE RFPS AND

9     INTERROGATORIES.

10          MR. HARRIS:  THAT'S WHAT HE  -- THAT IS WHAT HE'S SAYING

11     NOW.

12          ONE OF  --- ONE OF THE ISSUES THOUGH IS THESE DOCUMENTS

13     THAT HE PRODUCED LAST WEEK OR TWO WEEKS AGO SAY WHAT  -- WHAT

14     RFP IT WAS ABOUT.  AND I DON'T KNOW WHAT IT IS ABOUT.

15          IF HE'S SAYING IT'S EVERYTHING THAT THEY HAVE, THEN, OKAY,

16     IT'S EVERYTHING THAT THEY HAVE

17          THE COURT:  OKAY.

18          SO, WHAT DO YOU NEED FROM ME TODAY THEN, MR. HARRIS?

19          MR. HARRIS:  I  -- IF  -- AS I JUST SAID, IF I HAVE A

20     REPRESENTATION THAT IT'S EVERYTHING THAT THEY HAVE, THEN, THAT'S

21     FINE.

22          THE COURT:  MR. HARRIS  -- MR. HARRIS, YOU'VE HEARD WHAT I

23     HEARD.

24          WHAT DO YOU WANT FROM ME TODAY THEN, SIR?

25          MR. HARRIS:  NOTHING ELSE, YOUR HONOR.

1          THE COURT:  OKAY.

2          I THINK WE'VE GOT THIS RESOLVED THEN.

3          MR. VOSS, ANYTHING FURTHER TODAY, SIR?

4          MR. VOSS:  NO, I  -- IN REPRESENTING TO THE COURT I WILL

5    FOLLOW UP IN MY DUTY TO SUPPLEMENT ANYWAY.  I WILL VERIFY THE

6    SITUATION ABOUT TEXT MESSAGES AND GET BACK TO COUNSEL BEFORE

7    CLOSE OF BUSINESS MONDAY.

8          THE COURT:  UNDERSTOOD.

9           ALL RIGHT.  THANK YOU.  THANK YOU BOTH.

10          MR. VOSS:  THANK YOU, YOUR HONOR.

11           MR. HARRIS:  THANK YOU, YOUR HONOR.

12           THE CLERK:  COURT IS ADJOURNED.

13            (PROCEEDINGS CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              TRANSCRIBER'S CERTIFICATE

4

5                                      DISCLAIMER

6        THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

7            DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

8

9

10            I, Dorothy Babykin, attest that the foregoing proceedings provided to me

11   electronically were transcribed by me to the best of my ability.

12

13                              /s/  *Dorothy Babykin*

14                              Dorothy Babykin

15
     Date:   10/15/21
16

17

18

19

20

21

22

23

24

25