DAVID C. VOSS, JR. (State Bar No. 147330)
david@vsbllp.com
VOSS, SILVERMAN & BRAYBROOKE LLP
4640 Admiralty Way, Suite 800
Marina Del Rey, California 90292-6602
T: (310) 306-0515/ F: (310) 306-5368

Attorneys for Defendants Moishe Newman
and AMN Distribution, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| ATHENA COSMETICS, INC.,<br><br>            Plaintiff<br><br>    v.<br><br>AMN DISTRIBUTION, INC., MOISHE NEWMAN, an individual d/b/a BRUSH EXPRESS, and DOES 1-10, INCLUSIVE,<br><br>            Defendants | Case No. 2:20-cv-05526-SVW-SHK<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>**PRE-TRIAL CONFERENCE**<br><br>Date: November 8, 2021<br>Time: 3:00 p.m.<br>Place: Courtroom 10A<br>        First Street Courthouse<br>        350 W. 1st Street, 10th Floor,<br>        Los Angeles, California 90012 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................4

II.     PARTIES, WITNESSES, AND COUNSEL.....................................5

III.    PLAINTIFF'S CLAIMS .................................................................7

IV.     THE SETTLEMENT AGREEMENT ...........................................9

V.      THE EVIDENCE AT TRIAL WILL DEMONSTRATE THAT
        DEFENDANTS  DID NOT BREACH THE SETTLEMENT AGREEMENT
        ...........................................................................................................13

        A.    Plaintiff's Own Evidence Demonstrates that Defendants Did Not
              Engage in the Post-Settlement Sale of Athena Counterfeit Goods........13

        B.    The Evidence at Will Establish That AMN Did Not Breach Its
              Contractual Obligation With Respect to Disclosures of Seller and
              Customer Information ..............................................................14

              1.    AMN discharged its contractual obligation by delivering the
                    required schedules ..........................................................14

              2.    There is No Evidence that AMN Breached it Obligations With
                    Respect to the Disclosure of Customers on Schedule 2 ...............15

              3.    The Evidence Does Not Support Plaintiff's Contention That
                    AMN Omitted Suppliers From Schedule 1 .................................15

              4.    The Evidence Does Not Support Plaintiff's Contention That
                    AMN Incorrectly Stated the Number of Purchases from the
                    Suppliers Listed Omitted Schedule 1 ............................................17

DEFENDANTS' TRIAL BRIEF

**VI.    ANY EVIDENCE OF PLAINTIFF'S DAMAGES IS SUBJECT TO AUTOMATIC EXCLUSION BY VIRTUE OF PLAINTIFF'S REPEATED FAILURE TO COMPLY WITH RULE 26(A)(1)(A)(III) ................................17**

**VII.    TO THE EXTENT THAT PLAINTIFF IS ABLE TO ESTABLISH A MINOR BREACH OF THE SETTLEMENT AGREEMENT, PLAINTIFF CANNOT ESTABLISH THAT ANY SUCH BREACH WAS A SUBSTANTIAL FACTOR IN CAUSING IT HARM OR MATERIALITY.19**

**VIII.   SHOULD THIS ACTION PROCEED TO PHASE II AND PLAINTIFF ESTABLISH LIABILITY, ANY AWARD OF STATUTORY DAMAGES SHOULD BE MINIMAL ...................................................23**

**IX.     OTHER TRIAL RELATED MATTERS ................................24**

**A.     Bifurcation of Issues .................................................24**

**B.     Defendants are Entitled to an Offset of $25,000 in the Event that Plaintiff is Awarded Damages on Any of its Claims ..............25**

**C.     Defendants are Entitled to Their Attorney's Fees Should They Prevail at Trial ....................................................25**

**D.    Evidentiary Issues and Objections ................................25**

**X.     CONCLUSION ...............................................26**

2

# **TABLE OF AUTHORITIES**

## **Cases**

*Haley v. Casa Del Rey Homeowners Assn.*, 153 Cal. App. 4th 863, 871–72, (2007)......22

*Merch. v. Corizon Health, Inc*., 993 F.3d 733, 740 (9th Cir. 2021) ..........................18, 19

*Pugh v. See's Candies, Inc*., 203 Cal. App. 3d 743, 761, 250 Cal. Rptr. 195 (Ct. App. 1988), *disapproved on other grounds in Guz v. Bechtel Nat., Inc.,* 24 Cal.4th 317, 351 (2000).........................................................................................................................9

*Silver State Broad., LLC v. Bergner*, 705 F. App'x 640, 641 (9th Cir. 2017) .................18

*US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 909 (2005) ...................22

*Vanderberg v. Petco Animal Supplies Stores, Inc*., 906 F.3d 698, 705 (8th Cir. 2018)..18, 19

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1105-1106 (9th Cir. 2001) ....................................................................................................................................18

## **Statutes**

15 U.S.C. 1117(b) ............................................................................................................24

CACI No. 3934 ("Damages on Multiple Legal Theories").................................................9

California Business & Professions Code sections 17200 ...................................................8

## **Other Authorities**

CACI No. 303 ("Breach of Contract – Essential Factual Elements").......................20, 22

CACI No. 351 ("Special Damages") .................................................................................23

CACI No. 352 ("Loss of Profits – No Profits Earned") ....................................................23

CACI No. 353 ("Loss of Profits – Some Profits Earned")................................................23

## **Rules**

Fed R. Civ. Proc. 37(c)(1)................................................................................................18

Fed R. Civ. Proc. 26(a)(1)(A)(iii) ....................................................................................18

DEFENDANTS' TRIAL BRIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Defendants AMN Distribution, Inc. ("AMN") and Moishe Newman ("Mr. Newman" and collectively, "Defendants") have consistently taken the position that plaintiff Athena Cosmetics, Inc. ("Plaintiff" or "Athena") filed its complaint without evidence of wrongdoing for the sole purpose of using the discovery process as a vehicle for obtaining additional documents to which it was not entitled under the parties' settlement agreement (the "Settlement Agreement") that lies at the heart of this litigation.  Throughout the litigation process, Athena has played a game of hide the ball – failing to include many items in its Rule 26 disclosures, such as damages, and failing to identify witnesses, documents, facts, and other evidence in response to basic contention interrogatories.  As a result, Defendants could not fathom the precise factual basis of Plaintiff's claims until Plaintiff recently filed its Memorandum of Contention of Law and Facts and provided Defendants with a draft of the Pre-Trial Conference Order.

