Marina Lang, No. 251,087 mlang@socalip.com
Michael D. Harris, No. 59,470 mharris@socalip.com
Brian Tamsut, No. 322,780, btamsut@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Plaintiff Athena Cosmetics, Inc.

David C. Voss Jr., No. 147330 David@vsbllp.com
Voss, Silverman & Braybrooke, LLP
Marina Towers, 4640 Admiralty Way, Suite 800
Marina del Rey, CA 90292-6602
Phone: (310) 306-0515
Attorneys for Defendant AMN Distribution, Inc. and
    Moishe Newman

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Athena Cosmetics, Inc., | Case No. 2:20-cv-05526-SVW-SHK |
| Plaintiff, | Proposed Final Pretrial Conference Order |
| v. | Pretrial Conference: November 10, 2021<br>Time: 3:00 p.m.<br>Trial Date: November 16, 2021 |
| AMN Distribution Inc., et al., | |
| Defendant. | Judge: Wilson |

Following pretrial proceedings, under FED. R. CIV. P. 16 and L.R. 16, IT IS OR-DERED:

### TABLE OF CONTENTS

A.  THE PARTIES AND PLEADINGS ............................................................ 3

B.  JURISDICTION ............................................................................................ 3

C.  TRIAL DURATION ..................................................................................... 3

D.  JURY TRIAL ................................................................................................ 3

E.  ADMITTED FACTS ..................................................................................... 3

F.  STIPULATED FACTS ................................................................................. 5

G.  PARTIES' CLAIMS AND DEFENSES ................................................................ 6

    Plaintiff: .................................................................................................................... 6

    Defendant: ............................................................................................................... 19

H.  REMAINING TRIABLE ISSUES .................................................................... 26

I.   DISCOVERY ....................................................................................................... 26

J.   DISCLOSURES AND EXHIBIT LIST ........................................................... 28

    Objections and grounds to Defendants' exhibits are: ......................................... 28

    Objections and grounds to Plaintiff's exhibits are: ............................................ 31

K.  WITNESS LISTS ................................................................................................ 49

L.   MOTIONS IN LIMINE ..................................................................................... 49

M.  BIFURCATION .................................................................................................. 51

N.  ADMISSIONS ..................................................................................................... 51

## A.    THE PARTIES AND PLEADINGS

The parties are Plaintiff Athena Cosmetics, Inc. ("Athena") and Defendants AMN Distribution Inc., ("AMN") and Moishe Newman ("Newman"). AMN and Newman are referred to as "Defendants". AMN and Newman are referred to as "Defendants." The pleadings which raise the issues are:

First Amended Complaint for Damages and Injunction: (1) Federal Trademark Counterfeiting [15 U.S.C. § 1117(b); (2) Federal Trademark Infringement [15 U.S.C. § 1114]; (3) Contributory Trademark Counterfeiting and Infringement [15 U.S.C. § 1117(b) and U.S.C. § 1114; (4) False Designation of Origin, Unfair Competition, False or Misleading Advertising [15 U.S.C. § 1125(a)]; (5) Unfair Business Practices [California Common Law]; (6) Breach of Contract [California Common Law] (ECF 73), and

Answer of AMN Distribution, Inc. and Moishe Newman to First Amended Complaint of Plaintiff Athena Cosmetics, Inc. (ECF 75)

## B.    JURISDICTION

Federal jurisdiction and venue are invoked upon the grounds: Federal question, *i.e.*, claims for trademark counterfeiting and infringement and supplemental jurisdiction for breach of contract and state unfair competition.

## C.    TRIAL DURATION

Athena estimates trial will take no more than one day. Defendants estimates trial will take three days including jury selection.

## D.    JURY TRIAL

The trial is to be a jury trial. At least seven days before the trial date the parties shall file and serve by e-mail: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

## E.    ADMITTED FACTS

These facts are admitted and require no proof:

1.   Athena owns United States Trademark Registration No. 3,246,814, which issued May 29, 2007, for the mark REVITALASH® for cosmetics preparations for eye lashes (the REVITALASH registration).

2.   Athena filed, and the Patent and Trademark Office (PTO) accepted, declarations under Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058, 1065, for the REVITALASH registration. The registration is incontestable under 15 U.S.C. § 1065.

3.   Athena also owns these United States Trademark Registrations, which are incontestable under Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058, 1065:

   a.  No. 3,526,373, which issued November 4, 2008, for the mark ATHENA AND DESIGN®.

   b.  No. 3,413,360, which issued April 15, 2008, for the mark ATHENA COSMETICS® for cosmetics preparations for eye lashes.

   c.  No. 5,633,064, which issued December 18, 2018, for the mark ETERNALLY PINK® for charitable services, namely, promoting public awareness of breast cancer, breast cancer prevention, breast cancer treatment, and breast cancer research; organizing and developing charitable projects that aim to promote breast cancer awareness, research and education; promoting public interest and awareness of breast cancer, breast cancer prevention, breast cancer treatment, and breast cancer research. cosmetics preparations for eye lashes.

   d.  No. 4,501,304, which issued March 25, 2014, for the mark REVITALASH ADVANCED® for cosmetic preparations for eye lashes.

   e.  No. 3,588,423, which issued March 10, 2009, for the mark REVITABROW® for eyebrow cosmetics.

   f.  No. 4,501,307, which issued March 25, 2014, for the mark REVITABROW ADVANCED® for eyebrow cosmetics.

4.   Athena also owns United States Trademark Registration No. 5,871,804, which issued October 1, 2019, for the mark shown to the right for Cosmetic pads; Cosmetic pencils; Cosmetic preparations for body care; Cosmetic preparations for skin care; Cosmetics; Cosmetics and cosmetic preparations; Cosmetics and make-up; Hair care creams; Hair care prep-arations; Hair conditioners; Hair masks; Hair mousses; Hair nourishers; Hair sham-poos and conditioners; Hair sprays and hair gels; Non-medicated preparations all for the care of skin, hair and scalp; Non-medicated skin care preparations, namely, moist-urizers, cleansers, masks, conditioners, creams, exfoliators, toners, make-up primers; lip care products, namely, lip primers and conditioners; eye brow products, namely, eyebrow liners, conditioners and strengtheners; eye-lash products, namely, mascaras, lengtheners, conditioners, strengtheners; eye-care products, namely, eye creams, con-cealers, highlighters, and makeup; Eyebrow cosmetics. (the RL Logo registration).

5.   RevitaLash, Athena and Design, Athena Cosmetics, Eternally Pink, Revi-taLash Advanced, RevitaBrow, RevitaBrow Advanced and the RL Logo are collec-tively "Athena Trademarks."

6.   Except for the RL Logo, which registered recently, Athena used the regis-tration symbol "®" consistently with its use of the other registered Athena Trade-marks.

7.   Defendants AMN and Newman entered into an agreement ("the April 2020 Agreement") with Athena which they signed on April 29 and 30, 2020.

8.   The Agreement became effective on April 30, 2020 (the "Effective Date").

F.   **STIPULATED FACTS**

These facts, though stipulated, shall be without prejudice to any evidentiary ob-jection: None.

## G.    PARTIES' CLAIMS AND DEFENSES

### Plaintiff's Claims:

1.   Athena was founded in 2006 and manufacturers and sells expensive, high-end luxury cosmetic goods, primarily for eyelashes, eyebrows and hair.

2.   Athena only manufactures its products in the United States and only sells its products through exclusive distributors in the United States and in specific territories outside this country.

3.   Neither Defendant is Athena's authorized distributor.

4.   Athena has gone to great lengths to protect its name and enforce the Athena Trademarks, i.e., REVITALASH®, ATHENA AND DESIGN®, ATHENA COSMETICS®, ETERNALLY PINK®, REVITALASH ADVANCED®, REVITABROW, REVITABROW ADVANCED and the RL Logo®.

5.   The Athena Trademarks have been recorded with U.S. Customs and Border Patrol and registered in countries all over the world.

6.   Between November 2019 and January 2020, Athena purchased goods from Defendants' websites, including brushexpress.com, that promoted, advertised, and sold goods purporting to be authentic cosmetic products manufactured by Athena.

7.   When Athena received the goods it purchased, it discovered the goods were counterfeit.

8.   The counterfeit goods were an imitation of Athena's goods, meant to be replicas of Athena's famed, desirable, high-end, expensive, luxury, cosmetic goods and thus are likely to deceive consumers into inadvertently buying fake products under the belief they are the genuine article.

9.   The counterfeit goods were shipped from 10 Gallagher Drive, Unit C, Plains, PA. Defendant AMN leases this warehouse location.

10.  Athena's business reputation and the hard-earned goodwill its built among consumers since its start in 2006 is threatened by the presence of dubiously manufactured cosmetics being passed off as the real deal to unwitting consumers.

