Michael D. Harris, No. 59,470 mharris@socalip.com
Marina Lang, No. 251,087 mlang@socalip.com
Brian Tamsut, No. 322,780, btamsut@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Plaintiff Athena Cosmetics, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| Athena Cosmetics, Inc., | No. 2:20-cv-05526-SVW-SHK |
|---|---|
| Plaintiff, | Athena's Opposition to Defendants' Oral Motions for Judgment as a Matter of Law (JMOL) and for New Trial |
| v. | |
| AMN Distribution Inc., et al, | |
| Defendants. | Judge Wilson |

TABLE OF CONTENTS

Page

A.  Defendants Fed. R. Civ. P. 50(b) (JMOL) motions claiming insufficient evidence to support AMN's and Moishe Newman's liability for selling and marketing Athena Goods. .................................................. 1

   1. To satisfy defendants' burden, which they did not meet, they had to show in the light most favorable to plaintiff Athena, the only one reasonable conclusion is contrary to the jury's finding. ................................. 1

   2. No evidence counters the jury's verdict that Schedule 1 to the settlement agreement did not include the sellers' "full and complete contact information" or that the suppliers did not cause the 1,639-unit discrepancy in the amount defendants bought and sold. .......................... 1

      a. The jury had circumstantial evidence the settlement agreement did not include the "full and complete contact information," and no evidence counters that verdict. ............................................................. 1

      b. No contrary evidence supports that argument that the only one reasonable conclusion for the 1,639 discrepancy between what

        defendants bought and sold came from inaccurate or incomplete disclosures from AMN's suppliers. ......................................................................... 2

    3.    The Groupon documents show AMN continued marketing of Athena products (Issue 2.d)). ............................................................................. 2

    4.    Either of defendants' acts supports a verdict of breach of contract. ................ 3

    5.    Defendant Newman's marketing activities. ......................................................... 3

        a.    Just because defendant Newman is AMN's CEO, AMN's corporate status does not excuse his acts. ..................................................... 3

        b.    Mr. Newman breached defendants' joint warranty in Section 2 of the settlement agreement. ................................................................. 4

B.  Ms. Lang's conduct should not lead to a new trial .............................................. 5

    1.    Her conduct did not affect the jury verdict. ......................................................... 5

    2.    The Court's sustaining of objections and informing her that questions were improper prevented the jury from hearing potentially prejudicial testimony. .............................................................. 5

    3.    Ms. Lang showed the jury nothing improper. .................................................... 6

C.  Conclusion ................................................................................................................ 6

### TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283 (9th Cir. 1984) ............ 5

*Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020) ........................................... 1

*PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 93 Cal. Rptr. 2d 663 (2000) .............. 3

*Semiconductor Components Indus., LLC v. I2A Techs., Inc.*, C10-0603 TEH, 2010 WL 3036731 (N.D. Cal. July 30, 2010) .................................................... 3

*West v. Costco Wholesale Corp.*, No. LA CV20-04265 JAK (FFMx), 2020 WL 7023777 (C.D. Cal. Nov. 30, 2020) ........................................................... 3

**Rules**

Fed. R. Civ. P. 50 ................................................................................................. 1

Opposition to Defendants' Motions for JMOL and for New Trial

iii

Athena Cosmetics v. AMN Distribution et al.
Case No.: 2:20-cv-05526-SVW-SHK

# MEMORANDUM OF POINTS AND AUTHORITIES

**A.  DEFENDANTS FED. R. CIV. P. 50(b) (JMOL) MOTIONS CLAIMING INSUFFICIENT EVIDENCE TO SUPPORT AMN'S AND MOISHE NEWMAN'S LIABILITY FOR SELLING AND MARKETING ATHENA GOODS.**

This section of this opposition deals with both defendants' Rule 50(b) motions because the law is the same for both.

**1. To satisfy defendants' burden, which they did not meet, they had to show in the light most favorable to plaintiff Athena, the only one reasonable conclusion is contrary to the jury's finding.**

"The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Lam v. City of Los Banos*, 976 F.3d 986, 995 (9th Cir. 2020) (citation omitted). The Court also "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

**2. No evidence counters the jury's verdict that Schedule 1 to the settlement agreement did not include the sellers' "full and complete contact information" or that the suppliers did not cause the 1,639-unit discrepancy in the amount defendants bought and sold.**

**a. The jury had circumstantial evidence the settlement agreement did not include the "full and complete contact information," and no evidence counters that verdict.**

Schedule 1 (Trial Ex. 15) lists defendants' largest supplier as "LinkAmerika II., s.r.o., Na stare silni ci 99, 252 68 Knezeves u Prahy, Czech Republic." It shows four purchases totaling 2,798 units.

