# Exhibit 30

Exhibits to Summary Motion and
Supporting Declarations

Athena Cosmetics, Inc v. AMN Dist. et al.
Case No.: 22:20-cv-05526-SVW-SHK)

# LEASE AGREEMENT

THIS LEASE AGREEMENT is made and entered into this      day of

, 2019, at Plains Township, Luzerne County, Pennsylvania, by and between

**PAUL GALLAGHER and PATRICIA GALLAGHER,** of 10 Gallagher Drive, Plains,

Luzerne County, Pennsylvania 18705, hereinafter referred to as **"Lessor"** and **AMN**

**DISTRIBUTION, INC., a Delaware Corporation,** of One Commerce Center – 1201 Orange

St. #600, Wilmington City, New Castle County, Delaware 19899, hereinafter referred to as

**"Lessee".**

## ARTICLE 1.
## DESCRIPTION, USE, TERM AND RENT

1.1      The leased premises situated in Plains, Luzerne County, Pennsylvania described as

follows: a portion of that certain one-story metal building consisting of approximately sixteen

thousand two hundred (16,200) square feet located at 10 Gallagher Drive, Plains, Pennsylvania,

specifically identified on the Exhibit "A" site plan, consisting of rear building, warehouse office

area, tool room, rest rooms, loading dock hallway and loading dock. Adjusted reduction of

square feet of two thousand (2,000) square feet for cooler and office area is fourteen thousand

two hundred (14,200) square feet. Lessee shall have parking in the rear of the building.

Additional parking will be allowed on side of access road or back land off the pavement and

Lessor will allow Lessee to add stone or gravel to extend parking including the out cove area

between the front and rear building with Lessee responsible to cut/trim any growth and stone or

gravel.

## ARTICLE 2.

1

## RENT

2.1    This Lease shall be for a term of three (3) years beginning on the first day of May,

2019, and ending on the last day of April, 2022. Rent for April, 2019, will be prorated from the

date the Zoning Compliance Permit is issued to Lessee up to and including April 30, 2019.

The rent shall be as follows:

a)    For the first year, 14,200 square feet annual gross rent: $42,600.00.
b)    For year two, 16,200 square feet annual gross rent: $48,600.00.
c)    For year three, 16,200 square feet annual gross rent: $52,650.00.

2.2    The Lessee shall pay Lessor at 10 Gallagher Drive, Plains, Pennsylvania 18705 or

at such other place as the Lessor shall designate from time to time, in writing, the rent for the

leased premises as provided for herein. If rent is not paid by the 5th day of each month, a late

charge of five percent (5%) of the monthly rental shall be added thereto.

At the time of signing of this Lease, Lessee shall pay the following sums:

a)  Security deposit shall be equal to the first and last month's rent at the time of the
    signing   of the Lease which is $7,937.50 plus $3,550.00 for rent for the month of
    April, 2019      for a total of $11,487.50.

Lessee shall have an option ("Option") to renew the Lease for an additional three

(3) year term. In order to exercise the Option Lessee shall provide Lessor with one hundred

eighty (180) days written notice prior to end of the initial lease term to Lessor at Lessor's

address. The rent to be paid during the Option term shall be as follows:

a)    Year four 16,200 square feet annual gross rent: $64,800.00.
b)    Year five 16,200 square feet annual gross rent: $68,850.00.
c)    Year six 16,200 square feet annual gross rent: $72,900.00.

## ARTICLE 3.
## INSURANCE

3.1    **Liability Insurance:**    Lessee, at its own expense, shall provide and maintain in

2

force during the term of the Lease, comprehensive general liability insurance protecting Lessor and Lessee against or damage to any person or property incurring in, on or about the Premises or any sidewalks, driveways or other areas appurtenant to the Premises. Such insurance shall be in the amount of at least $2,000,000.00 single limit for injury to any one person or injuries in any one occurrence and property damage of $2,000,000.00. This insurance is to be carried by one or more insurance companies authorized to do business in Pennsylvania. All policies shall provide that Lessee nor its insurance company will have subrogation rights with respect to any claims made or paid on such policy of insurance. Lessor shall be named as an additional insured. Lessee shall maintain additional liability coverage in the form of an umbrella coverage with no less than a $2,000,000.00 combined single limit.

