UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   ORDER TO SHOW CAUSE WHY PLAINTIFF'S COUNSEL MARINA LANG SHOULD NOT BE FOUND IN CIVIL CONTEMPT

The Court hereby orders Ms. Marina Lang, counsel for Plaintiff, to show cause why she should not be found in civil contempt for her conduct in the Phase I trial of this case on November 17, 2021. At the trial, the Court cited Ms. Lang for contempt and had her removed from the courtroom due to her repeated outbursts and inappropriate comments. As a result, this Court was forced to grant Defendants' motion for a new trial. New Trial Order, ECF No. 203.

Consistent with Ms. Lang's due process rights, before issuing a formal finding of contempt and imposing further sanctions, the Court issues this order to show cause so that Ms. Lang may respond to the points raised by the Court.

**I.   Legal Background**

It is well-established that "'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

The contempt power is necessary to protect a court's ability to prevent the disruption of its proceedings and to enable it to enforce its judgments and orders. *Young v. United States*, 481 U.S. 787, 798 (1987). "The necessity justification for the contempt authority is at its pinnacle, of course, where contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a

   :   
_____
Initials of Preparer
   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

witness refuses to testify, or a party disrupts the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994).

The distinction between civil and criminal contempt looks to the "character and purpose" of the sanction imposed. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005). Criminal contempt is punitive and is imposed to "vindicate the authority of the court." *Gompers*, 221 U.S. at 441. In contrast, civil contempt has a remedial purpose. *Id.* The character of a contempt sanction is not determined solely by the stated purposed proffered by the court, but rather by looking to the "character of the relief itself." *Bagwell*, 512 U.S. at 828 (internal quotations and citations omitted).

In the context of a monetary sanction, a fine constitutes a criminal contempt sanction when lacks a compensatory purpose and is unconditional, with no opportunity for the contemnor to purge the contempt and thus avoid or reduce the fine. *Id.* at 829. On the other hand, a fine constitutes a civil sanction when it is remedial, coercing the contemnor into compliance with the court's order, or when is compensatory, imposing the costs of the contumacious conduct on the contemnor. *Id.*

The Ninth Circuit has noted that "the Supreme Court has tended to classify fines paid to the court as punitive fines, while fines payable to another party are remedial." *Lasar*, 399 F.3d at 1111. However, the Ninth Circuit has also made clear that the identity of the party receiving the fine is relevant but "not determinative." *Id.* A fine payable to the court is a civil contempt sanction when it compensates for the actual costs that result from the contumacious conduct. *Id.* at 1111-12.

Finally, the level of due process required also varies with the nature of the contempt and character of the sanction. Ordinarily, a "direct" contempt – committed in the presence of the court itself – has been subject to summary adjudication to permit the court to immediately restore order, even where the sanction is criminal in nature. *Bagwell*, 512 U.S. at 832; *Taylor v. Hayes*, 418 U.S. 488, 497 (1974).

However, "[i]f a court delays punishing a direct contempt until the completion of trial, [] due process requires that the contemnor's rights to notice and a hearing be respected." *Bagwell*, 512 U.S. at 832. When a court is contemplating only civil contempt sanctions, not criminal ones, it need only

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

provide notice of the specific charges and an opportunity to be heard; neither a "full-scale trial" nor additional process are required. *Taylor*, 418 U.S. at 498-99; *Lasar*, 399 F.3d at 1112-13.

A finding of civil contempt must be supported by clear and convincing evidence. *In re Dyer*, 32 F.3d 1178, 1190-91 (9th Cir. 2003). However, unlike criminal contempt, civil contempt contains no prerequisite that court must find the contemnor to have acted willfully. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

**II.    Factual Background**

This case concerns Defendants' alleged infringement of Plaintiff's trademarks by selling counterfeit cosmetic products. The parties had previously executed a settlement agreement, in which Plaintiff released its claims of infringement. However, Plaintiff brought this suit, alleging that Defendants breached their obligations under the settlement agreement. Plaintiff also brought its original infringement claims, contending that, by virtue of Defendants' breach, it was no longer bound by the release.

This Court had previously ordered the bifurcation of issues in this case, with the first phase to focus solely on Plaintiff's breach of contract claim. ECF No. 74. Unless Plaintiff successfully showed a breach of the settlement agreement contract, Plaintiff's other claims related to trademark infringement were released by the agreement and thus were barred.

Trial on Phase I occurred on November 17, 2021. Prior to trial, this Court issued an order carefully laying out the issues for trial. ECF No. 179. The Court determined that this was necessary for three reasons. First, the factual and legal theories had continuously evolved over the course of the litigation, and the Court sought to limit the trial to the currently operative theories, rather than run the risk of a party raising some previously abandoned theory or springing some completely novel theory at trial.

Second, the parties had been involved in a litany of discovery disputes that had taken up much of this Court's time and Magistrate Judge Kewalramani's time in prior hearings. In some instances, the parties seemed unable to agree about even basic facts regarding what discovery had taken place. Thus, the Court sought to keep the trial from devolving into yet another arguing match over discovery, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

would only serve to confuse the jury and distract them from the relevant issues. *See* Fed. R. Evid. 401.

