Marina Lang, No. 251,087 mlang@socalip.com
Michael D. Harris, No. 59,470 mharris@socalip.com
Brian Tamsut, No. 322,780, btamsut@socalip.com
SoCal IP Law Group llp
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Plaintiff Athena Cosmetics, Inc.

# United States District Court

## Central District of California – Western Division

| | |
|---|---|
| Athena Cosmetics, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>AMN Distribution Inc., et al,<br><br>    Defendants. | No. 2:20-cv-05526-SVW-SHK<br><br>Declaration of Marina L. Lang in Support of Response to Order to Show Cause Re: Civil Contempt |

I, Marina L. Lang, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration. If I am called as a witness, I could and would testify under oath to the facts stated in this declaration.

2. I earned my Juris Doctor from Duke University School of Law, graduating Cum Laude. I served on the Executive Board for the Duke Law and Technology Review and published a Note on Ethics in Patent Law that has subsequently been cited several times. I also received a Master of Science in Public Policy from Duke University. Before Duke, I earned two B.A.'s from the University of Southern California, graduating magna cum laude with high honors in each degree. I have also published many articles and lectured in intellectual property law at several top law schools.

3. My law practice focuses on intellectual property, and I currently represent nearly 100 clients, including individuals, start-ups, and publicly traded companies.

While in law school, I clerked in the Major Crimes Unit at the Los Angeles District Attorney's Office for two summers, assisting in high-level jury trial prosecutions including the high-profile Mickey Thompson and Phil Specter murder trials. I also interned in the West Wing of the White House for President George W. Bush, played NCAA Div. 1 Water Polo winning two Division 1 National Championships and was invited to try out for the US Olympic team.

4.  I am admitted in good standing to the California Bar, all California United States District Courts, the Federal Circuit, and the United States Supreme Court. I am an active Member of the International Trademark Association (INTA). I am an equity Partner in my law firm.  I have served as outside Intellectual Property counsel for the plaintiff since 2011. Plaintiff experienced an influx of counterfeit goods being sold on e-commerce platforms in 2019, and I have been lead counsel for the plaintiff on their prosecution efforts against these counterfeiters, including the defendants named in plaintiff's operative complaint at Case No. 2:20-cv-05526-SVW-SHK.

5.  I have practiced federal trademark law and complex federal litigation throughout the United States, primarily before the Central District, going on more than fourteen (14) years. I have served as lead counsel in nearly fifty (50) lawsuits, most of them before the Central District. I have never been warned with, much less cited with, any form of contempt during my entire career, nor have I ever been handcuffed or jailed in my entire life prior to Judge Wilson's ordering my arrest and incarceration on November 17, 2021. Judge Wilson ordered me to be unlawfully arrested mid-trial, shackled in physical restraints with wrist, leg, ankle and waist cuffs and chains, and locked in an isolated prison cell for doing nothing more and nothing less than performing my rights and duties in accordance with the duty of zealous advocacy, and in violation of no court order. What happened to me on November 17, 2021, was traumatizing.  I have experienced significant post-traumatic stress symptoms since that day, and I consider the experience to be one of the most traumatic

events in my life. No client, case, or amount of money is worth the risk of ever being put in a situation like that. Courts cannot be allowed such a vast sweeping and tyrannical jurisdiction to imprison attorneys just for showing up to their job.

6. The Court might say it didn't mean to be punitive but being imprisoned was an extremely traumatic event for me. It was dehumanizing, physically painful, and it caused me to feel extreme helplessness, fear, injustice, powerlessness, and uncertainty. My imprisonment on November 17, 2021, has made it very difficult for me to return to my job. I suffer from post-traumatic stress disorder (PTSD) because of what happened to me on November 17, 2021.

7. The Court treated me like an animal. I was handcuffed and chained in what is known as a "hogtie": double-locking handcuffs, double-lock ankle/leg cuffs, a chain looped around my waist, chest and shoulders running down my center, between my legs, connecting my handcuffs to the leg irons. Leg irons are almost never used, but they were here. It's known that hogtied persons lying on their stomachs have died from positional asphyxia, making the practice highly controversial, and leading to its being severely restricted, or even completely banned, in many localities. Leg cuffs are typically only used when transporting prisoners outside of a secure area to prevent attempts to escape.

