# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   ORDER FINDING MARINA LANG IN CIVIL CONTEMPT

The Court previously issued an order to show cause why Ms. Marina Lang should not be found in civil contempt for her conduct in the Phase I trial of this case on November 17, 2021. Order to Show Cause, ECF No. 205 ("OSC"). Having considered Ms. Lang's response, Resp. to OSC, ECF No. 209, the Court hereby finds Ms. Lang in contempt and imposes sanctions of $3,510, payable to Defendants, to compensate Defendants for the costs of the new trial which has been necessitated by Ms. Lang's conduct at the original trial on November 17.

## I.   Background[1]
### a.   The Court's Pre-Trial Orders

This case concerns Defendants' alleged infringement of Plaintiff's trademarks by selling counterfeit cosmetic products. The parties had previously executed a settlement agreement, in which Plaintiff released its claims of infringement. However, Plaintiff brought this suit, alleging that Defendants breached their obligations under the settlement agreement. Plaintiff also brought its original infringement claims, contending that, by virtue of Defendants' breach, it was no longer bound by the release.

This Court had previously ordered the bifurcation of issues in this case, with the first phase to focus solely on Plaintiff's breach of contract claim. ECF No. 74. Unless Plaintiff successfully showed a

---

[1] The Court has previously provided multiple detailed accounts of the facts relevant here, thus, much of this section is taken from the Court's Order to Show Cause.

| | | : |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

breach of the settlement agreement contract, Plaintiff's other claims related to trademark infringement were released by the agreement and thus were barred.

Trial on Phase I occurred on November 17, 2021. Prior to trial, this Court issued an order carefully laying out the issues for trial. ECF No. 179. The Court determined that this was necessary for three reasons. First, the factual and legal theories had continuously evolved over the course of the litigation, and the Court sought to limit the trial to the currently operative theories, rather than run the risk of a party raising some previously abandoned theory or springing some completely novel theory at trial.

Second, the parties had been involved in a litany of discovery disputes that had taken up much of this Court's time and Magistrate Judge Kewalramani's time in prior hearings. In some instances, the parties seemed unable to agree about even basic facts regarding what discovery had taken place. Thus, the Court sought to keep the trial from devolving into yet another arguing match over discovery, which would only serve to confuse the jury and distract them from the relevant issues. *See* Fed. R. Evid. 401.

Third, the Court sought to preserve the distinction between the two phases of the cases: the first relating to the breach of the settlement agreement and the second relating to the infringement claims. The breach of contract claim presents distinct factual issues, and the Court sought to prevent the jury from being confused, distracted, or prejudiced by evidence or argument related to the underlying infringement claims. *See* Fed. R. Civ. P. 42(b).

Accordingly, the Court's pretrial order strictly limited the issues for trial to the two forms of breach that Plaintiff alleged and the specific, evidence-backed factual theories underlying those two forms of breach. Trial Prep. Order 6-9, ECF No. 179.

**b.  Ms. Lang's Conduct at Trial**

At trial, Ms. Lang engaged in a repeated pattern of disruptive behavior that is almost unparalleled in this Court's long tenure. Rather than catalogue every disruptive or inappropriate incident, the Court will detail only the most serious examples, which fell into four general types of behavior.

Initials of Preparer :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

      First, Ms. Lang repeatedly made reference to the counterfeiting allegations underlying the trademark infringement claims, which were not at issue in the Phase I trial. *See* Trial Tr. 37:16-38:9, 54:9-56:2, 108:5-7. This contravened the Court's pretrial order, which specifically indicated that Plaintiff was not to present evidence or argument regarding the nature or characteristics of a counterfeit product, or the trademarks infringed by a counterfeit product. Trial Prep. Order 8. The Court warned Ms. Lang not to do so, yet she did in both her opening statement and her examination of the only live witness in the case. *Id.* at 37:16-38:9, 54:9-56:2.

      Second, Ms. Lang repeatedly interrupted proceedings throughout the trial. It first began in colloquy outside the jury's presence even before opening statements were made. Trial Tr. 32:25-33:19. It continued into the opening of Plaintiff's evidence, where the Court sought to have several business records introduced in a streamlined manner. *Id.* at 44:21-45:3. At that point, the Court excused the jury and warned Ms. Lang about her interruptions, yet even then, she continued to interject, talking over the Court to insist, "This is my case. This is my client. I'm advocating for them. They're paying me a lot of money for advocating for them." *Id.* at 47:3-48:17. At that point, the Court cited Ms. Lang for contempt and indicated that it would deal with the contempt matter after the trial. *Id.* at 48:18-21.

