Michael D. Harris, State Bar No. 59470
mharris@socalip.com
Brian Tamsut, State Bar No. 322780
btamsut@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Dan Lawton, State Bar No. 127342
dlawton@klinedinstlaw.com
Klinedinst
777 South Figueroa St., Suite 4000
Los Angeles, CA 90017
Phone: (619) 239-8131 • Fax: (619) 238-8707

Edward D. Chapin, State Bar No. 53287
echapin@sanfordheisler.com
Sanford Heisler Sharp, LLP
2550 Fifth Avenue, 11th Floor

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Athena Cosmetics, Inc.,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>AMN Distribution Inc., et al,<br><br>　　　Defendants. | 2:20-cv-05526-SVW-SHK<br><br>Memorandum of Points and Authorities in Support of Plaintiff Athena's Notice of Motion and Motion for Summary Judgment<br><br>Date: June 27, 2022<br>Time: 1:30 p.m.<br>Judge Stephen V. Wilson |

## TABLE OF CONTENTS

Page

A. Introduction ................................................................................................... 1

B. Claims in the First Amended Complaint on which Athena bases this motion ............................................................................................................. 3

C. Facts ............................................................................................................... 3

　　1. Athena's business. ................................................................................ 3

　　2. Athena's registered trademarks ........................................................... 3

Plaintiff Athena's Memorandum of
Points and Authorities

1

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

3.  Defendants sold Athena counterfeits which Christina Felix purchased. ................................................................4

4.  Athena charges defendants with counterfeiting...............................5

5.  The Settlement Agreement ...............................................................5

    a.   Schedules 1 and 2............................................................5

    b.   Agreement not to sell, market, advertise, promote, or display products with Athena's trademarks. ...................6

    c.   Miscellaneous provisions ................................................6

6.  Both defendants are liable for breaches of the Settlement Agreement.....................................................................................6

7.  Mr. Newman also is liable for defendants' counterfeiting because he is AMN Distribution's "guiding spirit." ...................................6

8.  Defendants Sales of Counterfeits and Athena's Action to Stop the Counterfeits...................................................................................7

D.  Argument ................................................................................................8

1.  Summary Judgment Standards. ........................................................8

2.  Defendants' Rule 26 initial disclosures, AMN Distribution's improper objections to written discovery, its failure to answer interrogatories and produce documents, and Mr. Newman refusal to attend properly noticed depositions prevents defendants from presenting contrary evidence. .............................................................9

3.  Defendants breached their contract with Athena...........................11

    a.   The Settlement Agreement is a binding contract....................11

    b.   Athena performed its contractual duties. ..............................11

    c.   Defendants breached the agreement by providing incomplete and inaccurate information in Schedules 1 and 2..........................11

    d.   Schedules 1 and 2 are inaccurate because they claim defendants sold 60% more Athena-branded products than they bought. .......13

Plaintiff Athena's Memorandum of
Points and Authorities

2

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

e.   Defendants used fictitious names to hide sales after the Settlement Agreement's effective date. .......................................................14

f.   Defendants continued to advertise Athena-branded products on Groupon after the agreements' effective date. ........................................15

g.   Defendants' breach damaged Athena because defendants provided no accurate information of defendants' customers and suppliers for Athena to pursue, and defendants' continued sales of counterfeits damaged Athena's goodwill and caused lost sales. ..............................................15

h.   Defendants' failure to produce requested documents, answer interrogatories, produce Moishe Newman for his deposition and limitations on their Rule 26(a) initial disclosure prevents any attempt to introduce opposing evidence. ..............................................17

4.   Defendants sold counterfeit Athena goods. .....................................17

a.   Four sources, (1) Christina Felix's declaration showing her "secret shopper" purchases, (2) Schedule 2, showing defendants sales, (3) defendants' low price and (4) defendants discovery refusals, confirm defendants sold Athena counterfeits. ......................................18

5.   Remedies. ............................................................................20

a.   Defendants are potentially liable for statutory damages up to $2 million for each of the nine Athena trademarks they counterfeited. ...................20

b.   Defendants are liable for treble damages for its at least 4,447 Athena counterfeits it sold. ..................................................................21

c.   Defendants are also liable for attorney fees under the Lanham Act and under a clause of the Settlement Agreement. ........................................24

6.   Athena is entitled to a permanent injunction against infringement and counterfeiting. ......................................................................24

E.   Conclusion ..................................................................................25

Plaintiff Athena's Memorandum of
Points and Authorities

3

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 8

*Asus Comput. Int'l v. Round Rock Research, LLC,* No. 12-cv-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)  ........................................... 17

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)  .................................... 23

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir. 2000) ......................................................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................... 8

*Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998)  ........................ 23

*Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) ............... 7

*Davis v. Metro Prods., Inc.*, 885 F.2d 515, n. 10 (9th Cir. 1989)  ............................ 7

*Defendants in Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966 (2d Cir. 1985) ....................................................................................... 22

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................. 8

*Estridge v. Target Corp.*, No. 11-CV-61490, 2012 WL 527051 (S.D. Fla. Feb. 16, 2012) ........................................................................................ 10

*Fay Avenue Prosps., LLC v. Travelers Prop. Casualty Co. of Am.*, No. 11-CV-2389-GPC, 2014 WL 2965316 (S.D. Cal. Jul. 1, 2014) ................................. 9

*Fox v. Vice*, 563 U.S. 826 (2011)  ........................................................................... 22

*Glaukos Corp. v. Ivantis, Inc.*, No. 18-SACV-620 JVS, 2020 WL 5914552 (C.D. Cal. July 30, 2020) ........................................................ 13

*Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175 (9th Cir. 2008) ..................... 10

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ..................................... 24-25

*Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966 (9th Cir. 2007)  ............... 17, 18

*Johnson v. Nationstar Mortg., LLC*, 840 Fed. App'x. 976 (9th Cir. 2021)  ............. 11

*Keds Corp. v. Goldstreet Holdings Inc.*, 92-2950 SVW (KX), 1992 WL 456626 (C.D. Cal. Aug. 14, 1992), (*aff'd w/o opinion*, 19 F.3d 27 (9th Cir. 1994) ........................................................................................... 19

