Michael D. Harris, State Bar No. 59470
mharris@socalip.com
Brian Tamsut, State Bar No. 322780
btamsut@socalip.com
SoCal IP Law Group llp
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Dan Lawton, State Bar No. 127342
dlawton@klinedinstlaw.com
Klinedinst
777 South Figueroa St., Suite 4000
Los Angeles, CA 90017
Phone: (619) 239-8131 • Fax: (619) 238-8707

Edward D. Chapin, State Bar No. 53287
echapin@sanfordheisler.com
Sanford Heisler Sharp, LLP
2550 Fifth Avenue, 11th Floor
Phone: (619) 577-4253 • Fax: (619) 577-4250

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Athena Cosmetics, Inc., <br><br> Plaintiff, <br><br> v. <br><br> AMN Distribution Inc., et al, <br><br> Defendants. | No. 2:20-cv-05526-SVW-SHK <br><br> Statement of Uncontroverted Facts and Conclusions of Law (Local Rule 56-1) <br><br> Date: June, 27, 2022 <br> Time: 1:30 p.m. <br> Judge: Wilson |

### UNCONTROVERTED FACTS

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 1. | Christina Felix has been employed by Athena Cosmetics, Inc. ("Athena") for over 13 years. Athena is in Ventura, California. | Felix Decl. ⁋ 2 | |

Uncontroverted Facts and Conclusions of Law

1

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 2. | Defendant AMN Distribution, Inc. ("AMN Distribution") is a Delaware corporation. | Alleged in First Amended Complaint (Dkt 73); admitted in answer (Dkt. 75) | |
| | 3. | Defendant Moishe Newman ("Newman"), an individual, resides in the Melbourne, Australia, area. | Newman Decl. ¶ 4. (Dkt. 47) | |
| | 4. | Athena manufactures luxury cosmetics under the RevitaLash® and RevitaBrow® brands and other trademarks. It sells its luxury cosmetics throughout the United States and in selected foreign markets. | Felix Decl. ¶ 3. | |
| | 5. | Dr. Michael Brinkenhoff, Athena's CEO, is known as the developer of Athena's RevitaLash® eyelash conditioning serum. | Felix Decl. ¶ 4 | |
| | 6. | Ms. Felix's current job titles at Athena are Customer Support Manager and Anti-Diversion Manager. | Felix Decl. ¶ 5. | |
| | 7. | When Ms. Felix uses the word "counterfeit" in this declaration, she is referring to products using Athena trademarks made to look like authentic Athena products. | Felix Decl. ¶ 6 | |

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 8. | Ms. Felix's role as Anti-Diversion Manager entails investigating and buying "unauthorized" products from Internet sellers' websites advertising cosmetic products bearing Athena's trademarks. When she uses the word "unauthorized," she means Athena does not authorize the online seller to sell goods with any Athena trademark. | Felix Decl. ¶ 7 | |

Uncontroverted Facts and Conclusions of Law

3

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 9. | Ms. Felix maintains a purchase log of all unauthorized products I purchase that are advertised using an Athena trademark. When I buy the product on the Internet, I:<br><br>    a. copy and save a copy of the webpage listing the product;<br><br>    b. save a copy of my proof of purchase of the products generated by the web site;<br><br>    c. photograph the shipping label and product package when the item is delivered;<br><br>    d. photograph the package contents;<br><br>    e. update the purchase log; and<br><br>    f. secure items a through d. | Felix Decl. ¶ 8. | Exs. 1-3 |
| 10. | On November 21, 2019, Ms. Felix visited the website www.brushex-press.com and purchased three units of RevitaLash Eyelash Conditioner. She took a screen shot of that website on the same date… Athena's RevitaLash is one of the website's "Featured Collections." | Felix Decl. ¶ 9 | Ex. 1 |

