Michael D. Harris, State Bar No. 59470
mharris@socalip.com
Brian Tamsut, State Bar No. 322780
btamsut@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Dan Lawton, State Bar No. 127342
dlawton@klinedinstlaw.com
Klinedinst
777 South Figueroa St., Suite 4000
Los Angeles, CA 90017
Phone: (619) 239-8131 • Fax: (619) 238-8707

Edward D. Chapin, State Bar No. 53287
echapin@sanfordheisler.com
Sanford Heisler Sharp, LLP
2550 Fifth Avenue, 11th Floor
Phone: (619) 577-4253 • Fax: (619) 577-4250
San Diego, CA 92103

Attorneys for Plaintiff Athena Cosmetics, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Athena Cosmetics, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>AMN Distribution Inc., et al,<br><br>    Defendants. | 2:20-cv-05526-SVW-SHK<br><br>Plaintiff Athena's Memorandum of Points and Authorities in **Reply** to Defendants' Opposition to Athena's Summary Judgment Motion<br><br>Date: July 18, 2022<br>Time: 1:30 p.m.<br>Judge: Stephen V. Wilson |

## TABLE OF CONTENTS

Page

A. Introduction ................................................................................................... 1

B. Argument ....................................................................................................... 2

   1. Defendants' assertion Athena concocted this lawsuit is a smokescreen to avoid introducing evidence of material facts ......................... 2

2. Defendants' claim the summary judgment motion comes as a surprise ignores the complaint. ................................................................... 3

3. Defendants ignored the settlement agreement's language that made Moishe Newman and corporate defendant AMN Distribution jointly liable for all breaches. ................................................................... 3

4. Athena introduced uncontroverted evidence the Athena-branded products defendants sold were counterfeit. ................................................................... 4

   a. Christina Felix's declaration explained why the products she bought from defendants were counterfeit. ................................................................... 4

5. Nothing contradicts Athena's evidence the Athena-brand products defendants sold were counterfeit. ................................................................... 5

6. No evidence contradicts the 58% discrepancy between how many Athena-branded products defendants bought in 2019 and how many they sold that year. ................................................................... 6

7. Ms. Felix did not testify as an expert. ................................................................... 6

8. Defendants' breaches of continued sales and errors in the schedules were material as a substantial factor in causing harm. ................................................................... 6

9. Athena does not seek recovery of its damages because the trademark laws allow it to recover defendants' profits. ................................................................... 8

10. Defendants' failure to introduce evidence of its costs makes them liable for their gross profits. ................................................................... 8

11. Defendants mischaracterize documents their opposition mentions. ................................................................... 9

12. Defendants' criticisms about Athena's discovery responses are only Mr. Voss's arguments without admissible evidence. ................................................................... 9

C. Conclusion ................................................................... 9

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 1, 5

*Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) ..................................................... 7

*Boat Owners Ass'n of U.S. v. Sea Ventures of Cal., Inc.,* 99-CV-8703-RJK, 2000 WL 33179449 (C.D. Cal. Aug. 7, 2000) ..................................................... 7

*Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) ............... 4

*First Interstate Bank of Idaho v. Small Bus. Admin.*, 868 F.2d 340 (9th Cir. 1989) ............................................................................................................... 8

*Keds Corp. v. Goldstreet Holdings Inc.*, 92-CV-2950 SVW (KX), 1992 WL 456626 (C.D. Cal. Aug. 14, 1992), *aff'd mem.*, 19 F.3d 27 (9th Cir. 1994).

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986) ................... 8

*Spitzer v. Aljoe,* 13-CV-05442-MEJ, 2016 WL 3279167 (N.D. Cal. June 15, 2016) ............................................................................................................... 7

*S.E.C. v. eConnect*, 00-CV-2959-MMM, 2002 WL 34465925 (C.D. Cal. Dec. 2, 2002) ........................................................................................................ 7, 8

**Statutes**

15 U.S.C. § 1114 ......................................................................................................... 8

15 U.S.C. § 1117 ......................................................................................................... 8

**Rules**

FED. R. CIV. P. 56 ........................................................................................................ 5

Fed. R. Evid. 702 ........................................................................................................ 6

**Other**

RESTATEMENT (SECOND) OF CONTRACTS § 241 (1979) ............................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

Oppositions to summary judgment motions must "designate specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Defendants' scattershot opposition introduced no evidence supporting "specific facts." Instead, defendants claim plaintiff Athena should have produced more evidence or Athena's complaint failed to allege details of how defendants breached the settlement agreement.

