## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff's motion for partial summary judgment, ECF No. 240 ("MSJ"). For the reasons below, the motion is granted.

### I.   Introduction and Background

The parties are well-acquainted with the factual and procedural history of this bitter, multi-year dispute. Accordingly, the Court recites only those facts that are necessary to adjudicate the instant motion.

Plaintiff Athena Cosmetics is a cosmetics manufacturer that holds several trademarks associated with its products, including, as relevant here, word and design marks for its RevitaLash and RevitaBrow products. Felix Decl. ¶ 3, ECF No. 240-3; Def. Stat. of Genuine Disputes ¶¶ 4, 28, ECF No. 248 ("UF").

The roots of this conflict stretch back to 2019, when Plaintiff began to suspect that Defendants AMN Distribution and Moishe Newman were selling counterfeit cosmetic products designed to look like Plaintiff's products in violation of Plaintiff's trademarks.

One of Plaintiff's employees is Christina Felix, an Anti-Diversion Manager whose job entails investigating online retailers that are suspected of selling unauthorized Athena products. Felix Decl. ¶¶ 5-7. In November 2019, Felix visited www.brushexpress.com and purchased three units of a product advertised as RevitaLash eyelash conditioner. *Id.* ¶ 9. Felix determined that the products were

| Initials of Preparer | : PMC |
|---|---|

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

counterfeits, closely resembling Plaintiff's cosmetics but not authentic. *Id.* ¶ 13. Felix reached this conclusion because, among other indicia, (i) the Brush Express product had taped packaging whereas authentic Athena products use machine-glued, seamless packaging; (ii) the Brush Express product packaging was a darker shade of blue than authentic packaging; (iii) the internal pamphlet with the Brush Express product was folded differently than the pamphlet Athena uses, and it included Chinese characters, which the authentic pamphlet does not; and (iv) the Brush Express product had a thicker wand and brush than an authentic product. *Id.*[1]

After tracing the products back to Defendant Moishe Newman, who was doing business as Brush Express, and to Defendant AMN, a corporation run by Newman that was also distributing suspected counterfeits, Plaintiff sent a cease-and-desist letter to both in February 2020. Harris Decl. ¶ 2, ECF No. 240-14. After negotiations, the parties reached a settlement agreement, which they executed on April 30, 2020. *Id.* ¶¶ 3-4.

In the agreement, Plaintiff released its claims against Defendants, and, in exchange, Defendants agreed to (a) pay a sum of $25,000, (b) deliver its entire inventory of products bearing Athena marks to Plaintiff, (c) prepare schedules providing the "full and complete contact information and the amount of product" bought and sold from each supplier and purchaser, and (d) refrain from "purchasing, buying, obtaining, procuring, manufacturing, warehousing, producing, importing, distributing, circulating, selling, delivering, marketing, offering for sale, advertising, promoting, displaying, or otherwise using" products with Athena marks. Felix Decl., Ex. 8 at ¶¶ 2, 4, 5, ECF No. 240-11 ("SA").

---

[1] Defendant contends that Plaintiff should be precluded from relying on Felix's conclusion, arguing that it constitutes an expert opinion that Plaintiff failed to properly disclose under Rule 26(a)(2). Opp. to MSJ 3, ECF No. 246. However, the Court concludes that Felix presents only lay opinion that was not subject to disclosure.

Lay testimony can rely on *personalized* knowledge, so long as it does not rely on *specialized* knowledge. *See* Fed. R. Evid. 701, 2000 advisory comm. notes. For example, a lay witness may offer opinion that a particular substance was a narcotic because of their personal familiarity with such narcotics. *Id.* Thus, courts have allowed a business's employee to offer lay testimony that particular goods were "counterfeit" based on their personalized knowledge of authentic goods that they acquired by virtue of their position in the business. *See Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 381-82 (S.D.N.Y. 2010). By the same token, though Felix may rely on her *personalized* knowledge about the features of authentic Athena products, it does not require *specialized* knowledge to see that one brush is thicker than another or that one box is taped, and one is glued. Felix's opinion thus constitutes lay opinion, and Defendant's argument fails.

| | | : | |
|---|---|---|---|
| Initials of Preparer | | PMC | |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|----------|------------------------|------|------------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

In June 2020, Plaintiff brought this suit, alleging that Defendant failed to perform the latter two obligations. *See* Compl., ECF No. 1. Plaintiff claims that Defendant failed to provide full and complete contact information for its suppliers and continued marketing and selling counterfeit goods. Accordingly, Plaintiff brought a claim for breach of the settlement agreement, a claim for the underlying trademark counterfeiting, and several duplicative trademark claims. First Am. Compl., ECF No. 73.

Now, Plaintiff brings the instant motion for summary judgment as to the claim for breach of the settlement agreement and as to the claim for trademark counterfeiting. MSJ 3.[2]

### II.     Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its

---

[2] Defendants also remonstrates that Plaintiff's notice of motion fails to specify "with particularity" the basis of the motion, purportedly violating Rules 7 and 56. Opp. to MSJ 12. Rule 7 states that a motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). And Rule 56 requires that motions for summary judgment "identify[] each claim or defense" on which judgment is sought. Fed. R. Civ. P. 56(a).

Plaintiff's motion easily satisfies both of these rules; it makes clear that judgment is sought on the first claim (trademark counterfeiting) and the sixth claim (breach of the settlement agreement) and presents arguments in support of that motion. Indeed, Defendants seem to acknowledge that the motion itself identifies the relevant claims and arguments, but Defendants apparently take umbrage with the fact that Plaintiff's *notice* of motion does not do the same. *See* Opp. to MSJ 12.

This argument is yet another needlessly formalistic squabble unsupported by legal authority. Nothing in Rules 7 and 56 impose requirements on *notices* of motions; they refer to the *substance* of the motions themselves. *See* Fed. R. Civ. P. 7(b)(1)(B), 56(a). And the *substance* of Plaintiff's motion passes muster under both rules. It is simply ludicrous for Defendants to assert that they are unable to determine "exactly what they are defending" in the very same breath in which they concede that the actual motion identifies the claims in issue here. *See* Opp. to MSJ 12. Thus, as both a legal and practical matter, Defendant's argument is wholly without merit.