Now, on the eve of a bifurcated trial, Plaintiff's pre-trial filings make it abundantly clear that Plaintiff does not and has never had sufficient evidence to support its breach of contract claim upon which Plaintiff must prevail to proceed with its remaining claims.[1] Despite having previously taken the opportunity to amend its complaint, Plaintiff has only alleged two breaches:  (1) that AMN breached the settlement agreement by "providing inaccurate and incomplete contact information of its customers and suppliers;" and (2) that both AMN and Newman "breached the settlement agreement by continuing to sell Athena counterfeit goods."

Unfortunately for Plaintiff, none of the evidence cited in its pre-trial submissions prove that Defendants breached the Settlement Agreement.  To the contrary, and as is

---

[1] This Court issued an order on April 1, 2021 bifurcating the jury trial into two phases, with the "first phase to address Plaintiff's breach of contract claim," i.e., the Sixth Claim. (Dkt. 74). "If Plaintiff prevails on the breach of contract claim, the parties will proceed to phase two, during which Plaintiffs remaining claims will be resolved." (Dkt. 74).

discussed in detail below, Plaintiff's evidence *establishes an absence of such breaches*. Even assuming, *arguendo*, that Plaintiff could establish a minor omission or inaccuracy in any of AMN's disclosures, Plaintiff cannot establish the necessary elements of materiality, causation, and damages.[2]  Consequently, Defendants are confident that Plaintiff will not prevail on its breach of contract claim and, hence, will be barred from proceeding with is remaining claims.

In the unlikely event that this case does proceed to the Phase II trial, Plaintiff will see little success for its efforts.  The Phase II claims are comprised of Lanham Act claims and a single state law claim for common law unfair competition – all of which claims were released by Plaintiff under the Settlement Agreement.  Although the claims are pled under various legal theories, the factual predicate for all the claims is the same: Defendants' purported sale of counterfeit Athena Cosmetic products.  AMN admits it sold several of Athena's products prior to the effective date of the Settlement Agreement but denies it knew that any of them were counterfeit. In fact, despite approximately 3,800 transactions, Plaintiff has only alleged the existence of *a single transaction* involving the sale of Athena counterfeit goods by AMN.[3]  Consequently, to the extent that AMN is held liable on any of the Phase II claims, Plaintiff should only be entitled to minimal  statutory damages and no treble or punitive damages.

## I.    PARTIES, WITNESSES, AND COUNSEL

***AMN Distribution, Inc. ("AMN"):***   AMN is one of the two defendants in this matter.  It is in the business of purchasing goods and selling them online, including such sites as eBay and Walmart.

---

[2] Setting aside Plaintiff's inability to prove that the alleged breaches were a "substantial factor" in causing damages, any evidence of Plaintiff's damages is subject to an automatic exclusion by virtue of Plaintiff's repeated failure to provide any of the damages disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

[3] The evidence will establish that Defendants Newman did not sell any goods or otherwise engage in conduct that would expose him to liability in his individual capacity on any of Plaintiff's claims.

***Moishe ("Mark") Newman:***  Mr. Newman is the other defendant in this matter and is the Chief Executive Officer of AMN.  Plaintiff has sued him as an individual "doing business as 'Brush Express.'"  The documents that Plaintiff has produced and intends to use at trial, however, clearly demonstrate that "Brush Express" was a moniker used by AMN, not Mr. Newman individually.

***David Voss of Voss, Silverman & Braybrook LLP:***  Mr. Voss is counsel for defendants AMN and Newman.

***Athena Cosmetics, Inc. ("Athena"):***  Athena is the plaintiff in this matter. According to the allegations in its complaint, Athena is in the business of manufacturing and selling cosmetics including the Revitalash products upon which it bases its claims.

***Christina Felix:***  Ms. Felis is the only employee of Athena who has been designated to testify on its behalf in this matter. She has not been designated as an expert although it appears that Plaintiff may improperly try to use her in that capacity, to which Defendants' reserve the right to object.

***Various Online Selling Platforms and/or Payment Processors, including eBay, Walmart, and PayPal:***  eBay and Walmart are online platforms on which platforms on which Plaintiff's goods were sold. PayPal is a processor of payments. Athena has expressed its intent to call witnesses from these entities to support its claim that Defendants sold counterfeit goods after entering into the parties' settlement agreement. The documents produced by these entities in response to Plaintiff's subpoenas negate Plaintiff's claim.

***Marina Lang and Michael Harris of Socal Ip Law Group LLP***:  Ms. Lang and Mr. Harris are counsel for Athena.  Significantly, lead trial counsel Ms. Lang submitted a declaration in opposition to Defendants' motion for summary judgment in which she testified to key substantive factual aspects of Athena's claims.  In fact, she was the only witness who submitted a substantive declaration on behalf of Athena in opposition to the summary judgment motion. She also was the author of pre-litigation communications demanding additional information that AMN was not obligated to provide under the

Settlement Agreement.  These communications and subsequent conduct suggest that the pending action has been a pretext to obtain such information through discovery.  It is for this reason that Defendants have placed her on their witness.  Although Defendants will call Ms. Lang to the stand only as necessary, Ms. Lang has forced Defendants' by deliberately interjecting herself into this case as a percipient witness.

## II.   PLAINTIFF'S CLAIMS

Plaintiffs' six claims are as follows:  (1) "Trademark Counterfeiting [15 U.S.C. § 1117(B)]"; (2) "Trademark Infringement [15 U.S.C. § 1114]"; (3) "Contributory Trademark Counterfeiting and Infringement [15 U.S.C. §§ 1117(b) and 1114)]"; (4) "False Designation of Origin, False Description and False Advertising [15 U.S.C. § 1125(a)]"; (5) "Common Law Unfair Competition;" and (6) "Breach of Contract." Plaintiff's First Amended Complaint ("FAC"), Dkt. 73.