11.  Athena wanted to discover and prosecute the manufacturing source of these counterfeits so it agreed in April 2020 with AMN and Moishe Newman—who claimed did not make the counterfeit goods—to settle its counterfeiting claims against Defendants in exchange for Defendants disclosure of the full and complete contact information of their suppliers of these counterfeit goods, a nominal settlement payment, and the promise that Defendants would never promote, display, sell or otherwise trade in goods purporting to be made from Athena Cosmetics ever again, permanently. This is referred to as the April 2020 Agreement.

12.  The April 2020 Agreement prohibits Defendants from displaying, promoting, or selling products with any Athena Trademark whether the product is a counterfeit or a legitimate product.

13.  The April 2020 Agreement states:

> Defendants, their agents, affiliates, employees, contractors, and all other persons in privity or acting in concert with Defendants, are permanently enjoined and restrained from ever: purchasing, buying, obtaining, procuring, manufacturing, warehousing, producing, importing, distributing, circulating, selling, delivering, marketing, offering for sale, advertising, promoting, displaying or otherwise using any goods or products with the Athena Cosmetics Marks ["Athena Trademarks"], including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks ["Athena Trademarks"].

14.  Defendants breached the agreement by purchasing, buying, obtaining, procuring, manufacturing, warehousing, producing, importing, distributing, circulating, selling, delivering, marketing, offering for sale, advertising, promoting, displaying, or otherwise using products with one or more Athena Trademarks.

15. Under the April 2020, Agreement, Defendants expressly acknowledge, represent and warrant to Athena Cosmetics:

    a. The Athena Cosmetics Marks are all the sole and exclusive property of Athena Cosmetics;

    b. Athena Cosmetics has never and does not grant the Defendants any rights to use, whether for commercial or non-commercial purposes, any of the Athena Cosmetics Marks;

    c. From January 1, 2019 to December 31, 2019, AMN purchased products bearing Athena Cosmetics Marks from different sellers, the full and complete contact information and the amount of product purchased from each seller will be set forth on Schedule 1 to this Agreement;

    d. From January 1, 2019 to December 31, 2019, AMN sold or otherwise delivered products bearing Athena Cosmetics Marks to various consumers, the full and complete contact information for each customer and the aggregate amount of product sold will be set forth on Schedule 2 to this Agreement;

    e. Some Athena Cosmetics Marks remain in AMN's possession;

    f. Defendants, their agents, affiliates, employees, contractors, and all other persons in privity or acting in concert with Defendants, are permanently enjoined and restrained from ever: purchasing, buying, obtaining, procuring, manufacturing, warehousing, producing, importing, distributing, circulating, selling, delivering, marketing, offering for sale, advertising, promoting, displaying or otherwise using any goods or products with the Athena Cosmetics Marks, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks;

g.  Within 30 days of the Effective Date, Defendants will, at their expense, ship its entire remaining inventory of any goods or products with the Athena Cosmetics Marks, including any simulation, reproduction, counterfeit, copy or colorable imitation of the Athena Cosmetics Marks, to Athena Cosmetics for any purpose that Athena Cosmetics deems appropriate, including destruction or disposal.

16. Defendants breached the agreement by:

a.  Failing to disclose the contact information for a single person that that supplied them with their bad counterfeit goods in Schedule 1.

b.  Falsifying purchase numbers in Schedule 1.

c.  Fraudulently listing one of their own eBay seller User Id's as one of their third-party "suppliers,"

d.  Failing to return all their inventory to Athena.

e.  Continuing to display and promote Athena's goods after the effective date.

f.  Continuing to sell counterfeit Athena goods after the effective date of the Agreement. To support the Schedule 1 lists only nine "sellers," and no listing included the contact's name and information of any person or entity as Section 2(a)(iii) of the April 2020 Agreement requires. Instead, the schedules used ecommerce fictitious names.

17. Discovering the identity of the manufacturing source of counterfeits goods was the key consideration of Athena's entering into the April 2020 Agreement with Defendants. The secondary key was ensuring that Defendants would never again sell counterfeit Athena goods, because they already demonstrated that they either intentionally sold counterfeit goods or they sold counterfeit goods because they failed to determine if a product was authentic or fake counterfeits.

18. Merely looking at Schedule 1 shows it identifies no persons, much less their full and complete contact information.

19. Schedule 1 falsified its numbers. Athena had to discover from a subpoena to eBay that Defendants purchased 35 units from an eBay seller called "Sterlingwoman," but Schedule 1 says they purchased only five from this seller name.

20. The subpoenaed business records of eBay, Walmart, PayPal and Groupon, showed Defendant AMN's main employees and sellers of Athena's products are Defendant Moishe Newman and his two brothers, Dov "David" Newman and Nechemiah Newman. These brothers use additional seller alias names to promote and sell Athena's goods, such as 'bluelinela" and "austramericacosmeticsoutlet." Defendants tried to hide all their other seller aliases by only producing a few emails from Dov "David" Newman acting as "bluelinela" on eBay. Defendants produced nothing about their other many accounts.

21. Defendants fraudulently list their own eBay account as a third-party "supplier" in Schedule 1. Through PayPal records, Athena discovered that AMN's employee, Moishe Newman's brother, Dov "David" Newman uses same IP address (aka same computer) as eBay seller "Cirit Beauty" and "Mina Beauty."

22. "[A] computer that is connected to the internet can be uniquely identified by its IP number, much like a land-line phone can be uniquely identified by its phone number. *Chism v. Washington State*, 661 F.3d 380, 390 (9th Cir. 2011). AMN's employees or agents used same IP address, i.e., the same unique string of characters that identifies each computer as other AMN's employees or agents used. This evidence shows Moishe and Dov Newman used the same computer.

23. On Schedule 1, defendants fraudulently represent that "Cirit Beauty" is one of their third-party suppliers, but Cirit Beauty is really Dov Newman. Dov Newman operating under the alias of eBay seller "Cirit Beauty" and "Mina Beauty" also sold counterfeit goods to Athena's secret shopper employee, though Athena only discovered through this litigation that those sellers were also Defendants.

24. Defendants failed to return their complete inventory as the April 2020 Agreement required and they continued to display, advertise, and sell Athena products including more counterfeit products after the effective date of the Agreement.

25. Subpoenaed Walmart.com business records shows AMN Distribution dba "Adina's Beauty Shop" created and listed sales auctions for Athena's products on Walmart.com until as recently as July 2021, over a year after the April 2020 Agreement.

26. Business records of Groupon, a large online seller, also show Defendants signed a new merchant agreement to sell Athena products with Groupon in June 2020 just two months after the April 2020 Agreement. Thus records also show Defendants' active account to sell Athena goods in October 2021.

27. Defendant AMN leases a warehouse located at 10 Gallagher Drive, Unit C, Plains, PA. AMN is the only tenant. eBay business records revealed yet another undisclosed secret alias of Defendants, "michwa-10." This seller also sold counterfeit goods to Athena's secret shopper employee, in October 2020 after the April 2020 Agreement's effective date.

28. Defendants did not include Walmart.com as a customer in Schedule 2 but it was a customer.

29. Defendants did not disclose all its sales of Athena goods on Schedule 2. Defendants did not disclose all the sales from all its different aliases on Schedule 2.

30. Athena's secret shopper purchased counterfeit Athena goods, which used Athena Trademarks, from Defendants or their employees or agents.

31. eBay records showed a seller with the same IP address as AMN, and that seller made its sale after the April 2020 Agreement's effective date.

32. Defendants used at least three user ID's, blulinelea, austramericacosmeticsoutlet, and micwha-10 to buy and sell REVITALASH® products on eBay.

33. Defendants used the fictitious business name of "Adina's Beauty Shop" to sell Athena products on Walmart.com.

34. Defense counsel improperly refused to produce its documents during discovery that would have shown the sellers' full contact information.

35. Defense counsel improperly refused to answer interrogatories during discovery that would have shown the sellers' full contact information.

36. Defendants Moishe Newman and AMN refused to attend properly noticed depositions during which they would have to identify sellers' full contact information. and admit that they did not produce all the books and records Athena requested.

37. AMN acknowledged in the April 2020 Agreement it purchased and sold certain cosmetic product that Athena Cosmetics contends are counterfeit products and infringe the intellectual property and other related proprietary rights of Athena.

38. Defendants failed to disclose their true suppliers and total purchases including:

    a. AMN listed over 90 Athena products for sale on Walmart.com every week starting April 30, 2020, the April 2020 Agreement's effective date.

    b. Defendants also listed Athena REVITALASH® goods on Groupon for sale after the effective date of the April 2020 Agreement. In one listing, a "verified product purchaser" named "Melody" left a product review on January 8, 2021, eight months after the effective date of the April 2020 Agreement.

39. Each listing breaches the April 2020 Agreement.

40. The breaches damaged Athena.

41. A defendant that sells counterfeits can be liable for statutory damages of up to $2,000,000 for each Athena trademark used for a counterfeit. 15 U.S.C. § 1117(c).