It was reasonable for the jury to believe the mere naming of the entity with its street address is not the full contact information defendants had. If defendants truly bought from LinkAmerika, they must have dealt with a real person. Failing to name

the person by name and email address is not "full and complete contact information." Failing to include the data supports the jury's "no" to Issue 1.a.

   **b. No contrary evidence supports that argument that the only one reasonable conclusion for the 1,639 discrepancy between what defendants bought and sold came from inaccurate or incomplete disclosures from AMN's suppliers.**

Defense counsel argued, Tr. 125,[1] other reasons for the 1,639-unit discrepancy between what AMN bought (Schedule 1) and sold (Schedule 2) (Issue 1.c.). But no evidence supported those reasons. Counsel argued that units bought before 2019 could have caused the difference but no exhibit showed any pre-2019 inventory. The jury could reasonably decide that AMN's failure to introduce its books and records from 2018 means AMN had no such inventory. That would lead to the reasonable conclusion that defendants caused the inaccuracy of Schedule 1 and 2.

  **3. The Groupon documents show AMN continued marketing of Athena products (Issue 2.d)).**

Groupon's document custodian produced Trial Exhibit 18, which was received in evidence, Tr. 46. The exhibit including the image to the right shows an October 4, 2021, post-settlement, Groupon listing displaying a container of Athena's RE-VITALASH. The page also states, "Sold by Brush Express."

The Groupon listing also says "Sold Out," but the jury could find Exhibit 18 is circumstantial evidence of defendants' continued marketing of Athena goods. Defendants introduced no evidence of steps either defendant took to ask Groupon to cease listing Athena products. But just because Groupon was sold out, listing Brush

---

[1] "Tr." refers to the Reporter's Transcript of Proceedings, and the number following "Tr." is the transcript's page number.

Express and the REVITALASH trademark of Athena's brand would provide consumers information to locate the product on other online sites. That is a form of marketing.

### 4. Either of defendants' acts supports a verdict of breach of contract.

The evidence supports the jury verdict that defendants continued to market Athena products after the settlement agreement and provided inaccurate and incomplete disclosures in the schedules. If the court does not grant a JMOL on both issues, defendants breach of the settlement agreement stands.

### 5. Defendant Newman's marketing activities.

#### a. Just because defendant Newman is AMN's CEO, AMN's corporate status does not excuse his acts.

Defendant Moishe Newman's liability is not based on piercing the corporate veil. A corporate officer like Newman does not escape liability merely because of his officer—or even employee—status. *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379, 93 Cal. Rptr. 2d 663, 670 (2000) (holding "an agent is liable for her or his own acts, regardless whether the principal is also liable."), *cited with approval*, *West v. Costco Wholesale Corp.*, No. LA CV20-04265 JAK (FFMx), 2020 WL 7023777, at *4 (C.D. Cal. Nov. 30, 2020); *Semiconductor Components Indus., LLC v. I2A Techs., Inc.*, C10-0603 TEH, 2010 WL 3036731, at *5 (N.D. Cal. July 30, 2010) (holding a corporate officer can be held personally liable for the corporation's misconduct if he or she "authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.")

Parts of Mr. Newman's sworn declaration were read to the jury. He declared:

> I am the chief executive[] officer of AMN. I have been so since I started the company in August 2015.
>
> * * *
>
> AMN is in the business of purchasing goods and selling them online including at such sites as Ebay and Walmart. In my capacity as CEO of

> AMN, I am responsible for the purchasing and selling of products, establishing new purchasing opportunities, and developing new sales channels.

Tr. 100–101. Thus, he was responsible for "selling of products" and "developing new sales channels," which are "continued marketing and sale" as the jury found. The evidence showed he was the only person responsible for continued marketing.

No evidence showed another AMN employee causing Groupon's continued listing. Even with such evidence, Mr. Newman's "responsibl[ity] for the purchasing and selling of products" would still make him liable.