The Lessee will maintain throughout the term and any renewal thereof Commercial General Liability Insurance coverage not less than two million dollars ($2,000,000.00) per occurrence in respect of bodily injury and property damage liability. Insuring the Lessee, Owner and Lessor against all claims, suits and actions for or on account of any damage or injury to property or persons arising out of this or hereafter at or upon the space or any part thereof at all times during the occupancy of the space or any part thereof at all times during the occupancy of the space by Lessee. Insurance policies shall be underwritten by insurance companies with Best's "A" rating or better.

3.2    **Remedy for Failure to Provide Insurance:**    Lessee shall furnish Lessor with certificates of all insurance required by this Article within ten (10) days of coverage being placed.  Said certificates shall also have a thirty (30) day written prior Notice Cancellation clause.  If Lessee does not provide such certificates on Lessor's delivery of possession to Lessee

3

or if Lessee allows any insurance required under this article to lapse, Lessor may, at its option, procure insurance and pay the premiums on the necessary insurance to comply with Lessee's obligations under the provisions of this Article. Lessor is entitled to reimbursement from Lessee for all amounts spent by it to procure and maintain such insurance, with interest at the rate of five percent (5%) per annum from the date of receipt of Lessor's notice of payment until reimbursement by Lessee.

3.3    **Hold-Harmless Clause:**    Lessor shall not be responsible for and is hereby relieved from all liability for any damage, expense, cause of action, suits, demands, judgments, and claims of any nature whatsoever, arising from or by reason of any injury to any person or persons or any damage to any property which may arise from any cause of from present or future structural defects or other conditions in, on or about the Premises or any part thereof or any sidewalks, streets, driveways, rights-of-way or roadways adjacent thereto, or in any manner growing out of or connected with use and occupancy of the Premises or any part thereof by Lessee or any other party during the term of this Lease or any renewal or extension thereof. Lessee agrees to protect, indemnify and hold Lessor harmless against any and all claims, demands, damages, cost and expenses, including reasonable attorney's fees for the defense of such claims and demands, arising from the conduct or management of Lessee's business on the Premises or its use of the Premises or from any breach on the part of Lessee of any conditions of this Lease, or from any act or negligence of Lessee, its agents, contractors, employees, sublessees, concessionaires, or licensees in or about the Premises. In case of any action or proceeding brought against Lessor by reason of any such claim, Lessee, on notice from Lessor,

4

agrees to defend the action or proceeding. This cause shall not apply to claims or damages caused by Lessor's negligence or willful misconduct and Lessor agrees to protect, indemnify and hold harmless against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees arising from the negligence of the Lessor, its agents, employees, contractors, or licensees.

3.4     (a)     Lessee shall not take out separate insurance concurrent in form or contributing, in the event of loss, with that required to be furnished by Lessee pursuant to this Article, nor shall Lessee increase the amounts of any then existing insurance by securing an additional policy or additional policies, without in either instance including Lessor as an insured party.

(b)     The insurance policies referred to in paragraph (a) and (b) above shall be underwritten by insurance companies with Best's "A" rating or better. Lessee shall deliver to Lessor certificates of all insurance policies on or before the first day of the term hereof and thereafter ten (10) days subsequent to any request therefore.

3.5     If the building or other improvements on the leased premises should be damaged or destroyed by fire, flood or other casualty, Lessee shall give immediate written notice thereof to Lessor.

3.6     **Total Destruction:** If the building on the leased premises should be totally destroyed by fire, flood, or other casualty, or if it should be so damaged that rebuilding or repairs cannot reasonably be completed within one hundred-twenty (120) working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this Lease shall terminate and rent shall be abated for the unexpired portion of this lease, effective as of the date

5

of said written notification.

3.7    **Partial Damage:** If the building or other improvements on the leased premises should be damaged by fire, flood, or other casualty, but not to such an extent that rebuilding or repairs cannot reasonably be completed within ninety (90) working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this lease shall not terminate but Lessor shall, if the casualty has occurred prior to the final two (2) months of the lease term, at his sole cost and risk, proceed forthwith to rebuild or repair such building and other improvements to substantially the condition in which they existed prior to such damage. If the casualty occurs during the final two (2) months of the lease term, Lessor shall not be required to rebuild or repair such damage. If the building and other improvements are to be rebuilt or repaired are untenantable in whole or in part following such damage, the rent payable hereunder during the period in which they are untenantable shall be adjusted equitably. In the event that Lessor should fail to complete such rebuilding or repairs within sixty (60) working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, Lessee may at its option terminate this lease by written notification at such time to Lessor, whereon all rights and obligations hereunder shall cease.