Third, the Court sought to preserve the distinction between the two phases of the cases: the first relating to the breach of the settlement agreement and the second relating to the infringement claims. The breach of contract claim presents distinct factual issues, and the Court sought to prevent the jury from being confused, distracted, or prejudiced by evidence or argument related to the underlying infringement claims. *See* Fed. R. Civ. P. 42(b).

Accordingly, the Court's pretrial order strictly limited the issues for trial to the two forms of breach that Plaintiff alleged and the specific, evidence-backed factual theories underlying those two forms of breach. Trial Prep. Order 6-9, ECF No. 179.

### III. Ms. Lang's Conduct at Trial

While the Court has already outlined Ms. Lang's behavior in its order granting a trial, New Trial Order 3-5, ECF No. 203, for the sake of completeness, it will provide another account here.

At trial, Ms. Lang engaged in a repeated pattern of disruptive behavior that is almost unparalleled in this Court's long tenure. Rather than catalogue every disruptive or inappropriate incident, the Court will detail only the most serious examples, which fell into four general types of behavior.

First, Ms. Lang repeatedly made reference to the counterfeiting allegations underlying the trademark infringement claims, which were not at issue in the Phase I trial. *See* Trial Tr. 37:16-38:9, 54:9-56:2, 108:5-7. The Court warned Ms. Lang not to do so, yet she did in both her opening statement and her examination of the only live witness in the case. *Id.* at 37:16-38:9, 54:9-56:2. This contravened the Court's pretrial order, which specifically indicated that Plaintiff was not to present evidence or argument regarding the nature or characteristics of a counterfeit product, or the trademarks infringed by a counterfeit product. Trial Prep. Order 8.

Second, Ms. Lang repeatedly interrupted proceedings throughout the trial. It first began in colloquy outside the jury's presence even before opening statements were made. Trial Tr. 32:25-33:19.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

It continued into the opening of Plaintiff's evidence, where the Court sought to have several business records introduced in a streamlined manner. *Id.* at 44:21-45:3. At that point, the Court excused the jury and warned Ms. Lang about her interruptions, yet even then, she continued to interject, talking over the Court to insist, "This is my case. This is my client. I'm advocating for them. They're paying me a lot of money for advocating for them." *Id.* at 47:3-48:17. At that point, the Court cited Ms. Lang for contempt and indicated that it would deal with the contempt matter after the trial. *Id.* at 48:18-21.

However, even the first contempt citation could not stem the tide of interruptions. Ms. Lang again interjected during a later colloquy between the Court and opposing counsel, Mr. Voss. *Id.* at 88:23-89:6. She also interrupted as the Court was attempting to rule on objections during her closing argument. *Id.* at 110:11-111:1. And Ms. Lang even interrupted Mr. Voss's closing argument, speaking under her breath during his argument in a manner that the jury likely heard since Plaintiff's counsel's table was directly in front of the jury box. *Id.* at 115:24-116:12. Thus, despite more than one warning, Ms. Lang continuously interrupted the Court and opposing counsel from the trial's start to its finish.

Third, and related to her interjections, Ms. Lang frequently continued to argue after the Court had issued rulings. After the Court overruled one of Ms. Lang's objections during Mr. Voss's opening statement, she continued to relitigate the issue, at which point the Court informed her that she should not keep arguing a point once the Court had ruled. *Id.* at 42:18-25. Despite that warning, Ms. Lang did so on multiple other occasions. *Id.* at 78:15-19, 110:11-111:1, 115:24-116:12.

Finally, and most significantly, Ms. Lang repeatedly made highly inappropriate comments and prejudicial outbursts. The first such incident occurred during a colloquy on an evidentiary matter outside the presence of the jury. The Court asked Ms. Lang about the origins of the document at issue, which she had submitted in her opposition to the Defendants' summary judgment motion, and Ms. Lang included disdainful comments in her response, "am I being deposed? [. . .] I'm a witness now." *Id.* at 86:23-87:22.

Unfortunately, things only got worse from there, including episodes in front of the jury. After the Court sustained an objection during Ms. Lang's closing argument, and she interrupted to continue arguing the ruling, Ms. Lang raised her voice to the point of yelling. *Id.* at 111:2-112:25. Ms. Lang shouted, "this is my client. They are paying me a lot of money to advocate for them, and you won't even

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

let the jury see the Settlement Agreement. This is outrageous. This is outrageous." *Id.* at 112:8-11. She continued, "I could lose my license if I don't scream from the top of the wall that this Settlement Agreement needs to go into evidence. That's all I want. The Settlement Agreement needs to go into evidence, or I'm going to get disbarred." *Id.* at 112:17-21.[1] At that point, the Court ended Ms. Lang's closing argument as the only way to regain control of the proceeding, and the Court warned Ms. Lang that it was being left with almost no recourse other than more drastic action. *Id.* at 112:22-25.