8. When being placed in the metal leg cuffs, I was unable to walk independently, so the Marshalls removed my shoes and forced me to walk barefoot, flanked by officers holding my shoulders on each side, taking "mini-steps" ten floors down to where the Courthouse has its criminal prison cells, and I stumbled several times. Once inside the isolated locked prison cell, I was ordered to sit down near a feces filled urinal in a cell that was littered with dirt and trash. My physical restraints were not removed after being placed in the locked prison cell. I remained cuffed in "hogtie" fashion, inside the isolated and freezing locked prison cell for hours, and I

was not released until after it was nighttime, court adjourned, with the federal courthouse having long been closed, all the other judges and general courthouse personnel gone for the day, and my vehicle locked inside a closed parking lot across the street, leaving me alone and stranded at night in downtown Los Angeles. After being released from prison, I researched that it is illegal in the USA for prisoners to be permanently shackled with leg cuffs even when they are held in their cells. With such a long-term use of leg shackles, I was left with pressure marks on my ankles. This treatment of me as a prisoner was cruel and unusual punishment. I suffer from Von Willebrand Disease, a serious blood disease that I was born with that can be life-threatening. The metal medical bracelet I wear indicating I suffer from this disease was removed by the marshals when they handcuffed me. The full-harness combination applied to me was excruciatingly painful. I experienced cuts to my wrists and ankles and felt the loss of circulation almost causing me to faint while hogtied in the locked cell. I know from my time working the District Attorney's office, that handcuffs are meant as a temporary restraint, only to be used in the narrowest of situations, but they were used liberally on me and not temporarily. Indeed, the key to my metal wrist handcuffs was lost for over an hour when the officers changed shifts during my incarceration.

9. The Court had it out for me from the beginning, never allowing me to speak, paying deference to Attorney Voss and making stipulations with opposing counsel without my permission or allowance of any verbal input. At approximately 3:24pm on November 17, 2021, while performing my trade as Lead Counsel for the above-captioned plaintiff, during a civil trial deciding plaintiff's breach of contract claims against defendants, the Court sua sponte ordered that I be arrested and taken into custody. As instructed by the Court, several armed US Marshalls swiftly marched over to counsel's table where I was seated, had me stand and be handcuffed, at which point I began to panic and told the Court I would leave on my own accord,

allowing my co-counsel, Mr. Harris, to finish the trial without me. I told the Court I couldn't be arrested and taken into custody, because I have a baby at home. The Court still had me arrested and locked away for the remainder of the day. I was not present to hear or defend myself against the Court's degrading personal comments about me. The Court also had me removed from the Service List, forcing me to obtain a copy of the trial transcript, and other post-trial case filings, from other sources.

      10.   Physically restrained in cuffs and flanked by several fully armed male US Marshalls, I was removed from the courtroom without any of my personal belongings, walked down the public hallways of the federal courthouse in plain view of other attorneys, my colleagues, and judicial staff, and then taken in and down the public elevator bank to the Cellblock floor used for criminal defendants. At the Cellblock floor, I was informed I had to go through the booking process.  The US Marshalls led me to sit down on a chair while they questioned me to obtain personal information and then typed in my answers into their computer system. After I was seated, the US Marshalls applied additional physical restraints to my body, restraints that are universally known in criminal law as "hogtie" or "hobble" restraints. I repeatedly asked why physical restraints were being used at all and was informed by the US Marshalls that they were following Judge Wilson's orders and that this was standard practice to protect prisoners from falling and hurting themselves. I was also repeatedly told by the Marshalls to stop crying and do as I was told if I wanted to get back to my family that night and not have to sleepover in the prison cell. Leg irons were applied in addition to the handcuffs, with a waist chain connecting my irons to the handcuffs. Another chain was wrapped around my chest near my collar bone and locked behind the chair I was sitting in, pinning my shoulders and upper body to the back of chair presumably to prevent me from falling forward out of the chair onto my face. I was imprisoned for hours, without access to my physical liberties, without any sense of time, without any indication of what would happen next to me, without any

indication of what she had been arrested for, without any idea how long I would be imprisoned for. The "hogtie" or "hobble" restraints were never removed, even after I was placed inside of a locked prison cell with armed guards sitting outside of the prison cell. The only physical movement available to me was to close my eyes and cry into my face mask. Even when locked in the prison cell, I was chained to a chair in hobble restraints.