      However, even the first contempt citation could not stem the tide of interruptions. Ms. Lang again interjected during a later colloquy between the Court and opposing counsel, Mr. Voss. *Id.* at 88:23-89:6. She also interrupted as the Court was attempting to rule on objections during her closing argument. *Id.* at 110:11-111:1. And Ms. Lang even interrupted Mr. Voss's closing argument, speaking under her breath during his argument in a manner that the jury likely heard since Plaintiff's counsel's table was directly in front of the jury box. *Id.* at 115:24-116:12. Thus, despite more than one warning, Ms. Lang continuously interrupted the Court and opposing counsel from the trial's start to its finish.

      Third, and related to her interjections, Ms. Lang frequently continued to argue after the Court had issued rulings. After the Court overruled one of Ms. Lang's objections during Mr. Voss's opening statement, she continued to relitigate the issue, at which point the Court informed her that she should not keep arguing a point once the Court had ruled. *Id.* at 42:18-25. Despite that warning, Ms. Lang did so on multiple other occasions. *Id.* at 78:15-19, 110:11-111:1, 115:24-116:12.

Initials of Preparer           : 

                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Finally, and most significantly, Ms. Lang repeatedly made highly inappropriate comments and prejudicial outbursts. The first such incident occurred during a colloquy on an evidentiary matter outside the presence of the jury. The Court asked Ms. Lang about the origins of the document at issue, which she had submitted in her opposition to the Defendants' summary judgment motion, and Ms. Lang included disdainful comments in her response, "am I being deposed? [. . .] I'm a witness now." *Id.* at 86:23-87:22.

Unfortunately, things only got worse from there, including episodes in front of the jury. After the Court sustained an objection during Ms. Lang's closing argument, and she interrupted to continue arguing the ruling, Ms. Lang raised her voice to the point of yelling. *Id.* at 111:2-112:25. Ms. Lang shouted, "this is my client. They are paying me a lot of money to advocate for them, and you won't even let the jury see the Settlement Agreement. This is outrageous. This is outrageous." *Id.* at 112:8-11. She continued, "I could lose my license if I don't scream from the top of the wall that this Settlement Agreement needs to go into evidence. That's all I want. The Settlement Agreement needs to go into evidence, or I'm going to get disbarred." *Id.* at 112:17-21.[2] At that point, the Court ended Ms. Lang's closing argument as the only way to regain control of the proceeding, and the Court warned Ms. Lang that it was being left with almost no recourse other than more drastic action. *Id.* at 112:22-25.

Mr. Voss then began his closing argument, in which Ms. Lang continued outright yelling in making her objections and shouting "this is error," after the Court overruled her. *Id.* at 114:14-25. The Court again cautioned that the proceedings were getting out of control. *Id.* It was at this point that Ms. Lang began speaking under her breath, within earshot of the jury, during Mr. Voss's closing argument. *Id.* at 116:1-5. The Court raised this point, and Ms. Lang responded in exasperation, "It's so hard being a woman," implying that the Court's actions to maintain order were motivated by sexism. *Id.* at 116:6-9.

With order in the courtroom having completely broken down, the Court had the jury excused. The Court indicated that it was at a breaking point, with no other way to regain control, when Ms. Lang interrupted by shouting, "No, I am at the breaking point. I'm at the breaking point." *Id.* at 116:10-21. In

---

[2] As the Court noted in its order granting a new trial, while the Court did not permit the *full* Settlement Agreement to go into evidence, as Ms. Lang desired, because it included some prejudicial material that contravened the trial preparation order, the Court did enter the relevant *portions* of the agreement into evidence, namely Schedules 1 and 2, which directly pertained to the first breach claimed by Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|----------|------------------------|------|------------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

the Court's view, it was clear that if Ms. Lang continued to participate, the trial could not be concluded in an orderly fashion, and the Court held Ms. Lang in contempt and ordered her removed from the courtroom. *Id.* at 116:22-117:20. Ms. Lang's co-counsel, Mr. Harris, had to finish the trial on behalf of Plaintiff. *Id.* at 117:24-118:8.