*Levi Strauss & Co. v. Shilon*, 121 F.3d 1309 (9th Cir. 1997) ................................... 24

*Louis Vuitton S.A. v. Lee*, 875 F.2d 584 (7th Cir. 1989) ........................................ 19

*Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985)

*Mead Johnson & Co. v. Baby's Formula Serv.*, 402 F.2d 19 (5th Cir. 1968) ........................................................................................................ 7

*Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162 (N.D. Ohio 1964) ...................................... 9

*Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157 (C.D. Cal. 2017) ........................................................................................................ 23

*Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 250 P.3d 1115, 124 Cal. Rptr. 3d 2562 (2011) ...................................................................... 11

*Omohundro v. United States*, 300 F.3d 1065 (9th Cir. 2002) ...................... 13, 14, 15

*Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119 (C.D. Cal. 2007) .................. 16

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966) ...................................................................... 19

*Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957–65 (N.D. Cal. 2008) ........................................................................................ 16

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) ......................... 23

*Sprint Communications Co. v. Comcast Cable Comm., LLC,* No. 11-CV-2684-JWL, 2014 WL 545544 (D. Kan. Feb. 11, 2014) ................................. 9

*Tolan v. Cotton*, 572 U.S. 650 (2014) ...................................................................... 8

**Other Authorities**

Wright, Miller & Marcus, 8B Fed. Prac. & Proc. Civ. § 2173 (3d. Ed.) .............. 9-10

**Statutes**

15 U.S.C. § 1065 .................................................................................................... 4, 6

15 U.S.C. § 1114 ................................................................................................ 21, 22

15 U.S.C. § 1116 ............................................................................................ 21, 22, 24

15 U.S.C. § 1117 ........................................................................ 3, 8, 16, 20, 23, 24

15 U.S.C. § 1127 .................................................................................................... 17

Plaintiff Athena's Memorandum of
Points and Authorities                    5          Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

Cal. Civ. Code § 3289 ...................................................................... 23

**Rules**

Fed. R. Civ. P. 26 ..................................................... 1, 9, 10, 17

Fed. R. Civ. P. 30 ..................................................... 10, 11

Fed. R. Civ. P. 37 ..................................................... 1, 10

Fed. R. Civ. P. 56 ..................................................... 8, 24

Plaintiff Athena's Memorandum of
Points and Authorities
6
Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

**MEMORANDUM OF POINTS AND AUTHORITIES**

## A.   INTRODUCTION

Counterfeiting, the intentional, calculated producing and selling a product with a sham trademark that is a reproduction of the genuine trademark, 4 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:10 (5th ed. 2021), is big business. Defendants AMN Distribution, Inc.[1] and its CEO, defendant Moishe Newman, are in the business.

Defendants' failures to (1) provide evidence in their FED. R. CIV. P. 26(a)(3) initial disclosures, (2) answer interrogatories, (3) produce documents, and (4) attend properly noticed depositions, blocks any attempt to introduce opposing evidence. FED. R. CIV. P. 37(c) and (d). This motion and its supporting evidence, however, demonstrate summary judgment for Athena is proper even if defendants could introduce evidence.

**Breach of Contract**: After Athena threatened to sue defendants for counterfeiting, the parties settled in April 2020 ("Settlement Agreement"). Athena agreed to release defendants' liability for past infringements *conditioned* on defendants performing certain acts. Defendants promised: (1) they would never again market or sell any Athena-brand product, (2) they would supply two schedules, one with the full and complete contact information of all their suppliers and the other with the full and complete contact information of all customers of Athena-brand goods, and (3) the schedules had to state accurately how many Athena-brand units defendant bought from each supplier and how many units they sold to each customer. AMN Distribution and Mr. Newman also jointly warranted the schedules were accurate.

Defendants breached the 2020 Settlement Agreement (Ex. 8)[2] because Sched-

---

[1] This motion refers to the corporate defendant as "AMN Distribution."

[2] Declarations of Christina Felix and Michael Harris and the document custodians of eBay, Groupon, Walmart.com, and PayPal authenticate the exhibits.

Plaintiff Athena's Memorandum of Points and Authorities

1

Athena Cosmetics, Inc v. AMN et al. Case No.: 2:20-cv-05526-SVW-SHK

ule 1 does not provide the promised full and complete contact details for each supplier. It lists LinkAmerika II as its main supplier without contact information of the real persons defendants dealt with. The eight other suppliers in Schedule 1, devfashion26, snatch-it-deals, bto_deals, beautymagasin, sterlingwoman, savingsimplellc, jenn-knight, and leeyelashoco, are fictitious names without real persons' names, addresses, email address or other pertinent contact information.

Defendants' failure to list its own employees or their fictitious names, Nechemiah Newman, Adina's Beauty Shop, austramericacosmeticsoutlet and bluelinela, in Schedule 1 breaches the Settlement Agreement. The aliases hide their online activities.

Walmart and eBay documents show sales by defendants' employees Nechemia Newman, Dov Newman and Devorah Newman, which are missing from Schedule 2. Defendants promised not to promote, advertise or sell Athena's trademarked products after the Settlement Agreement's effective date, but they did anyway.

The number in the schedule are inaccurate. Schedule 1 says defendants purchased 2,835 units during 2019, but Schedule 2 shows them selling 4,474 units that year.

Defendants' breach voids the release and subjects them to liability for counterfeiting before and after the agreement's April 30, 2020, effective date.

**Liability for Counterfeiting**: All Athena-branded products defendants advertised and sold were counterfeits. Schedule 2 had to list the products "AMN sold or otherwise delivered … bearing Athena Cosmetics Marks to various consumers" in 2019. Athena's employee Christina Felix can tell all Athena-branded products she purchased from defendants were counterfeit because their packaging differed from Athena's. Other differences between the parties' products confirm her conclusions

Plaintiff Athena's Memorandum of Points and Authorities

2

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

that defendants' products were counterfeit. Ms. Felix also knows the products defendants bought from their major supplier, LinkAmerika, could not be authorized Athena products because the company is not an authorized seller of Athena products. Defendants' low prices at about half or three-fourths the retail price for authorized products, also are evidence of counterfeiting.