Uncontroverted Facts and Conclusions of Law

4

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| 11. | | She documented proof of my purchase by printing the screen capture. | Felix Decl. ¶ 10 | Ex. 2 |
| 12. | | The goods Ms. Felix ordered from brushexpress.com arrived in a container. She photographed the container's label. | Felix Decl. ¶ 11 | Ex. 3 |
| 13. | | The return address label states: Brush Express, Shipping Department, 10 Gallagher Dr, Suite C, Plains PA 18705. I covered over the "ship to" portion, which has my home address. | Felix Decl. ¶ 12 | Ex. 3 |

| 14. | The three products, that BrushExpress called RevitaLash, were fakes. Ms. Felix base that conclusion on:<br><br>    a.  Athena prints its lot code on all its products. If a customer has a problem with a product, Athena can determine the product's lot. The BrushExpress counterfeits use a falsified lot code. Exhibit 4 and the photograph below shows lot codes of a legitimate (left) and counterfeit (right) Athena product.<br><br>    b.  Genuine Athena products contain anti-diversion, tracking technology, but BrushExpress's counterfeits do not.<br><br>    c.  Athena uses custom, machine-glued, seamless, adhesive packaging for its containers, which is important to protect the goods sensitive components during shipment and | Felix Decl. ¶ 13 | Exs. 4-7 |

ensure they are not subject
to tampering. The contain-
ers from BrushExpress
were taped with clear ¾-
inch adhesive tape.

d.  Athena's boxes are of a
custom shade of blue, but
BrushExpress's blue for
its box differs from
Athena's blue. See Exhibit
5 (copied on the next
page), side-by-side photo-
graphs of an authentic
(left) and a fake (right)
RevitaLash boxes.

e.  Athena's package comes
with an internal booklet.
In the image below, which
shows Athena's (top) and
BrushExpress's (bottom)
internal booklets,
BrushExpress's booklet is
incorrectly folded and
written with Chinese char-
acters off to one side.
Athena's booklet is folded

Uncontroverted Facts and Conclusions of Law

7

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | | differently and has no Chinese characters. Exhibit 6. | | |
| | f. | BrushExpress's counterfeits have a thicker wand and brush tube than Athena's authentic wand and brush tube. Exhibit 7 is a photograph on the next page, which shows Athena's wand and brush tube (left) and the BrushExpress wand and brush tube (right). | | |
| 15. | | Exhibit 8 is a copy of the April 29 and 30, 2020, settlement agreement between Athena and AMN Distribution, Moishe Newman and BrushExpress. The agreement has two schedules, Schedules 1 and 2. Exhibits 9 and 10 are copies. | Felix Decl. ¶ 14 | Exs. 8-10 |
| 16. | | Ms. Felix reviewed Schedules 1 and 2 of the 2020 Agreement. Schedule 1 identifies no human with his or her full name, email address, or phone number. | Felix Decl. ¶ 15 | Exs. 9-10 |

Uncontroverted Facts and Conclusions of Law

8

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| 17. | | In Schedule 1, defendants claim they purchased 2,835 units during 2019. | Felix Decl. ¶ 16 | Ex. 9 |
| 18. | | According to the data of Schedule 2, defendants sold 4,474 units during 2019. Their grand total 2019 revenue is $312,880. | Felix Decl. ¶ 17 | Ex. 10 |
| 19. | | The list price for authentic REVITALASH Eyelash Conditioner 3.5 ml /0.118 fl-oz is $150. Defendants' average price for the same product is $75.17. | Felix Decl. ¶ 18 | Ex. 10 |
| 20. | | Athena never sold Athena-brand products to any defendant. | Felix Decl. ¶ 19 | |