Athena's motion and supporting evidence showed Schedules 1 and 2 to the settlement agreement were inaccurate and failed to provide defendants' suppliers' full and complete contact information. Without evidence, defendants argue Athena knew LinkAmerika's contact information, but defendants could not even speculate Athena knew the contact information about defendants' seven other suppliers, all of whom used fictitious names. No defense evidence challenges Athena's calculations of defendants purchasing 2,835 units but selling 4,474 units. And no evidence challenges the evidence defendants continued advertising Athena products or the sales by defendants' employees through fictitious names after the agreement's effective date.

But defendants claim the almost 60% difference in products bought and sold and their failure to provide full and complete accurate information is not a material breach. They are material because the contract clauses were important and serious. Reasonable minds cannot differ on materiality here.

In less than one page, defendants last, they argue Athena needed more evidence defendants sold counterfeits. But where is defendants' evidence of the Athena-branded products they sold were legitimate? The uncontroverted evidence proves defendants sold counterfeit Athena-branded products. The absence of concrete evidence from which a reasonable jury could return a verdict in defendants' favor now requires summary judgment against them. *Anderson*, 477 U.S. at 256.

B. ARGUMENT

1. **Defendants' assertion Athena concocted this lawsuit is a smokescreen to avoid admitting it has no contrary evidence of material facts.**

Plaintiff Athena sued because defendants' schedules were inaccurate and failed to include full and complete contact information for all suppliers. Defendants also continued advertising Athena-branded goods. Had defendants believed Athena sued as a pretext for agreeing to the settlement agreement first and then suing, defendants would have answered interrogatories fully, produced all requested books, records and other documents and made defendant Moishe Newman and the other AMN employees available for depositions. Only in that instance might defendants have demonstrated Schedules 1 and 2 were complete and accurate, defendants hid nothing, and they ceased selling and promoting their counterfeits. Instead, defendants made improper responses to written discovery including this objection:

> AMN objects to the Interrogatories in their entirety on the grounds that Athena filed its original complaint and first amended complaint in violation of Rule 11 to misuse and abuse the litigation and discovery process in order to obtain additional information from AMN beyond that which the parties' bargained for in the Settlement Agreement that is the purported basis for Athena's Sixth Claim for Relief for Breach of Contract. Athena only commenced the instant litigation *after* AMN refused to provide it with additional documents beyond that called for by the parties' settlement agreement.… As a consequence of all of the foregoing, AMN objects to – and is entitled to protection from – the discovery on the grounds of "annoyance, embarrassment, oppression, or undue burden or expense" and that Athena is attempting to do a blatant end-run around the Settlement Agreement which remains in full force and effect.…

Ex. 18 (Dkt 240-22), p. 3.

**2.   Defendants' claim the summary judgment motion comes as a surprise ignores the complaint.**

Defendants assert Athena's claim based on the schedules' inaccuracies was a surprise. The first amended complaint (Dkt. 73) alleges, "91. AMN breached the settlement agreement by providing inaccurate and incomplete contact information of its customers and suppliers." Defendants also allege surprise with Athena's claim of defendants' post-agreement sales, but the complaint continues, "92. Defendants breached the settlement agreement by continuing to sell Athena counterfeit goods."

Defendants created the schedules, so they knew the schedule were inaccurate and Schedule 1 did not provide "full and complete contact information" of the suppliers. Defendants could not be surprised about the evidence of their post-agreement sales, advertising and promotion because they did it. Though Athena had to subpoena records from eBay, Groupon, Walmart, and PayPal because defendants refused to produce its books and records and attend depositions. Production from the subpoenas[1] also showed the involvement of AMN Distribution's employees and the fictitious company names like Adina's Beauty Shop and Austramericacosmeticsoutlet.

The complaint may not have alleged some details about sales by their own employees or their using fictitious names, but they hid that information in their schedules and during discovery. Athena only learned about the sales and fictitious names through discovery from eBay, Walmart and other third parties made necessary by defendants' failure to produce documents.

**3.   Defendants ignored the settlement agreement's language that made Moishe Newman and corporate defendant AMN Distribution jointly liable for all breaches.**

Athena's motion mentions the Court's previous ruling, as, "Under the settlement agreement, however, only AMN is obligated to provide that information

---

[1] Athena sent copies the subpoenaed documents to defense counsel.

[Schedules 1 and 2] to Plaintiff." Defendants rely on that earlier ruling, Oppos. p. 7, and n. 7, but they refuse to acknowledge the agreement defined "AMN" as both defendants, AMN Distribution and Mr. Newman. See Motion (Memo P&A, Dkt. 240-1), p. 6, § 6. Even if only AMN Distribution had to prepare the schedules does not matter because both defendants warranted the schedules contained "full and complete contact information," and both agreed not to use any Athena trademarks.