Just as frivolous is Defendant's objection that Plaintiff's motion is untimely under Rule 56 since it was filed more than 30 days after the close of discovery. *Id.* at 1 n. 1. The deadline in Rule 56(b) expressly states that it does not apply if the court orders otherwise. Fed. R. Civ. P. 56(b). Here, the Court did just that, ordering Plaintiff to file this motion by May 23, 2022, a deadline Plaintiff met. *See* Mins. of Pretrial Conf., ECF No. 237; *see also* MSJ.

| | : |
|---|---|
| Initials of Preparer | PMC |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|----------|------------------------|------|-----------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Analysis

As the Court has frequently reiterated, the viability of Plaintiff's case is tied to its breach of settlement agreement claim – if Defendants are not in breach, then Plaintiff is still bound by its release of claims against Defendants. *See* SA ¶ 5. Accordingly, the Court begins with Plaintiff's breach claim.

#### a.   Breach of Settlement Agreement

As previously mentioned, Plaintiff asserts that Defendant breached the settlement agreement by violating two different provisions. First, by failing to provide "full and complete contact information" for Defendants' suppliers, as required by the agreement. *See* MSJ 11-13; SA ¶ 2(a)(iii). And second, by continuing to market and sell Athena-branded products after the effective date of the settlement, in violation of the agreement. *See* MSJ 14-16; SA ¶ 2(a)(vii).

Defendants counter that they did not breach the agreement and also that Plaintiff has not shown harm from any purported breach. *See* Opp. to MSJ 14 (citing elements of breach of contract claim in CACI No. 303, Judicial Council of California Civil Jury Instruction (2022)).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

### 1. Failure to Provide Complete Contact Information

Plaintiff submits that there are two reasons why Defendants failed to provide "full and complete" contact information for its suppliers as required. First, regarding the suppliers about which Defendants *did* provide information, Plaintiff contends that it was not "full and complete" contact information. MSJ 12-13. And second, Plaintiff also contends that Defendants must not have provided information for all of its suppliers because the disclosure schedules contain a discrepancy between the amount of product bought and sold. MSJ 13.

However, the Court first briefly discusses a preliminary issue of whether both Defendants can be liable for this breach. In an order on a motion to dismiss, this Court previously concluded that only Defendant AMN was obligated to provide sellers' contact information under the agreement, not Defendant Newman. *See* ECF No. 72 at 3. Plaintiff argues that this conclusion was incorrect and that the agreement jointly obligated both AMN and Newman to provide the disclosures. Reply ISO MSJ 3-4, ECF No. 250 ("Reply").

This issue is largely a product of the language of the settlement agreement, which is, in many respects, poorly drafted. One of its more confusing features is that when identifying the parties, it states that AMN Distribution Inc. shall thereafter be referred to as "AMN", but it further states that AMN and Newman collectively shall *also* be referred to as "AMN." *See* SA at 1.[3] Thus, in the paragraph that details the seller disclosure obligation, it is unclear whether the use of "AMN" is supposed to refer to just AMN the entity or to *both* AMN the entity *and* Newman. *See id.* ¶ 2(a)(iii).

Ultimately, it matters little whether or not Newman was obligated to provide accurate disclosures because, as discussed below, he is liable for breaching the settlement via continued marketing and for the underlying counterfeiting. Thus, this issue makes no difference to the claims or remedies available to Plaintiff, and the Court will therefore not disturb its prior ruling.

Turning, then, to the substance of Plaintiff's arguments, the Court concludes that Plaintiff has shown a breach in both of the manners it identifies.

---

[3] In the agreement, some paragraphs are not numbered while some are. The Court uses the '¶' symbol to cite to specific numbered paragraphs, while citations to unnumbered sections are made to the page number of the relevant content.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

### i. Failure to Provide Complete Information for Suppliers Identified

In Schedule 1, Defendant identified nine different suppliers from which it bought Athena-branded products. *See* Felix Decl., Ex. 9, ECF No. 240-12 ("Sch. 1"). The vast majority of the products were purchased from a Czech company called "LinkAmerika II." *Id.* And while Defendant provided an address for LinkAmerika, Plaintiff argues this was not "full and complete" contact information because Defendant "had to know" a contact person and their email or phone number. *See* MSJ 12. However, without any evidence about how Defendant did business with LinkAmerika, the Court cannot assume that Defendant definitively interacted with LinkAmerika via a contact person, rather than, for example, an automated web-based platform.

Plaintiff's argument regarding the other eight suppliers fares better. These suppliers appear to be eBay sellers and, for seven of them, Defendant only provided their fictitious eBay username. *See* Sch. 1. Plaintiff argues that Defendant must have had more information than a bare eBay username, *see* MSJ 12, and the Court agrees. At the *very* least, Defendant must have had a return address for these sellers from the packaging in which the products were shipped to Defendant – the products did not simply materialize out of thin air. Indeed, Defendant clearly had such information because it provided an address for one eBay seller, yet inexplicably failed to do so for the other seven. *See* Sch. 1.

Despite these facts, Defendant has not put forth a shred of evidence explaining how it could be possible that an eBay username was the *sole* piece of information it had about these seven sellers. *See Matsushita*, 475 U.S. at 585–86 (once initial burden is satisfied, burden is on non-moving party to demonstrate factual dispute with admissible evidence). No reasonable jury could conclude that Defendant had provided "full and complete" contact information for the seven eBay sellers for which it gave only a mere username while withholding an address (if not more). *See Scott*, 550 U.S. at 380.

Defendant appears to further argue that any breach with respect to these eBay sellers would not be material – or would at least present a jury question regarding materiality – because of the small number of units purchased from the eBay sellers relative to LinkAmerika. *See* Opp. to MSJ 2, 17. It is true that the vast majority of product was purchased from LinkAmerika. *See* Sch. 1. And it is also true that "ordinarily the issue of materiality is a mixed question of law and fact" that is left to the jury. *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526-27 (Cal. Ct. App.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

1986); *see Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 601 (Cal. Ct. App. 1969).

However, "if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Ins. Underwriters*, 184 Cal. App. 3d at 1527. And here, the Court concludes that this breach was material as a matter of law.