Defendants have discussed the elements of the foregoing claims in detail in their Memorandum of Contentions of Fact and Law.  Dkt. 141.  There are four aspects of the claims, however, that Defendants wish to highlight for the Court.

*First,* Plaintiff's contract claim, as pled, is limited to two breaches: (a) "AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers;"  [FAC (Dkt. 73), ¶ 91]; and (b) both "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods"  after the effective date of the Settlement Agreement. [FAC (Dkt. 73), ¶ 92]. Plaintiff amended its original June 22, 2020 complaint (Dkt. 1) to include the latter breach (i.e., post-settlement sale of counterfeit goods) on March 22, 2021 (Dkt. 73) in response to this Court's ruling on a motion to dismiss.[4]  Dkt. 72, p. 3.

From the date of the amended complaint until the present, Plaintiff's case been specifically limited to *only* to those two allegations.  Now, on the eve of trial, Plaintiff

---

[4] The Court held that only AMN, not Newman, had a contractual duty with respect to customer and supplier disclosures.

has attempted to expand its breach of contract claim by including the following statement in their section of the proposed Final Pretrial Conference Order: "Defendants breached the agreement by purchasing, buying, obtaining, procuring, manufacturing, warehousing, producing, importing, distributing, circulating, selling, delivering, marketing, offering for sale, advertising, promoting, displaying or otherwise using products with one or more Athena Trademarks."

The foregoing marks a substantial last-minute expansion of the litigation that goes far beyond the existing allegations of Plaintiff's First Amended Complaint. Plaintiff had the opportunity to amend its complaint in March of 2021 in the wake of the Court's ruling on Mr. Newman's motion to dismiss. Plaintiff chose to add only one additional allegation regarding the Defendants' purported breach. *Plaintiff should not be permitted to engage in such gamesmanship at the last minute, which would severely prejudice Defendants, whose discovery, attack on the pleadings and other pre-trial motions and trial preparation have focused on the claims as pled.* Consequently, Defendants insist that Plaintiff's contract claim and all evidence and argument related thereto be limited to the actual breaches pled in the Sixth Cause of Action of Plaintiff's First Amended Complaint.

*Second,* Plaintiff did not discuss its third claim for relief, i.e., "Contributory Trademark Counterfeiting and Infringement [15 U.S.C. §§ 1117(b) and 1114)]" in its Memorandum of Contentions of Fact and Law. Accordingly, Plaintiff should be deemed to have abandoned this claim.

*Third,* Plaintiff's fifth claim for relief, as currently pled, is for a California common law claim for unfair competition. FAC (Dkt. 73), ¶¶ 75-84. Plaintiff's Memorandum of Contentions of Fact and Law, however, contains an extensive discussion of California's *statutory claim* for unfair business competition under California Business & Professions Code sections 17200, *et. seq.* (the "UCL"). Dkt. 138, p. 4, line 15 – p. 4, line 8). *Once again, Plaintiff should not be permitted to unilaterally change its claims at the last minute. If Plaintiff had intended to assert a claim under the*

DEFENDANTS' TRIAL BRIEF

*UCL, it should have pled it and Defendants should have had the opportunity attack it by way of a pre-trial motion and discovery.  Defendants' request an order limiting Plaintiff's fifth claim for relief and all evidence and argument related thereto to California common law unfair competition as pled.*

*Fourth,* Plaintiff's first five claims for relief are basically alternative theories in by which Plaintiff's seek damages and compensation for basically the same alleged wrongful act: the selling of counterfeit goods. Plaintiff is only entitled to recover an item of damages once regardless of the number of legal theories alleged.  *See generally* CACI No. 3934 ("Damages on Multiple Legal Theories") Judicial Council of California Civil Jury Instructions (2021 edition).  In addition, to the extent that Plaintiff is awarded damages on its contract claim it is not entitled to additional damages for the same injury under its Lanham Act or state law unfair competition claims.  *See Pugh v. See's Candies, Inc.*, 203 Cal. App. 3d 743, 761, 250 Cal. Rptr. 195 (Ct. App. 1988), *disapproved on other grounds in Guz v. Bechtel Nat., Inc.,* 24 Cal.4th 317, 351 (2000)  ("Ordinarily, a plaintiff asserting both a contract and tort theory arising from the same factual setting cannot recover damages under both theories, and the jury should be so instructed.")

## III.   THE SETTLEMENT AGREEMENT

The Settlement Agreement and attached schedules have been preliminarily marked as Exhibit 101.  A copy of the settlement, with redacted versions of the schedules, was attached to Defendants' Answer (Dkt. 75-1, 75-2, 75-3) as well their motion for summary judgment.  There are potential issues relating to the redaction of certain consumer and private information that will need to be discussed at the Pre-Trial Conference or before trial. [5]  There is also an issue relating to a subsequent update

---

[5] Defense counsel have redacted both schedules in all Court filings to remove the home addresses (except for city and state) of the customers and what appears to be the home address for one of the vendors to comply with Local Rule 5.2-1.  The last, but not the first, names of the customers have also been redacted to protect their privacy.  Plaintiff has the unredacted version of these documents and has not alleged any inaccuracy or omission with respect to the redacted information.

provided to schedule 1 to the Settlement Agreement that Defendants will attempt to resolve with Plaintiff prior to trial or with the assistance of the Court.

Many of the basic facts surrounding the Settlement Agreement are undisputed. Defendants AMN and Newman entered into the Settlement Agreement with Plaintiff Athena to resolve various claims relating to sale of Athena's cosmetic products.  The parties executed the Settlement Agreement on April 29 and 30, 2020.  Settlement Agreement, pp. 8-9.  By its express terms, the Settlement Agreement became effective as of the "last date signed below," i.e.,  April 30, 2020 (the "Effective Date"). Settlement Agreement, p. 1 (first full paragraph) and pp. 8-9 (signature blocks).