42. Before the effective date of the April 2020 Agreement, Athena could have pursued statutory damages from defendants, but it agree to the April 2020 Agreement with defendants for a nominal amount, $25,000, to obtain accurate Schedules 1 and 2. Accurate schedules would provide Athena with the data it needed to locate and stop

Defendants' suppliers them from selling counterfeit. And the names and addresses of Defendants' customers could identify other counterfeiters who purchased from Defendants when they acted as an intermediary, purchasing counterfeit Athena products in sufficient quantities to sell to other counterfeiters, who then would resell the counterfeit Athena products to other counterfeiters in the United States.

43. AMN's failure to provide accurate information for Athena to use damaged it significantly.

44. The April 2020 Agreement granted Defendants a conditional release for past infringements, but the release was "Conditional on Defendants making the Settlement Payment, furnishing Schedules 1 and 2 as set forth in Section 8(g) below, and Defendants' delivery of the entire remaining inventory of any goods or products with the Athena Cosmetics Marks pursuant to Section 2(a)viii herein."

45. Defendants' inaccurate and incomplete Schedules 1 and 2 makes the release void and ineffective.

46. By Defendants' breach of the April 2020 Agreement, all their purchases and sales of counterfeit Athena cosmetics bearing Athena's federally registered Athena Trademarks became actionable infringements and counterfeits.

47. Defendants are liable for all sales of counterfeit Athena Trademarks before and after the effective date of the April 2020 Agreement.

48. By Defendants' breach of the April 2020 Agreement, all their purchases and sales of counterfeit Athena cosmetics bearing Athena's federally registered Athena Trademarks.

49. On or around November, 2019, Athena's employee ordered, purchased and received counterfeit products purporting to be Athena REVITALASH Eyelash Conditioner 3.5 ml/ 0.118 oz from Defendant Brush Express' website at www.brushexpress.com. Trial exhibits include a webpage from brushexpress.com taken on or around January 20, 2020, a receipt for the purchase of counterfeit Athena products, and a photograph of the package that arrived from Brush Express containing the

counterfeit goods, showing the return address as "Brush Express, 10 Gallagher Dr., Suite C, Plains, PA.

50.  Shortly afterward, Athena sent cease-and-desist letters to Brush Express at the address at 10 Gallagher Drive, the address on www.brushexpress.com.

51.  "Brush Express" is the business name Defendants used for selling counterfeit Athena goods. They used the e-commerce website www.brushexpress.com for the sales.

52.  The lessors of the warehouse property at 1010 Gallagher Dr., Suite C, Plains, Pennsylvania, contacted Athena's counsel on or around February 2020. The lessors identified their Lessee as Defendant Delaware corporation, AMN Distribution, Inc.

53.  Athena confirmed all the goods purchased from and sent by Defendants were counterfeit cosmetic products bearing Athena Trademarks and copycat product packaging.

54.  The goods purchased from and sent by Defendants infringed the six Athena Trademarks. Schedules 1 and 2 of the April 2020 Agreement furnished by Defendants further admit infringement of Athena's REBITABROW trademarks, which makes for 8 infringed marks.

55.  The photographs below show the contents of the order Athena received from Defendants. The arrows point to the Athena Trademarks appearing on the contents. The three-digit numbers are the last three digits of the registration numbers for Athena Trademarks.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







56.





57. Athena prints its lot number of each batch of its cosmetics. All counterfeit goods Defendants sold contained the same fake lot number imprinted on each counterfeit product.

58. Athena uses a commercial-grade tape on its packaging. Defendants' counterfeits used a noncommercial-grade tape product wrapping.

59. Defendants used a different font and textures from Athena's packaging, and it used different "blue" colors from those Athena's packaging used.

60. Defendants also used improperly sized, non-English instruction manuals.

61. Defendants are not and have never been associated, affiliated or connected with, or endorsed or sanctioned by Athena. Athena never authorized or consented to any Defendants' use of the Athena Trademarks or confusingly similar copies.

62. Defendants' use of the Athena Trademarks or confusingly similar copies on its products is likely to cause consumers, the public and the trade to erroneously believe the goods Defendants sold emanate or originate from Athena, or Athena authorized, sponsored, or approved the goods though they are not.

63. By using counterfeits and infringements of the Athena Trademarks on Defendants' goods, Defendants trade upon Athena's goodwill and reputation and create the false impression that Defendants' goods are Athena's legitimate products.

64. Defendants have been unjustly enriched by illegally using and misappropriating Athena's intellectual property for their own financial gain. Each unfairly benefited and profited from Athena's outstanding reputation for high quality products and its significant advertising and promotion of Athena Cosmetics and the Athena Trademarks.

65. Athena lacks any control over the nature and quality of the products Defendants sell bearing counterfeits and infringements of the Athena Trademarks.

66. Defendants' acts constitute trademark counterfeiting in violation of Lanham Act § 32, 15 U.S.C. § 1114.

67. 15 U.S.C. § 1117(b)(1), requires the Court to award treble damages.

68. According to Schedule 2 of the April 2020 Agreement, Defendants' 2019 Revenue from selling Athena's counterfeit Athena products is $312,880:

| Row Labels | Sum of Qty | Sum of GrandTotal |
|---|---|---|
| RevitaLash Advanced 3.5 mL and RevitaBrow Advanced Eyebrow Conditioner 1.5mL (KIT) | 11 | 631 |
| Revitalash Eyelash Conditioner 3.5 ml / 0.118 oz | 2,567 | 192,792 |
| Revitalash Eyelash Conditioner, 2.0 ml / 0.06 oz | 1,199 | 69,817 |
| Revitalash Revitabrow Advanced Eyebrow Conditioner 3 ml / 0.1 oz | 133 | 9,131 |
| RevitaLash Revitabrow Advanced Eyebrow Conditioner, 0.101 oz | 564 | 40,510 |
| **Grand Total** | **4,474** | **$312,880** |

69. Schedule 2, which Defendants furnished, fails to include all the sales from every Defendant-sellers' aliases. It also exclude sales after April 2020 and 2020 as not required under the April 2020 Agreement but still part of their liability.

70. Treble damages on Defendants' profits is 3 time $312,880, which equals $938,640.

71. Under 15 U.S.C. § 1117(b)(1) in counterfeiting cases, courts are required to "enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of intentionally using a mark … knowing such mark … is a counterfeit mark … in connection with the sale, offering for sale, or distribution of goods or services" in violation of 15 U.S.C. § 1114(1)(a) …." *N. Atl. Operating Co. v. LA Price Check, LLC*, No. CV 17-5920-VAP (AFMx), WL 5099479 (C.D. Cal. Mar. 27, 2018) (citing 15 U.S.C. § 1117(b)(1)).

72.  Absent extenuating circumstances, the statute require the Court to "award treble damages or profits, whichever is greater, along with reasonable attorneys' fees." *Sega Enters. Ltd. v. Maphia*, 948 F. Supp. 923, 941 (N.D. Cal. 1996) (citing 15 U.S.C. § 1117(b)). No extenuating circumstances exist here. Trebling Defendants 2019 revenue is appropriate where Defendants have shown unrelenting willfulness in offering for sale counterfeit goods bearing Athena's trademarks and by Defendants ongoing failure to comply with discovery requests, which made proof of the total actual damages difficult or impossible.

73.  Athena elects statutory damages under the Lanham Act. 15 U.S.C. § 1117(c).

74.  It is appropriate to award Athena Cosmetics $ 2,000,000 in statutory damages per each counterfeit trademark. *See Koninklijke Philips Elecs v. KXD Tech., Inc*. 347 F. App'x 275, 276 (9th Cir. 2009). When that case was decided, the maximum statutory damages was $1 million; it is now $2 million.

75.  Defendants sold counterfeit goods bearing eightsight Athena's trademarks. Statutory damages up to $16 million is warranted.

76.  Defendants unrelenting willfulness in offering for sale counterfeit goods bearing Athena's trademarks even after they were caught coupled with their ongoing failure to comply with discovery requests, make a large award deserved. Defendants made proof of Athena's total actual damages difficult or impossible. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231 (1952).

77.  From the foregoing, Defendants are liable to Athena for: (a) statutory damages up to $2 million for each of eight Athena Trademarks they counterfeited.

**Defendant's Defenses:**

78.  Plaintiff has failed to meet and confer in preparation of this Pretrial Conference Order and has failed to set forth their claims and elements in accordance with the Local Rules and the sample form attached to the Local Rules.  As recently as this past Friday evening, Plaintiff has made significant and substantial changes to its claims

stated in Section G hereinabove both deleting existing claims and added entirely new claims to their case. In addition, Plaintiff did not meet and confer with Defendants to reach an agreement on stipulated facts despite an offer from Defendants in writing to do same.