### b. Mr. Newman breached defendants' joint warranty in Section 2 of the settlement agreement.

Defendants argue Mr. Newman was not responsible for errors in Schedules 1 and 2. The Court's ruling of his earlier motion to dismiss, Dkt. 72, noted that the settlement agreement only obligated AMN to prepare the schedules. However, both defendants "expressly acknowledge, represent and warrant" the schedules' accuracy:

> iii.  From January 1, 2019 to December 31, 2019, AMN purchased products bearing Athena Cosmetics Marks from different sellers, the full and complete contact information and the amount of product purchased from each seller will be set forth on Schedule 1 to this Agreement;
>
> v.  From January 1, 2019 to December 31, 2019, AMN sold or otherwise delivered products bearing Athena Cosmetics Marks to various consumers, the full and complete contact information for each customer and the aggregate amount of product sold will be set forth on Schedule 2 to this Agreement;

Pp. 2–3 of Settlement Agreement. Thus, any errors in "the full and complete contact information" and the discrepancies in the amount AMN bought and sold are his breaches too.

Witness Felix identified the product she purchased as coming from "Brush Express on 10 Gallagher in Pennsylvania." Tr. 69. The Groupon listing, Exhibit 18, listed the seller as "Brush Express." The settlement agreement calls Mr. Newman "an individual doing business under the name of 'Brush Express' at the e-commerce website www.brushexpress.com. Agreement p. 1. Mr. Newman signed the April 2020 Settlement Agreement as an individual and on behalf of Brush Express. Agreement p. 9. The breach by Brush Express for marketing on Groupon and discrepancies in the difference between what defendants bought and sold, therefore, are breaches by Mr. Newman.

**B. Ms. Lang's conduct should not lead to a new trial.**

    **1. Her conduct did not affect the jury verdict.**

"To warrant reversal on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (internal quotation marks omitted).

    **2. The Court's sustaining of objections and informing her that questions were improper prevented the jury from hearing potentially prejudicial testimony.**

Since the trial sought to determine if defendants breached the settlement agreement, Ms. Lang tried to introduce background that the parties were settling Athena's counterfeiting claim. The Court disagreed. Each time she or witness Felix mentioned counterfeiting, the Court blocked their statements or questioning. For example, the court sustained the objection when she asked witness Felix, "You testified earlier that you investigate counterfeit goods. Can you clarify for the jury what a counterfeit good is?" Tr. 54. See also Tr. 55. The Court also excluded exhibits that contained the

word "counterfeit." By sustaining objections, the jury never learned what a counterfeit trademark is or how it affected the issues before the jury.

Even the times when Ms. Lang or Ms. Felix mention "counterfeit," it would not affect the verdict on the contract. The jury's carefulness with the verdict's questions shows they did not answer all questions in Athena's favor. If Athena lacked evidence to support a verdict answer, the jury found against Athena.

The verdict also is not out of line with the evidence as Athena shows in arguing against the JMOL motions.

### 3. Ms. Lang showed the jury nothing improper.

Defense counsel complains that the jury could see blowups, which the Court did not approve. As the attached Declaration of Michael Harris attests, the 5 ft. x 3 ft boards were only blowups of potential exhibits. Exhibit A to his declaration shows what was enlarged for the blowup. They could not be used even if the Court approved because nothing is visible. From about four feet, Mr. Harris cannot discern the text. The closest jurors to the blowups also could not read the text, and they would not put the blowups in the context of the trial issues. The letters on the blowup of Harris Declaration Exhibit B are larger, but the blowup could not influence jurors because they did not see it, Harris Decl. ¶ 3. Nothing on the blowup relates to the issue the jury decided; they could not use it for their decision.

### C. CONCLUSION

The jury reached the correct decision. Reviewing the evidence in the light most favorable to Athena, it is the only proper verdict. The evidence showed AMN's liability, and defendant Newman cannot escape liability due to his CEO status. If defendant had presented any contrary evidence—it did not—the jury would have been reasonable discounting or ignoring it. Therefore, the JMOL motions should be denied. Ms. Lang's conduct also does not warrant a new trial because the conduct did not affect the verdict.

1  December 7, 2021                    /s/ *Michael Harris*
                                       Michael D. Harris
2                                      SoCal IP Law Group LLP

3                                      Attorneys for Plaintiff Athena Cosmetics, Inc.