3.8    **Building rented as is.**   With the exception of certain improvements and changes which Lessor has agreed to perform at the Premises prior to occupancy, which work is described specifically on Exhibit "D" attached hereto and incorporated herein by reference, Lessor is leasing the premises to Lessee in an "AS IS" condition for the purposes of warehousing and distribution of consumer products and such uses as are customarily incidental thereto. Lessee shall not warehouse or distribute toxic or illegal products. Delivery of possession from Lessor to

6

Lessee shall occur when Lessee has delivered to Lessor its Certificate of Insurance as required under the terms of this Lease and Lessor has completed its work as set forth on Schedule "D" attached hereto.

3.9    Lessee shall obtain any and all necessary Certificates of Occupancy from the local governing authorities and provide Lessor with a copy.

## ARTICLE 4.
## UTILITIES

Lessee shall be responsible for its separately metered utilities and all utility usage charges regarding services associated exclusively with the premises including heat, water, gas, electricity, telephone and garbage.

## ARTICLE 5.
## WASTE AND NUISANCE

5.1    Lessee shall not commit, or suffer to be committed, any waste on the leased premises, nor shall they maintain, commit, or permit the maintenance or commission of any nuisance on the leased premises or use the leased premises for any unlawful purpose.

## ARTICLE 6.
## MAINTENANCE AND REPAIRS

6.1    **Lessor's Duty**:    More specifically, Lessor shall repair and maintain the leased premises so that the premises will have:

a)    Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors and structural components. Lessor shall be responsible for all repairs over Two Thousand Five Hundred Dollars ($2,500.00) annually for non-structural components.

b)    Secure leased premises from tenant in front of building to including loading dock, tool area

7

and office as demonstrated in Exhibit "D".

6.2  **Lessee's Duties Correlative to Lessor's Obligations**: Lessee shall be obligated to do the following:

a)     To keep that portion of the leased premises which they occupy and use as clean and sanitary as the condition of the premises permits;

b)     To dispose from the leased premises all rubbish, garbage, and other waste, in a clean and sanitary manner.

c)     To properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits.

d)     Not to permit any person on the premises, with his permission, to willfully or wantonly destroy, deface, damage, impair, or remove any part of the leased premises or the facilities, equipment, or appurtenances thereto.

## ARTICLE 7
## ALTERATIONS, IMPROVEMENTS AND FIXTURES

7.1     Lessee shall not alter or improve the leased premises without the written consent of Lessor to do so, and any and all alterations, additions, improvements, and fixtures made or placed in or on said premises shall on expiration or sooner termination of this lease, be removed at Lessee's expense, unless otherwise agreed to, in writing, by Lessor and Lessee.

7.2     Lessor and Lessee hereby agree that Lessee will alter the Premises a follows:

a)     Add a wall to close in all office area to contain A/C and heating of office area.

b)     Potentially raise the door frame of the cooler to allow access for a forklift.

c)     Add a magnetic access system to the main entry door.

8

d)    Erect racks which will require drilling floor to secure the same with bolts.

e)    Add exhaust fan in cooler area to allow air flow.

Lessee will maintain and repair the interior of the leased premises, heating and air conditioning, overhead and main doors, loading dock, tenant signage and any damage to the premises caused by its agents, contractors or employees' negligence or willfull misconduct. Lessee shall be responsible for snow removal in its designated area to be agreed upon by the parties. Lessee shall be allowed to place signage on the leased premises with Lessor's approval. (See Exhibit "B" attached hereto).

## ARTICLE 8
## SECURITY DEPOSIT

8.1    **Receipt of Deposit:**    Lessee shall place with Lessor a security deposit in the amount of Seven Thousand Nine Hundred Thirty-Seven Dollars and 50/100 ($7,937.50).