Mr. Voss then began his closing argument, in which Ms. Lang continued outright yelling in making her objections and shouting "this is error," after the Court overruled her. *Id.* at 114:14-25. The Court again cautioned that the proceedings were getting out of control. *Id.* It was at this point that Ms. Lang began speaking under her breath, within earshot of the jury, during Mr. Voss's closing argument. *Id.* at 116:1-5. The Court raised this point, and Ms. Lang responded in exasperation, "It's so hard being a woman," implying that the Court's actions to maintain order were motivated by sexism. *Id.* at 116:6-9.

With order in the courtroom having completely broken down, the Court had the jury excused. The Court indicated that it was at a breaking point, with no other way to regain control, when Ms. Lang interrupted by shouting, "No, I am at the breaking point. I'm at the breaking point." *Id.* at 116:10-21. In the Court's view, it was clear that if Ms. Lang continued to participate, the trial could not be concluded in an orderly fashion, and the Court held Ms. Lang in contempt and ordered her removed from the courtroom. *Id.* at 116:22-117:20. Ms. Lang's co-counsel, Mr. Harris, had to finish the trial on behalf of Plaintiff. *Id.* at 117:24-118:8.

The jury returned, closing arguments concluded shortly thereafter, and the case was submitted to the jury. While the jury was deliberating, the Court indicated for the record that it had cited Ms. Lang for contempt, that the Court ordered that she be removed from the building and take no further part in the trial, and that the Court would issue this order to show cause why she should not be found in civil contempt. *Id.* at 143:11-145:8.

---

[1] As the Court noted in its order granting a new trial, while the Court did not permit the *full* Settlement Agreement to go into evidence, as Ms. Lang desired, because it included some prejudicial material that contravened the trial preparation order, the Court did enter the relevant *portions* of the agreement into evidence, namely Schedules 1 and 2, which directly pertained to the first breach claimed by Plaintiff.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

### IV. Contemplated Contempt Sanctions

As the Court noted after having Ms. Lang removed from the courtroom, her comportment at trial encompassed a level of defiance and disruption that is almost unprecedented in this Court's tenure. *Id.* at 117:24-118:2. The collection of conduct detailed above is made all the more remarkable by the fact that it all occurred within a single day – indeed, within a mere four and half hours that court was in session between the jury being empaneled and Ms. Lang being removed.

Despite multiple warnings, Ms. Lang continued to defy the Court's orders and disrupt the trial to the point that the proceedings completely broke down. In the Court's view, this behavior is more than sufficient to support a finding of civil contempt by clear and convincing evidence. *See Young*, 481 U.S. at 798; *Bagwell*, 512 U.S. at 832; *In re Dyer*, 32 F.3d at 1190-91.[2]

As previously noted, this Court granted Defendants' motion for a new trial based on Ms. Lang's behavior. New Trial Order 6-8. In the Court's view, since Ms. Lang's conduct has necessitated doing the Phase I trial over again, the most appropriate measure would be to impose the costs associated with conducting a second trial on her – a measure whose compensatory character would be consistent with the nature of civil contempt. *See Bagwell*, 512 U.S. at 829; *Lasar*, 399 F.3d at 1111.

Specifically, potential compensatory sanctions include both the expenses incurred by Defendants and by the Court itself from having to conduct the first trial, which was rendered futile by Ms. Lang's conduct. *See Lasar*, 399 F.3d at 1111-12 (recognizing that, when a new trial is necessitated by attorney misconduct, compensatory sanctions can include both the opposing party's expenses and the court's).

Defendants' expenses include their attorneys' fees and costs associated with the first trial. Accordingly, Defendants' counsel should submit its billing records associated with the November 17, 2021 trial for the Court's review. Similarly, the Court's expenses include the costs of empaneling the jury for the first trial whose service was for naught. *See id.* at 1112 (approving similar compensatory

---

[2] Indeed, the Court notes that there would even be more than enough evidence to support the finding of willfulness that would be necessary to sustain a judgment of criminal contempt. *See McComb*, 336 U.S. at 191. However, in the Court's opinion, civil contempt and compensatory sanctions are more appropriate in this case.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | December 27, 2021 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

sanction for civil contempt).[3]

### V. Conclusion

Given Ms. Lang's pervasive pattern of disruptive and inappropriate conduct, Ms. Lang is ORDERED to show cause why she should not be found in civil contempt and subject to the sanctions discussed above. Ms. Lang's response is due by January 10, 2022.

Further, Defendants are ORDERED to submit their billing records associated with the first trial held on November 17, 2021 for the Court's review in connection with this order. Defendants' submission is also due by January 10, 2022.

A hearing on the matter shall be set for January 24, 2022 at 1:30pm.

**IT IS SO ORDERED.**

---

[3] The first trial involved eight jurors, who were each entitled to $50 for their day of service, plus mileage reimbursement.

|  | : |
|---|---|
| Initials of Preparer | PMC |