11. After being [albeit improperly] arrested, taken into custody and escorted out of the courtroom this way, I asked the Marshalls to tell me the grounds for my arrest. They said, "they didn't know." I said that I was a lawyer and officer of this court and that I must be advised of my rights, the charges against me, and told why handcuffs and restraints were necessary. They just kept answering "we do whatever the judge tells us to do." I kept asking the Marshalls what was happening, and I asked them to give me some clue as to what to expect based on when they have seen this happen to other lawyers. The Marshalls, each of them, told me they had never seen this happen to a lawyer before.

12. At some point in time, two new Marshalls came down to my cell and informed me the Judge was going to talk to me. I was painfully forced to do the humiliating shackled-shuffle back up to his courtroom escorted by these two new Marshalls who told me they were brought in from the superior court across the street to relieve the current Marshalls from duty. I saw that day had turned to night as they led me back up to the tenth floor. I was put in an empty courtroom, still cuffed, and guarded by Marshalls, and told to wait for the judge. The judge ultimately never came out to talk to me. I was eventually led back into the original trial courtroom to gather my purse, at which point I realized that Court had adjourned. The Marshalls told me that I needed to get my purse and immediately leave and that my co-counsel would be able to tell me later, after I left the building, how the day ended.

13. And all the above, because I showed up for my job and advocated for my client. In a breach of contract case. All the above, because I advocated on behalf of my client that the settlement agreement, the breach of which was being determined by this jury, needs to be entered into evidence. That was it. And eventually, the settlement agreement did get into evidence because the jury asked for it. And the judge later in the transcript tried to make a record (without my presence) that he incarcerated me, not for punitive purposes, but because my behavior apparently disrupted the proceedings. My co-counsel, fearing my indefinite incarceration, told the judge about my private life, which Judge Wilson enjoyed learning about, and he patronizingly thanked my co-counsel for explaining why I was such a hysterical person. My co-counsel Mr. Harris is a 75-year-old white man.

14. Likely because it reflects such a departure from ordinary practice, my legal research found no attempt by a court in this Circuit to impose anything close to the unprecedented nature of Court's action's here. Judicial contempt is a potent weapon. Contempt sanctions are valid only if founded on a violation of a clear injunction, in the case of civil contempt, or on proof beyond a reasonable doubt of intent to subvert the court's jurisdiction, in criminal contempt. None of these required elements of a contempt order are present here. Legal research I conducted uncovered no other attorney in known judicial history subjected to such retribution for civil contempt.

15. At no time before or during trial did the court issue an order defining prohibited or required conduct. Despite the absence of a preliminary injunction or other order, the court, acting sua sponte, initiated these contempt proceedings on the ground that my actions were intended to interfere with ongoing litigation. First, a civil contempt sanction may be founded only on clear and convincing evidence that the contemnors violated a definite and specific court order. Here, no order was in place, let alone a definite and specific court. Second, the court imposed punitive,

criminal sanctions for completed conduct without providing the procedural protections for criminal contempt.

16.   There was no court order here restricting the conduct of attorneys prior to or during trial. Without such an order, the civil contempt finding cannot stand. Likely because it reflects such a departure from ordinary practice, my legal research found no attempt by a court in this Circuit to impose anything close to the unprecedented nature of court's action's here. The Court was out to get me from the beginning of the trial, as evidenced by the trial transcript. If the Court felt that I was talking over the Court, or not respecting the Court, the Court could have issued monetary sanctions. But shackling me and locking me in a basement prison cell is just outrageous.

17.   I already served my unlawful sentence of "coercive confinement" and the court's instant order to show cause, plus its recent ordering of a new trial, are solely meant to retaliate against me and instill fear into me and all other lawyers that come before the court next.

January 10, 2022                               /s/Marina L. Lang
                                               Marina L. Lang