The jury returned, closing arguments concluded shortly thereafter, and the case was submitted to the jury. While the jury was deliberating, the Court indicated for the record that it had cited Ms. Lang for contempt, that the Court ordered that she be removed from the building and take no further part in the trial, and that the Court would issue this order to show cause why she should not be found in civil contempt. *Id.* at 143:11-145:8.

### c.  Post-Trial Proceedings

The following day, Mr. Harris and Mr. Voss appeared for a hearing before the Court in which Mr. Voss made motions on behalf of Defendants for judgment as a matter of law or for a new trial. Defendants' new trial motion argued that Ms. Lang's conduct had potentially influenced the jury such as to deny the Defendants a right to a fair trial. *See* Hr'g Tr. 7:18-13:14, Nov. 18, 2021. Plaintiff opposed the motions, ECF No. 197, however, the Court ultimately concluded that a new trial was warranted, as explained in its order granting a new trial. ECF No. 203.

The Court then issued an order to show cause as to why Ms. Lang should not be held in civil contempt and ordered to pay the costs associated with a new trial to compensate for the costs of her contumacious conduct, *see* OSC, to which Ms. Lang submitted her response. Resp. to OSC.

## II.  Legal Background

It is well-established that "'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

The contempt power is necessary to protect a court's ability to prevent the disruption of its proceedings and to enable it to enforce its judgments and orders. *Young v. United States*, 481 U.S. 787, 798 (1987). "The necessity justification for the contempt authority is at its pinnacle, of course, where

Initials of Preparer _____ : _____

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

contumacious conduct threatens a court's immediate ability to conduct its proceedings, such as where a witness refuses to testify, or a party disrupts the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994).

The distinction between civil and criminal contempt looks to the "character and purpose" of the sanction imposed. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005). Criminal contempt is punitive and is imposed to "vindicate the authority of the court." *Gompers*, 221 U.S. at 441. In contrast, civil contempt has a remedial purpose. *Id.* The character of a contempt sanction is not determined solely by the stated purposed proffered by the court, but rather by looking to the "character of the relief itself." *Bagwell*, 512 U.S. at 828 (internal quotations and citations omitted).

In the context of a monetary sanction, a fine constitutes a criminal contempt sanction when lacks a compensatory purpose and is unconditional (i.e., without any opportunity for the contemnor to purge the contempt and thus avoid or reduce the fine). *Id.* at 829. On the other hand, a fine constitutes a civil sanction when it is remedial, coercing the contemnor into compliance with the court's order, or when is compensatory, imposing the costs of the contumacious conduct on the contemnor. *Id.*

Finally, the level of due process required also varies with the nature of the contempt and character of the sanction. Ordinarily, a "direct" contempt – committed in the presence of the court itself – has been subject to summary adjudication to permit the court to immediately restore order, even where the sanction is criminal in nature. *Bagwell*, 512 U.S. at 832; *Taylor v. Hayes*, 418 U.S. 488, 497 (1974).

However, "[i]f a court delays punishing a direct contempt until the completion of trial, [] due process requires that the contemnor's rights to notice and a hearing be respected." *Bagwell*, 512 U.S. at 832. When a court is contemplating only civil contempt sanctions, not criminal ones, it need only provide notice of the specific charges and an opportunity to be heard; neither a "full-scale trial" nor additional process are required. *Taylor*, 418 U.S. at 498-99; *Lasar*, 399 F.3d at 1112-13.

A finding of civil contempt must be supported by clear and convincing evidence. *In re Dyer*, 32 F.3d 1178, 1190-91 (9th Cir. 2003). However, unlike criminal contempt, civil contempt contains no

Initials of Preparer                                :

                                             PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|----------|----------------------|------|------------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

prerequisite that court must find the contemnor to have acted willfully. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

### III.    Analysis
#### a.  No Further Hearing is Warranted

As previously noted, a "direct" contempt – committed in the presence of the court itself – may be summarily adjudicated, where the court immediately convicts and imposes sentence as the contempt occurs without any further notice or hearing. *See Bagwell*, 512 U.S. at 832; *Taylor*, 418 U.S. at 497; *United States v. Cohen*, 510 F.3d 1114, 1120-21 (9th Cir. 2007). However, "[i]f a court delays punishing a direct contempt until the completion of trial, [] due process requires that the contemnor's rights to notice and a hearing be respected." *Bagwell*, 512 U.S. at 832; *see also Taylor*, 418 U.S. at 498. Even where the contumacious conduct occurs "before the judge's own eyes," with an opportunity to be heard, "the contemnor might at least urge, for example, that the behavior at issue was not contempt but the acceptable conduct of an attorney representing his client; or, he might present matters in mitigation or otherwise attempt to make amends with the court." *Taylor*, 418 U.S. at 499.