All defendants' sales had to be counterfeit because no evidence counters Athena's evidence of counterfeiting. Defendants' refusal to produce books and records and correspondence with its suppliers also is evidence the documents would establish counterfeiting. But failing to produce the documents prevents contrary evidence including oral testimony now.

**B.   CLAIMS IN THE FIRST AMENDED COMPLAINT ON WHICH ATHENA BASES THIS MOTION**

The First Amended Complaint, Dkt 73, has six claims for relief. This motion deals with two: the sixth for breach of contract under California law and the first for federal trademark counterfeiting under 15 U.S.C. § 1117(b).

**C.   FACTS**

**1.   Athena's business.**

Athena, a Ventura, California, company, manufactures and sells luxury cosmetics under the REVITALASH® and REVITABROW® brands and other trademarks. Dr. Michael Brinkenhoff, Athena's CEO, is known as the developer of those eyelash and eyebrow conditioning serums. Felix Decl. ¶¶ 3–4. Athena sells its luxury cosmetics throughout the United States and in selected foreign markets. Felix Decl. ¶ 3.

**2.   Athena's registered trademarks**

Athena owns nine registered trademarks for its cosmetic products. Harris Decl.

Plaintiff Athena's Memorandum of Points and Authorities

3

Athena Cosmetics, Inc v. AMN et al. Case No.: 2:20-cv-05526-SVW-SHK

Ex. 11.[3] Mr. Harris's declaration lists them, and they were admitted facts in the Pretrial Conference Order, Dkt.167–1. Athena displays those trademarks with the ® symbol during 2019 except for the RL Logo, which issued late that year. Other than the RL Logo, which is too new, the other eight marks are incontestable under 15 U.S.C. § 1065. Dkt. 167-1, Pretrial Conf. Order, Admitted Facts, Nos 3–6.

### 3.   Defendants sold Athena counterfeits which Christina Felix purchased.

Christina Felix, Athena's Anti-Diversion Manager, investigates counterfeit Athena goods that use Athena Trademarks. She shops for and purchases products online that are advertised and sold as authentic, genuine Athena goods. Felix Decl. ¶ 6. Her standard business practices are: save a copy of webpage listing from where she purchased the product, save a copy of the proof of purchase of the product(s) from that webpage, photograph the shipping label and product package when the item is delivered, photograph the package contents, and save the package and its contents, analyze the products inside to determine if they are counterfeit, update the counterfeit purchase log she maintains, and secure the evidence. *Id*. ¶ 8.



Ms. Felix visited BrushExpress's website, www.brushexpress.com, in November 2019, took a screen shot of the webpage (Ex. 1–reproduced to the left), and purchased three units of REVITALASH Eyelash Conditioner.[4] Felix Decl. ¶ 9. She saved the screen capture of her receipt for the purchase. Ex. 2 It also displays her handwritten notes, which says, "Counterfeit." Felix Decl. ¶ 10.

The products Ms. Felix ordered from brushexpress.com arrived in a container. She photographed its return label. Ex. 3 and copied below.

---

[3] These trademarks are collectively "Athena Trademarks." The registrations were admitted facts in the Pretrial Conference Order, Dkt.167–1.

[4] Ms. Felix made handwritten notes on exhibits. She wrote "counterfeit" on Exhibit 5.

Plaintiff Athena's Memorandum of Points and Authorities
4
Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

The return address label states: "BrushExpress, Shipping Department, 10 Gallagher Dr, Suite C, Plains PA 18705." Ms. Felix covered over her home address in the exhibit for privacy but did not change the return address.

### 4.   Athena charges defendants with counterfeiting.

Athena wrote BrushExpress in February 2020 demanding it stop selling counterfeit Athena products. After discussions among the parties, Athena, AMN Distribution and Mr. Newman avoided litigation by negotiating and signing the Settlement Agreement on April 29 and 30, 2020.

### 5.   The Settlement Agreement

The Settlement Agreement (Ex. 8) includes these terms:

### a.   Schedules 1 and 2

Defendants promised to prepare Schedules 1 and 2 (Exs. 9 and 10) so Athena would have accurate contact information about defendants' customers and suppliers. Accurate schedules would have allowed Athena to verify whether the schedules were truthful. Both defendants warranted the schedules contained the "full and complete contact information" of all sellers and suppliers and the amount of product purchased and sold. Ex. 1, pp. 2–3. Schedule l (Ex. 9), "the full and complete contact infor-mation and the amount of product purchased from each seller," claims the main sup-plier, Czech company LinkAmerika II, sold defendants 2,798 Athena products. The eight other each supplied fewer than ten units.

Schedule 1 includes LinkAmerika's Czech street address but no names, email address, phone numbers, or titles of its real people with whom defendants communi-cated. The remaining eight suppliers have only fictitious names listed.

The agreement also required defendants to produce Schedule 2 (Ex. 10), the full and complete contact information and the amount of product defendants sold to every customer. The schedule shows 4,474 Athena-brand sales during 2019 with a

1    gross revenue of $312,880. Felix Decl. ¶ 17.

2       **b.    Agreement not to sell, market, advertise, promote, or display**
3            **products with Athena's trademarks.**

4        Defendants promised they and their agents, employees, and others would not

5    sell, advertise, or promote "any goods or products with the Athena Cosmetics

6    Marks." Ex. 8, ¶ 2(a)vii. The restriction applies to legitimate, infringing, and counter-

7    feit products. *Id.*

8       **c.   Miscellaneous provisions**

9        Defendants acknowledged the Athena Cosmetics Marks are Athena's exclusive

10   property, and they agreed Athena granted them no rights to use the trademarks for

11   commercial or non-commercial purposes. *Id.*, ¶¶ 2(a)i. and ii. Defendants also had to

12   send Athena its unsold Athena-branded products. *Id.* ¶ 2(a)vii.

13      **6.    Both defendants are liable for breaches of the Settlement Agreement**

14       The Court's ruling denying two defense motions, stated, "Under the settlement

15   agreement, however, only AMN is obligated to provide that information [Schedules 1

16   and 2] to Plaintiff." Dkt 72, p. 3 (Mar. 16, 2021). But the agreement's first paragraph

17   reads, "AMN Distribution Inc. (hereafter "AMN") … and Moishe Newman an indi-

18   vidual doing business under the name of "BrushExpress" … (hereafter AMN and

19   BrushExpress are collectively referred to herein as "AMN"). The first quoted "AMN"

20   only refers to the corporation, but the second "AMN" combines the first with

21   BrushExpress, defendant Newman's dba. All references in the Settlement Agreement

22   to "AMN" thus mean both defendants, AMN Distribution and Mr. Newman. Both

23   must perform all duties and are liable for any breaches.