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 21. | In 2019, Athena significantly refreshed the look and feel of its product-line by adopting new product packaging, art-work, colors, designs, fonts, and logos. In 2019, shortly after Athena started shipping its re-branded product line to its authorized distributers, Athena was very surprised to discover unauthorized online retailers, including BrushEx-press, advertising and selling products from Athena's newly introduced 2019 product line, with its newly designed product packaging, artwork, colors, de-signs, fonts, and logos. So, as part of my job duties, in November 2019, I purchased from the BrushExpress web-site, the products that they were adver-tising and selling that appeared to be from Athena's new 2019 product-line. | Felix Decl. ¶ 20 | |
| 22. | After Ms. Felix analyzed her purchases from BrushExpress in November 2019, she determined that all the goods were counterfeits of Athena's new 2019 product-line. Athena's new 2019 prod-uct-line did not exist prior to 2019. | Felix Decl. ¶ 21 | |

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 23. | | | |
| 24. | Athena's counsel wrote to BrushExpress and demanded it stop selling Athena-brand products. | Harris Decl. ¶ 2 | |
| 25. | Instead of litigation then and after discussions among the parties, Athena, AMN Distribution and Mr. Newman avoided litigation by negotiating and signing the Settlement Agreement on April 29 and 30, 2020 | Harris Decl. ¶ 3 | |
| 26. | Two schedules, Schedule 1 and Schedule 2, are part of the Settlement Agreement. Exhibit 9 (Felix Decl.) is a copy of Schedule 1, and Exhibit 10 (Felix Decl.) is a copy of Schedule 2. | Harris Decl. ¶ 4 | Exs. 9-10 |
| 27. | 1.   Because of perceived breaches to the Settlement Agreement, Athena sued defendants AMN Distribution and Moishe Newman in this litigation. | Harris Decl. ¶5 | |

| Uncontroverted Fact | Source | Exh. |
|---|---|---|
| 28. Athena owns these United States Trademark Registrations, which are incontestable under 15 U.S.C. §§ 1058, 1065:<br><br>a. No. 3,526,373 (November 4, 2008), for ATHENA AND DESIGN.®<br><br>b. No. 3,413,360 (April 15, 2008), for ATHENA COSMETICS.®<br><br>c. No. 5,633,064 (December 18, 2018), for ETERNALLY PINK.®<br><br>d. No. 4,501,304 (March 25, 2014), for REVITALASH ADVANCED.®<br><br>e. No. 3,588,423 (March 10, 2009), for the mark REVITABROW.®<br><br>f. No. 4,501,307 (March 25, 2014), for REVITABROW ADVANCED.®<br><br>g. No. 5,871,804 (October 1, 2019), (the "RL Logo.")<br><br>REVITALASH, ATHENA AND DESIGN, ATHENA COSMETICS, ETERNALLY PINK, REVITALASH ADVANCED, REVITABROW, REVITABROW ADVANCED and the RL LOGO are collectively "Athena Trademarks." | Agreed fact in Pretrial Conference Order; Harris Decl. ¶ 6 | 11 |

Uncontroverted Facts and Conclusions of Law

12

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 29. | This lawsuit has been pending since June 2020. On October 1, 2020, my firm served interrogatories and documents requests (Exs. 12 and 13) on defendant AMN Distribution. The firm also served a Rule 30(b)(6) deposition notice for November 5 (Ex. 14). They were served by email on attorney Ronan Cohen, who initially represented defendant AMN Distribution. | Harris Decl. ¶ 8. | Exs. 12-14 |
| | 30. | Mr. Cohen and AMN Distribution did not respond to written discovery, and without Mr. Cohen telling any Athena attorney the witness would not attend, he and AMN Distribution did not attend. See Ex. 15 (Certificate re Nonappearance). | Harris Decl. ¶ 9. | Ex. 15 |