Defendants also did not challenge Newman's liability for counterfeiting because as an AMN Distribution officer, he is "personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

### 4. Athena introduced uncontroverted evidence the Athena-branded products defendants sold were counterfeit.

#### a. Christina Felix's declaration explained why the products she bought from defendants were counterfeit.

Ms. Felix explained how she knew defendants' Athena-brand product were counterfeit. Felix Decl. ¶ 13. She based her conclusions on the products lot code, defendants' lack of anti-diversion, tracking technology, their use of adhesive tape instead of Athena's machine-glued, seamless, packaging, defendants' off blue color for its boxes, errors in the internal booklet, and defendants' thicker wand.

Athena introduced other evidence supporting defendants' counterfeiting. Athena's list price for one product is $150. Defendants' average price for the same product is $75.17. Felix Decl. ¶ 18. Abnormally low prices are evidence of counterfeiting. *See Keds Corp. v. Goldstreet Holdings Inc.*, 92-CV-2950 SVW (KX), 1992 WL 456626, at *5 (C.D. Cal. Aug. 14, 1992) (finding of willful infringement based on counterfeiter's low price), *aff'd mem.*, 19 F.3d 27 (9th Cir. 1994). Athena's moving papers cited other cases outside the Ninth Circuit for the same point. Memo P&A,

p. 19. Athena proved it did not sell to defendants (Felix Decl. ¶ 19 (Dkt. 240–3)), and no evidence contradicts Felix's declaration.

### 5. Nothing contradicts Athena's evidence the Athena-brand products defendants sold were counterfeit.

"Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

Instead of introducing contrary evidence, defendants say Athena should have introduced more evidence. They ask, for example, "Why didn't Plaintiff follow up with any of the thousands of disclosed purchasers?" Though no answer is necessary, the simple answer is: questioning customers is unlikely to succeed, and defendants have the evidence concentrated in their files, which should have been a more cost-effective source of the evidence.

What would Athena ask customers? "May I see your REVITALASH box from 2019, three years after your purchase?" Reasonable attorneys would spend no effort asking questions customers likely cannot answer. And obtaining admissible evidence would require costly depositions and motions to exceed the ten-deposition limit. Athena also could not follow up with defendants' suppliers since defendants' incomplete supplier identification prevented Athena from knowing whom to question.

Discovery rules required defendants to answer interrogatories, produce documents and attend depositions. Their refusal to produce its books and records and to cooperate in discovery also supports their lack of any material evidence contradicting Athena's proof that all their Athena-brand products were counterfeit.

**6.   No evidence contradicts the 58% discrepancy between how many Athena-branded products defendants bought in 2019 and how many they sold that year.**

Defendants' Schedule 1 claims they purchased 2,835 units from LinkAmerika and eight other suppliers in 2019. Schedule 2 shows 4,474 units sold. The opposition presents no evidence where the extra 1,639 units (58% of the purchased units) came from.

**7.   Ms. Felix did not testify as an expert.**

For Ms. Felix to testify as an expert, her "scientific, technical, or other specialized knowledge" must help the fact finder "to understand the evidence…." FED. R. EVID. 702 (a). Her declaration about what she saw with defendants' Athena-brand products was what a layperson also could see. The lot code difference: a juror can tell the numbers are different. Box closure: a juror can see the difference between adhesive tape and machine-glued, seamless, packaging. Box color: Jurors can see the color difference. Internal booklet: the difference is evident to a juror. Wand thickness: an easy comparison by a juror. Anti-diversion, tracking technology: a layperson may not understand how the technology works, but Ms. Felix's declaration did not explain how the technology works. A fact finder needs no expert testimony to see only Athena's product reacting to the technology.

**8.   Defendants' breaches of continued sales and errors in the schedules were material as a substantial factor in causing harm.**

Citing CACI No. 303, defendants argue Athena introduced no evidence any breach was a "substantial factor in causing [Athena's] harm." Defendants are incorrect.

Defendants had these duties under the settlement agreement: (1) provide schedules with full and complete contact information for their suppliers and customers, (2) stop selling, promoting, and advertising Athena-brand counterfeit or legitimate

products, (3) send Athena the remaining inventory at closing, and (4) pay Athena $25,000. Athena's only duty was granting a conditional release.