Materiality largely depends on the importance of the breach to the injured party, the extent to which the injured party can nonetheless obtain the "substantial benefit" bargained-for despite the breach, and the extent to which damages would adequately compensate the injured party even if the injured party were still held to its contractual obligations. *See Brown v. Grimes*, 192 Cal. App. 4th 265, 278 (Cal. Ct. App. 2011) (citing 1 Witkin, Summary of Cal. Law, Contracts, § 852 (10th ed. 2005)); *Sackett v. Spindler*, 248 Cal. App. 2d 220, 229-30 (Cal. Ct. App. 1967).

From the settlement agreement itself, it is clear that this is not a case where the primary benefit Plaintiff sought was a monetary payment in exchange for its release of claims. A trademark plaintiff can disgorge an infringer's profits from infringing goods, or alternatively, seek statutory damages that start at $1,000 per infringed mark (and go up to $200,000 or even $2 million for willful infringement). 15 U.S.C. § 1117. Thus, given that Defendant made over $300,000 in revenue from the Athena-branded products, *see* Felix Decl., Ex. 10, ECF No. 240-13 ("Sch. 2"), and that several marks were allegedly infringed, Defendant's $25,000 payment here, while not insignificant, was a relatively paltry sum compared to the available damages had Plaintiff elected to pursue its trademark claims rather than release them.

The "substantial benefit" which Plaintiff sought was putting a stop to the distribution of the alleged counterfeit products, accomplished in part through the identification of Defendant's suppliers. *See Sackett*, 248 Cal. App. 2d at 229-30. Defendant frustrated that end by providing nothing more than a mere fictitious eBay username; irrespective of the fact that a particular supplier may have only sold a few units to *Defendant* specifically – that same supplier may have sold large quantities to others or may have themselves purchased their products from a larger manufacturer of counterfeits.

And further, traditional contract damages would do little to compensate Plaintiff if Plaintiff were still held to its obligation not to sue here because Plaintiff does not have any freestanding contract damages. *See id.* It is not as though Defendant simply failed to make payment of a specified sum that

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

can be easily recovered as contractual damages. Plaintiff's harm is foregoing its underlying legal claims without getting what it bargained for in return; if still held to its claims release, Plaintiff would essentially be without a remedy for Defendant's breach.

Thus, the Court concludes that this breach was material.

### ii.   Failure to Identify All Suppliers – Inventory Discrepancy

The Court similarly concludes that Plaintiff has shown a material breach in Defendant failing to disclose all of the suppliers from which it purchased Athena-branded products in 2019. MSJ 13. Defendant's schedules indicate that it purchased 2,835 units of product, but that it sold 4,474 units. *See* Sch. 1; Sch. 2. Obviously, the additional units sold had to have come from somewhere, thus Plaintiff submits that Defendant failed to disclose the suppliers from whom it purchased those additional units. MSJ 13.[4]

Defendant objects that this argument is "mere speculation." Opp. to MSJ 19. Defendant points out that the agreement only required disclosure of its buyers and sellers in calendar year 2019. *Id.* at 18-19; *see* SA ¶ 2(a)(iii), (iv). Defendant further notes that the settlement agreement did not require disclosure of the amount of pre-2019 inventory Defendant had on hand, which could have accounted for this discrepancy. Opp. to MSJ 19.

The problem is that it is *Defendant*, not Plaintiff, who relies on 'mere' speculation. It is true that Plaintiff does not have *direct* evidence that this roughly 1,600-unit discrepancy is the product of Defendant's failure to disclose all of its suppliers – but the discrepancy itself is *circumstantial* evidence that is sufficient to establish by a preponderance of the evidence that Defendant failed to do so. *See* Ninth Cir. Manual of Model Civil Jury Instructions 1.12 (2022) ("The law makes no distinction between the weight to be given to either direct or circumstantial evidence.").[5]

---

[4] The other possibility is that this discrepancy results from Defendant under-reporting the number of units it purchased from the nine sellers that it did disclose in Schedule 1, however this too would constitute a breach given the settlement agreement's requirement that Defendant disclose the "amount of product purchased from each seller." SA ¶ 2(a)(iii).

[5] While the jury at trial found that this 1600-unit discrepancy was not due to any inaccuracy in the disclosure of suppliers. *See* Special Verdict Form, Issue I.c., ECF No. 189, Defendants did not introduce any evidence that the discrepancy was due to carried over inventory – just as they have failed to do here. Thus, no reasonable jury could have found for Defendants absent

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Accordingly, the burden shifted to Defendants to put forth admissible evidence that showed a dispute of material fact. *See Matsushita*, 475 U.S. at 585–86. Yet Defendants have not done so. Defendants do not dispute the accuracy of the disclosures that they themselves prepared, *see* UF ¶ 15, and they have not pointed to one iota of evidence that demonstrates that *any* of this discrepancy – let alone *all* of it – was the product of carried-over inventory rather than inaccurate disclosures. Defendants did not produce or put forth any books or records indicating their inventory balance at the beginning of 2019 despite the fact that such evidence would be entirely within their control.[6] Merely casting "metaphysical doubt as to the material facts" without any supporting evidence is insufficient to stave off summary judgment. *See Matsushita*, 475 U.S. at 585–86; *see also Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) ("[c]onclusory allegations unsupported by factual data will not create a triable issue of fact.").

Indeed, Defendant did not attach *any* actual evidence – whether declarations or other written evidence, *see* L.R. 56-3 – to its opposition filings here. Instead, Defendants' opposition brief primarily consists of a parade of unfounded discovery grievances and allegations of local rule violations.

Defendants complain that Plaintiff purportedly violated Rule 26 and Local Rule 16 by not disclosing this inventory discrepancy theory or identifying the evidence in support of it. Opp. to MSJ 7-10. For one, regarding Rule 26, Defendants once again appear to have conjured up a requirement that does not exist. While Rule 26 requires the identification of certain evidence and its disclosure to the opposing party, it does not require a party to disclose its legal theory to the opposition, as Defendants seem to think. *See* Fed. R. Civ. P. 26. In fact, it *explicitly* disavows such a requirement. *See* Fed. R. Civ. P. 26(b)(3)(B). And Defendant has no warrant to gripe that the evidence supporting this theory was not identified. The inventory discrepancy theory is based entirely on the schedules themselves, and here, as Defendants acknowledge, the schedules have been identified as key evidence from the very inception of this case. *See* Opp. to MSJ 7-8.