Defendants' obligations under the Settlement Agreement included:  (1) the cessation of the purchase, offering for sale, use, etc., of "any goods or products with the Athena Cosmetics Marks, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks" [Settlement Agreement, p. 3, ¶ 2(a)(vii)] (the "Cessation of Sale Provision"); (2) the shipment to Athena, within 30 days of the Effective Date, of their "entire remaining inventory of any goods or products with the Athena Cosmetics Marks" [Settlement Agreement, p. 3, ¶ 2(a)(viii)] (the "Return of Inventory Provision"); (3) their agreement not to challenge the validity or enforceability of the Athena Cosmetics Marks [Settlement Agreement p. 3, ¶ 3] (the "Validity of Mark Provision"); and (4) the payment of $25,000 to Athena within 3 business days of the Effective Date "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit" (the "Payment Provision").  Settlement Agreement, p. 4, ¶ 4.

Defendant AMN, but not Newman, was also obligated under the Settlement Agreement to provide: (a) "the full and complete contact information and the amount of product purchased from each seller" as Schedule 1 to the Settlement Agreement ("Schedule 1"); and (b)  "the full and complete contact information for each customer and the aggregate amount of product sold" as Schedule 2 to the Settlement Agreement

("Schedule 2") .  Settlement Agreement, p. 3, ¶ 2(a)(iii), (v).  The disclosures in the
foregoing schedules were limited to sales and purchases from *January 1 to December
31, 2019*.  Settlement Agreement, p. 3, ¶ 2(a)(iii), (v).  Significantly, the disclosure
obligation was buried in recital provisions and a "miscellaneous section" of the
Settlement Agreement.  Settlement Agreement, p. 3, ¶ 2(a)(iii), (v), p. 8, ¶ 9(g).

The Settlement Agreement also includes several release provisions in favor of
Defendants. These provisions include:

- <u>A covenant not to sue</u>, in which Plaintiff agrees that "[i]n consideration for
  the mutual promises, terms and conditions set forth in this Agreement,
  Athena Cosmetics agrees not to file or pursue *any action*"— including a
  nearly identical previously threatened lawsuit referenced in the Settlement
  Agreement – "against Defendants related to their purchase and sale of
  products bearing Athena Cosmetics Marks *occurring on or before* the
  Effective Date of this Agreement."  Settlement Agreement p. 2, ¶ 1(a),
  (emphasis added).

- <u>A specific "Release" provision</u>, which provides that "[c]onditional on"
  Defendants making the required settlement payment, furnishing Schedules
  1 and 2, and delivering their entire remaining inventory of goods and
  products bearing Plaintiff's marks, plaintiff Athena "does hereby
  irrevocably release and discharge each of the Defendants . . . from *any and
  all* claims, damages, charges, causes of action or liabilities that the
  Releasors have or may have against any of the Releasees [defined to
  include the Defendants], whether known or unknown, *of any nature
  whatsoever, from the beginning of time to the execution date of this
  Agreement which arose in any way from, the sale of any Athena products
  (counterfeit or otherwise),* including, but not limited to, any and all claims,
  losses, demands, causes of action, suits, whether known or unknown,
  whether at law or in equity, that may have accrued from the beginning of

time or may exist as of the Effective Date of this Agreement that are or that could have been asserted in the Lawsuit or any other civil or criminal action, or that arise out of or in connection with Defendants' purchases and sales of Athena product (whether counterfeit or not)." Settlement Agreement, pp. 4-5, ¶ 5(emphasis added).

- A "Waiver of Claims" provision, larger in scope than the Release provision, that includes a California Civil Code section 1542 recital and provides that, "The Releasors and Releasees agree that this Agreement shall act as a *release of any and all claims that may arise from conduct prior to the execution of this Agreement* whether such claims are known, unknown, foreseen, or unforeseen, liquidated or unliquidated, choate or inchoate, notwithstanding Section 1542 . . . ." Settlement Agreement p. 5, ¶ 6 (emphasis added).

As noted above, the separate Payment Provision of the Settlement Agreement also contains release language of its own providing that Defendants' payment of $25,000 will be "in full and complete settlement, compromise, release, satisfaction and discharge of all claims, damages and liabilities in favor of Plaintiff based on or arising out of all claims that are or that could have been asserted in the aforementioned Lawsuit." Settlement Agreement, p. 4, ¶ 4.

Although the Settlement Agreement contains a recital that AMN made purchases and sales of Athena products by AMN during the time specified in the Settlement Agreement, i.e., from January 1, 2019 to December 31, 2019, it does not contain an admission by either Defendant that they engaged in the purchase or sale of counterfeit goods. Settlement Agreement, p. 1, third paragraph, p. 3, ¶¶ 2(a)(iii), 2(a)(iv). Rather, AMN simply acknowledged that it "purchased and sold certain cosmetic products that *Athena Cosmetics contends* are counterfeit products." Settlement Agreement, p. 3, third paragraph.

## IV.   **THE EVIDENCE AT TRIAL WILL DEMONSTRATE THAT DEFENDANTS  DID NOT BREACH THE SETTLEMENT AGREEMENT**

### A.   **Plaintiff's Own Evidence Demonstrates that Defendants Did Not Engage in the Post-Settlement Sale of Athena Counterfeit Goods**

It is now abundantly clear that Plaintiff *had no evidence* when it amended its complaint that "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods" after executing the Settlement Agreement.  Plaintiff's evidence was analyzed and rebuffed in Defendant's Reply in Support of it Motion for Summary Judgment. Dkt. 115, 5-8.  Basically, Plaintiff's lead trial counsel – Marina Lang – declared that she conducted several internet searches in September of 2021 several months *after* Plaintiff filed its amended complaint to include this specious allegation.  In the course of those searches, she found webpages purporting to show that AMN continued to offer Plaintiff's products for sale on Groupon and what purports to be a January 21, 2021 product review by a person named "Melody."

Setting side numerous evidentiary and conflict issues with respect to Ms. Lang's anticipated testimony[6] and exhibits, *even if* the exhibits and Ms. Lang's testimony are admitted into trial, they do not support Plaintiff's allegation.  *First,* the documents state on their face that the product was sold out.   *Second,* Plaintiff has failed to come forward with any Groupon actual sales record reflecting a single post-settlement sale of any Athena Products by Defendants.  *Third,* Plaintiff lacks any evidence as to when reviewer "Melody" purchased the Athena product, and more importantly, *from whom she purchased it*;  the review, on its face, was of a product, not the seller!