79.   Defendants do not concede any of the facts, law or contentions made in the Section relating to "Plaintiff's Claims" hereinabove. Defendants dispute Plaintiff's description of the law and facts above, and urge the court to review Defendant's Memorandum of Contentions of Law and Fact (Dkt. 141) filed per Local Rule 16-2, which is hereby incorporated by this reference. In particular, the Defendants direct the Court to their discussion regarding damages – noting that the entirety of Plaintiff's damages claim contained in paragraphs 66 through 75 above were never disclosed to Defendants at any time during this litigation until included in a draft of this document first provided by Plaintiff on last Friday evening, November 5, 2021.

80.   Defendants deny the facts alleged in the First Amended Complaint or as stated herein, except as otherwise admitted in their answer.

81.   Defendants incorporate herein the law and contentions contained in Defendants' Trial Brief.

82.   Plaintiff's allegations and contentions with respect to its breach of contract claims far exceed the scope of the claim as pled in Plaintiff's First Amended Complaint. Plaintiff's presentation of evidence, argument, and testimony should be limited to Plaintiff's breach of contract claim *as pled.* To allow Plaintiff to do otherwise would severely prejudice Defendants by allowing Plaintiff to essentially unilaterally amend their complaint to dramatically expand the scope of their case on the eve of trial.

83.   Specifically, the trial should be limited to the only two breaches alleged in Plaintiff's Sixth Claim for Relief for breach of contract: (a) "AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers;" [FAC (Dkt. 73), ¶ 91]; and (b) both "Defendants breached

the settlement agreement by continuing to sell Athena counterfeit goods" after the effective date of the Settlement Agreement. [FAC (Dkt. 73), ¶ 92]. It should be noted that Defendants AMN and Newman are dissimilarly situated regarding the claims pursuant to the Court's ruling on the 12(b)(6) motion brought by Defendants such that Newman is only a defendant to the latter alleged breach of the Settlement Agreement.

84. Plaintiff has not previously alleged any breaches other than the two cited from the FAC and should be limited to same. See also Statement of Genuine Issues for Summary Judgement Motion filed by Plaintiff on 9/14/21 [Dkt #113].

Phase I Defenses:

85. AMN provided full and complete information in its schedules provided pursuant to the Settlement Agreement. Plaintiff lacks any evidence to show that there was any inaccuracy at the time the Schedules were created and conveyed to Plaintiff.

86. AMN will show that the records obtained from the Marketplace providers establish conclusively that there have been no sales of and Athena goods after the execution of the Settlement Agreement.

87. In the absence of any material breach of the Settlement Agreement, Plaintiff was contractually obligated not to sue Defendants and therefore judgement should be found in favor of Defendants and this case should be dismissed without proceeding to Phase II pursuant to the Court's order to bifurcate trial.

Phase II Defenses:

88. Defendant AMN engaged in the sale of goods purchased from others on the "gray market" and denies that any of the goods purchased and sold were in fact "counterfeit."

89. Plaintiff has no evidence to establish that the sales alleged in paragraph 67 above were of "counterfeit" products rather than resale of authentic goods. Defendants will show that they turned over inventory as required by the Settlement Agreement and that Plaintiff being in possession of hundreds of such items has failed to identify even one that is allegedly "counterfeit". Defendants contend that it did not

manufacture goods for sale, but rather purchased them from others as disclosed pursuant to the Settlement Agreement and resold said goods to end user customers. Defendants had no knowledge that any item it purchased was "counterfeit" nor can Plaintiff establish any intent by Defendants to sell a "counterfeit" product. As such Plaintiff is not entitled to its claimed damages.

90. Defendants dispute Plaintiff's statements of law and fact with respect to damages stated hereinabove. As a prefatory matter, and as discussed in Defendants' objections to exhibits and motions in limine below, *all evidence of Plaintiff's damages and damages computations are subject to automatic exclusion* under Federal Rule of Civil Procedure 37(c) as a result of Plaintiff's failure to fulfill its disclosure obligations with respect to the same under Federal Rule of Civil Procedure 26(a)(1)(A)(iii). That aside, the following but are a few of the discrepancies and inaccuracies that exist with respect to Plaintiff's last minute damages computations.

91. Plaintiff's discussion of lost profits and treble damages under 15 U.S.C. 1117 a) and (b) is not applicable given the fact that Plaintiff has stated above that it has elected statutory damages, which are governed instead by 15 U.S.C. 1117 (c).

92. Even if Plaintiff were entitled to recover lost damages and profits under 15 U.S.C. 1117(a) and (b), Plaintiff has mischaracterized the availability of treble damages. Any award of treble profits damages under 15 U.S.C. section 1117(b) requires that Plaintiff prove, among other things, that the Defendant acted "intentionally and with specified knowledge." *Romag Fasteners, Inc v. Fossil, Inc*., 140 S. Ct. 1492, 1495, 206 L. Ed. 2d 672 (2020). See also 15 U.S.C. § 1117(b).

93. Plaintiff's assertion that it is entitled to $2,000,000 in statutory damages per each counterfeit mark is absurd. Among other things, Plaintiff must elect between statutory damages *or* lost profits. It is not entitled to both. In addition, the base level of statutory damages under 15 U.S.C. 1117(c) is "not less than $1,000 or more than $200,000" as the Court "considers just." 15 U.S.C. 1117(c). Additional damages of "not more than $2,000,000" are only to be awarded upon a finding that the "use of the

counterfeit mark was willful" and shall also only be awarded as the Court "considers just."

**A. *Defendants intend to pursue the following affirmative defenses*:**

**AFFIRMATIVE DEFENSES TO CONTRACT CLAIM (6th Claim for Relief):**

94.  Defendants' affirmative defenses to Plaintiff's contract claim include: (a) failure to mitigate damages [Defendants' 7th Affirmative Defense]; (b) offset [Defendants' 11th Affirmative]; (c) damages not certain or [Defendants' 12th Affirmative Defense]; Defense]; (d) damages caused by others/comparative fault [Defendants' 10th Affirmative Defense.

**AFFIRMATIVE DEFENSES TO ALL OTHER CLAIMS (1st through 5th Claims for Relief):**

95.  Defendants' affirmative defenses include: (a) waiver [Defendants' 4th Affirmative Defense]; (b) release [Defendants' 5th Affirmative Defense]; (c) claims barred by settlement agreement [Defendants' 6th Affirmative Defense]; (d) offset [Defendants' 11th Affirmative Defense]; and (e) failure to mitigate damages [Defendants' 7th Affirmative Defense].

**B. *The elements required to establish Defendants' affirmative defenses are*:**

### *Failure to Mitigate Damages*

96.  With respect to the state law contract claim and unfair competition claim, Defendants need only prove that Plaintiff could have avoided damages with reasonable efforts or expenditures.

97.  With respect to Plaintiff's federal statutory claims, Defendants have the burden of proving by a preponderance of the evidence:

      a.  that the plaintiff failed to use reasonable efforts to mitigate damages; and

      **b.**  the amount by which damages would have been mitigated.

### *Offset*

98. Defendants need to establish that they made a payment to Plaintiff. Defendants are also entitled to an offset to prevent double recovery under the multiple theories and claims asserted by Plaintiff. Such a double recovery is barred by, among other things, Due Process.

**_Settlement Agreement/Waiver/Release_** (With respect to non-contract claims only)

99. Because this Court has already ruled that Plaintiff must establish a breach of the Settlement Agreement in order to proceed to trial on its non-contract claims, it is Defendants' position that **_Plaintiff bears the burden of establish breach of contract and materiality_** in order to proceed with its non-contract claims. Should the Court rule to the contrary, Defendants will be prepared to present evidence of the performance of the conditions precedent to the release provision of the Settlement Agreement.

**_Damages not certain/speculative_**

100.   Although Defendants had included this in their answer as an affirmative defense, **_Defendants with to emphasize that it is Plaintiff's burden, as part of its case in chief with respect to its contract claim,_** to prove with respect to any claimed lost profits that: (a) "it is reasonably certain" that Plaintiff "would have earned profits but for Defendants' breach of contract; and (b) there is "a reasonable basis for computing the loss." *See* CACI Nos. 352, 353 discussed *supra*

**_Damages Caused by Others/Comparative fault_**:

101.   Although Defendants had included this in their answer as an affirmative defense, **_Defendants with to emphasize that it is Plaintiff's burden, as part of its case in chief with respect to its contract claim,_** to prove that Defendants' breach of contract was a "substantial factor" in causing the harm claimed by Plaintiff and that Defendants are somehow legally responsible for counterfeit sales by third parties that purportedly took place after the execution of the Settlement Agreement as a matter of law and fact**.**

**(c) In brief, the key evidence Defendant relies on for each affirmative defense is:**

**<u>Failure to Mitigate Damages</u>**

102.   Defendants anticipate presenting testimony from Athena's own witnesses establishing their failure to take steps to mitigate damages.

**<u>Offset</u>**

103.   Defendants anticipate presenting the following evidence to prove they are entitled to an offset of any damages awarded to Plaintiff: (1) the testimony of defendant Newman of payment of $25,000 to Plaintiff; (2) presentation of documents establishing payment by AMN and/or the receipt thereof by Plaintiff; and (3) to the extent necessary, the testimony of Plaintiff's own witnesses regarding the receipt of payment of $25,000.