8.2    **Rent:**    If at any time during the term hereof Lessee shall be in default in the payment of rent herein reserved or any portion thereof, or of any other sums expressly constituting rent hereunder, Lessor may appropriate and apply any portion of the security deposit as may be necessary to the payment of the overdue rent or to her sums expressly constituting rent hereunder. Lessor shall pay all real estate taxes.

8.3    **Repairs:**    If at any time during the term hereof Lessee should fail to repair any damage to the premises that Lessee is required to repair pursuant to the terms hereof, Lessor may appropriate and apply any portion of the security deposit as may reasonably necessary to make such repairs.

8.4    **Cleaning:**    If on termination of this tenancy for any reason, Lessee does not leave the leased premises in reasonably clean condition, then Lessor may appropriate and apply any

9

portion of the security deposit as may be reasonably necessary to put the premises in such clean condition.

8.5 **Custody of Deposit:** Lessor agrees to hold such deposit for Lessee, free from the claim of any creditor of Lessor.

8.6 **Return of Security:** If after Lessor makes an inspection of the premises and there remains no rent due, no repairs to be made by Lessee, no removal of fixtures, additions or alterations, and the premises have been left in a reasonably clean condition and Lessee has complied with all obligations of this lease, Lessor shall return the aforementioned security deposit to Lessee. This repayment shall occur within twenty (20) days of Lessor's inspection. If, after inspection, it is determined that repairs are necessary, that Lessee has failed to comply with all the terms of this lease regarding payment of rent, cleaning of the premises, removal of alterations, additions or fixtures, the Lessor shall present a bill of costs for same to Lessee and return the pro-rata portion of the security deposit if any is due to Lessee.

## ARTICLE 9
## TERMINATION OR EXTENSION

9.1 **Written Notice Extension/Termination:** There shall be no automatic extension of this Lease. Lessor and Lessee agree that either party must give a one hundred eighty (180) day written notice to the other party if that party does not intend to renew this Lease. Additionally, should Lessee decide to exercise its option to extend this Lease, it shall provide one hundred eighty (180) days' notice to Lessor that it intends to exercise its option. Lessors reserve the right to place "For Rent" or "For Sale" signs upon the premises and to show the premises to potential Lessees or Buyers.

10

## ARTICLE 10.
## SURRENDER OF PREMISES

10.1 **Removal of Property:** Lessee shall, without demand therefor and at their own cost and expense within ten (10) days after expiration or sooner termination of the term hereof or of any extended term hereof, remove all property belonging to them and all alterations, additions, or improvements, and fixtures which by the terms hereof they made to the premises and repair damage to the leased premises caused by such removal, and restore the leased premises to the condition they were in prior to the installation of the property so removed, unless Lessor instructs Lessee, in writing, to allow said alterations, additions, improvements or fixtures to remain. Lessor and Lessee agree that Lessee's repairs will include filling any holes drilled in the concrete floor to bolt racks with concrete and that while Lessee will, at Lessor's request, will try not to use wood pallets on the cooler floor. Lessee will not be responsible for any wear and tear that happens to the epoxy floor which wear and tear is expected from normal warehouse use and distribution activities.

10.2 **Surrender:** Lessee agrees to and shall, on expiration or sooner termination of the terms hereof (or of any extended term hereof), promptly surrender and deliver the leased premises to Lessor without demand therefor in good condition, ordinary were and tear (and damage by the elements, fire, or act of God, or by other cause beyond the reasonable control of Lessee) excepted.

## ARTICLE 11
## CONDEMNATION

11.1 **All of Premises:** If during the term of this lease or any extension or renewal thereof, all of the leased premises should be taken for any public or quasi-public use under any

11

law, ordinance, or regulation, or by right of condemnation, this lease shall terminate and rent shall be abated during the unexpired portion of this lease, effective as of the date of the taking of said premises by the condemning authority.

11.2     **Partial:**     If less than all of the leased premises shall be taken for any public or quasi-public use under any law, ordinance, or regulation, or by the right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall not terminate but Lessor shall forthwith at their sole expense, restore and reconstruct the building and other improvements, situated on the leased premises, provided such restoration and reconstruction shall make the same reasonably tenantable and suitable for the use for which the premises are leased. The rent payable hereunder during the unexpired portion of this lease shall be adjusted equitably.