Before imposing civil contempt sanctions, a full-scale trial is not required; civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827. For civil contempt, "a finding of contempt [may be] reached without a hearing and based solely upon briefing by the parties." *United States v. Ayres*, 166 F.3d 991, 996 (9th Cir. 1999) (discussing *Thomas, Head and Greisen Empl. Tr. v. Buster*, 95 F.3d 1449 (9th Cir.1996), cert. denied, 520 U.S. 1116 (1997)).

Here, the Court's order to show cause specifically enumerated Ms. Lang's conduct at trial that violated the Court's orders and formed the basis for a finding of contempt. OSC 4-6. Further, it specifically identified the potential sanctions under consideration. *Id.* at 7-8. And it provided Ms. Lang with an opportunity to be heard, which Ms. Lang has taken advantage of by filing a response. *See generally* Resp. to OSC. No further process, such as an oral or evidentiary hearing, is required here, nor warranted, especially given that nothing in Ms. Lang's response disputes any of the material facts, but

Initials of Preparer                :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

rather argues why a contempt finding is inappropriate. *See generally id.*; *see also Ayres*, 166 F.3d at 995-96; *Little v. Kern Cnty. Superior Court*, 294 F.3d 1075, 1080 (9th Cir. 2002).

### b. Recusal is Not Warranted

The first point raised by Ms. Lang in her response is that recusal is required because of bias or potential bias from the undersigned. Resp. to OSC 1.

It is true that the Supreme Court has indicated that judges should recuse themselves from adjudicating contempt matters when the contumacious conduct may have "left personal stings" or resulted in their becoming "personally embroiled" with a lawyer such that the judge cannot adjudicate the matter fairly. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971) (quoting *Offutt v. United States*, 348 U.S. 11, 17 (1954); *United States v. Galin*, 222 F.3d 1123, 1128 (9th Cir. 2000).

However, the Court concludes that the instant matter does not rise to the level where recusal or disqualification is necessary. First, most of the contumacious conduct here involves violations of the Court's orders – including the pretrial order, and the Courts orders during trial that Ms. Lang not interrupt the Court and continue arguing its rulings. As the Supreme Court has explained, "we are unwilling to bottom a constitutional rule of disqualification solely upon such disobedience to court orders and criticism of its rulings during the course of a trial." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). Commentary may be "disruptive, recalcitrant and disagreeable," but nonetheless "hardly an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification." *Id.* Even where a court "los[es] patience" with an attorney for "flaunting the court's orders" and rebukes or admonishes the attorney, that does not amount to becoming so "personally embroiled" that disqualification is necessary. *See Galin*, 222 F.3d at 1128.

The only conduct that even potentially raises the sort of personal affront that could warrant recusal or disqualification was Ms. Lang's remark, "It's so hard being a woman," after the Court rebuked her for interrupting Defendants' closing argument. Trial Tr. at 116:6-9. This remark is open to multiple interpretations. It could be taken to suggest that the Court was sexist, however, even assuming that was the intended implication, this single comment is still far from the level of personal insult that has warranted disqualification in other cases.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

For example, in *Mayberry*, the leading case on this subject, the Supreme Court held that due process required the disqualification of a judge from conducting contempt proceedings over a pro se defendant whose relentless stream of vitriol at trial included calling the judge a "stumbling dog," a "fool," a "dirty tyrannical old dog," and a "dirty sonofabitch," and telling him to "go to hell" and "keep your mouth shut." 400 U.S. at 465-66. The Court held that disqualification was necessary since "[n]o one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication." *Id.* at 465.