24       Both defendants also agreed to the agreement's warranties that the schedules

25   contained "full and complete contact information," and both defendants agreed not to

26   use any Athena trademark.

27      **7.    Mr. Newman also is liable for defendants' counterfeiting because he is**

28

Plaintiff Athena's Memorandum of
Points and Authorities                6        Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

AMN Distribution's "guiding spirit."

"[A] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Mr. Newman also admitted under penalty of perjury, "In my capacity as CEO of AMN Distribution, I am responsible for the purchasing and selling of products, establishing new purchasing opportunities and developing new sales channels." (M. Newman Declaration, Dkt. 172, p. 3). This statement evidences his authority and direction. "Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, … or the 'central figure' in the challenged corporate activity." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 525, n. 10 (9th Cir. 1989). That quote accurately describes Mr. Newman's activities as CEO. *See also* M*ead Johnson & Co. v. Baby's Formula Serv.,* 402 F.2d 19, 23 (5th Cir. 1968) ("[A] trademark … can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility.").

## 8.   Defendants Sales of Counterfeits and Athena's Action to Stop the Counterfeits.

Christina Felix, a 13-year Athena employee, is its Customer Support Manager and Anti-Diversion Manager. She acts as Athena's secret shopper, buying products online that bear Athena trademarks from unauthorized webpages and online retailers like eBay, Groupon, Walmart.com, and Amazon. Felix Decl. ¶ 2. In November 2019, she found suspect listings of Athena-branded goods on the brushexpress.com website offering REVITALASH cosmetics for sale. Felix Decl. ¶ 9, Ex. 4. Exhibit 2 to her declaration is her receipt, and Exhibit 3 is BrushExpress's shipping label that displays its

Plaintiff Athena's Memorandum of
Points and Authorities

7

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

return address in Plains, Pennsylvania. BrushExpress is defendant Newman's ficti-tious name. See Ex. 8, the Settlement Agreement, p. 1.

After Athena's attorneys wrote to BrushExpress in February 2020, demanding BrushExpress cease all advertising and sales of Athena-brand products, the parties negotiated the Settlement Agreement (Ex. 8). In exchange for Athena's release for past infringement and foregoing obtaining statutory damages of up to $2 million for each Athena Trademark counterfeited, 15 U.S.C. § 1117(c), defendants promised to provide their suppliers and customers' contact information and stop selling and pro-moting Athena-brand products.

## D.   ARGUMENT

### 1.   Summary Judgment Standards.

Moving party Athena must show "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Athena bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Athena as "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000).

After Athena meets its initial burden, defendants must go beyond the plead-ings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. FED. R. CIV. P. 56(c). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a ver-dict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Any defendants' opposition must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Evidence of the nonmovant is to be believed, however, and justifiable inferences must be drawn in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

2.     **Defendants' Rule 26 initial disclosures, AMN Distribution's improper
objections to written discovery, its failure to answer interrogatories
and produce documents, and Mr. Newman refusal to attend properly
noticed depositions prevents defendants from presenting contrary evidence.**

Defendants' Initial Disclosures, Ex. 21, lists only one witness from defendants.
The only documents listed are the Settlement Agreement, a letter from counsel for
LinkAmerika II, proof of defendants paying $25,000 under Settlement Agreement,
which is not an issue here, and emails between Athena's counsel and AMN's prior
counsel. Defendants listed no books and records of its purchases and sales and no
communications with its suppliers and customers.

Defendants also objected to all written discovery. Their interrogatory responses
(Ex. 18) started with eight paragraphs of general objections including:

> AMN objects to the Interrogatories in their entirety on the grounds that
> Athena filed its original complaint and first amended complaint in violation of Rule 11 to misuse and abuse the litigation and discovery process
> in order to obtain additional information from AMN beyond that which
> the parties' bargained for in the Settlement Agreement that is the purported basis for Athena's Sixth Claim for Relief for Breach of Contract
> ….

*Id*. ¶ 6. All responses were "[s]ubject to and without waiving the General Objections." By itself, such "responses" were waivers of all objections. *See Sprint Communications Co. v. Comcast Cable Comm., LLC*, No. 11-CV-2684-JWL, 2014 WL
545544, at * 2 (D. Kan. Feb. 11, 2014), *modified*, 2014 WL 1569963 (D. Kan. 2014);
*Fay Avenue Prosps., LLC v. Travelers Prop. Casualty Co. of Am*., No. 11-CV-2389-
GPC, 2014 WL 2965316, at * 1 (S.D. Cal. Jul. 1, 2014); *Meese v. Eaton Mfg. Co*., 35
F.R.D. 162, 166 (N.D. Ohio 1964); *see also* Wright, Miller & Marcus, 8B Fed. Prac.
& Proc. Civ. § 2173 (3d. Ed.) (a voluntary answer to an interrogatory is also a waiver

Plaintiff Athena's Memorandum of
Points and Authorities                    9                    Athena Cosmetics, Inc v. AMN et al.
                                                              Case No.: 2:20-cv-05526-SVW-SHK

of the objection). Such "responses" effectively leave the response standing alone as though no objection initially had been made. *See Estridge v. Target Corp.*, No. 11-CV-61490, 2012 WL 527051, at * 1-2 (S.D. Fla. Feb. 16, 2012) (collecting cases).

Defendants treated Athena's document requests in similar fashion. It made 14 general objections including one like the interrogatory objection quoted above and made all responses "incorporated into each response." An example is their response to Request No. 4, which asked for communications with suppliers including, "All invoices, shipping Documents and bills of lading for your shipping Athena Goods." Defendants similarly objected to the one quoted above and they produced nothing. *Id.*, p. 8; Harris Decl. ¶ 14. Defendants also made confidentiality objections, despite the protective order, Dkt. 34, governing confidential information.