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 31. | Attorney David Voss replaced Mr. Cohen as defendants' attorney in mid-November 2020. Dkt. 41. He moved to set aside the default judgment against defendant Moishe Newman, AMN Distribution's CEO. After Mr. Newman produced a document from the Australian government, showing he was in Australia when he was allegedly served in Long Beach, I agreed to set aside the default. The Court granted the set-aside motion on January 19. Dkt. 62. | Harris Decl. ¶ 10 | |
| | 32. | On January 9 and 12, 2021, Mr. Newman moved to dismiss under Rule 12(b)(6), Dkt. 63, and AMN Distribution filed a Rule 12(c) motion. Dkt. 65. The Court denied both. Dkt. 72. Athena filed a first amended complaint on March 22, 2021, Dkt. 73, which now is the operative complaint. Defendants answered April 5. It asserted no counterclaims. Dkt. 75. | Harris Decl. ¶ 11 | |

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 33. | In early April 2021, six months after my firm had served its initial written discovery and its Rule 30(b)(6) deposition notice, Mr. Voss emailed me saying Athena's service by email of interrogatories, documents requests and the notice of a Rule 30(b)(6) deposition did not comply with FED. R. CIV. P. 5 because Mr. Cohen, defendants' first attorney, and I had no written agreement to serve discovery by email. Mr. Cohen never raised the issue | Harris Decl. ¶ 12 | |
| 34. | Schedule 2 shows 4,474 Athena-brand sales during 2019 with a gross revenue of $312,880. | Felix Decl. ¶ 17. | Ex. 10 |
| 35. | On April 15, 2021, my firm served the same interrogatories and documents requests on Mr. Voss, this time by postal mail. We also served a Rule 30(b)(6) deposition notice on May 11, 2021, on AMN Distribution for a June 4 deposition. | Harris Decl. ¶ 13 | Ex. 16 |

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 36. | On May 20, 2021, defendants served objections to every document request and interrogatory. After a conference with Magistrate Judge Kewalramani, defendants served amended responses on July 1, and on August 17, they served additional interrogatories responses. Until then and August 25, defendants produced no documents, at which time Mr. Voss's office sent me 4,703 pages of documents. The documents were not Bates numbered and all but 22 pages were the six or seven pages a person ordering from eBay receives when he or she completes an order. They contain advertising for other products. Defendants produced no purchase orders or documents to and from their suppliers. Exhibit 20 is the first six pages of that production. | Harris Decl. ¶ 14 | Exs. 17-19 |
| | 37. | Mr. Harris asked Mr. Voss to tell me which document request these documents cover, but I received no answer. | Harris Decl. ¶ | |

| Uncontroverted Fact | Source | Exh. |
|---|---|---|
| 38. Mr. Harris noticed the deposition of AMN Distribution under Rule 30(b)(6) for a May 11, 2021, deposition, and after Mr. Voss objected, I noticed Rule 30(b)(6) deposition for October 12, 2021. | Harris Decl. ¶ 17 | Ex. 22 |
| 39. Defendants' Initial Disclosures lists only one witness from defendants. The only documents listed are the Settlement Agreement, a letter from counsel for LinkAmerika II, proof of defendants paying $25,000 under Settlement Agreement, which is not an issue here, and emails between Athena's counsel and AMN's prior counsel. | Harris Decl. ¶ 16 | Ex.21 |

| | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|
| 40. | After Mr. Voss objected to the latter notice, defendants' failure to produce documents put me in a bind. Even if Mr. Harris could complete the procedures under Local Rule 37 to order defendants to produce documents, document production might not begin before the trial date set in November. Since Mr. Harris had no defendants' documents for questioning the witness, Mr. Harris did not proceed with the deposition. | Harris Decl. ¶ 18 | |
| 41. | Though no books, records or other useful documents were produced from defendants, Mr. Harris noticed AMN Distribution's deposition for October 28, 2021, under Rule 30(b)(1) through its CEO Mr. Newman. Mr. Harris sent Mr. Voss an email asking whether Mr. Newman would attend. Mr. Voss did not respond to my email. On October 28, neither Mr. Voss nor defendant Newman attended. | Harris Decl. ¶ 19 | Ex. 23-24 |