Materiality depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance." *Spitzer v. Aljoe*, 13-CV-05442-MEJ, 2016 WL 3279167, at *7 (N.D. Cal. June 15, 2016) (citation and quotation marks omitted), *aff'd*, 734 Fed. Appx. 457 (9th Cir. 2018). Unless defendant performed, Athena could not have learned who were supplying counterfeits and could not have stopped defendants' continued counterfeiting

In *Boat Owners Ass'n of U.S. v. Sea Ventures of Cal., Inc.*, 99-CV-8703-RJK, 2000 WL 33179449, at *5 (C.D. Cal. Aug. 7, 2000), the court quoted the factors from RESTATEMENT (SECOND) OF CONTRACTS § 241 (1979 & Supp.), useful in identifying the materiality of a breach. One factor "(4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances," is telling here. Before Athena had to sue, defendants could have cured their breaches by amending Schedules 1 and 2 to include full and complete information and by taking off the market all Athena-brand products from defendants and their employees. But even during discovery, they refused to provide the data to correct the schedules and hid their continued promotion and sales.

Summary judgment is proper if reasonable minds could not differ about the fact. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) (similarity in copyright infringement); *S.E.C. v. eConnect*, 00-CV-2959-MMM, 2002 WL 34465925, at *8 (C.D. Cal. Dec. 2, 2002) (holding materiality can be decided on summary judgement only if "reasonable minds could not differ ….") (citation omitted).

Defendants violated their important duties under the settlement agreement. They warranted that Schedules 1 and 2 contain the "full and complete contact information and the amount of product purchased from each seller" and the "full and complete contact information for each customer and the aggregate amount of product

sold." Ex. 8, pp. 2–3. Whether AMN Distribution or Mr. Newman had to prepare the schedules is unimportant; they both warranted the schedules were full and complete, and both agreed to be "enjoined and restrained" from "purchasing, buying…, distributing…, marketing, offering for sale, advertising, [or] promoting…, products with the Athena Cosmetics Marks…." *Id.*, p. 3.

Material damages are not necessarily monetary. In *First Interstate Bank of Idaho v. Small Bus. Admin.*, 868 F.2d 340 (9th Cir. 1989), the bank sued the SBA for defendant's failure to honor a guaranteed agreement insuring one of the bank's loans. In ruling for the bank, the court acknowledged nonmonetary losses can be material. *Id.* at 344.

### 9. Athena does not seek recovery of its damages because the trademark laws allow it to recover defendants' profits.

Under 15 U.S.C. § 1114(1)(a), defendants as counterfeiters are liable "unless the court finds extenuating circumstances … for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee. Athena chose recovery of defendants' profits. As in many intellectual property cases, a plaintiff cannot know its damages at the initial disclosure stage until it learns how many infringing products a defendant sold. Damage disclosure usually must wait for the exchange of expert following discovery.

### 10. Defendants' failure to introduce evidence of its costs makes them liable for their gross profits.

"In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (noting the "purpose of section 1117 is to "take all the economic incentive out of trademark infringement.").

**11.    Defendants mischaracterize documents their opposition mentions.**

The Opposition's Section II.D quotes from a letter Mr. Voss says was filed as a declaration exhibit in Dkt. 89, Ex. B. The declaration had no Exhibit B—all the exhibits are numbered (Ex. 1–8), and none is a letter. Section V.C. (p. 9) refers to a letter defendants' attorney Voss wrote to Athena's attorney Lang, supposedly an exhibit to an early Voss declaration. Defendants filed no Voss declaration or any exhibits here. Opposition Section V.B.1. asserts Athena had contact information about defendants' supplier LinkAmerika because "there exists correspondence between LinkAmerika's counsel and Plaintiff's counsel…." p. 17. But the exhibit attached to the opposition is from a LinkAmerica employee and mark@amndistribution (Moishe Newman).

**12.    Defendants' criticisms about Athena's discovery responses are only Mr. Voss's arguments without admissible evidence.**

To criticize Athena's discovery response, defendants quote from one paragraph of an unauthenticated email from Mr. Voss. No evidence explains where defendants went with this email. They filed no motion to compel.

## C.  CONCLUSION

On the reach issue: defendants introduced no evidence that Schedules 1 and 2 were accurate and contained the full and complete contact information of the suppliers and customers. They also introduced no evidence to contradict Athena's evidence of defendants' post-agreement sales and advertising. On counterfeiting: defendants introduced no admissible evidence that the Athena-brand products it sold were genuine Athena goods.

Athena requests the Court grant this motion.

July 5, 2022

Respectfully submitted,

/s/ *Michael Harris*
Michael D. Harris
SoCal IP Law Group LLP

Attorneys for Plaintiff Athena Cosmetics, Inc.