---

any such evidence whatsoever, and this Court, for reasons that the Court has thoroughly detailed in several previous orders, ECF Nos. 203, 205, 219, vacated that verdict due to the chaos and cacophony that marred the original trial.

[6] If anything, Defendants' failure to produce such evidence supports the inference that their books and records do not show that their pre-2019 inventory accounts for the discrepancy here. *See* Wigmore on Evidence § 291 (4th ed. 2022) (discussing "general principle" that a party's failure to produce a document within its control supports an inference that the document would be unfavorable to its position).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Similarly, while Local Rule 16 does require parties to disclose the claims they intend to pursue and their "contentions regarding the applicable facts and law" in advance of trial, *see* L.R. 16-2.8, here, Defendants' own brief concedes that Plaintiff put them on notice of the inventory discrepancy theory by articulating it in briefing on a prior summary judgment motion back in September 2021 – over two months before the original trial in this case. *See* Opp. to MSJ 15.

Even if there were some technical violation of one of the local rules – which is not evident to the Court – it is simply farcical for Defendants to claim that as a result, they are the victims of a "trial by ambush," *see* Opp. to MSJ 7, when they have been aware of Plaintiff's inventory discrepancy theory for at least ten months.[7] Defendants are a "victim" of nothing more than their own failure to produce *any* evidence *whatsoever* to discharge the burden that has shifted to them. *See Matsushita*, 475 U.S. at 585–86.

And for similar reasons to those discussed in the previous section, the Court has little trouble concluding that this breach was also material as a matter of law. *See Ins. Underwriters*, 184 Cal. App. 3d at 1527. Given Plaintiff's interest in the identification of Defendant's suppliers and customers, Defendant's failure to disclose suppliers deprives Plaintiff of the "substantial benefit" for which Plaintiff bargained. *See Sackett*, 248 Cal. App. 2d at 229-30.

### 2. Continued Marketing

The Court further concludes that Plaintiff has shown a breach of the settlement agreement by virtue of Defendants' continued marketing of Athena-branded products. Plaintiff points to records from Groupon and Walmart which it says demonstrates Defendants' continued marketing after the settlement agreement went into effect. MSJ 14-15. Plaintiff argues that this violates the settlement agreement's prohibition on "marketing, offering for sale, advertising, promoting, [or] displaying" Athena-branded

---

[7] Defendants' claim is all the more capricious given their own disregard for discovery rules and local rules. For example, the Court has already sanctioned Defendants for Defendant Newman's failure to attend his own deposition. *See* Dkt. 179 at 1-2. Further, Defendants have repeatedly violated Local rule 5-4.3 – including in their opposition papers to *this* very motion – by filing documents as scanned pdf images, despite the <u>explicit</u> warning in all capital letters that "PDF IMAGES CREATED BY SCANNING PAPER DOCUMENTS ARE PROHIBITED." L.R. 5-4.3.1.

| | | : |
|---|---|---|
| | Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

goods. *See* SA ¶ 2(a)(vii).[8]

Authenticated records show that on Walmart.com, Walmart's e-commerce platform, AMN,
doing business as "Adina's Beauty Shop," maintained a listing for a RevitaBrow product from May
2020 – after the settlement agreement went into effect – into 2021. *See* Harris Decl., Ex. 30 at 12-14, 81-
113, ECF No. 240-36.[9] Similarly, authenticated records from Groupon show listings from "Brush
Express operated by AMN Distribution" for multiple RevitaLash and Revita Brow products into 2021,
after the agreement was in effect. Harris Decl., Ex. 29 at 1-28, ECF No. 240-35.[10]

Continuing to list RevitaBrow and RevitaLash products violates the agreement's express
prohibition on "marketing, offering for sale, advertising, [or] promoting" products that bear Plaintiff's
marks. *See* SA ¶ 2(a)(vii). Defendants argue that the Walmart records show that "not one dollar [was]
spent on advertising with Walmart." Opp. to MSJ 21. But that is irrelevant; even if Defendants did not
pay Walmart to promote their listings, merely listing the products constitutes "marketing" and "offering
for sale," which is sufficient to have breached the agreement.[11]

---

[8] Although this Court previously concluded that Defendant Newman could not be liable for a breach involving the
preparation of Schedules 1 and 2 since only AMN was obligated to furnish those schedules 1 and 2, Newman is still liable for
continued distribution of Athena-branded products since he signed the contract in his personal capacity, personally obligating
himself to refrain from further distribution. *See* SA.

[9] The cited page numbers in this paragraph refer to the pagination as stamped by the ECF system.

[10] Defendants, in yet another misguided argument, object that the declaration of Plaintiff's counsel, Mr. Harris, is insufficient
to authenticate the Walmart and Groupon records. Def. Evidentiary Objections ¶¶ 7-8, ECF No. 247. However, the records
are accompanied by certifications of custodians and are thus self-authenticating under Fed. R. Evid. 902(11).

[11] Though Defendants do not raise this point in their operative opposition brief, Defendants have previously argued that these
listings do not demonstrate continued marketing. Defendants previously submitted a declaration from Defendant Newman,
ECF No. 172, in he stated that Defendants sold through "channels" like Walmart.com and Groupon by publishing their
inventory and price to those channels. Newman Decl. ¶ 14. Defendant Newman thus attempted to explain away the post-
agreement listings by suggesting that even though Defendants "deactivate[d]" the listings in question, the "historical product
offering may remain published in the backend" of the listing channel. *Id.* ¶¶ 14-15.

However, even if Defendants had offered Newman's declaration here, the Court would be inclined to exclude it from
consideration due to Newman's failure to attend his deposition. *See* Fed. R. Civ. P. 37(d); *see also* Order 1-2, ECF No. 179.
Further, nothing in Newman's declaration establishes any foundation for his purported knowledge of the "backend" technical
features of Walmart.com and Groupon – platforms with which he has no affiliation. Thus, Defendants still lacks *admissible*
evidence explaining why these listings would not constitute "marketing" or "offering for sale" in breach of the settlement

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Further, the breach is material as a matter of law. Plaintiff agreed to give up its potential legal claims in exchange for Defendants stopping the allegedly infringing conduct; Defendants continuing that same conduct thus clearly deprived Plaintiff of the "substantial benefit" of the agreement for which Plaintiff cannot be compensated if held to its release. *See Sackett*, 248 Cal. App. 2d at 229-30.[12]

### 3. Harm from Breach

Defendants have also made two arguments regarding harm from breach and damages that the Court briefly addresses.