Ms. Lang also testified that she obtained records of post-settlement sales by Defendants from Walmart.  Again, setting aside the evidentiary issues, not a single page

---

[6] Again, it was Ms. Lang, not her client, who submitted a substantive declaration in opposition to Defendants' motion for summary judgment and testified on factual issues in support of her clients' claims.  See Dkt. 114.

of the 78 page exhibit referenced by Ms. Lang indicates the sale of single product by Defendants after 4/30/20.

Ms. Lang testified further that she believed that Defendants engaged in post-settlement sales on eBay, declaring that: (a) there exists a "user ID" named "Louis-Leblanc" that is "associated with the defendants or one of Defendant Newman's relatives;" (b) one of eBay's business records, identified as Exhibit 31 (Dkt. 114-11), demonstrates that "defendants –through this User—started dumping their (presumably bad counterfeit) RevitaLash inventory on eBay" commencing on April 23, 2020 (which is pre-settlement); (c) this dumping was unsuccessful, leading to the product being "sold off little by little every month until as recently as 1/23/21, with the sales earning $10,000 earned $in [sic] revenue." Ms. Lang's testimony is nothing more than sheer speculation, as her testimony was totally lacking in foundation and most importantly her client never presented evidence in Initial Disclosures, discovery, or as part of Local Rule 16-2 to support these unfounded accusations.

The upshot is that none of Plaintiff's exhibits and anticipated testimony, even if admitted into evidence at trial, prove Plaintiff's allegation that AMN and Mr. Newman breached the Settlement Agreement "by continuing to sell Athena counterfeit goods."[7]

**B.**   **The Evidence at Will Establish That AMN Did Not Breach Its Contractual Obligation With Respect to Disclosures of Seller and Customer Information**

    **1.**   **AMN discharged its contractual obligation by delivering the required schedules**

Plaintiff does not dispute that it received the required schedules. Schedules 1 and 2 were appended to and became "part of" the Settlement Agreement.  Settlement

---

[7] In particular, there is no evidence that Mr. Newman, individually, ever engaged in the sale of products.  Although Plaintiff alleges that Mr. Newman "is an individual doing business under the name of 'Brush Express,'" the exhibits upon Plaintiff rely only reference a "Brush Express operated by AMN Distribution."

Agreement, p. 8, ¶ 9(g) and Exhs. 1A and 1B.  Schedule 1 is one page long and contains for each seller a product description, amount purchased, and seller contact information. Settlement Agreement, Sched. 1.  Schedule 2 is forty-six pages long and contains the contact information for each customer and amount sold to them as required by the Settlement Agreement.  Settlement Agreement, Sched. 2, pp. 1-46.  In fact, the latter goes beyond the scope of the information required by the Settlement by providing the following for each customer: (a) "Order ID" numbers; (b) customer first and last name; (c) total purchase amount for each customer; (d) "status" and "payment status;" (e) order date and time; (f) customer shipping address; (g) customer shipment phone number; (h) UPC code number; (i) quantity purchased; (j) product name; and (k) tracking number. Settlement Agreement, Sched. 2 pp. 1-46.  The combined schedules total 47 pages and identified more than  3,800 transactions.  The evidence will also establish that, at Plaintiff's request, AMN went beyond its contractual duties by providing Athena with an updated schedule 1 that included both purchase dates and a detailed breakdown of quantities purchased on each date.

### 2.   There is No Evidence that AMN Breached it Obligations With Respect to the Disclosure of Customers on Schedule 2

Although Plaintiff has alleged that  "AMN breached the settlement agreement by providing inaccurate and incomplete contact information" with respect to customers *and* suppliers, Plaintiff has never produced any evidence of the former. Now, in a last-minute act of desperation, Plaintiff now contends that Walmart was a customer that AMN failed to disclose.  Lest there be any confusion, the term customer – as used in the Settlement Agreement – refers to the "consumers" who purchased the products from AMN. Settlement Agreement, p. 3, ¶ 2(a)(v).  The evidence at trial will establish that Walmart was an online selling platform, not a customer.

### 3.   The Evidence Does Not Support Plaintiff's Contention That AMN Omitted Suppliers From Schedule 1

The term "seller" – as used in the Settlement Agreement – refers to the sources from whom "AMN purchased products bearing Athena Cosmetic Marks."  Settlement Agreement, p. 3, ¶ 2(a)(iii).  Plaintiff erroneously contends that AMN failed to identify the following "sellers" in Schedule: (1) Nechemiah Newman; (2) Adina's Beauty Shop and Adina's Beauty Store; (3) Austramerica; (4) bluelinela; and (5) valenced.[8]

Nechemiah Newman is an employee of AMN who purchased products for AMN.  Likewise,  Austramerica and bluelinela are all user ids, display names, or DBAs used by AMN.  The evidence at trial will reflect that Schedule 1 included all Athena products purchased by Nechemiah Newman under these user ids or names for AMN and the source (*i.e.,* the "sellers") from whom the products were purchased. These display names are not separate entities.  The evidence will show that Adina Beauty was never a buyer of products.

"Valenced," on the other hand, has no relationship to AMN, but purchases from "valenced" *were in fact disclosed* on Schedule 1. The simple fact of the matter is that *at the time the purchases were made, "valenced" was known as "ciritbeauty."*  The purchase of goods from "ciritbeauty" is in fact reflected on Schedule 1, which identifies the source of 5 units purchased on 11/22/19 as follows: "leeyelashco (item sent to Athena in the order was from Cirit Beauty (seller display name at time of sale)"

Importantly, Plaintiff attempts to use seller and display name information obtained in 2021 which is not probative of the names disclosed in May of 2020!  Seller and display names which are merely aliases can be changed at any time.  Plaintiff is devoid of any evidence showing that the information in the Schedules as prepared in May of 2020 was inaccurate at the time the Schedules were created.  Comparing names a year or more later is comparing apples and oranges.

---

[8] It is presently unclear which, if any, of these theories Plaintiff intends to pursue at trial.  Plaintiff originally included, then deleted, the arguments made with respect to Nechemiah Newman, Adina's Beauty Shop, Adina's Beauty Store, and valenced from its drafts of the proposed final pretrial conference order provided to Defendants.