**<u>Settlement Agreement/Waiver/Release</u>** (With respect to non-contract claims only)

104.   Again, it is Defendants' position that **Plaintiff bears the burden of establish breach of contract and materiality** in order to proceed with its non-contract claims and vitiate the releases set forth in the parties' settlement.

105.   If necessary, however, Defendants are prepared to introduce evidence of the following specified conditions precedent to invoke the release provision of the Settlement Agreement: (1) the testimony of defendant Newman; (2) presentation of documents establishing payment by AMN and/or the receipt thereof by Plaintiff; (3) the delivery of inventory by AMN and/or the receipt thereof by Plaintiff; and (4) to the extent necessary, the testimony of Plaintiff's own witnesses regarding the receipt of payment and inventory.

**<u>Release</u>**

106.   "Conditional on Defendants making the Settlement Payment, furnishing Schedules 1 and 2 as set forth in Section 8(g) below, and Defendants' delivery of the entire remaining inventory of any goods or products with the Athena Cosmetics Marks pursuant to Section 2(a)viii herein …"

## C.   REMAINING TRIABLE ISSUES

107.   Because of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, these issues remain to be tried:

108.   Defendants contend the only remaining triable issues in Phase I of trial should be limited to the only two breaches alleged in Plaintiff's Sixth Claim for Relief for breach of contract: (a) "AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers;" [FAC (Dkt. 73), ¶ 91]; and (b) both "Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods" after the effective date of the Settlement Agreement. [FAC (Dkt. 73), ¶ 92]. See also Statement of Genuine Issues for Summary Judgement Motion filed by Plaintiff on 9/14/21 [Dkt #113].

## D.   DISCOVERY

109.   Defendants have repeatedly asked for mutual exchange of 30(b)(6) depositions for each party prior to trial. Plaintiff refuses. (See Declaration of David C. Voss, Jr. [Dkt. #159])

110.   Athena contends that it attempted to depose defendant AMN's Rule 30(b)(6) witness three times. The first time, last year when defendants had a different attorney, neither the attorney nor its counsel appeared. The second time, when the present attorneys represented defendants, the attorney came to the deposition and claimed he thought Athena was deposing a third party. After defense counsel complained the parties had not agreed on the Rule 30(b)(6) categories for a third attempt, Athena noticed the deposition under Rule 30(b)(*1*) of defendant AMN's CEO and co-defendant Newman. Despite Athena's offer to delay the deposition to accommodate defense counsel's schedule, neither Mr. Newman nor defendants' attorney appeared.

111.   Athena contends that it ceased asking for a Rule 30(b)(6) deposition of defendants and applied to the Court ex parte to move in limine to bar Mr. Newman from testifying. Insofar as defendants taking a Rule 30(b)(6) deposition of Athena,

Athena's attorney asked defense counsel to meet and confer on the categories he seeks, but he failed to respond.

112.   Defendants contend that counsel is misleading the court hereinabove regarding the deposition of Mr. Newman.

113.   Defendants have never failed to appear for a properly noticed 30(b)(6). Magistrate Judge Kewalramani ruled on two occasions that Plaintiff did not proper serve notice of deposition and therefore Defendants had not failed to appear. On the first "attempt" Plaintiff Magistrate Judge Kewalramani ruled Plaintiff failed to comply with Rule 5 and on the second "attempt" that it had no proof that the notice had been served. On September 3, 2021 Plaintiff's counsel voluntarily chose not to proceed with the deposition stating that "I am delaying taking a Rule 30(b)(6) deposition on AMN until I have more documents from defendants." Declaration of Michael Harris Supporting Opposition to Defendants Motion to Bifurcate Discovery p.2, lns. 18-19 Dkt # 107-1.

114.   Defendants ask that the court take note of their Opposition to Ex Parte Application [Dkt. #159] which provides written detail of the four separate written offers – the first of which was on July 28 - to conduct this deposition. These written offers were to conduct Defendant's deposition "on a mutually agreeable time and date in advance of trial in this matter which works around the 17 hour time difference and Mr. Newman's observation of the Sabbath." Defendants even offered specific dates and times for said deposition that could proceed virtually. Furthermore, Defendants can show emails with Plaintiff's counsel expressly agreeing to categories for mutual use in both the deposition of AMN and that of Athena which as may be seen by the exhibits at Dkt #159-1 and 159-2 went unanswered by Plaintiff, not the other way around.

115.   Furthermore, on October 20, Defendants had in advance reminded Plaintiff's counsel of dates of unavailability due to participation in a jury trial in Dept. 27 of the Los Angeles Superior Court noting that "I will be in trial all day every day until

at least next Thursday if not Friday." [Dkt. 159-2] Defendants note that Plaintiff's counsel then unilaterally chose to set said deposition for a day during trial and at noon Pacific Time knowing in advance this was not possible and even captioned the notice with the caveat that it would be either in person in California (obviously impossible with Newman in Australia) or require further agreement between counsel. In other words, coordination with counsel for Newman was expected on the face of the Notice.

**E.    DISCLOSURES AND EXHIBIT LIST**

Plaintiff contends that all disclosures under FED. R. CIV. P. 26(a)(3) have been made. Defendant disagrees (see below in Defendants' Objections). The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

**Objections and grounds to Defendants' exhibits are:**

| EXH. NO | DESCRIPTION | Objection |
|---------|-------------|-----------|
| 101. | Settlement Agreement Dated 4/29/20 and 4/30/20, including all schedules appended thereto | |
| 102. | Letter from counsel for LinkAmerica II to counsel for Athena warning Athena against defaming American customers | Hearsay. FED. R. EVID. 801(c). Defendants offer the document to prove the truth of the matter asserted in the letter. |
| 103. | E-mail from LinkAmerica II confirming it is the source of REVITALASH products resold by AMN | Hearsay. FED. R. EVID. 801(c). Defendants offer the document to prove the truth of the matter asserted in the letter. |

| 104. | Exhibit 38 from Marina Lang Declaration In Opposition to Summary Judgment Motion (Dkt. 114-17): Walmart Sales List | Incomplete. Walmart has produced more evidence since.

Hearsay. Fed. R. Evid. 801(c). Defendants offer the document to prove the truth of the matter asserted in the list. |
| 105. | E-mails between Marina Lang and AMN's prior counsel after the execution of the Settlement Agreement regarding subsequent information demanded by Marina Lang (cited by M. Lang in Declaration in Opp. to MSJ p.4, lns. 21-24) | If defendants seek to introduce these emails for truth of the matter asserted in the emails, they should be excluded as hearsay. Fed. R. Evid. 801(c). |
| 106. | "Plaintiff Athena Cosmetics, Inc.'s Amended Responses to Defendant AMN Distribution, Inc.'s First Set of Interrogatories" dated 6/30/21 | Because of Defendants' failure to produce documents and to have Moishe Newman attend a deposition under Fed. R. Civ. P. 30(b)(1) and (6), which has continued to this date, Plaintiff has had to obtain evidence from third parties, who are continuing to produced evidence. Defendants' acts caused any incomplete interrogatory answer. |
| 107. | "Plaintiff Athena Cosmetics, Inc.'s Responses to Defendant AMN Distribution, Inc.'s First Set of Interrogatories" dated 6/7/21 | Because of Defendants' failure to produce documents and to have Moishe Newman attend a deposition under Fed. R. Civ. P. 30(b)(1) and (6), which has continued to this date, Plaintiff has had to obtain evidence from third parties, who are continuing to produced evidence. Defendants' acts caused any incomplete interrogatory answer.