## ARTICLE 12
## DEFAULTS AND REMEDIES

12.1     Default by Lessee:     If Lessee shall allow the rent to be arrears more than five (5) days after the due date or shall remain in default under any other condition of this lease for a period of ten (10) days after written notice from Lessor, or should any other person than Lessee secure possession of the premises, or any part thereof, by operation of law in any manner whatsoever, Lessor may at its option, without further Notice to Lessee, terminate this lease (or in the alternative, Lessor may reenter and take possession of said premises and remove all persons and property therefrom, without being deemed guilty of any manner of trespass, and relet the premises or any part hereof, for all or any part of the remainder of said term, to a party satisfactory to Lessor, and at such monthly rental as Lessor may with reasonable diligence be able to secure). Should Lessor be unable to relet after reasonable efforts to do so, or should such

12

monthly rental be less than the rental Lessee was obligated to pay under this lease, or any renewal thereof, plus the expense of reletting, the Lessee shall pay the amount of such deficiency to Lessor.

It is expressly agreed that in the event of default by Lessee hereunder, Lessor shall have a lien on all goods, chattels, or personal property of any description belonging to Lessee which are placed in, or become part of, the leased premises as security for rent due and to become due for the remainder of the current lease term, which lien shall not be in lieu of or in any way affect the statutory Lessor's lien given by law, but shall be cumulative thereto; and Lessee hereby grants to Lessor a security interest in all such personal property placed in said leased premises for such purposes. This shall not prevent the sale by Lessee of any merchandise in the ordinary course of business free of such lien to Lessor. All rights and remedies of Lessor under this lease shall be cumulative, and none shall exclude any other right or remedy at law. Such rights and remedies may be exercised and enforced concurrently and whenever and as often as occasion therefor arises.

## ARTICLE 13
## INSPECTION BY LESSOR

13.1    Lessee, upon twenty-four (24) hour notice by the Lessor, shall permit Lessor and Lessor's agents, representatives, and employees to enter the Premises at all reasonable times for the purpose of inspection, repair or any other purpose necessary to protect Lessor's interest in the Premises or to perform Lessor's duties under this Lease provided, however, in the event of an emergency that places the Lease premises at risk of loss or damage, Lessor shall be entitled to enter the Premises solely for the purpose of investigating and repairing the condition causing the emergency and shall, as soon as reasonably possible, contact Lessee by telephone to notify

13

Lessee of said emergency and Lessor's entry on to the Leased premises. Lessee shall provide Lessor with the name and contact for emergency contact 24 hours per day. Lessor shall have a key to the premises for emergency use.

Lessor will use every effort to make repairs during non-business hours whenever possible or practicable. However, same will not apply in emergency situations.

## ARTICLE 14
## ASSIGNMENT AND SUBLEASE

14.1    **Assignment and Subletting by Lessee**:    Lessee shall not assign this lease or sublet all or any portion of the leased premises. Lessee shall have the ability to sublet all or a portion of the leased premises subject to the approval of Lessor. Lessor's approval shall not be unreasonably withheld. There shall be no assignment of the Lease by Lessee. Lessee shall provide written notice to Lessor of its intent to sublet the premises. Lessee shall provide all information requested by Lessor relative to the identity of the proposed tenant and the purpose for which they will be using the premises.

14.2    **Assignment by Lessor**:    Lessors are expressly given the right to assign any or all of its interest under the terms of this lease.

## ARTICLE 15
## MISCELLANEOUS

15.1    **Notices and Addresses**:    All notices provided to be given under this Agreement shall be given by certified mail or registered mail, addressed to the proper party, at the following address:

Lessor:          **Paul Gallagher and Patricia Gallagher**
                 **10 Gallagher Drive**
                 **Plains, PA 18705**

14

Lessee:      **AMN DISTRIBUTION, Inc.**
             **145 James Street**
             **Kingston, PA 18704**

15.2    **Parties Bound:**    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns when permitted by this Agreement.

15.3    **Pennsylvania Law to Apply:**    This Agreement shall be construed under and in accordance with the laws of the Commonwealth of Pennsylvania, and all obligations of the parties created hereunder are performable in Luzerne County, Pennsylvania.