Ms. Lang's isolated suggestion of sexism is nowhere near the pervasive pattern of "highly personal aspersions, even 'fighting words'" that warranted disqualification in *Mayberry*. Rather, this case is much closer to *Ungar*, where the contemnor objected to the court's orders and conduct of the trial, and in a "final outburst," personally accused the judge of coercing, intimidating, and badgering him. 376 U.S. at 580, 583-584. Yet, the Supreme Court held that even that "intemperate" comment did not create such a potential for bias as to necessitate disqualification. *Id.* at 584.[3] Further, the risk of bias is mitigated where, rather than proceeding summarily to deal with trial contempts in the heat of the moment, the matter is reserved for later proceedings upon notice and opportunity to be heard, as the Court did here. *See Taylor*, 418 U.S. at 503 (discussing *Ungar*, 376 U.S. at 588.).

### c. Ms. Lang's Removal from the Courtroom was Not a Contempt Sanction

Ms. Lang devotes much of her response to arguing that her removal from the courtroom was unjustified and that it was impermissible as a civil contempt sanction. *See* Resp. to OSC 3-4, 8-11, 23-

---

[3] The Court recognizes that disqualification may also be required where, even though the contumacious conduct did not involve any "personal attack," it nonetheless caused the judge to become actually "embroiled in a running controversy" with an attorney. *Taylor*, 418 U.S. at 501. Thus, in *Taylor*, disqualification was required because the Supreme Court concluded that the judge had in fact become "personally involved" with the contemptuous attorney, as evident from, among other things, commenting to him, "as far as a lawyer is concerned, you're not," denying him any opportunity to reply to the contempt charges, threatening to gag him, disbarring him from further appearance in the court, and sentencing him to almost four and one-half years in jail. *Id.* at 502-03. In this Court's view, compared to the extreme response in *Taylor*, the record here – where the Court has taken pains to avoid more punitive measures, such as criminal contempt, *see* Trial Tr. 143:22-145:8 – speaks for itself.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

24. However, her removal was not a contempt sanction at all – whether civil or criminal – rather it was an exercise of the Court's authority to maintain order, necessary as the only way to keep Defendants' closing argument from being further disrupted.

Ms. Lang correctly notes that when individuals are incarcerated under civil contempt authority, there must be some way by which they can "purge" the contempt and end their incarceration. *See Bagwell*, 512 U.S. at 829. Thus, according to Ms. Lang, she was incarcerated and had no such purge condition, so her detention cannot be "recharacterized" as civil contempt. *See* Resp. to OSC at 3.

For one, the Court is not attempting to "recharacterize" its removal of Ms. Lang as civil contempt. Ms. Lang fails to note that civil contempt orders may be *compensatory* – forcing the contemnor to remediate the costs of their contumacious conduct. *See Bagwell*, 512 U.S. at 829. Thus, the Court's order to show cause specifically noted that the Court was considering finding Ms. Lang in civil contempt for her disruptive conduct and sanctioning her by imposing the costs of the new trial necessitated by her conduct – not by "recharacterizing" the Court's previous actions. OSC 7.

Further, this argument fails to recognize that Ms. Lang's removal from the courtroom was *not* a contempt sanction at all. To be sure, the Court *could* have summarily adjudicated a criminal contempt charge and imposed a period of incarceration on Ms. Lang. *See Mayberry*, 400 U.S. at 463 (explaining that trial judge could have "instantly acted, holding petitioner in contempt" to restore order in courtroom); *Cohen*, 510 F.3d at 1121-22 (noting that district court could summarily adjudicate and impose period of incarceration for counsel's contempts at trial); Fed. R. Crim. P. 42(b) ("the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies.").

But, as this Court has frequently noted, it sought to *avoid* imposing a punitive measure under the Court's criminal contempt authority. *See* Trial Tr. 144:8-145:5. It was for this reason that the Court did not order to her be booked and processed into custody, as it would have if it had summarily punished Ms. Lang for criminal contempt. *See id.* at 144:15-17.[4]

---

[4] In this Court's memory, it has only had to resort to criminal contempt due to a lawyer's misconduct once, over twenty years ago, which was reviewed and affirmed by the Ninth Circuit in *United States v. Galin*, 222 F.3d 1123 (9th Cir. 2000).