A party failing to provide information required by Rule 26(a) or (e) "is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing FED. R. CIV. P. 37(c)(1). *See also R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (holding burden is on the party facing exclusion to prove "substantially justified or harmless").

Rule 37(d) provides for similar sanctions when a party fails to appear at a deposition. Defendant Newman refused to be deposed. Athena first noticed AMN Distribution's FED. R. CIV. P. 30(b)(6) deposition for November 5, 2020. Harris Decl. ¶ 8 and Ex. 14. Ronan Cohen, defendants' counsel then, neither moved for a protective order nor told Athena's attorney Mr. Newman would not appear. Harris Decl. ¶ 9 and Ex. 15. No witness appeared. Athena served two more Rule 30(b)(6) deposition notices after Mr. Voss became counsel. Defendant objected to both. Defendants' failure to produce documents put Athena in a bind. Athena had no defendants' documents for questioning the witness, so no deposition occurred. But as trial approached, Athena noticed AMN Distribution's deposition under Rule 30(b)(1) through its CEO

Plaintiff Athena's Memorandum of
Points and Authorities                    10                    Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

Mr. Newman. Ex. 23. Defense counsel did not respond to Athena's attorney email asking whether Mr. Newman would attend. He did not attend Harris Decl. ¶ 19 and Ex. 24.

Athena also noticed depositions of Dov, Devorah, and Nechemiah Newman, whom defendant Newman identified as AMN Distribution employees. Harris Decl. ¶ 20-22. *See* Dkt. 172, which named the three as AMN Distribution employees. Moishe Newman also said they were his relatives. *Id.*, p. 8. They avoided service and could not be deposed. Harris Decl. ¶ 23.

### 3.   Defendants breached their contract with Athena.

#### a.   The Settlement Agreement is a binding contract.

Under California law, "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121, 124 Cal. Rptr. 3d 2562 (2011), *cited with approval, Johnson v. Nationstar Mortg., LLC*, 840 Fed. App'x. 976, 977 (9th Cir. 2021) (unpublished).

Defendants do not dispute that the April 29 and 30 "Settlement Agreement" (Ex. 1) between Athena and AMN Distribution and Newman is a binding contract. See First Amended Complaint, Dkt. 73, ¶ 87, and Defendants' Answer ("Defendants further admits that they entered into a written settlement agreement with Athena, which was executed on or about April 29 and April 30."), Dkt. 75, ¶ 87.

#### b.   Athena performed its contractual duties.

Athena's duties were minimal after the parties executed the agreement, and defendants' answer included no counterclaim alleging a breach. Dkt. 75.

#### c.   Defendants breached the agreement by providing incomplete and inaccurate information in Schedules 1 and 2.

Schedule 1 is inaccurate and contains incomplete contact information of de-

Plaintiff Athena's Memorandum of Points and Authorities

11

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

fendants' suppliers. The LinkAmerika reference provides an address in the Czech Re-
public, but "full and complete contact information," which the Settlement Agreement
requires, must include the name, title, phone numbers, and email addresses of real
persons who dealt with defendants.

Defendants may argue they provided all *known* contract information, but the
settlement agreement has no terms allowing defendants to less than "full and com-
plete" information merely by claiming they supplied everything they knew.

Even if defendants could get away with disclosing only "known" contact infor-
mation, they had to know more information than Schedule 1 delivered. They must
know Link Amerika's full contact information. Retailers like defendants do not deal
with suppliers, especially those overseas, without a string of emails and other docu-
ments to and from their Czech contacts. The documents at least would provide per-
sons' names, emails and phone numbers. Defendants refused to produce that infor-
mation during discovery.

The eight other suppliers in Schedule 1 are fictitious names without real per-
sons' names, addresses, email address or other pertinent contact information. Defend-
ants had to have full and complete contact information. When people buy from Inter-
net sellers, the buyer receives confirmation, and the purchase arrives in a container
with a shipping label. Ms. Felix's BrushExpress label had its Pennsylvania, address
(Ex. 3). That information, if truthful, would be sufficient for Athena to contact the
seller. When defendants receive products from the eight other suppliers in Schedule
1, the shipping labels had to have street addresses and likely other information.

The full and complete contact information for the eight suppliers could have
been useful. By suppling counterfeits to defendants, Athena could have pursued dam-
ages from them. If any are in the United States—most probably are local—Athena
could have subpoenaed their records and learned what they knew about defendants.

Defendants' employees and most customers are in the United States. See
Schedule 2, Ex. 10. The schedule was computer generated. Online companies like

Plaintiff Athena's Memorandum of
Points and Authorities

12

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

eBay Groupon, and Walmart communicate by computer with their sellers. Money for eBay sales went through PayPal's computer system. Defendants also sell online through their own BrushExpress website, again requiring computerized records. With defendant Newman in Australia and defendants' customers and other employees in the United States, defendants had to maintain computerized records they should have produced.

Defendants would only delete computer files to avoid having to produce them. They are running a business, and businesses must maintain files. If only for tax purposes, businesses like AMN Distribution would save data that would include their suppliers' contact information.

Defendants received Athena's cease-and-desist letter in February 2020. By then, defendants had to institute a litigation hold. *See Glaukos Corp. v. Ivantis, Inc.*, No. 18-SACV-620 JVS, 2020 WL 5914552, at *4 (C.D. Cal. July 30, 2020) (holding litigation hold is necessary when litigation is reasonably foreseeable). February 2020 also is too soon to destroy 2019 documents. See *Omohundro v. United States*, 300 F.3d 1065, 1068 (9th Cir. 2002) (holding taxpayers have three years from filing tax return to seek refund or credit). When defendants prepared Schedule 1, they must have had documents with full and complete information for every supplier.

> **d.   Schedules 1 and 2 are inaccurate because they claim defendants sold 60% more Athena-branded products than they bought.**

Both schedules' inaccuracies are a breach that posts a physical and logistical impossibility. Defendants claim in Schedule 1 to have purchased 2,835 units from LinkAmerika and from eight other suppliers. But Schedule 2 shows 4,474 units sold. Defendants have no evidence who supplied the extra 1,639 units (58% of the purchased units) that Schedule 1 should have contained. Defendants' refusal to produce its books and records—see Section C.2. above—prevents it from presenting contrary evidence.