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| 42. | | Defendants listed no books and records of its purchases and sales and, except for a letter from counsel for LinkAmerika II, no communications with its suppliers and customers. | Harris Decl. ¶ 18-19 | Ex. 23-24 |
| 43. | | Defendants refused to provide books and records of all sales as part of its Rule 26 disclosures and in response to Athena's discovery requests. | Harris Decl. ¶ 18-19 | Ex. 23-24 |
| 44. | | Defendants' only document production occurred August 24, 2021, when all they produced were photocopies of some eBay order confirmations, a lease for AMN Distribution's Pennsylvania warehouse and two emails from a Czech company | Harris Decl. ¶14 | Ex. 20 |
| 45. | | Schedule 2 was computer generated. | | Ex. 10 |
| 46. | | Defendants could not have done business without being fully computerized, but they produced no computer records though Athena requested their production. | | Various exhibits. |
| 47. | | Defendants breached their 2020 Agreement with Athena | Holding from first bifurcated trial. | Exs. 8-10. |

Uncontroverted Facts and Conclusions of Law

19

Athena Cosmetics v. AMN Dist. et al.
Case No.: 2:20-cv-05526-SVW-SHK

| | | Uncontroverted Fact | Source | Exh. |
|---|---|---|---|---|
| | 48. | Athena's release was "[c]onditional on Defendants making the Settlement Payment, furnishing Schedules 1 and 2 … and Defendants' delivery of the entire remaining inventory of any goods or products with the Athena Cosmetics Marks." The breach of the 2020 Agreement causes the agreement's release to be ineffective. | Terms of 2020 Agreement. | Exs. 8-10. |
| | 49. | Defendant Newman admitted in his declaration he is "responsible for the purchasing and selling of products …." | Dkt. 172, ¶ 7 | |
| | 50. | Had defendants been legitimate sellers of Athena goods, they would have produced their books and records willingly because they had nothing to hide and the books might exculpate them. Instead, they tried to conceal what they did. | | |
| | 51. | Defendants' refusal to produce its books and records during discovery is evidence its goods were counterfeit. | | |
| | 52. | Defendants are willful counterfeiters. | Defendants had to know they were not marketing and selling counterfeits. | |

CONCLUSIONS OF LAW

| Conclusion of Law | Supporting Authority |
|---|---|
| 1. The Court has subject matter jurisdiction because the claims address federal questions concerning the Lanham Act, trademark infringement of federally registered trademarks and federal unfair competition under | 28 U.S.C. §§ 1331, 1337(a), 1338(a), 15 U.S.C. § 1121, and 15 U.S.C. § 1125(a). |
| 2. The Court has supplemental jurisdiction over the claims arising under the laws of the State of California because the state law claims are so related to the federal subject-matter claims they form part of the same case or controversy and derive from a common nucleus of operative fact. | 28 U.S.C. § 1367(a) |
| 3. All Defendants are subject to personal jurisdiction because their principal place of business is in this district, and because they make, store, purchase, import, sell, assemble, package, advertise, distribute, and ship counterfeit Athena products to residents in California and in this district. | Cal. Code Civ. Proc., § 410.10. and FED. R. CIV. P. 4 |

| | Conclusion of Law | Supporting Authority |
|---|---|---|
| 4. | To prevail on summary judgment, moving party Athena must show "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." | FED. R. CIV. P. 56(a). |
| 5. | Athena bears the initial burden of demonstrating the absence of a genuine issue of material fact. After Athena meets its initial burden, defendants must go beyond the pleadings, and, by their own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. | *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (holding the initial burden extends "to each issue material to its case."). |
| 6. | A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." | *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). |
| 7. | Any opposition by defendants must establish more than mere "metaphysical doubt as to the material facts." Justifiable inferences must be drawn in the light most favorable to the nonmoving party. | *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). |

| | | Conclusion of Law | Supporting Authority |
|---|---|---|---|
| | 8. | Defendants' refusal to produce evidence during discovery prevents them from introducing evidence against summary judgment. | FED. R. CIV. P. 37 |