First, Defendants argue that Plaintiff has failed to show a harm caused by its breach. *See* Opp. to MSJ 23-24. Defendants claim that Plaintiff's "damages theory amounts to nothing more than speculative lost profits." *Id.* at 24.

The Court disagrees. Contrary to Defendants' contention, Plaintiff's theory is not that its harm is lost profit. Rather, as the Court has previously discussed, the harm Plaintiff has suffered here is giving up its right to pursue legal claims against Defendant and then not getting what it bargained for in return. Giving up a legal right or refraining from suing on a claim is a thing of value – that is why it can constitute consideration to enter a settlement agreement in the first place, *see* 1 Witkin, Summary of Cal. Law, Contracts § 211 (11th ed. 2022) (collecting cases) – and the loss thereof is Plaintiff's harm here. Thus, the damages which Plaintiff seeks here to remedy this harm is the recovery of the damages available on the *underlying* trademark claims.

This implicates Defendant's second argument: that Plaintiff failed to disclose a computation of damages as required by Rule 26. Opp. to MSJ 22-23. Thus, Defendant argues, Plaintiff should be precluded from offering any evidence of damages under Rule 37, barring recovery on Defendant's

---

agreement.

[12] Though Defendants again neglect to raise this issue in their brief, Defendants have previously pointed out that the Walmart and Groupon records do not show that they achieved any actual sales from the product listings. The thrust of this point would seem to be that even if continued marketing were a breach, it would not be a *material* breach. However, such a contention is unavailing. Even 'mere' marketing causes consumer confusion and dilutes the brand power protected by trademarks, which is why the Lanham Act itself proscribes merely "offering for sale" goods that bear a counterfeit mark. *See* 15 U.S.C. § 1117.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|----------|------------------------|------|------------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

claim. *Id.*

However, sanctions under Rule 37 should not be imposed where the violation was "substantially justified or harmless." *See* Fed. R. Civ. P. 37(c). And here, any failure to provide a formal "computation" of damages is both substantially justified and harmless because it is clear from the complaint itself that the damages Plaintiff seeks for the underlying trademark claims is either the Defendants profits from the sale of the infringing merchandise or the statutory damages available under 15 U.S.C. § 1117. *See* FAC ¶¶ 101. Defendants cannot fault Plaintiff for failing to provide a specific computation of damages based on disgorgement of Defendants profits since Defendants themselves have failed to produce any books or records (other than the scheduled prepared for the settlement) that show their profits.

### 4. Condition Precedent

Finally, the Court briefly expresses its view on one additional matter that Plaintiff did not raise but is relevant to the settlement agreement: whether Plaintiff's release of claims was obviated by failure of a condition precedent. For reasons that the Court cannot fully understand, Plaintiff has pursued this action by presenting Defendant's failure to perform its settlement obligations only under a breach of contract framework. As is evident from the preceding discussion, this framework introduces a number of complications – such as who can be liable for the breach, the materiality of the breach, and how damages from the breach are understood.

In the Court's view, the issue here could also be more sensibly analyzed under a condition precedent framework. A condition precedent is "either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). "Conditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not invoke any 'required magical incantation.'" *Int'l Bhd. of Teamsters v. NASA Services, Inc.*, 957 F. 3d 1038, 1043 (9th Cir. 2020) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 626 (9th Cir. 1991)); *see also Realmuto v. Gagnard*, 110 Cal. App 4th 193, 199 ("The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract.").

Here, the "plain, clear, and unambiguous language" in the settlement agreement clearly makes

| Initials of Preparer | : | PMC |
|----------------------|---|-----|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Plaintiff's contractual duty not to sue expressly conditioned on Defendants performing certain acts. *See Int'l Bhd. of Teamsters*, 957 F. 3d at 1043. The agreement states, "*conditional on* Defendants making the Settlement Payment, furnishing Schedules 1 and 2 [], and Defendants' delivery of the entire remaining inventory" of Athena-branded products, Plaintiff would release its claims. SA ¶ 5 (emphasis added). This plain language suggests that the intent of the parties was to make Plaintiff's contractual duty conditional – Plaintiff appears to have considered releasing claims only in exchange for the fulfillment of certain promises that would have sufficiently altered its risk calculus. *See Realmuto*, 110 Cal. App 4th at 199.

And the same reasons that led the Court to conclude that Defendant breached the agreement by failing to disclose the "full and complete contact information" for all of its suppliers, *see supra* Section III.a.1, would lead to the conclusion that Defendant failed to perform the condition precedent. In other words, the same conduct that Plaintiff characterizes as a breach of contract – Defendant's failure to provide the information required – could actually be characterized as a failure to perform a condition precedent. And failure of that condition precedent would mean that Plaintiff's contractual duty to release its claims would have never arisen in the first place. *See Platt Pac., Inc.*, 6 Cal. 4th at 313.[13]

Thus, the Court would easily conclude that Plaintiff's duty to release its claims never became operative because that duty was contingent on a condition precedent that Defendants failed to satisfy. Courts may grant summary judgment on an issue *sua sponte*, though they should not do so unless the party against whom judgment will be entered had "a full and fair opportunity to develop and present facts and legal arguments in support of its position." *Portsmouth Square Inc. v. S'holder Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

In the Court's view, Defendants had a full and fair opportunity to develop and present their

---

[13] Further, under a condition precedent framework, there would be no issue of materiality because a condition "must be literally met or exactly fulfilled, or no liability can arise on the promise qualified by the conditions. [. . .] if a party makes a promise to do an act on condition that it will receive $5.01, it cannot be required to perform on being paid $5." Williston on Contracts § 38:6 (4th ed. 2022); *see Kadner v. Shields*, 20 Cal. App. 3d 251, 258 (Cal. Ct. App. 1971). Additionally, under a condition precedent analysis, the burden would be on *Defendants* – as the parties seeking to enforce Plaintiff's promise – to show the condition had been met, rather the burden being on Plaintiff to show that Defendant's breached their obligation in a breach of contract framework. *See Kadner*, 20 Cal. App. 3d at 268. Plaintiff would thus be free to sue and seek damages on the underlying trademark claims – the exact same redress Plaintiff seeks under its breach theory.