DEFENDANTS' TRIAL BRIEF

### 4. The Evidence Does Not Support Plaintiff's Contention That AMN Incorrectly Stated the Number of Purchases from the Suppliers Listed Omitted Schedule 1

Plaintiff asserts in its section of the proposed Final Pretrial Conference Order that Schedule 1 is inaccurate because "Defendants purchased 35 units from 'Sterlingwoman," but Schedule 1 says they purchased five." The evidence at trial will establish that AMN did not consummate the transaction for a full 35 units but, in fact, only received 5 units as AMN returned the other 30 units to Sterlingwoman and received a refund for the same.

Plus, even if Plaintiff could somehow construct an argument that AMN breached the Settlement Agreement by failing to disclose the 30 returned units, that number pales in comparison to the over 2,800 units listed on Schedule 1. Again, Plaintiff has argued that it is of utmost importance that they obtain the name of the source. They received it: Sterlingwoman whether 35 or 5 does not change the fact that they have all sellers identified. To the extent that Plaintiff is concerned that consumers may have received counterfeit goods (and there is no evidence that the goods received from Sterlingwoman were counterfeit), Plaintiff received Schedule 2, which identified the consumers to whom the goods were sold. As a result, Plaintiff still cannot establish the elements of materiality, causation, and damages. In other words, Plaintiff cannot prove that an error in the number of units purchased from a supplier identified in Schedule 1 was a "substantial factor" in causing Plaintiff harm.

## V. ANY EVIDENCE OF PLAINTIFF'S DAMAGES IS SUBJECT TO AUTOMATIC EXCLUSION BY VIRTUE OF PLAINTIFF'S REPEATED FAILURE TO COMPLY WITH RULE 26(a)(1)(A)(iii)

Plaintiff will be unable to establish an essential element of its contract claim – as well as its other claims – because any evidence of damages is subject to *automatic exclusion* as a result of Plaintiff's repeated and steadfast refusal to fulfill its disclosure requirement under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). The mandates of

that rule are crystal clear.  The plaintiff "must, without awaiting a discovery request" provide the defendant with:

> "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"

Fed. R. Civ. Proc. 26(a)(1)(A)(iii).

The consequences for the failure to provide such information are also crystal clear:

> "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . ."

Fed R. Civ. Proc. 37(c)(1)(emphasis added).

The Ninth Circuit has held that "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merch. v. Corizon Health, Inc*., 993 F.3d 733, 740 (9th Cir. 2021) (affirming exclusion of "case dispositive" expert witness who was not properly disclosed under Rule 26(a)(2)).   *See also, Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1105-1106 (9th Cir. 2001) (affirming exclusion of defendant's damages expert for failure to properly report under Rule 26(a)); *Silver State Broad., LLC v. Bergner*, 705 F. App'x 640, 641 (9th Cir. 2017) (affirming order granting motion in limine excluding damages as a sanction for violating Rule 26(a)(1)(A)(iii). "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)."  *Vanderberg v. Petco Animal Supplies Stores, Inc*., 906 F.3d 698, 705 (8th Cir. 2018).

The **non-disclosing party** "bears the burden of showing that a sanction other than exclusion is better suited to the circumstances" and **must specifically move** for such

18

DEFENDANTS' TRIAL BRIEF

relief.  *Merch,* 993 F.3d at 741. *See also Vanderberg*, 906 F.3d 698, 705. "Where a party does not move for a lesser sanction, however, 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial'" and the "district court does not abuse its discretion in excluding evidence under the plain meaning of Rule 37(c)(1)." *Merch.,* 993 F.3d at 741.

As explained in detail in Defendant's Motion for Summary Judgment and supporting Declaration of David C. Voss, Jr., Plaintiff failed to make the requisite damages disclosures notwithstanding three iterations of initial disclosures over a several month period. Motion for Summary Judgment (Dkt. 97), pp. 19-23; Voss Decl. in Support of S.J. (Dkt. 98), ¶¶ 4-8 and exhibits thereto.  Plaintiff also failed  to provide answers to basic contention interrogatories on its contract-based damages.   Voss Decl. in Support of S.J. (Dkt. 98), ¶¶ 9-12 and exhibits thereto.  Accordingly, Defendants are entitled to an order excluding all evidence of Plaintiff's damages and prohibiting Plaintiff (and any witness or person under its control) from introducing, mentioning, or presenting any evidence, testimony, or argument with respect to damages on any of Plaintiff's claims at all phases of the trial of this matter.[9]

## VI.    TO THE EXTENT THAT PLAINTIFF IS ABLE TO ESTABLISH A MINOR BREACH OF THE SETTLEMENT AGREEMENT, PLAINTIFF CANNOT ESTABLISH THAT ANY SUCH BREACH WAS A SUBSTANTIAL FACTOR IN CAUSING IT HARM OR MATERIALITY

Even if the Court were to excuse Plaintiff's flagrant disregard of its disclosure obligations under the Local Rules and Federal Rules of Civil Procedure and permit Plaintiff to introduce evidence of damages, Plaintiff will still be unable to prove materiality and causation. Plaintiff has conceded that it bears the burden of proving materiality to nullify the extensive release provisions of the Settlement Agreement and excuse its performance from its obligations thereunder.  *See* FAC (Dkt. 73), p. 16, ¶ 93;

---

[9] Defendants also intend to raise this issue by motion in limine.

Opp. to Motion to Dismiss (Dkt. 67), p. 4, line 24 – p. 5, line 5. Opp. to Motion for Judgment on the Pleadings (Dkt. 68), p. 5, lines 5-27.  This Court has also previously acknowledged this essential element.  3-16-21 Court Order (Dkt. 72), page 2, ¶ 1. Likewise, there is no question under California law that Plaintiff must prove that it "was harmed" by the breach and that Defendants' "breach of contract was a *substantial factor* in causing [plaintiff's] harm."  CACI No. 303 ("Breach of Contract – Essential Factual Elements") Judicial Council of California Civil Jury Instructions (2021 edition) (emphasis added).  Plaintiff have not produced or disclosed any evidence, let alone identify it in their exhibit list or their Contentions of Fact and Law, to support these elements.