The answers also were superseded by Athena's Amended Responses, Exhibit 106. |

| 108. | "Plaintiff Athena Cosmetics, Inc.'s Responses to Defendant AMN Distribution, Inc.'s First Requests for Admission" dated 6/7/21 | Irrelevant. Fed. R. Evid. 402. Significantly more prejudicial than probative. Fed. R. Evid. 403. |
|------|---|---|
| 109. | "Plaintiff Athena Cosmetics, Inc.'s Responses to Defendant AMN Distribution, Inc.'s First Request for Production of Documents and Electronically Stored Information" dated 6/7/21 | Irrelevant. Fed. R. Evid. 402. Significantly more prejudicial than probative. Fed. R. Evid. 403. |
| 110. | E-mail from E-Bay reflecting name changes in user ID's for SavingSimpleLLC and ValenceD | The contents of the emails Ms. Lang references are hearsay. Fed. R. Evid. 801(c). |
| 111. | Print-out of Google search reflecting name change of savingsimplellc on E-Bay | The printout is hearsay. Fed. R. Evid. 801(c). It also is not authenticated Fed. R. Evid. 901. |
| 112. | Additional print-out of Google search reflecting name change of savingsimplellc on E-Bay | The printout is hearsay. Fed. R. Evid. 801(c). It also is not authenticated Fed. R. Evid. 901. |
| 113. | * Proof of payment of $25,000 by AMN under Settlement Agreement and/or receipt of same by Plaintiff | Irrelevant. Plaintiff neither asserts defendants failed to pay $25,000 nor that any failure breached the October 2020 Agreement. |
| 114. | Document production by Defendants including order fulfillment records for all orders from 2019 to present | Defendants withheld those documents during discovery. Withhold the evidence then presenting it at trial is improper. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless…. Fed. R. Civ. P. 37. The failure to disclose as neither justified nor harmless. |

| 115. | * Proof of delivery of inventory to or receipt of same by Plaintiff | Irrelevant. Plaintiff neither asserts defendants failed to deliver inventory nor that any failure breached the October 2020 Agreement. |
|---|---|---|

**Objections and grounds to Plaintiff's exhibits are:**
***DEFENDANTS' GENERAL OBJECTIONS TO PLAINTIFF'S EXHIBITS***

As a preliminary matter, Defendants note that Plaintiff did not fulfill its obligations under Federal Rule of Civil Procedure 26(a)(3) and also failed to comply with obligations under Local Rule 16-2 – including but not limited to its obligations with respect to exhibits – as discussed more fully in Defendants' previously filed Memorandum of Contentions of Fact and Law. (Dkt. 141). It is for that reason, Defendants had to file their own Exhibit List. (Dkt. 140).

Having failed to participate in the process mandated by Local Rule 16-2, Plaintiff filed their own Exhibit List that, with limited exception, *only identified broad categories of documents rather than specific documents.* Plaintiff also failed to provide Defendants with the specific exhibits and has mischaracterized them with misleading names that do not accurately describe their contents. Accordingly, Defendants object to all of Plaintiff's exhibits and reserves the right to supplement or interpose additional objections if and when Plaintiff provides Defendants with the exact exhibits it intends to introduce into evidence at trial; identifies exhibits with greater specificity; and, provides Defendants with copies of the same.

In addition, Plaintiff has included an additional forty new and undisclosed exhibits in the Pre-Trial Conference Order that it failed to include in its separately filed exhibit list. [Dkt. #138-2] Defendants object to their admission on that basis.

Defendants further object to all evidence of Plaintiff's damages and prohibiting Plaintiff (and any witness or person under its control) from introducing, mentioning or presenting any evidence, testimony, or argument with respect to damages on any of Plaintiff's claims at all phases of the trial of this matter as a result of Plaintiff's repeated and failure to provide any of the damages disclosures required by Federal Rule

of Civil Procedure 26(a)(1)(A)(iii). (Dkt. 141, p. 13). Plaintiff provided the information contained in paragraphs 67-75 hereinabove for the first time ever in its revisions to this Proposed Final Pretrial Conference Order on Friday, November 5, 2021 at 4:31 p.m. and should be estopped from asserting such Claims and Defenses to prevent unfair surprise to Defendants who had no notice or opportunity to conduct any discovery regarding such claims and assertions.

Defendants object to all evidence not disclosed in Plaintiff's initial disclosures (including, but not limited to damages) and seek an order excluding such evidence under the "automatic sanction" of Fed. R. Civ. Proc. 37(c)(1) based upon Plaintiff's failure to comply with Fed. R. Civ. Proc. Rule 26(a)(1)(A)(ii) and (iii).

> "*Basis for Initial Disclosure; Unacceptable Excuses*. A party must make its initial disclosures based on the information then reasonably available to it. *A party is not excused from making its disclosures because it has not fully investigated* the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."

Fed R. Civ. Proc. 26(a)(1)(E) (emphasis added).

(1) *Failure to Disclose or Supplement*. **If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial**, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. Proc. 37(c)(1) (emphasis added).

The Ninth Circuit has held that "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merch. v. Corizon Health, Inc*., 993 F.3d 733, 740 (9th Cir. 2021) (affirming exclusion of "case dispositive" expert witness who was not properly disclosed under Rule 26(a)(2)).  *See also, Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1105-1106 (9th Cir. 2001) (affirming exclusion of defendant's damages expert for failure to properly report under Rule 26(a)). "Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a)." *Vanderberg v. Petco Animal Supplies Stores, Inc*., 906 F.3d 698, 705 (8th Cir. 2018). Because Rule 37(c)(1) "establishes an automatic exclusion sanction for violations" of Rule 26(a)(1)(A)(iii) and the latter requires a litigant to disclose its damages computation "without awaiting a discovery request," a party does "not need to move to compel disclosure before seeking sanctions" under Rule 37(c)(1). *Silver State Broad., LLC v. Bergner*, 705 F. App'x 640, 641 (9th Cir. 2017) (affirming order granting motion in limine excluding damages as a sanction for violating Rule 26(a)(1)(A)(iii).

### DEFENDANTS OBJECTIONS TO PLAINTIFF'S GRAPHIC AND ILLUS-TRATIVE MATERIAL

Defendants object to Plaintiff's use of the proposed PowerPoint presentation at trial in any manner including but not limited to admission into evidence and that Plaintiff be precluded from showing the material to the jury.

Defendants object that its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." [FRE 403]

Defendants object that it is argumentative as it goes well beyond mere illustration of a witness' testimony and does not assist in determination of the truth. [FRE 403]

Defendants object that the material contained therein violates Local Rule 16.3 in

that it does not "illustrate testimony of a witness."

Defendants object that it lacks foundation or authentication and fails to even identify who prepared the material Lack of foundation; [FRE 901(a)] and raises irrelevant issues outside the contentions in the First Amended Complaint [FRE 402].

Defendants object that it neither accurately reflect admissible evidence including but not limited to the exhibits listed herein nor does it fairly represent competent evidence before the jury.

Defendants object that it misstates both law and fact.

Defendants object that it contains damages allegations subject to Defendants' objections and request for exclusion from evidence as set forth hereinabove.

To the extent permitted, Defendants are entitled to a limiting instruction to the jury regarding its use, informing the jury of the summary's limited purpose and that it does not constitute evidence.

### PLAINTIFF'S EXHIBITS

| EXH. NO | DESCRIPTION |
|---|---|
|  | Boxes of counterfeit REVITALASH® product including: |
| 1 | Photograph of purchase from brushexpress.com (Photographed boxes and contents will be brought to trial.) |
| 2 | Photograph of purchase from minabeauty (Photographed boxes and contents will be brought to trial.) |
| 3 | Photograph of purchase from ciritbeauty (Photographed boxes and contents will be brought to trial.) |
| 4 | Photograph of purchase from micwha-10 (Photographed boxes and contents will be brought to trial.) |

| 5 | A box of legitimate REVITALASH® product and its contents. |
|---|---|
| 6 | A box of legitimate REVITALASH® product and its contents. |
| 7 | A box of legitimate REVITALASH® product and its contents. |
| 8 | A box of legitimate REVITALASH® product and its contents. |
| 9 | Documents produced by Walmart.com showing continued sales of counterfeit product<br>Produced on 07-16-2021 in Athena Cosmetics, Inc. v AMN Distribution Inc., et al. |
| 10 | Documents produced by eBay showing continued sales of counterfeit product:<br>• Reg Info produced 07/13/2021;<br>• Reg Info produced 09/17/2021;<br>• Reg Info produced 10/26/2021; and<br>Listing and Sales History produced 07/13/2021 containing "STERLING-WOMAN" |
| 11 | Documents produced by PayPal showing continued sales of counterfeit product |
| 12 | Documents produced by Groupon showing continued sales of counterfeit product |
| 13 | Documents regarding sales by Adina's Beauty Shop showing continued sales Walmart Document Production. Produced on 03-11-2021 in Athena Cosmetics, Inc. v Timbo |
| 14 | The April 30 Agreement |
| 15 | Schedule 1 of the April 30 Agreement |
| 16 | Schedule 2 of the April 30 Agreement |
| 17 | Lease Agreement between Paul and Patricia Gallagher and AMN for 10 Gallagher Drive, Plains, Pennsylvania. Defendants' Bates No. 004684 |