15.4    **Legal Construction:**    In case one or more of the provisions contained in this lease shall be for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this lease shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

15.5    **Sole Agreement of the Parties:**    This lease constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

15.6    **Amendment:**    No amendment, modification, or alteration of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof, and duly executed by the parties hereto.

15.7    **Rights and Remedies Cumulative:**    The rights and remedies provided by this lease are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to

15

004698

any other rights the parties may have by law, statute, ordinance, or otherwise.

15.8     **Waiver of Default:**     No waiver by the parties hereto or any default or breach of any term, condition or covenants of this lease shall be deemed to be waiver of any other breach of the same or any other term, condition or covenant contained herein.

15.9     **Attorneys' Fees:**     In the event Lessor or Lessee breaches any of the terms of this Agreement and should litigation result or either party employs an attorney to protect or enforce its rights under this Lease, the parties shall each pay their own legal fees.

15.10     **Excuse:**     Neither Lessor or Lessee shall be required to perform any term, condition or covenants in this lease so long as such performance is delayed or prevented by any acts of God, strikes, lockouts, material or labor restrictions by any governmental authority, civil riot, floods, and any other cause not reasonably within the control of the Lessor or Lessee and which by the exercise of due diligence Lessor or Lessee is unable wholly or in part, to prevent or overcome.

15.11     **Time of Essence:**     Time is of the essence of this Agreement.

15.12     **Improvements:**     The building is leased in present condition with the exception of the improvements provided for herein.

## ARTICLE 16
## RIGHT OF FIRST REFUSAL

Lessee has a one-time right of first refusal to rent additional space in the front building owned by Lessor should it become available during Lessee's lease term. This right of first refusal is contingent upon Lessee being current with rent and not in default of any terms of their Lease. Lessor shall notify Lessee the availability of said space and Lessee shall have fifteen (15) days to Notify Lessor of acceptance or rejection. At that time rent shall be negotiated between the parties

16

which will not be less than current market rates. (See Exhibit "C" attached for the subject area.)

## ARTICLE 17
## BROKERAGE REPRESENTATION

The parties hereto each warrant that they have not dealt with any other real estate brokers in connection with this transaction except Mericle Commercial Real Estate Services, Inc., which represents Lessor, and Lawrence Real Estate, LLC., which represents Lessee. Said broker shall be paid in accordance with their separate agreements with the parties hereto. The parties confirm they were each notified in a timely manner relative to said representation.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on the day and year first above written.

AMN DISTRIBUTION, INC. Lessee

By:
President

_____
**PAUL E. GALLAGHER**   *Lessor*

By
Secretary

_____
**PATRICIA GALLAGHER**   *Lessor*

17

# CONFESSION OF JUDGMENT

Lessee, and each of them confess judgment against themselves according to the following authority and terms, and understand that they are waiving any right to notice of hearing, and that the rent and other charges agreed upon will become accelerated and be immediately due and collectible upon such confession of judgment.

Rent and Charges: THE LESSEE (BY THE AUTHORIZED SIGNATURES AT THE END OF THIS LEASE) DOES HEREBY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, IN THE EVENT OF A DEFAULT HEREUNDER, TO UNCONDITIONALLY APPEAR FOR AND ENTER AND CONFESS JUDGMENT AGAINST THE LESSEE BY FILING A TRUE AND CORRECT COPY HEREOF AS SUFFICIENT WARRANT, IN ANY COMPETENT COURT, FOR THE UNPAID BALANCE OF RENT AND ALL OTHER SUMS DUE, WITH INTEREST AT .75% PER MONTH, PLUS ACCRUED LATE CHARGES, DAMAGES AND OTHER OBLIGATIONS OF LESSEE, TOGETHER WITH COURT COSTS, PLUS THE GREATER OF TEN PERCENT (10%) OF THE FACE AMOUNT HEREOF OR FIVE HUNDRED DOLLARS ($500.00) AS AN ATTORNEY'S COMMISSION WITH IRREVOCABLE RELEASE OF ALL PROCEDURAL DEFECTS AND ERRORS IN THE PREPARATION AND FILING OF ALL DOCUMENTS RELATIVE TO SUCH PROCEEDINGS. LESSEE HEREBY WAIVES ANY NOTICE AND HEARING THAT MAY BE REQUIRED FOR JUDGMENT BY CONFESSION, AND AGREE THAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR STRIKE-OFF