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Rather, the Court ordered Ms. Lang removed to restore order in the courtroom and permit defense counsel to conduct his closing argument without her escalating stream of interruptions. "[T]he trial judge has the responsibility for maintaining order" during a trial. *Kulas v. Flores*, 255 F.3d 780, 786 (9th Cir. 2001). To meet that responsibility, it also has the authority to remove disruptive participants from the courtroom when necessary. *See id.* at 786-87. Indeed, the Supreme Court has squarely held that even a criminal defendant – who has a constitutional right to be present at their own trial – may be removed from the courtroom when their disruptive behavior derails proceedings. *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970).[5] In *Kulas*, the Ninth Circuit similarly extended the logic of *Allen* to civil cases in determining "the rights of a disorderly plaintiff or plaintiff's attorney to remain in the courtroom." 255 F.3d at 786. There, the court affirmed the trial judge's decision to remove a pro se plaintiff who persistently disrupted the defense counsel's cross-examination of a witness because a civil plaintiff's "privilege of access to the courts is contingent on observing basic decorum and respect for the court." *Id.* at 787 (cleaned up).[6]

By the same token here, Ms. Lang's privilege of access to the courtroom was also contingent on observing basic decorum. *See id.* The Court had repeatedly warned Ms. Lang about her disorderly conduct, yet during defense counsel's closing argument, she continued to interrupt, shouting her disagreement with the Court's rulings and then simply talking through Mr. Voss's argument. *See* Trial Tr. 114:14-116:12. The Court excused the jury, attempting one last colloquy to try and restore decorum, but even then, Ms. Lang immediately began shouting and interrupting the Court. *See id.* at 116:10-116:21. At that point, the Court concluded that as long as Ms. Lang was present, "the trial could not proceed fairly and efficiently." *See Kulas*, 255 F.3d at 787.

Accordingly, the Court ordered that she be removed. Trial Tr. 116:22-117:8. Court security officers detained Ms. Lang in a holding area so that Mr. Voss could conclude his closing argument.

---

[5] Importantly, the Court in *Allen* explicitly distinguished removing a defendant from the courtroom as an *alternative* to citing them for contempt. *Allen*, 397 U.S. at 343-44. The Court noted that it laid out such alternative measures to vest trial courts with "sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.* at 343.

[6] And, like in *Allen*, the Ninth Circuit specifically characterized removing the plaintiff as an alternative "option" to holding him in contempt. *Kulas*, 255 F.3d at 787.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|----------|------------------------|------|------------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Once the jury retired to deliberate, the Court then returned to note for the record that, the trial having concluded, there was no further need to hold Ms. Lang, and it was ordering that she be escorted out of the building and released – roughly an hour and fifteen minutes after she was removed from the courtroom. *Id.* at 143:11-145:8.

Thus, Ms. Lang's brief removal and detention was neither unjustified nor in violation of her due process rights, but rather was pursuant to the Court's well-established authority to remove disruptive participants and maintain order in the courtroom. *See Allen*, 397 U.S. at 343-44; *Kulas*, 255 F.3d at 786-87. Nor was Ms. Lang's removal an impermissible civil contempt sanction, as she suggests; it was not a contempt sanction at all.[7] Indeed, the fact that the Court opted to simply temporarily remove Ms. Lang, rather than to summarily adjudicate and sentence a criminal contempt charge – which would have been well-within the Court's authority – merely reflects the Court's desire to avoid that punitive measure. *See* Trial Tr. 144:15-145:8; *see also Allen*, 397 U.S. at 343-44 (distinguishing between options of contempt charge and removal of disruptive litigant); *Kulas*, 255 F.3d at 787 (same).

In sum, the Court exercised its authority to remove Ms. Lang for her disruption; nothing about that decision precludes a later civil contempt proceeding to impose the costs of that disruption on Ms. Lang.

### d.  Ms. Lang's Conduct Constituted Contempt

As the Court noted after having Ms. Lang removed from the courtroom, her comportment at trial encompassed a level of defiance and disruption that is almost unprecedented in this Court's tenure. *Id.* at 117:24-118:2. The collection of conduct detailed above is made all the more remarkable by the fact that it all occurred within a single day – indeed, within a mere four and half hours that court was in session between the jury being empaneled and Ms. Lang being removed.[8]

---

[7] The Court acknowledges that it remarked, "You are in contempt," to Ms. Lang before ordering her removed. However, this was not an actual summary contempt adjudication; the Court did not pronounce a sentence, nor complete a summary contempt certification, as required under Fed. R. Crim. P. 42(b). *See Cohen*, 510 F.3d at 1119-21 (noting that summary contempt requires final adjudication, imposition of sentence, and filing of contempt certificate).