Plaintiff Athena's Memorandum of
Points and Authorities

13

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

### e.   Defendants used fictitious names to hide sales after the Settlement Agreement's effective date.

**Adina's Beauty Shop**: Documents mentioning defendant AMN Distribution subpoenaed from Walmart.com, Walmart's online store, identifies a business called Adina's Beauty Shop promoting and selling Athena's REVITALASH. Another Walmart document for which defendants provided the data, lists Adina's Beauty Shop as AMN Distribution's fictitious name, Nechemia Newman is AMN Distribution's primary contact, and nechemia@amndistribution.com is his email address. Defendant Newman said Nechemia is an AMN Distribution employee and relative. The document also lists brushexpress.com as Adina's website. *Id.*

The first 37 pages of Walmart's record of its listings from Adina's Beauty Shop reference sales and webpage displays before April 30, 2020, the date the Settlement Agreement became effective. Ex. 8. A May 16, 2020, listing, two weeks after the agreement's effective date, reads:

> … Now, beautifully shaped eyebrows are easier to achieve than ever before with the help of *RevitaBrow*! Utilizing the power of peptides and botanicals for strengthening, conditioning and nourishing, and advanced technology, RevitaBrow helps revitalize eyebrows so they look thicker and fuller. A simple swipe of the *RevitaBrow* applicator can help you achieve a more polished look by causing your eyebrows to appear healthier….

REVITABROW is one Athena trademarked product. Defendants' listing products on Walmart.com after the agreement's effective date breaches their promise not to advertise or promote Athena-brand products. Schedule 2 also does not include all Adina's Walmart.com sales. The schedule does not include Walmart's listings March 21, 2019 listing, with similar language to the May 16, 2020, listing above and with other sales for REVITALASH. That is another breach. More recently, as late as July

Plaintiff Athena's Memorandum of
Points and Authorities                    14                    Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

2021, more than a year after defendants promised not to sell, advertise or promote Athena-brand products, Adina advertised Athena's REVITABROW. *Id.*, p. 70.

**Austramericacosmeticsoutlet**: Documents produced by eBay show austramericacosmeticsoutlet is a fictitious name for Nechemia Newman, an AMN Distribution employee. Ex. 28a. The address is the same 10 Gallagher Drive as AMN Distribution's warehouse. Another eBay document shows austramericacosmeticsoutlet selling 47 Athena-branded products in 2019. Schedule 2 lists none.

**Bluelinela**: eBay documents identify bluelinela as a fictitious name for Dov Newman, another defendants' employee. Ex. 28b. eBay documents show bluelinela buying 11 Athena-branded products in 2019 from fullbright-sales, valenced and leeyelashoc. Defendants' failure to provide "the full and complete contact information" for the first two in Schedule 1 is another breach.

### f.   Defendants continued to advertise Athena-branded products on Groupon after the agreements' effective date.

About 14 months after the Settlement Agreement's effective date, AMN Distribution and Groupon, an online merchant, signed a June 2020 Merchant Agreement for Groupon to sell Athena-branded goods. Ex. 29. Six Groupon webpages from October 2020 show BrushExpress advertising Athena's REVITALASH and REVITABROW. Ex. 29, about 18 months after defendant promised in the Settlement Agreement to end advertising Athena-brand products. All post-April 2020 advertising breaches defendants' promise against "marketing, … advertising, promoting, [or] displaying" them.

### g.   Defendants' breach damaged Athena because defendants provided no accurate information of defendants' customers and suppliers for Athena to pursue, and defendants' continued sales of counterfeits damaged Athena's goodwill and caused lost sales.

Under California law, "the measure of damages … is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or

which, in the ordinary course of things, would be likely to result therefrom. *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 964–65 (N.D. Cal. 2008). One breach, the offering for sale of counterfeits, damages Athena up to $2 million per infringed trademark. 15 U.S.C. § 1117(c) (statutory damages). The breach of the conditional release allows the same damages.

By signing the settlement agreement, Athena agreed not pursue statutory damages for counterfeiting. Counterfeiters are liable for "not less than $1,000 or more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," but if the counterfeiters were willful—as defendants were—they could be liable for "not more than $2,000,000 per counterfeit mark … as the court considers just." 15 U.S.C. § 1117(c)(1), (2).

The court in *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007), awarded $1 million for each mark counterfeited[5] and defined the elements of the willfulness standard:

> Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with an aura of indifference to plaintiff's rights—in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it."

*Id.* at 1123. Foregoing the potential $2 million statutory damages to obtain accurate information about other potential counterfeiters and then receiving inaccurate information is substantial damages. All post-settlement sales also are another source of damages.

---

[5] $1 million was the maximum statutory damage in 2007.

      **h.**    **Defendants' failure to produce requested documents, answer in-
terrogatories, produce Moishe Newman for his deposition and
limitations on their Rule 26(a) initial disclosure prevents any at-
tempt to introduce opposing evidence.**

At this stage, after the close of discovery and with a jury trial looming if the
Court denies this motion, the Court should disallow any attempt by defendants to sub-
mit evidence or declarations of Moishe Newman or anyone else. *Asus Comput. Int'l
v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *6
(N.D. Cal. Apr. 11, 2014) (holding when a party fails to produce required discovery,
a motion to strike under FED. R. CIV. P. 37 may be proper with the violating party
having the burden of proving substantial justification and lack of prejudice.").

**4.**    **Defendants sold counterfeit Athena goods.**

"A 'counterfeit' is a spurious mark which is identical with, or substantially in-
distinguishable from, a registered mark." 15 U.S.C. § 1127. Counterfeit goods are
"knock-offs," copies made to look like authentic goods of a trademark owner, here
Athena. They are not ordinary infringements where the trademarks or the goods may
differ. *See e.g. Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 968 (9th Cir.
2007) (comparing mark SMARTSEARCH for different goods and services). Counterfeit-
ers make products to look like a registered trademark owner's products because the
counterfeiter wants consumers to buy its product instead of the trademark owner's le-
gitimate product.