| | Conclusion of Law | Supporting Authority |
|---|---|---|
| 9. | Defendants' abnormally low prices are evidence of counterfeiting. | *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 589 (7th Cir. 1989) (retailer selling Vuitton and Gucci purses well below normal retail price found to be counterfeiter); *Hard Rock Cafe Licensing Corp. v. Concession Serv., Inc.*, 955 F.2d 1143, 149 (7th Cir. 1992) (holding defendant's willful blindness that goods were counterfeit "is equivalent to actual knowledge for purposes of the Lanham Act…."); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399, 404 (S.D.N.Y. 1966) (holding a suspiciously low price allows an inference of constructive knowledge of the illegitimacy of the product); *Keds Corp. v. Goldstreet Holdings Inc.*, 92 -2950 SVW (KX), 1992 WL 456626, at *5 (C.D. Cal. Aug. 14, 1992), *aff'd w/o opinion*, 19 F.3d 27 (9th Cir. 1994) (finding of willful infringement based on counterfeiter's low price). |

| | | Conclusion of Law | Supporting Authority |
|---|---|---|---|
| | 10. | Newman, as AMN's CEO and guiding spirit is liable for AMN's and his own counterfeiting. | *The Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). "Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, … or the 'central figure' in the challenged corporate activity." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 525, n. 10 (9th Cir. 1989). *See also* Mead Johnson & Co. v. Baby's Formula Serv.,* 402 F.2d 19, 23 (5th Cir. 1968) ("[A] trademark … can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility." |

| | | Conclusion of Law | Supporting Authority |
|---|---|---|---|
| 11. | | The products defendants sold as those of Athena are counterfeits. | "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Counterfeit goods are "knock-offs," copies made to look like authentic goods of a trademark owner, here Athena. They are not ordinary infringements where the trademarks or the goods may differ. *See e.g. Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 968 (9th Cir. 2007) (comparing mark SMARTSEARCH for different goods and services). Counterfeiters make products to look like a registered trademark owner's products because the counterfeiter wants consumers to buy its product instead of the trademark owner's legitimate product. |
| 12. | | Unless there are extenuating circumstances, a court must award treble damages for intentionally using a counterfeit mark. | 15 U.S.C. § 1117(b); *Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1164 (C.D. Cal. 2017). |
| 13. | | There are no extenuating circumstances. The exception is extremely narrow." Defendants here have no evidence of extenuating circumstances. | *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997). |

| | Conclusion of Law | Supporting Authority |
|---|---|---|
| 14. | Treble damages are $417,173 x 3 = $1,251,519. | |
| 15. | Unless the court finds "extenuating circumstances," an award of a "reasonable attorney's fee" is mandated where the defendant knowingly sells counterfeits. | 15 U.S.C. § 1117(b). |
| 16. | Defendants have not shown "extenuating circumstances." | The "extenuating circumstances" exception is extremely narrow." *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) |
| 17. | Athena may detail its right to attorney fees and their amount in a motion under FED. R. CIV. P. 54(d)(2) following entry of judgment. | FED. R. CIV. P. 54(d)(2). |
| 18. | Had defendants been a legitimate seller of Athena goods, it would have produced its books and records willingly because it had nothing to hide. Instead, it made every effort to conceal what it did and was continuing to do. | |

| | Conclusion of Law | Supporting Authority |
|---|---|---|
| 19. | A counterfeiter can be liable for up to $2 million for each trademark it used, here nine trademarks. | 15 U.S.C. § 1117(c)(2). |
| 20. | An injunction against future counterfeiting is proper | 15 U.S.C. § 1116(a) (added in P.L. 116-260, 134 Stat. 2208 (Dec. 27, 2020)). The amendment eliminated the requirement of a trademark plaintiff proving irreparable harm. |

May 23, 2022

/s/ *Michael Harris*
Michael D. Harris
SoCal IP Law Group LLP

Attorneys for Plaintiff Athena Cosmetics, Inc.