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

arguments relevant to this issue because here, breach of contract and failure of a condition precedent are two sides of the same coin. Under the breach of contract framework pursued by Plaintiff, Defendants have presented (unavailing) arguments that they *did* provide "full and complete contact information" for all their suppliers, contending that they are not in breach. Defendants would put forth the *exact same* arguments – that they did provide complete contact information – under a condition precedent framework to contend that the condition was satisfied. Defendants have had a full opportunity to argue that they did what was required under the settlement agreement, regardless of whether that requirement is labeled as a condition precedent or an ordinary contractual duty.

Thus, notwithstanding the breach of contract analysis, the Court also concludes that an alternative basis for its holding here is that Plaintiff's obligation to sue never arose because the conditions precedent to that obligation never occurred. Accordingly, Plaintiff's underlying trademark claims are not barred.

### b. Trademark Counterfeiting

Having concluded that Plaintiff is not bound by the claims release in the settlement agreement, the Court then turns to Plaintiff's first cause of action: its underlying claim for trademark counterfeiting. *See* FAC ¶¶ 1-47.

'Trademark counterfeiting' is not a unique cause of action; it is simply a form of trademark infringement accomplished through the use of a counterfeit. *See* 15 U.S.C. § 1114(a). Thus, Plaintiff must satisfy the elements for general trademark infringement in violation of § 1114. *See Nike Inc. v. Variety Wholesalers, Inc.*, 274 F.Supp.2d 1352, 1368-69 (S.D. Ga. 2003). If Plaintiff does so and also shows that the infringement involved the use of a counterfeit mark as defined in the Lanham Act, then additional remedies may be available under 15 U.S.C. § 1117.

To establish a claim of trademark infringement, a plaintiff must show that (1) it has a valid, protectable trademark or trade dress and (2) the alleged infringer's use of the same or a similar mark causes a likelihood of confusion in the minds of the relevant consuming public. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). Here, Plaintiff has easily shown both.

First, federal registration of a trademark provides prima facie evidence of the mark's validity; it

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

entitles the plaintiff to a strong presumption that the mark is protectable and shifts the burden to the defendant to show that the mark is not protectable. *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010); *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); see 15 U.S.C. § 1115(a). Here, Plaintiff is the owner of the federally registered trademarks at issue, which it uses in commerce, and Defendant has not disputed that the marks are valid and protectable. *See* UF ¶ 28.

Second, although likelihood of consumer confusion is normally analyzed under the eight-factor test set out in *Accuride Int'l Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir.1989), "in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination ... because counterfeit marks are inherently confusing." *Phillip Morris USA Inc. v. Shalabi,* 352 F.Supp.2d 1067, 1073 (C.D. Cal. 2004) (internal quotations and citations omitted). "Where virtually identical marks are used with identical products or services, likelihood of confusion 'follow[s] as a matter of course.'" *JUUL Labs, Inc. v. Chou*, 557 F.Supp.3d 1041, 1053 (C.D. Cal. 2021) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999)); *see also Chanel, Inc. v. Veronique Idea Corp.*, 795 F.Supp.2d 262, 267 (S.D.N.Y. 2011) ("Indeed, causing customer confusion is the entire purpose behind the manufacture of counterfeit goods").

Here, the unrebutted evidence indicates that Defendants sold counterfeits.[14] As indicated by Plaintiff's employee, Christina Felix, who examined the products she purchased from Defendants, the products Defendants sold were "substantially indistinguishable" from Plaintiff's authentic products – including the spurious marks – except for a few subtle differences, such as the differences in the pamphlet, the different shade of blue on the packaging, and the packaging being taped rather than glued. 15 U.S.C. §§ 1116(d)(1)(B), 1127 (definition of counterfeit); *see* Felix Decl. ¶ 13.

Further, the prices at which Defendants sold the goods are also circumstantial evidence of counterfeiting. According to Schedule 2, Defendants' best-selling product by far was the "RevitaLash Eyelash Conditioner 3.5ml", sold for an average price of $75.10. *See* Sch. 2. However, as Felix avers,

---

[14] Defendant Newman is also personally liable despite his status as a corporate officer. In the settlement agreement, Newman admitted that was individually doing business as Brush Express when selling the counterfeit goods, *see* SA at 1, and even to the extent that he was acting on AMN's behalf, corporate officers are still personally liable for trademark infringement when they authorize, direct, or participate in the infringement, which Newman, by his own admission, did as CEO of AMN. *See Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

the retail price for the authentic version of this same product is $150.[15] Courts have recognized that prices significantly below normal retail price is consistent with counterfeiting because of the sheer implausibility that such heavily discounted goods could be authentic. *See, e.g., Louis Vuitton v. Lee*, 875 F.2d 584, 589 (7th Cir. 1989); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc*., 256 F. Supp. 399, 404 (S.D.N.Y. 1966). By the same token, Defendants selling their primary product for half of its normal retail price is further evidence of their counterfeiting.[16]

Defendants' products used "virtually identical marks" on virtually identical products, which establishes a likelihood of consumer confusion. *JUUL Labs*, 557 F.Supp.3d at 1053; *see also Phillip Morris*, 352 F.Supp.2d at 1073. Accordingly, Plaintiff has shown trademark infringement as a matter of law. *See Fuddruckers, Inc.*, 826 F.2d at 841.

### c. Remedies

Having shown trademark infringement, the Court further concludes that Plaintiff is entitled to an injunction, damages, and attorneys' fees.

### 1. Injunction

Pursuant to 15 U.S.C. § 1116, district courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a trademark holder's rights. *Id.* § 1116(a). Under "well-established principles of equity," a plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that

---

[15] Defendants raise another petulant objection regarding this issue, contending that Felix lacks foundation to testify to the price of authentic Athena goods compared to Defendants average retail price. Def. Evidentiary Objections ¶¶ 1-2. Defendants' meritless objections are denied. Felix is one of Plaintiff's employees, specifically tasked with distinguishing fake products from authentic ones; she is obviously competent to testify as to Plaintiff's prices for its authentic products. And as for Defendants' price – it is simply the mathematical average of the sales prices for "3.5ml RevitaLash Eyelash Conditioner" that Defendant disclosed in Schedule 2, which Felix reviewed. *See* Felix Decl. ¶ 15. This sufficiently explains "the basis of [Felix's] calculation." *See* Def. Evidentiary Objections ¶ 2.