The only clue Plaintiff has provided with respect to materiality and damages - having failed to respond to basic contention interrogatories – can be found in Plaintiff's opposition to Defendants' motion for summary judgment.  Rather than respond with actual evidence, Plaintiff simply argued that: have instead attempted to rely upon the following single paragraph of argument by counsel:

> Why would Athena settle for $25,000 to get the information from accurate Schedules 1 and 2 instead of seeking that $2 million statutory damages? To discover the suppliers to stop them from selling counterfeit. AMN's failure to provide accurate information for Athena to use damaged it significantly.

Plaintiff's Opposition (Dkt. 112), p. 8, lines 1-7.

The foregoing mirrors, to a certain extent, the allegation in Plaintiff's complaint that "Defendants' breaches were material because Athena settled with Defendants to obtain their promises to cease selling Athena counterfeit goods[10] and settled with AMN to obtain complete and accurate contact information." FAC, (Dkt.73), p. 16, ¶ 93.  Mere arguments and allegations, however, are not enough to save the day at trial.

---

[10] As discussed above, Plaintiff will be unable to show that AMN continued to sell any Athena goods.

*First,* aside from perhaps self-serving testimony from a witness who was apparently not involved in the drafting the settlement agreement and did not execute it on Athena's behalf, there is insufficient evidence to support the naked assertion the overriding purpose of the Settlement Agreement was to obtain information to stop or prosecute suppliers.  To the contrary, the Settlement Agreement itself contains no such recitation.  The minimal role of the disclosure obligation is also evidenced by the fact that they are buried in the recital provisions and a "miscellaneous section" of the Settlement Agreement,  Settlement Agreement, p. 3, ¶ 2(a)(iii), (v), p. 8, ¶ 9(g).  The truth of the matter is what Plaintiff did in fact bargain for was the payment of $25,000, the cessation of the sale of Athena products by defendants, the return of unsold inventory, and a promise not to challenge Athena's trademarks. Settlement,  pp. 3-4

*Second,* Plaintiff's argument that it gave up "$2 million [in] statutory damages" is a highly speculative distraction.  The base level for statutory damages – which are at the discretion of the Court – are between $1,000 and $200,000.  15 U.S.C. 1117(c)(1).  The $2,000,000 award is the maximum additional award that a plaintiff *could potentially recover* if it successfully convinced a Court that is "just" to do so, and the plaintiff also proves that "the use of the counterfeit mark was willful."  15 U.S.C. 1117(c)(2).  Plaintiff's suggestion that it gave up a guaranteed $2,000,000 when all it had was purported evidence of single transaction involving the purchase of counterfeit goods from AMN is ludicrous.  Such speculation does not constitute admissible evidence of damages!

*Third,* and this dovetails with the foregoing, besides the highly speculative inadmissible figure of $2,000,000, *Plaintiff has not produced or identified any evidence in support of contract damages* – whether they be lost sales, profits or otherwise.  Plaintiff's Contentions of Law and Fact is shockingly silent on this issue even after it was the subject of extensive briefing in Defendants' attack on the pleadings and motion for summary judgment.  Plaintiff's Contentions of Law and Fact (Dkt. 138). *In fact,*

*Plaintiff does not list any evidence of damages with respect to its contract claim*.
Plaintiff's Contentions of Law and Fact (Dkt. 138), pp. 5-6.

*Fourth,* even if Plaintiff had some evidence of damages *and* the Court were to
permit it to introduce evidence of the same despite the automatic exclusion mandated by
Rule 37(c)(1) , Plaintiff will still be unable to prove the essential element of causation.
Plaintiff bears the burden at trial that proving that the two alleged breaches, i.e., the
alleged continued sale of counterfeit goods and allegedly flawed disclosure schedules,
were "*a substantial factor* in causing" Plaintiff's harm.  As discussed above, there is no
evidence of the post-settlement sale of counterfeit goods.

With respect to the purportedly flawed disclosures, Plaintiff has failed to allege or
articulate any plausible legal or factual theory that AMN was a substantial cause of
Plaintiff's harm, of which there is no evidence in the first instance. "'Causation of
damages in contract cases, as in tort cases, requires that the damages be proximately
caused by the defendant's breach, and that their causal occurrence be at least reasonably
certain.' A proximate cause of loss or damage is something that is a substantial factor in
bringing about that loss or damage." *US Ecology, Inc. v. State of California*, 129 Cal.
App. 4th 887, 909 (2005).  Although the term "substantial factor" appears to have no
precise definition in the context of a breach of contract claim, California cases have held
that it "seems to be something that is more than a slight, trivial, negligible, or theoretical
factor in producing a particular result."  *US Ecology, Inc.*, 129 Cal. App. 4th at 909;
*Haley v. Casa Del Rey Homeowners Assn*., 153 Cal. App. 4th 863, 871–72, (2007).  *See
also* CACI No. 303 (Directions for Use).

If one were to speculate, it appears that Plaintiff's theory is that AMN is somehow
responsible for damages: (a)  caused by unspecified third-party sellers of counterfeit
Athena goods (who AMN allegedly omitted from Schedule 1); (b) whose identities
known to AMN *and whom* AMN was obligated to disclose in schedule 1 because it
purchased Athena goods from them during 2019;  (c) and whose identities Plaintiff
could not otherwise track down independently.  To top it off, it appears that Plaintiff

would attempt to hold AMN[11] responsible for all counterfeit sales by these yet to be identified third parties – who, if they even exist, are independent actors not affiliated with AMN or acting at its direction.  Under such circumstance, Plaintiff will be unable to prove Defendants alleged breaches were a "substantial factor" in causing Plaintiff any harm. To the contrary, Plaintiff's damages theory amounts to nothing more than speculative lost profits – the recovery of damages is barred under California law.  See CACI No. 352 ("Loss of Profits – No Profits Earned"), CACI No. 353 ("Loss of Profits – Some Profits Earned"), Judicial Council of California Civil Jury Instructions (2021 edition).

*Finally,* the type of damages that Plaintiff appears to seek are special damages. to which Plaintiff is not entitled unless it can prove that when the parties made the contract, AMN "knew or reasonably should have known of the special circumstances leading to the harm."  *See* CACI No. 351 ("Special Damages"), Judicial Council of California Civil Jury Instructions (2021 edition).  Once again, Plaintiff has no evidence.