| 18 | Groupon Screen Shot of 3.0 ml REVITABROW ADVANCED® in white Cosmetic Bag 10/4/21 |
| 19 | Groupon Screen Shot of 3.5 ml REVITALASH ADVANCED® in white cosmetic bag 10/4/21 |
| 20 | Groupon Screen Shot of REVITALASH ADVANCED® 3.5 ml 10/4/21 |
| 21 | Groupon Screenshot of RevitaLash Advanced and Free REVITABROW® 10/4/21 |
| 22 | Groupon Screenshot of REVITALASH® 3.5ml 10/4/21 |
| 23 | Groupon Screenshot of 2.0 REVITALASH® 10/4/21 |
| 24 | Groupon screenshot of REVITABROW .101 10/4/21 |
| 25 | June 2020 Merchant Agreement between AMN and Groupon to sell RevitaLash goods |
| 26 | United States Trademark Registration No. 3,246,814, which issued May 29, 2007, for the mark REVITALASH®. |
| 27 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,246,814. |
| 28 | United States Trademark Registration No. 3,526,373, which issued November 4, 2008, for the mark ATHENA AND DESIGN®. |
| 29 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,526,373. |
| 30 | United States Trademark Registration No. 3,413,360, which issued April 15, 2008, for the mark ATHENA COSMETICS®. |
| 31 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,413,360. |
| 32 | United States Trademark Registration No. 5,633,064, which issued December 18, 2018, for the mark ETERNALLY PINK®. |
| 33 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 5,633,064. |
| 34 | United States Trademark Registration No. 4,501,304, which issued March 25, 2014, for the mark REVITALASH ADVANCED® for cosmetic preparations for eye lashes. |

| 35 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 4,501,304. |
| 36 | United States Trademark Registration No. 3,588,423, which issued March 10, 2009, for the mark REVITABROW® |
| 37 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,588,423. |
| 38 | United States Trademark Registration No. 5,871,804, which issued October 1, 2019, for the mark  shown to the right. |
| 39 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 5,871,804. |
| 40 | United States Trademark Registration No. 4,501,307 which issued March 25, 2014, for the mark REVITABROW ADVANCED® |
| 41 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 4,501,307. |
| 42 | Notice of Deposition of Defendant AMN Distribution Inc. under FED. R. CIV. P. 30(b)(6) - 10-09-2020 |
| 43 | Reporter's Certificate of Non-Appearance - 11-05-2020 |
| 44 | Notice of Deposition of Defendant AMN Distribution Inc. under FED. R. CIV. P. 30(b)(6) - 05-11-2021 |
| 45 | Reporter's Certificate of Non-Appearance - 06-04-2021 |
| 46 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetics Inc.'s First Request for Production of Documents - 05-20-21 |
| 47 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetics Inc.'s First Set of Interrogatories - 05-20-21 |
| 48 | Defendant AMN Distribution Inc.'s Amended Responses to Plaintiff Athena Cosmetics Inc.'s First Set of Interrogatories - 07-01-2021 |

| 49 | Defendant AMN Distribution Inc.'s Further Amended Responses to Plaintiff Athena Cosmetics Inc.'s First Set of Interrogatories - 08-17-2021 |
|----|----|
| 50 | Defendant AMN Distribution Inc.'s Amended Responses to Plaintiff Athena Cosmetics Inc.'s First Request for Production of Documents - 07-01-2021 |
| 51 | Defendant Moishe Newman's Responses to Plaintiff Athena Cosmetics Inc.'s Second Request for Production of Documents - 10-22-2021 |
| 52 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetics Inc.'s to Second Request for Production of Documents - 10-22-2021 |
| 53 | Initial Cease and Desist Letter with Exhibits. and Complaint Served to - 10 Gallagher Drive (BRUSH EXPRESS) - 02-11-2020 |
| 54 | Defendant AMN Distribution Inc. and Moishe Newman's Initial Document Production – 08-25-2021 (first 100 pages) |
| 55 | Deposition Transcript of Walmart's Custodian of Records, Maria Baez de Hicks and Exhibits 1-3 |
| 56 | Athena Counterfeit Comparisons |
| 57 | Screenshots from various ecommerce platforms showing the continued sales of REVITALASH® counterfeit product including: Brush express landing page Brushexpress.com purchase Ebay.com minabeauty purchase Ebay.com ciritbeauty purchase Ebay.com micwha-10 purchase |
| 58 | United States Trademark Registration No. 4,501,308 which issued March 25, 2014, for the mark REVITABROW ADVANCED® Logo. |

| 59 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 4,501,308. |

### DEFENDANTS' SPECIFIC OBJECTIONS TO PLAINTIFF'S EXHIBITS

| EX. NO. | DESCRIPTION | OBJECTIONS |
|---|---|---|
|  | Boxes of counterfeit REVITALASH® product including: | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because Plaintiff has only identified one single purchase of alleged counterfeit goods – not the plural of "boxes".* |
| 1 | Photograph of purchase from brushexpress.com (Photographed boxes and contents will be brought to trial.) | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). |
| 2 | Photograph of purchase from minabeauty (Photographed boxes and contents will be brought to trial.) | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). Irrelevant (Fed. R. Evid. 402). |
| 3 | Photograph of purchase from ciritbeauty (Photographed boxes and contents will be brought to trial.) | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). Irrelevant (Fed. R. Evid. 402). |
| 4 | Photograph of purchase from micwha-10(Photographed boxes and contents will be brought to trial.) | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). Irrelevant (Fed. R. Evid. 402). |

| 5 | A box of legitimate REVITALASH® product and its contents. | No objection, assuming Plaintiff provides adequate foundation and properly authenticates at trial. (Fed. R. Evid. 901(a)). |
|---|---|---|
| 6 | A box of legitimate REVITALASH® product and its contents. | No objection, assuming Plaintiff provides adequate foundation and properly authenticates at trial. (Fed. R. Evid. 901(a)). |
| 7 | A box of legitimate REVITALASH® product and its contents. | No objection, assuming Plaintiff provides adequate foundation and properly authenticates at trial. (Fed. R. Evid. 901(a)). |
| 8 | A box of legitimate REVITALASH® product and its contents. | No objection, assuming Plaintiff provides adequate foundation and properly authenticates at trial. (Fed. R. Evid. 901(a)). |
| 9 | Documents produced by Walmart.com showing continued sales of counterfeit product | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because the documents do not show the continued sale of counterfeit goods.* |

| | 10 | Documents produced by eBay showing continued sales of counterfeit product | Lack of foundation; lack of authentication. (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). Plaintiff's counsel admits that some of these records constitute information that she extracted from purported eBay records. With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because the documents do not show the continued sale of counterfeit goods.* |
| | 11 | Documents produced by PayPal showing continued sales of counterfeit product | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because the documents do not show the continued sale of counterfeit goods.* |

| 12 | Documents produced by Groupon showing continued sales of counterfeit product | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because the documents do not show the continued sale of counterfeit goods.* |
| --- | --- | --- |
| 13 | Documents regarding sales by Adina's Beauty Shop showing continued sales | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802). With respect to the Phase I trial, Defendants object as to relevance regarding any records of the sale of counterfeit goods prior to April 30, 2020. (Fed. R. Evid. 402). Defendants object as to relevance as to both Phases to the extent that the records are not for the sale of counterfeit goods that are the subject of Plaintiff's First Amended Complaint. *Defendants also object to Plaintiff's description of the exhibit as it is misleading because the documents do not show the continued sale of counterfeit goods.* |

| 14 | The April 30 Agreement | No objection to Settlement Agreement or accompanying schedules in Phase I trial assuming that the parties can reach an agreement as to what document and schedules constitute the Settlement Agreement and reach an agreement regarding the redaction of the schedules. |
|---|---|---|
| 15 | Schedule 1 of the April 30 Agreement | No objection to Settlement Agreement or accompanying schedules in Phase I trial assuming that the parties can reach an agreement as to what document and schedules constitute the Settlement Agreement and reach an agreement regarding the redaction of the schedules. |
| 16 | Schedule 2 of the April 30 Agreement | No objection to Settlement Agreement or accompanying schedules in Phase I trial assuming that the parties can reach an agreement as to what document and schedules constitute the Settlement Agreement and reach an agreement regarding the redaction of the schedules. |
| 17 | Lease Agreement between Paul and Patricia Gallagher and AMN for 10 Gallagher Drive, Plains, Pennsylvania. Defendants' Bates No. 004684 | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). Irrelevant (Fed. R. Evid. 402). |
| – | Screenshots from various ecommerce platforms showing the continued sales of REVITALASH® counterfeit product including: | *Defendants object to Plaintiff's description of this category of exhibits as it is misleading because the documents do not show the continued sale of counterfeit goods.* |
| 18 | Groupon Screen Shot of 3.0 ml REVITABROW ADVANCED® in white Cosmetic Bag 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |

| 19 | Groupon Screen Shot of 3.5 ml REVITALASH ADVANCED® in white cosmetic bag 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |
|---|---|---|
| 20 | Groupon Screen Shot of REVITALASH ADVANCED® 3.5 ml 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |
| 21 | Groupon Screenshot of RevitaLash Advanced and Free REVITABROW® 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |
| 22 | Groupon Screenshot of REVITALASH® 3.5ml 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |
| 23 | Groupon Screenshot of 2.0 REVITALASH® 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |

| 24 | Groupon screenshot of REVITABROW .101 10/4/21 | Lack of foundation; lack of authentication; (Fed. R. Evid. 901(a)); hearsay (Fed. R. Evid. 802); Irrelevant (Fed. R. Evid. 402). Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). |
| 25 | June 2020 Merchant Agreement between AMN and Groupon to sell RevitaLash goods | Lack of foundation; lack of authentication (Fed. R. Evid. 901(a)). Irrelevant (Fed. R. Evid. 402); Hearsay (Fed. R. Evid. 802). Plaintiff also fail to identify this exhibit on the exhibit list it filed with the Court. |
| 26 | United States Trademark Registration No. 3,246,814, which issued May 29, 2007, for the mark REVITALASH®. | No objection. |
| 27 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,246,814. | No objection. |
| 28 | United States Trademark Registration No. 3,526,373, which issued November 4, 2008, for the mark ATHENA AND DESIGN®. | No objection. |
| 29 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,526,373. | No objection. |
| 30 | United States Trademark Registration No. 3,413,360, which issued April 15, 2008, for the mark ATHENA COSMETICS®. | No objection. |
| 31 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,413,360. | No objection. |
| 32 | United States Trademark Registration No. 5,633,064, which issued December 18, 2018, for the mark ETERNALLY PINK®. | No objection. |

| 33 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 5,633,064. | No objection. |
| --- | --- | --- |
| 34 | United States Trademark Registration No. 4,501,304, which issued March 25, 2014, for the mark REVITALASH ADVANCED® for cosmetic preparations for eye lashes. | No objection. |
| 35 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 4,501,304. | No objection. |
| 36 | United States Trademark Registration No. 3,588,423, which issued March 10, 2009, for the mark REVITABROW® | No objection. |
| 37 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 3,588,423. | No objection. |
| 38 | United States Trademark Registration No. 5,871,804, which issued October 1, 2019, for the mark shown to the right. *ʃ⌐ REVITALASH COSMETICS* | No objection. |
| 39 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 5,871,804. | No objection. |
| 40 | United States Trademark Registration No. 4,501,307 which issued March 25, 2014, for the mark REVITABROW ADVANCED® | No objection. |
| 41 | Accepted §§ 8 and 15 declaration for Trademark Registration No. 4,501,307. | No objection. |

| | | |
|---|---|---|
| 42 | Notice of Deposition of Defendant AMN Distribution Inc. under Fᴇᴅ. R. Cɪᴠ. P. 30(b)(6) (Oct. 9, 2020) | Magistrate Judge Kewalramani ruled Plaintiff failed to comply with F.R.C.P. Rule 5 and discovery was not properly served. See transcript at Dkt. #136, p.10-11, lns.24-1. Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 43 | Reporter's Certificate of Nonappearance of Deponent (Nov. 5, 2020) | Magistrate Judge Kewalramani ruled Plaintiff failed to comply with F.R.C.P. Rule 5 and discovery was not properly served. See transcript at Dkt. #136, p.10-11, lns.24-1. Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 44 | Notice of Deposition of Defendant AMN Distribution Inc. under Fᴇᴅ. R. Cɪᴠ. P. 30(b)(6) (May 11, 2021) | Magistrate Judge Kewalramani ruled no proof of service on 7/28/21. See transcript at Dkt. #132, p.11-12, lns.7-6 and p.62, lns.11-25. Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |

| 45 | Reporter's Certificate of Nonappearance of Deponent (June 4, 2021) | Magistrate Judge Kewalramani ruled no proof of service on 7/28/21. See transcript at Dkt. #132, p.11-12, lns.7-6 and p.62, lns.11-25. Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 46 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetic, Inc.'s First Request For Production of Documents (May 20, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 47 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetic, Inc.'s First Set of Interrogatories (May 20, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 48 | Defendant AMN Distribution Inc.'s Amended Responses to Plaintiff Athena Cosmetic, Inc.'s First Set of Interrogatories (July 1, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 49 | Defendant AMN Distribution Inc.'s Further Amended Responses to Plaintiff Athena Cosmetic, Inc.'s First Set of Interrogatories (Aug. 17, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |

| | | |
|---|---|---|
| 50 | Defendant AMN Distribution Inc.'s Amended Responses to Plaintiff Athena Cosmetic, Inc.'s First Request For Production of Documents (July 1, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 51 | Defendant Moishe Newman's Responses to Plaintiff Athena Cosmetic, Inc.'s Second Request for Production of Documents (Oct. 22, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |
| 52 | Defendant AMN Distribution Inc.'s Responses to Plaintiff Athena Cosmetic, Inc.'s Second Request for Production of Documents (Oct. 22, 2021) | Irrelevant (Fed. R. Evid. 402); Probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. (Fed. R. Evid. 403). Not included on exhibit list filed by Plaintiff on 10/18/21 (Dkt. 138-2). |

## F.   WITNESS LISTS

Witness lists of the parties have been filed. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Each party intending to present evidence by way of deposition testimony has marked such depositions under L.R. 16-2.7. For this purpose, these depositions shall be lodged with the Clerk as required by L.R. 32-1: Not Applicable.

## G.   MOTIONS IN LIMINE

The following law and motion matters and motions in limine, and no others, are pending or contemplated:

**Plaintiff's Motion in Limine**:

On October 28, 2021, defendant Moishe Newman and defendant AMN through its CEO Mr. Newman did not attend a properly noticed deposition. Plaintiff intends to move ex parte to file a motion in limine exclude any testimony from Mr. Newman. His failure to attend follows two other refusals under Rule 30(b)(6).

The motion in limine to exclude Mr. Newman's testimony immediately followed his failure to be deposed on October 28, 2021, or any date thereafter.

Until and October 29, 2021, email, counsel for Defendants did not mention his filing motions in limine.

**Defendants' Motions in Limine**:

Defendants' First Motion in Limine for an order to exclude all evidence not disclosed pursuant to Local Rule 16-2 and Federal Rule of Civil Procedure 26(a)(3) (see above Defendants' General Objections). Contrary to Plaintiff's assertion above, Plaintiff has had notice since September 29, 2021:

> "**I fully expect Plaintiff will at a minimum comply with L.R. 16-2.2, 16-2.3, 16-2.4 and 16-2.8 in particular before the end of the day or you can expect to see a Motion to Preclude Evidence at time of trial. Defendants has the right to know what facts the Plaintiff has to support its contentions. Trial by ambush is unacceptable.**"

Defendants' Second Motion in Limine to limit Plaintiff's introduction of any evidence of breach of contract to the breaches expressly alleged in the First Amended Complaint (incorporating herein the more complete statement from Defendants' objections to evidence hereinabove).

Defendants' Third Motion in Limine for an order excluding all evidence of Plaintiff's damages and prohibiting Plaintiff (and any witness or person under its control) from introducing, mentioning or presenting any evidence, testimony, or argument with respect to damages on any of Plaintiff's claims at all phases of the trial of this matter as a result of Plaintiff's repeated and failure to provide any of the damages disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). (Dkt. 141, p. 13).

Defendants' Fourth Motion in Limine excluding all exhibits and evidence previously designated as "Attorney's Eyes' Only" by the Plaintiff. In connection with the latter, Defendants note that Plaintiff has designated a vast amount of its document

production in this matter, *including records of the Defendant AMN obtained from third-parties,* as Attorney's Eyes Only. Because Defendants' witnesses and employees have not had access to these documents, Plaintiff should not be permitted to surprise them with and question them regarding the same at trial. Defendants do not know the extent to which Plaintiff intends to use such documents as exhibits at trial.

## H.   BIFURCATION

This Court issued an order on April 1, 2021 bifurcating the jury trial into two phases, with the "first phase to address Plaintiff's breach of contract claim," i.e., the Sixth Claim. (Dkt. 74.) The Court further ruled that: "If Plaintiff prevails on the breach of contract claim, the parties will proceed to phase two, during which Plaintiffs remaining claims will be resolved." (Dkt. 74).

Defendants request that a new jury be empaneled for the second phase of the trial.

Athena disagrees. The evidence for both phases overlaps so it is more efficient for all evidence to be considered by the same jury.

Defendants request a further bifurcation of Phase II with respect to the issue of Plaintiff's request for punitive damages, which are potentially only available on Plaintiff's claim for common law unfair competition.

Defendants disagree. 15 U.S.C. § 1117(b)(1), requires the Court to award treble damages for counterfeiting, and the Court may award up to $2 million for each trademark defendants counterfeited. 15 U.S.C. § 1117(c). No third trial is necessary because the jury will learn about Defendants' counterfeiting before the third trial defendants propose would otherwise begin.

## I.   ADMISSIONS

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**It Is So Ordered**.

November 10, 2021

_____
United States District Judge

Approved as to form and content:

November 10, 2021                    /s/ *Michael Harris*
                                     Michael Harris
                                     Attorneys for Plaintiff Athena Cosmet-
                                     ics, Inc.

Under Local Rule 5-4.3.4, Michael Harris attests that the following signatory authorized the filing.

November 10, 2021                    /s/ *David C. Voss Jr.*
                                     David C. Voss Jr.
                                     Voss, Silverman & Braybrooke, LLP
                                     Attorneys for Defendants AMN Distribu-
                                     tion, Inc. and Moishe Newman