18

004701

JUDGMENT OR TO STAY ENFORCEMENT THEREOF, OR OTHER OBJECTIONS SHALL
BE MADE OR FILED WITH RESPECT THERETO. THE ENTRY OF JUDGMENT BY
CONFESSION SHALL NOT BE DEEMED TO EXHAUST THE WARRANT OF
AUTHORITY HEREBY GRANTED WHICH MAY BE EXERCISED AT ANY TIME FOR
ANY NUMBER OF TIMES. THE ENTRY OF JUDGMENT(S) FOR MONEY DOES NOT
EXCLUDE THE ENTRY OF ANY JUDGMENT(S) IN EJECTMENT BY CONFESSION, AS
EACH REMEDY IS NOT MUTUALLY EXCLUSIVE.

Ejectment:    FOR THE PURPOSES OF OBTAINING POSSESSION OF THE
LEASED PREMISES IN THE EVENT OF ANY DEFAULT HEREUNDER, THE LESSEE (BY
THE AUTHORIZED SIGNATURES AT THE END OF THIS LEASE) HEREBY
AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN
THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR
THE LESSEE, TO UNCONDITIONALLY APPEAR FOR AND ENTER AND CONFESS
JUDGMENT IN EJECTMENT IN ANY COMPETENT COURT, AGAINST LESSEE FOR
POSSESSION OF THE LEASED PREMISES, BY FILING A TRUE AND CORRECT COPY
HEREOF AS SUFFICIENT WARRANT, WITHOUT ANY STAY THEREOF, AND A WRIT
OF POSSESSION MAY BE ISSUED FORTHWITH TO REMOVE LESSEE, ITS
SUB-LESSEES AND ASSIGNEES AND OTHER CLAIMING, OCCUPYING, OR
POSSESSING THE PREMISES UNDER, BY AND THROUGH THEM, WITHOUT ANY
PRIOR PROCEEDING WHATSOEVER. THE TENANT HEREBY WAIVES ANY NOTICE
AND HEARING THAT MAY BE REQUIRED FOR JUDGMENT BY CONFESSION, AND
RELEASES THE LANDLORD FROM ALL ERRORS AND DEFECTS WHATSOEVER IN
ENTERING JUDGMENT BY CONFESSION, FILING ALL DOCUMENTS THEREFORE,
THE CONDUCT OF SUCH PROCEEDINGS AND IN CAUSING ANY WRIT(S) OF
POSSESSION TO BE ISSUED AND OTHERWISE ENFORCING SAID JUDGMENT, AND
HEREBY AGREES T HAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR
STRIKE-OFF THE JUDGMENT OR STAY THE ENFORCEMENT OF SAID JUDGMENT OF

19

ANY DISPOSSESSION PROCEEDINGS, OR OTHER OBJECTION SHALL BE FILED OR
MADE WITH RESPECT THERETO. IF FOR ANY REASON AFTER SUCH ACTION HAS
BEEN COMMENCED THE SAME SHALL BE DISCONTINUED AND POSSESSION OF
THE LEASED PREMISES SHALL REMAIN IN OR BE RESTORED TO THE LESSEE, THE
LANDLORD SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY
SUBSEQUENT DEFAULT TO BRING ONE OR MORE OF SUCH ACTIONS AS
OCCASION MAY REQUIRE TO RECOVER POSSESSION OF THE LEASED PREMISES
AND THE WARRANT OF AUTHORITY FOR THIS PURPOSE SHALL NOT BE
EXHAUSTED BY AN SINGLE EXERCISE THEREOF BUT MAY BE EXERCISED ANY
NUMBER OF TIMES. THE ENTRY OF JUDGMENT IN EJECTMENT BY CONFESSION
DOES NOT EXCLUDE THE ENTRY OF ANY JUDGMENT BY CONFESSION FOR
MONEY, AS EACH REMEDY IS NOT MUTUALLY EXCLUSIVE.

**AMN DISTRIBUTION, INC., Lessee**

By: _Mark Newman_
President

By: _Mark Newman_
Secretary

20