[8] Indeed, even Ms. Lang's co-counsel, Mr. Harris, acknowledged the disruptiveness of her conduct in a later colloquy with the Court, noting, "I can't excuse her outbursts" while providing some additional background information for the Court to

Initials of Preparer

:

PMC

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Despite multiple warnings, Ms. Lang continued to defy the Court's orders and disrupt the trial to the point that the proceedings completely broke down. In the Court's view, this behavior is more than sufficient to support a finding of civil contempt by clear and convincing evidence. *See Young*, 481 U.S. at 798; *Bagwell*, 512 U.S. at 832; *In re Dyer*, 32 F.3d at 1190-91.

Ms. Lang's primary argument that her conduct did not constitute contempt is that "[n]o court order here restricted the conduct of the attorneys before or during trial." Resp. to OSC 6. Indeed, nothing could be further from the truth – each type of contemptuous conduct identified in the Court's order to show cause ran afoul of specific orders from the Court.

First, Ms. Lang repeatedly referenced the underlying counterfeiting allegations, both in her opening statement and in questioning the only live witness in the case. *See* Trial Tr. 37:16-38:9, 54:9-56:2, 108:5-7. This violated the Court's pretrial order, which explicated stated that:

> Plaintiff may not present evidence or argument about the nature of its Revitalash products compared to counterfeit products, characteristics of a counterfeit Revitalash product, or the specific Athena trademarks infringed by a counterfeit product. While these may be relevant to matters in a Phase II trial, concerning Plaintiff's infringement-related claims, they are not relevant to this Phase I trial that focuses solely on the breach of contract claim.

Trial Prep. Order 8.

Second, Ms. Lang repeatedly interrupted the Court and continued to argue the Court's rulings, despite an explicit instruction not to do so. In a colloquy, the Court cautioned, "You're interrupting me again. And I'm just putting you on notice that if you continue to speak after I make a ruling on an objection, if you respond to what counsel says without permission and if you continue in that vein, it becomes almost impossible for me to control the proceedings." Trial Tr. 47:16-21. However, Ms. Lang continued to interrupt the Court – indeed, doing so just moments later. *Id.* at 48:6-9. Ms. Lang

---

consider. Trial Tr. 146:13-147:7.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

interrupted the Court and continued to argue after the Court had ruled on numerous occasions after this instruction. *See id.* at 48:12-18, 78:15-19, 88:23-89:6, 110:11-111:1, 115:24-116:12, 116:18-21.

And third, as Ms. Lang's disruptive conduct escalated during closing arguments, the Court cautioned to maintain a basic standard of decorum by not raising her voice to the point of shouting. *See id.* at 111:4-5. Yet, in violation of this instruction, she continued yelling her disagreements with the Court, even insisting that she needed to "scream from the top of the wall that this Settlement Agreement needs to go into evidence." *Id.* at 111:13-112:25, 114:14-25, 116:20-117:20. Attorneys should scarcely need to be reminded to maintain a minimum level of civility, but even having been so warned, Ms. Lang continued to disrupt proceedings to the point that order in the courtroom simply broke down.

At bottom, Ms. Lang clearly disagreed with the Court's rulings and conduct – as she has the right to do. However, she did not have license to vent those disagreements in whatever intemperate manner she desired, without any regard for the decorum expected in the courtroom. "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *see also Galin*, 222 F.3d at 1127. This principle is "especially applicable to orders issued during trial," because "the alternative would be to frustrate and disrupt the progress of the trial." *Maness*, 419 U.S. at 459. Thus, while "[c]ounsel may object to a ruling, [. . .] once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders" without "engag[ing] the court in extended discussion once a ruling is made." *Id.*

Ms. Lang's conduct fell short of this standard, violated the Court's orders, and, for the reasons explained in the Court's prior order, necessitated a new trial. That conduct is more than sufficient to warrant a finding of civil contempt.

### e.  Paying Defendant's Attorney's Fees Is an Appropriate Sanction

Civil contempt has a remedial purpose. *Gompers*, 221 U.S. at 441. Thus, a civil contempt sanction must either be *conditional*, and coerce compliance by including some manner by which the contemnor can avoid further sanction, or *compensatory*, and impose the costs of the contumacious conduct on the contemnor. *Bagwell*, 512 U.S. at 829.