Counterfeit merchandise endangers Athena's business. Its presence causes
brand erosion and diminishes revenue. Because Athena's products are applied near
the eyes—REVITALASH to the lids of eyelashes and REVITABROW to skin under the
eyebrows—counterfeits can cause injuries to users with inferior ingredients. Counter-
feiters don't care. Injured customers blame the legitimate trademark owner or merely
stop buying from it. Counterfeiters also hide their identities to escape discovery and
avoid liability for their acts.

Plaintiff Athena's Memorandum of
Points and Authorities       17       Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

a.  **Four sources, (1) Christina Felix's declaration showing her "secret shopper" purchases, (2) Schedule 2, showing defendants sales, (3) defendants' low price and (4) defendants discovery refusals, confirm defendants sold Athena counterfeits.**

All Athena products Ms. Felix bought from BrushExpress were counterfeits. Felix Decl. ¶13. She bases her conclusion on these facts:

### 1)  Features of defendants' counterfeit Athena products

The counterfeit goods Ms. Felix bought from BrushExpress share the same counterfeit features, including:

a. Athena prints its lot code on all its products. If a customer has a problem with a product, Athena can determine the product's lot. The BrushExpress counterfeits use a falsified lot code. Exhibit 4 to Ms. Felix's declaration show lot codes of a legitimate and counterfeit products.[6] Felix Decl. ¶ 13a.

b. Genuine products contain anti-diversion tracking technology whereas BrushExpress's counterfeits do not. *Id*., ¶ 13b.

c. Athena uses custom, machine-glued, seamless, adhesive packaging for its containers, which is important to protect the goods sensitive components during shipment and ensure they are not subject to tampering. The containers from BrushExpress were sloppily taped with clear ¾-inch adhesive tape. *Id*., ¶ 13c.

d. Athena's boxes are of a custom shade of blue, but BrushExpress's blue for its box differs from Athena's blue. *Id*., ¶ 13d.

e. The internal booklet in BrushExpress's counterfeit box is incorrectly folded and written with Chinese characters off to one side. Athena's booklet is folded differently and has no Chinese characters. *Id*., ¶ 13e.

f. BrushExpress's counterfeits have thicker wand and brush tube than Athena's authentic wand and brush tube. *Id*., ¶ 13f.

---

[6] "Authentic," "counterfeit," or "BrushExpress.com" were added to photographs.

### 2) Defendants have no evidence refuting they sold counterfeits.

All BrushExpress Athena-brand products are counterfeit. Felix Decl. ¶ 13. Defendants has no evidence refuting her statement.

### 3) Defendants' low price is compelling evidence defendants' products were counterfeit.

Ms. Felix's declaration and the chart on page 21 of this brief show defendants' selling prices were about one-half of Athena's list prices. Felix Decl. ¶ 17. Some were higher but all were less than list. Defendants claim to have sold 2,567 units of their best seller, REVITALASH Eyelash Conditioner 3.5 ml/0.118 oz, for $192,792, or $75.10 per unit. Athena's authorized retailers sell a genuine product for $150 per unit. Felix Decl. ¶ 18. Athena's list price, according to the BrushExpress webpage, is $90; defendants' $64.99 price is less than three-fourths of list. Defendants only could sell products for half or three-fourths of Athena's price if they are counterfeit.

Abnormally low prices are evidence of counterfeiting. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 589 (7th Cir. 1989) (retailer selling Vuitton and Gucci purses well below normal retail price found to be counterfeiter); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399, 404 (S.D.N.Y. 1966) (holding a suspiciously low price allows an inference of constructive knowledge of the illegitimacy of the product); *Keds Corp. v. Goldstreet Holdings Inc.*, 92 -2950 SVW (KX), 1992 WL 456626, at *5 (C.D. Cal. Aug. 14, 1992) (finding of willful infringement based on counterfeiter's low price), *aff'd w/o opinion*, 19 F.3d 27 (9th Cir. 1994).

The low prices defendants charged also had to confirm to defendants they were willful dealers in counterfeits products.

### 4) Defendants' failure to cooperate in discovery also evidences their hiding their counterfeiting.

Had defendants been legitimate sellers of Athena goods, they would have produced their books and records willingly because they had nothing to hide and the books might exculpate them. Instead, they tried to conceal what they did.

Plaintiff Athena's Memorandum of Points and Authorities

19

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

An Athena document requests asked for "All communications including emails and letters with all suppliers or potential suppliers of Athena Goods. Ex. _, pp 9–10. Defendants objected to the request in full and produced nothing. *Id.,* pp. 10–11. Their interrogatory responses are equally improper. Interrogatory No. 4 asked, "State the name, street and email address and telephone numbers for all Persons that provided AMN with any product bearing an Athena Trademark. If the Person is a natural person, also state his or her employer and its street and email address and telephone numbers." Harris Decl., Ex. 23, p. 6. After protracted objections, defendants responded, "The information that AMN was contractually obligated to provide to Athena with respect to the source of Athena products was previously provided to Athena as Schedule 1 to the settlement agreement (the 'Settlement Agreement') that is the basis for Athena's breach of contract claim in the above-captioned action. ¶ The Persons identified in Schedule 1 are a complete list." *Id.* p. 8.

### 5.    Remedies

**a.    Defendants are potentially liable for statutory damages up to $2 million for each of the nine Athena trademarks they counterfeited.**

The Lanham Act has a special provision for statutory damages against counterfeiters. "[I]f the court finds that the use of the counterfeit mark was willful, [it may award] not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). The undisputed evidence establishes defendants' willfulness.

Determining statutory damages of up to $2 million per infringed trademark might require additional proceedings beyond this motion. If the Court grants this motion, and if the judgment is upheld on any appeal, Athena will waive its right to statutory damages and will limit its damage recovery to treble damages and attorney fees. See the next section.

   b.   **Defendants are liable for treble damages for its at least 4,447 Athena counterfeits it sold.**

   1)  **Defendant sold at least 4,474 counterfeit Athena products.**

According to defendants' Schedule 2, they sold 4,474 units during 2019. Their 2019 revenue totaled $312,880. This chart shows how many units they sold and their revenue.

| Product | Qty | Revenue |
|---|---|---|
| RevitaLash Advanced 3.5 mL and RevitaBrow Advanced Eyebrow Conditioner 1.5mL (KIT) | 11 | $ 631 |
| RevitaLash Eyelash Conditioner 3.5 ml / 0.118 oz | 2,567 | $192,792 |
| RevitaLash Eyelash Conditioner, 2.0ml/0.06oz | 1,199 | $69,817 |
| RevitaLash RevitaBrow Advanced Eyebrow Conditioner, 3ml/0.1oz | 133 | $9,131 |
| RevitaLash RevitaBrow Advanced Eyebrow Conditioner, 0.101oz | 564 | $40,510 |
| **Grand Total** | **4,474** | **$312,880** |

This chart does not include defendants' sales in the names of Adina's Beauty Shop, Bluelinela or Austramericacosmeticsoutlet.