[16] This fact also belies Defendant's contention that Plaintiff does not have evidence that any of the products Defendants sold were counterfeit (as opposed to genuine) besides the ones tested by Felix. *See* UF ¶ 22. Because Defendants prices were systemically well-below the retail price for genuine Athena goods, that is evidence that all or substantially all of the units were counterfeit rather than genuine.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Congress has recently made it easier for trademark plaintiffs to obtain an injunction, amending the Lanham Act to provide that such plaintiffs "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection." 15 U.S.C. § 1116(a) (as amended by Act of Dec. 27, 2020, Pub. L. 116-260, Div. Q, Tit. II § 226(a), 134 Stat. 2208).[17] Because the Court has found that Defendants infringed Plaintiff's trademarks, and Defendant has offered no rebuttal as to why there would not be irreparable harm here, the Court concludes that Plaintiff faces irreparable injury.

Similarly, Plaintiff's remedies at law are inadequate here. Injunction is generally the "remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). In general, monetary damages are inadequate to protect the "right to *exclude*" that is conferred by trademark protection. *See Patagonia, Inc. v. McHugh*, 2020 WL 4258818, *9 (C.D. Cal. Apr. 21, 2020). This is especially true in counterfeiting cases, where the significant degree of consumer confusion engendered by counterfeits makes it difficult to adequately compensate the trademark holder for the damage to the value of their marks.

The balance of hardships also favors injunction. Plaintiff has shown an irreparable injury, and where a defendant is "prevented only from unlawfully infringing on a plaintiff's [] trademarks, the defendant cannot identify a countervailing injury or hardship." *Id.*

---

[17] For context, the Ninth Circuit had previously rejected presumptions of irreparable harm in cases involving intellectual property infringement. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980 (9th Cir. 2011) (copyright). In doing so, the Ninth Circuit relied on *eBay*, 547 U.S. at 391-92, and concluded that such presumptions were inappropriate absent "congressional intent to authorize a 'major departure'" from the traditional four-factor equitable framework for injunctions. *Perfect 10*, 653 F.3d at 980. In a recent decision, the Ninth Circuit acknowledged the effect of the 2020 amendment to the trademark statute, implicitly recognizing the clear congressional intent to authorize such a presumption. *See AK Futures LLC v. Boyd Street Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (citing § 1116(a) and explaining "[b]y statute, AK Futures is entitled to a rebuttable presumption of irreparable harm").

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|----------|------------------------|------|-----------------|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

Finally, the public interest also favors injunction. Given the public interest in not being misled about the source of products, the public interest favors injunctions that prevent further infringement. *See Inwood Labs., Inc. v. Ives Labs. Inc.,* 456 U.S. 844, 854 n. 14 (1982) ("[T]he infringer deprives consumers of their ability to distinguish among goods"). This public interest is even stronger in counterfeiting cases, giving the high degree of similarity between the products and the heightened likelihood of consumer confusion. *See Phillip Morris*, 352 F. Supp. 2d at 1075.

Accordingly, Plaintiff has shown that an injunction is warranted here. However, at the same time, "[a]n injunction should be tailored to eliminate only the specific harm alleged." *Skydive Arizona, Inc. v. Quattrochi*, 673 F.3d 1105, 1116 (9th Cir. 2012). "Courts should not enjoin conduct that has not been found to violate any law." *Id.*

In the Court's view, while most of the terms of Plaintiff's proposed injunction do nothing more than prevent Defendants from "unlawfully infringing on [] plaintiff's [] trademarks," *see Patagonia, Inc.*, 2020 WL 4258818, at *9, a few provisions are potentially vague and overbroad.

Specifically, one provision would enjoin Defendants from "engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Athena's business reputation or weaken the distinctive quality of the Athena Trademarks." Proposed J. 2, ECF No. 240-37. This term's lack of specificity gives it potentially expansive sweep. There are many acts which could be seen as "likely" "to injure Athena's business reputation" that would not violate any law, making the term overbroad. *See Quattrochi*, 673 F.3d at 1116. The Court will therefore strike this term.

Similarly, another term would restrain Defendants from "engaging in any conduct infringing the Athena Trademarks, of Athena's rights in, or to use or to exploit, the Athena Trademarks, or constituting any weakening of Athena's name, reputation or goodwill." Proposed J. 3. The final clause of this term again goes too far, potentially encompassing a broad range of conduct that need not be enjoined to vindicate Plaintiff's trademark rights. *See Quattrochi*, 673 F.3d at 1116. Accordingly, the Court will strike the last clause of this term.

And finally, another provision prevents Defendants from "connecting with any websites that offer for sale any merchandise bearing counterfeits of the Athena Trademarks." Proposed J. 3. By the

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

plain terms of this provision, Defendants could violate the injunction – and face contempt proceedings – for merely accessing a website run by another party if the website happens to sell counterfeit Athena goods, even if Defendants never visit that page of the site and never even *know* that the site sells such goods. This provision is thus insufficiently tailored in proscribing otherwise innocent conduct and shall likewise be struck. *See Quattrochi*, 673 F.3d at 1116.

### 2. Damages

Title 15 U.S.C. § 1117 covers the damages available in trademark actions. The baseline measure of damages is "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Id.* § 1117(a).

However, if the infringement involves the use of a counterfeit mark, there are additional damages available. *See id.* §§ 1117(b), (c). And here, for the reasons discussed above, *see supra* Section III.b, the trademark infringement here involved the use of a counterfeit mark.

If the infringer intentionally uses the counterfeit mark, knowing that it is counterfeit, to sell or market its counterfeit good, then the plaintiff may recover treble actual damages. *Id.* § 1117(b). A plaintiff may alternatively elect to recover statutory damages of between $1,000 and $200,000 per counterfeit mark used, in an amount "as the court considers just." *Id.* § 1117(c)(1). These baseline statutory damages are available without a showing of intent or knowledge; however, if a plaintiff shows that the use of the counterfeit mark was willful, then the statutory damages may be increased to $2,000,000 per counterfeit mark used. *Id.* § 1117(c)(2).

Here, as the starting point for damages, Plaintiff seeks to disgorge Defendants' profit from the infringement. MSJ 21-22. Schedule 2 indicates that Defendants revenue from its sales to customers in 2019 was $312,880. *See* Sch. 2.