## VII.   SHOULD THIS ACTION PROCEED TO PHASE II AND PLAINTIFF ESTABLISH LIABILITY, ANY AWARD OF STATUTORY DAMAGES SHOULD BE MINIMAL

Defendants have discussed the elements of the Phase II claims Memorandum of Contentions Of Fact and Law, which discussion is incorporated by this reference.  *See* Dkt. 141, pp. 8-22.  For the purposes of this brief, Defendants wish to emphasize five points.

*First* and foremost, Plaintiff – as argued above – should be prohibited from presenting any evidence of damages on any of its Phase II claims.  Consequently, Plaintiff should be barred from recovering any damages or lost profits under 15 U.S.C. 1117(a).

---

[11] Again, this Court has previously held that defendant Newman did not have a disclosure obligation.

*Second*, despite the alternative theories under which the Phase II claims have been pled, they all boil down to whether AMN sold counterfeit Athena goods. On this issue, AMN admits it sold several of Athena's products prior to the effective date of the Settlement Agreement but denies it knew that any of them were counterfeit. Despite the fact that AMN identified approximately 3,800 transactions, Plaintiff has only alleged *a single transaction involving the sale* of an Athena counterfeit good by AMN. FAC (Dkt. 73), ¶ 26.

*Third*, Plaintiff is not entitled to treble damages under the Lanham Act because Plaintiff cannot demonstrate that Defendants "intentionally" used a mark or designation "knowing such mark or designation is a counterfeit mark" in connection with the sale of Athena goods." 15 U.S.C. 1117(b). Likewise, Plaintiff will be unable to make a sufficient showing to establish entitled to punitive damages for its state common law claims for unfair competition.

*Fourth*, to the extent that Plaintiff elects to receive and is otherwise entitled to statutory damages under the Lanham Act in lieu of actual damages and lost profits, Plaintiff should only be awarded minimal damages in the light of its inability to establish that: (a) Defendants knowingly sold counterfeit goods; (b) more than a potentially few transactions out of thousands involved the sale of counterfeit good.

*Fifth*, Plaintiff will be unable to establish individual liability on the part of Mr. Newman. There is no evidence that he personally, as opposed to AMN, engaged in the sale of Athena goods.

## VIII. <u>OTHER TRIAL RELATED MATTERS</u>

### A. <u>Bifurcation of Issues</u>

This Court issued an order on April 1, 2021 bifurcating the jury trial into two phases, with the "first phase to address Plaintiff's breach of contract claim," i.e., the Sixth Claim. (Dkt. 74.) The Court further ruled that: "If Plaintiff prevails on the breach of contract claim, the parties will proceed to phase two, during which Plaintiffs remaining claims will be resolved." (Dkt. 74).

DEFENDANTS' TRIAL BRIEF

Defendants request that a new jury be empaneled for the second phase of the trial. In addition, Defendants have filed a motion to bifurcate discovery pertaining to second phase of the trial from discovery pertaining to the first phase of the trial. (Dkt. 99).  That motion is currently pending before the Court and has been continued for hearing to October 19, 2021 at 1:30 p.m. along with Defendants' motion for summary judgment. (Dkt. 129).

**B.** **Defendants are Entitled to an Offset of $25,000 in the Event that Plaintiff is Awarded Damages on Any of its Claims**

Plaintiff does not dispute that it received a payment of $25,000 pursuant to the terms of the Settlement. Accordingly, Defendants are entitled to an offset of $25,000 to the extent that Plaintiff is awarded damages against them.

**C.** **Defendants are Entitled to Their Attorney's Fees Should They Prevail at Trial**

The Settlement Agreement provides for the recovery of court costs and attorney's fees by the prevailing party.  Settlement Agreement, ¶ 9(c).  Accordingly, Defendants are entitled to such court costs  and attorney's fees should they prevail.  Should the action proceeds to Phase II of the trial and Defendants prevail on the same, Defendants intend to seek their attorney's fees on the Lanham Act claims on the ground that this is an exceptional case.  15 U.S. 1117(a).

**D.** **Evidentiary Issues and Objections**

Although many of the following items have been discussed by Defendants in the Final Pretrial Conference Order and Defendants' Memorandum of Contentions of Fact and Law, Defendant with to highlight the following issues and other housekeeping matters in advance of trial are:

- The exclusion of evidence related to Plaintiff's damages (see above discussion);
- The exclusion of evidence of breached not alleged in the complaint (see above discussion);

25

- An order requiring Plaintiff to withdraw immediately the "Attorney Eye's Only" designation from all trial exhibits previously so designated by Plaintiff in the course of discovery, or alternatively, to prohibit Plaintiff from using the same at trial on the grounds that it constitutes unfair surprise and is prejudicial to use them against Defendants and their witnesses when Defense counsel have been prohibited from discussing the same with their clients and witnesses; and

- The exclusion from trial of demonstrative exhibits offered by Plaintiff that have no foundation, are not based on admissible evidence, and do not accurately summarize or reflect the contents of admissible evidence or anticipated testimony;

- Potential expert testimony by Plaintiff employee Christina Felix, who Plaintiff has not previously disclosed as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2); and

- Foundational issues with respect to documents obtained by Plaintiff through third party subpoenas.

With respect to the latter, Plaintiff has provided Defendants with documents obtained through third party subpoenas in a fashion that it makes it impossible to determine which documents match the various custodian of records declarations. Plaintiff's counsel has also apparently obtained some documents in prior litigation involving other parties.  Plaintiff's counsel has also admitted extracting certain information from excel sheets and other data from third parties – therefore producing her own documents in lieu of using documents provide by third parties.

## IX.   CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Plaintiff take nothing by way of its complaint, that Defendants be awarded its costs and attorney's fees pursuant to Settlement Agreement, and that judgment be entered in Defendants' favor,

DEFENDANTS' TRIAL BRIEF

1   DATED:  November 9, 2021      DAVID C. VOSS, JR.

2                                 VOSS, SILVERMAN & BRAYBROOKE, LLP

3                                 By: _____

4                                 David C. Voss, Jr.

5                                 Attorneys for Defendants
                                  AMN DISTRIBUTION, INC. and

6                                 MOISHE NEWMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' TRIAL BRIEF