Initials of Preparer                 :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

In the context of a monetary sanction, a fine constitutes a criminal contempt sanction when lacks a compensatory purpose and is unconditional (i.e., without any opportunity for the contemnor to purge the contempt and thus avoid or reduce the fine). *Id.* at 829. On the other hand, a fine constitutes a civil sanction when it is remedial, coercing the contemnor into compliance with the court's order, or when is compensatory, imposing the costs of the contumacious conduct on the contemnor. *Id.* Accordingly, a monetary penalty is only permissible as a civil contempt sanction when it is tied to the costs incurred because of the contumacious conduct. *See id.*

This Court granted Defendants' motion for a new trial based on Ms. Lang's contumacious behavior during the first trial. New Trial Order 6-8. Thus, the Court noted in its order to show cause that it was contemplating a sanction of the costs of the original November 17th trial – a proceeding which was rendered futile. OSC 7.

Ms. Lang's response to the order to show cause protested that "[l]egal research uncovered no other attorney in known judicial history subjected to such retribution for civil contempt." Resp. to OSC 4. Evidently, that search of known judicial history did not include recent cases from the Ninth Circuit. In *Lasar* – which this Court cited in its order to show cause – the district court sanctioned an attorney for misconduct that resulted in a mistrial by holding him liable for the opposing party's attorney's fees and costs for the trial and the court's costs for empaneling the jury for the trial. 399 F.3d at 1110-1112. The Ninth Circuit noted that the compensatory nature of such sanctions made them valid civil contempt sanctions. *Id.* at 1112.[9] By the same token, similar sanctions here – which this Court expressly noted it was contemplating in its order to show cause – would compensate for Ms. Lang's misconduct that necessitated a new trial and made the original trial a wasted exercise. *See id.*

For that reason, the Court ordered Defendants to submit the billing records from their counsel, Mr. Voss, associated with the original November 17th trial, which Defendants have filed. OSC 8; ECF No. 210.

On November 17th, Defendants' trial counsel, Mr. Voss, billed 12.5 hours. Voss Decl. ¶ 4, ECF No. 210. Mr. Voss avers that his hourly billing rate is $650 per hour. *Id.* ¶ 5. However, this 12.5-hour

---

[9] *Lasar* illustrates that the same type of sanction can also be imposed under a court's inherent authority. 399 F.3d at 1110-11.

Initials of Preparer    :
                        PMC

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | January 26, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

billing entry includes time beyond the actual trial proceedings themselves – trial began just after 10:00am and was adjourned at 6:10pm.

Since the trial is what must be redone due to Ms. Lang's misconduct, the Court concludes that she should only be liable for the hours billed while Mr. Voss was actually in trial. In this Court's view, this amounts to 5.4 hours, derived from the roughly 8.1 hours between when court was convened and was adjourned but excluding the 1-hour lunch break and the roughly 1.7 hours when court was not in session while the jury deliberated.[10] Since the trial was rendered a wasted exercise by Ms. Lang's misconduct, which has necessitated a new trial, paying for the fees Defendants' incurred during this time will compensate them for the costs of her contumacious conduct. *See Lasar*, 399 F.3d at 1110-1112.

Accordingly, Ms. Lang shall be liable for $3,510 of Defendant's attorneys' fees – based on 5.4 hours of Mr. Voss's time at $650 per hour. The Court declines to impose a sanction based on the costs of empaneling a jury for the futile first trial.

This sanction is the minimum necessary to compensate Defendants for the costs that resulted from Ms. Lang's egregious conduct. As it noted at trial, this Court has scarcely seen such conduct in its long tenure presiding over trials, *see* Trial Tr. 117:24-118:2 – the Court can only hope that it rarely sees such conduct again in the future.

### IV.    Conclusion

For the foregoing reasons, the Court concludes that Ms. Lang's pervasive pattern of disruptive and inappropriate conduct at trial constituted civil contempt. As a sanction, Ms. Lang shall be liable for the $3,510 in fees incurred by Defendants' due to her misconduct.

**IT IS SO ORDERED.**

---

[10] The Court recognizes that Mr. Voss likely remained in the courtroom during the recesses in which the jury was deliberating. However, with the case in the jury's hands, Mr. Voss could have worked on other matters if he wished. Thus, in an effort to strictly tailor the sanction here to the expenses caused by Ms. Lang's trial misconduct, the Court errs on the side of caution and excludes this time.

Initials of Preparer                    :

PMC