   2)  **The statute provide defendants are liable for three-times their actual profits plus attorney fees.**

*Treble damages for use of counterfeit mark.* In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title ..., in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court *shall, unless the court finds extenuating circumstances*, enter judgment for three times such profits or

Plaintiff Athena's Memorandum of Points and Authorities

21

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of

> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or

> (2) providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

15 U.S.C. § 1114(1)(a) (emphasis added).

 Defendants' stated revenue for selling Athena products during 2019 was $312,880. Gross revenue here equal profits because defendants produced no evidence of their expenses.

The Settlement Agreement was not effective until the end of April 2020 so the revenue from Schedule 2 lacks January through April, i.e., one third of 2020 and all post-settlement sales. If sales continued at the same rate during the first, four months of 2020, defendants' revenue would have been $104,293. Since defendants objected to providing books and records of all sales, finding the revenues to be $417,173 ($312,880 + $104,293) is reasonable.

"[T]rial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (context of calculating attorney fee award). The Court approved doing "rough justice, not to achieve auditing perfection." *Id.* Defendants should not escape paying more just because they refused to provide sales records.

Courts agree with the "rough justice" approach. Defendants in *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985), denied selling any counterfeit items and refused to produce any records. The court held defendants

Plaintiff Athena's Memorandum of Points and Authorities

22

Athena Cosmetics, Inc v. AMN et al. Case No.: 2:20-cv-05526-SVW-SHK

must bear the burden of uncertainty. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d
1105, 1113 (9th Cir. 2012), cited *Louis Vuitton* with approval. *Skydive* also men-
tioned the Ninth Circuit's "willingness to accept 'crude' measures of damages in
cases of intentional infringement." *Id. See also Bigelow v. RKO Radio Pictures, Inc.*,
327 U.S. 251, 265 (1946) (holding "wrongdoer shall bear the risk of the uncertainty
which his own wrong has created" by allowing a reasonable estimate of damages
when defendant prevents a more precise computation.).

### 3)  The statute requires treble damages.

"Under 15 U.S.C. § 1117(b), unless there are extenuating circumstances, a
court must award treble damages for intentionally using a counterfeit mark." *Moroc-
canoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1164 (C.D. Cal. 2017). Even ig-
noring the attributed sales after 2019 and sales by defendants' aliases, $312,880, tre-
ble damages are $938,640.

Assuming defendants' sales in the first four months of 2020 when the Settle-
ment Agreement became effective, continued at the same pace as sales occurred dur-
ing the previous 12 months, defendants' revenue during that four month would have
been $104,293 for a 16-month revenue of $417,173. Trebling that amount is
$1,251,519.

### 4)  The statute allows prejudgment interest.

15 U.S.C. §1117(a) allows prejudgment interest at a rate determined by state
law. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998). Un-
der Cal. Civ. Code § 3289(b), the legal rate is 10 percent per annum. The breach oc-
curred May 31, 2020, when defendants submitted its fake schedules. By the time this
court rules on this motion, prejudgment interest will have accrued for 13 months. The
interest on treble damages of $1,251,519 is calculated at $1,251,519 x (10% x 13/12)
= $135,581.

Plaintiff Athena's Memorandum of
Points and Authorities

23

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

     **c.  Defendants are also liable for attorney fees under the Lanham Act and under a clause of the Settlement Agreement.**

     **1)  The Lanham Act provides for an automatic attorney fee award in counterfeiting cases like this one.**

Unless the court finds "extenuating circumstances," 15 U.S.C. § 1117(b) mandates an award of a "reasonable attorney's fee" where the defendant knowingly sells counterfeits. The Lanham Act does not define "extenuating circumstances,." but "the exception is extremely narrow." *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) (finding no extenuating circumstances where defendant offered but did not sell counterfeit good and claimed to be entrapped by Levi's investigator to sell the goods). Defendants here have no evidence of extenuating circumstances.

     **2)  Defendants also are liable for attorney fees under the Settlement Agreement.**

The Settlement Agreement provides, "In the event of any litigation arising from breach of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs incurred including staff time, court costs, and attorney's fees." Ex. 1, pp. 7–8.

Rule 56(d)(2) requires the prevailing party to move for an any award of attorney fees within 14 days of entry of judgment. Athena will comply with that deadline if the court grants this motion.

## 6.  Athena is entitled to a permanent injunction against infringement and counterfeiting.

Permanent injunctions against infringement and counterfeiting are appropriate remedies in counterfeiting lawsuits. "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a) (added in P.L. 116-260, 134 Stat. 2208 (Dec. 27, 2020)). The amendment eliminated the requirement from *eBay Inc. v. MercExchange, LLC*, 547

Plaintiff Athena's Memorandum of
Points and Authorities

24

Athena Cosmetics, Inc v. AMN et al.
Case No.: 2:20-cv-05526-SVW-SHK

U.S. 388, 391 (2006), of a trademark plaintiff proving irreparable harm. Defendants have no evidence or argument to rebut the presumption of irreparable harm.

The proposed injunction is included in the proposed judgment filed with this motion.

**E.   CONCLUSION**

Defendants cannot present evidence of material facts rebutting Athena's showing defendants breached the Settlement Agreement. Defendants have no admissible evidence that the Athena-brand products it sold were genuine Athena goods.

Athena requests the Court grant this motion.

Respectfully submitted,

May 23, 2022

/s/ *Michael Harris*
Michael D. Harris
SoCal IP Law Group LLP

Attorneys for Plaintiff Athena Cosmetics, Inc.