Defendants argue that this amount is not an appropriate measure of their profits from those transactions because it does not factor in their costs. *See* UF ¶ 34. This argument is patently frivolous; it is black-letter law that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *see also Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968). Defendants have

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

failed to do so here; they have put forth absolutely no books and records whatsoever. Accordingly, Defendants' profit shall be assessed at $312,880.[18]

Under the Lanham Act, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). Here, since Defendants fully performed their obligation to pay $25,000 under the settlement agreement, it is just under these circumstances to reduce the damages award based on profits by the same amount. Accordingly, the Court would assess damages based on Defendants' profits at $287,880.

However, the Court concludes that Plaintiff has not shown intent, knowledge, or willfulness in Defendants' use of the counterfeit marks in 2019. Plaintiff has offered nothing more than conclusory arguments on this issue, thus there is nothing from which to conclude that Defendants use of the counterfeit marks was intentional, knowing, or willful. *See* MSJ 20-23 (contending that "[t]he undisputed evidence establishes defendants' willfulness" without even specifying which evidence).

Thus, Plaintiff's choice of damages is either (a) $287,880, based on Defendants' profits, or (b) statutory damages of between $1,000 and $200,000 per counterfeit mark used. Rather confusingly, Plaintiff contends that "[i]f the Court grants this motion, and if the judgment is upheld on any appeal, Athena will waive its right to statutory damages and will limit its damage recovery to treble damages and attorney fees." MSJ 20. However, a plaintiff must make its election between actual damages and statutory damages "at any time *before* final judgment is rendered." 15 U.S.C. § 1117(c) (emphasis added).

Accordingly, **Plaintiff is ordered to file a response within five days of this order** indicating its election as to whether it wishes to recover actual damages or statutory damages. If Plaintiff elects to recover statutory damages, Plaintiff should also brief, in no more than ten pages, the issues of (a) how

---

[18] Plaintiff argues that the Court should assume that Defendants continued their sales into 2020 at the same rate as the 2019 sales, up until April 30, 2020, when the settlement agreement went into effect. *See* MSJ 22. Thus, Plaintiff contends that the Court should assume Defendants made an additional $104,293 in sales in those first few months of 2020 and should increase damages accordingly. The Court declines to engage in such speculation; it is Plaintiff's initial burden to prove sales, *see* 15 U.S.C. § 1117(a), and Plaintiff has not done so for sales in 2020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

many counterfeit trademarks were used by Defendants,[19] and (b) what amount of statutory damages per counterfeit mark is appropriate (if Plaintiff has a view on the matter).

### 3. Prejudgment Interest and Attorneys' Fees

Finally, Plaintiff also seeks prejudgment interest and attorneys' fees. MSJ 23-24.

Under 15 U.S.C. § 1117(b), a court may award prejudgment interest if it finds that the defendant intentionally or knowingly used a counterfeit mark. Since, as previously discussed, there is nothing from which the Court concludes that Defendants acted intentionally or knowingly, Plaintiff is not entitled to prejudgment interest here.

Plaintiff is entitled to attorneys' fees by virtue of the settlement agreement, which provides that "[i]n the event of any litigation arising from breach of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs incurred including staff time, court costs, and attorney's fees." SA ¶ 9(c).

Under California law, when a contractual provision authorizes attorneys' fees in an action "arising out of" the contract, recovery of fees is authorized not only for contract claims, but also for tort claims related to the subject of the contract. *See Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). Further, when fees are authorized for the "prevailing party," unless that term is defined in the contract or there is evidence that the parties intended to ascribe some special meaning to the term, courts should interpret the term in its "ordinary and popular sense" and identify the prevailing party based on "a pragmatic definition of the extent to which each party has realized its litigation objectives." *Id.* at 608-09, 622.

Thus, Plaintiff is entitled to recover fees for this action. Plaintiff is the prevailing party here; though Plaintiff has only sought partial summary judgment, it has proven its entitlement to damages and an injunction, achieving its litigation objectives, whereas Defendant has achieved none. *See id.* Thus, Plaintiff may recover its fees that arose from Defendants' breach of the settlement agreement, which

---

[19] It appears to the Court that Defendants used at least 6 counterfeit marks here. However, the Court declines to make a definitive determination at this time since additional proceedings are necessary on this issue.

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-05526-SVW-SHK | Date | August 16, 2022 |
|---|---|---|---|
| Title | *Athena Cosmetics, Inc. v. AMN Distribution Inc. et al* | | |

includes the fees associated with Plaintiff's underlying trademark claims. *Id.* at 608.[20]

Plaintiff is ordered to file a motion for attorneys' fees within 14 days of the Court's entry of judgment.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is granted.

The Court notes that this motion pertains to only two of Plaintiff's causes of action. However, since Plaintiff's remaining four claims appear to be functionally duplicative of its trademark counterfeiting claim and would not entitle Plaintiff to any additional relief, in the Court's view, it is unnecessary to address them.

As detailed above, **Plaintiff is ordered to file a response within five days of this order** indicating its election as to whether it wishes to recover actual damages or statutory damages. If Plaintiff elects to recover statutory damages, Plaintiff should also brief, in no more than ten pages, the issues of (a) how many counterfeit trademarks were used by Defendants, and (b) what amount of statutory damages per counterfeit mark is appropriate (if Plaintiff has a view on the matter). If Plaintiff elects statutory damages, Defendants may file an opposition brief of no more than ten pages on these two issues; such brief shall be filed within seven days of Plaintiff's brief.

**IT IS SO ORDERED.**

---

[20] Attorneys' fees can also be awarded under the Lanham Act. Plaintiff invokes 15 U.S.C. § 1117(b), which provides that courts "shall" award attorneys' fees in cases involving intentional or knowing use of a counterfeit mark unless there are "extenuating circumstances." However, since the Court has concluded that Plaintiff has not shown intentional or knowing use of a counterfeit mark here, this section does not apply. Separately, in all cases of trademark infringement, a court "may" award fees "in exceptional cases." *Id.* § 1117(a). Since attorneys' fees are clearly applicable here by virtue of the contract, the Court does not reach this issue and expresses no view on whether this is an "exceptional" case.

| | : |
|---|---|
| Initials of Preparer | PMC |